EXHIBIT A

| EXHIBIT # | DESCRIPTION | DATE FILED |
|---|---|---|
| A | Expedited Original Petition | 03/04/2025 |
| B | Statement of Inability to Afford Payment of Court Costs or an Appeal Bond in Justice Court | 03/04/2025 |
| C | 60 Day Notice of Intent to Add DTPA Offenses Pursuant to the Texas Deceptive Trade Practices Act As an Amended Claim in Plaintiff's Petition Pending Case Status at the 60 Day Mark | 03/05/2025 |
| D | Motion for Summary Judgment Against Lyft, Inc. | 03/05/2025 |
| E | Motion for Summary Judgment Against Lyft, Inc. | 03/11/2025 |
| F | Motion for Summary Judgment Against Lyft, Inc. | 03/20/2025 |
| G | Plaintiff's First Amended Original Petition | 03/20/2025 |
| H | Return of Service of Citation for Lyft, Inc. | 04/03/2025 |
| I | Notice of Hearing on Plaintiff's Motion for Summary Judgment | 04/03/2025 |
| J | Defendant Lyft, Inc.'s Original Answer | 04/07/2025 |
| K | Plaintiff's Response to Defendant Lyft, Inc.'s Original Answer and Defenses | 04/08/2025 |
| L | Docket Sheet | 04/08/2025 |

# EXHIBIT A

3/4/2025 1:02 PM
Velva L. Price
District Clerk
Travis County
D-1-GN-25-001601
Ruben Tamez

D-1-GN-25-001601

**CAUSE NO. ________________________________________**

# PLAINTIFF'S ORIGINAL PETITION

**DISTRICT JUDGE AND JURY TRIAL DEMANDED**

**IN THE DISTRICT COURT AT LAW**

**TRAVIS COUNTY, TEXAS**

261ST, DISTRICT COURT

## I. PARTIES

1. Plaintiff: Demetrius T. Crockett, an individual residing in Travis County, Texas.

2. Defendant: Lyft, Inc, a business entity operating in Texas, with a principal place of business at 6375 US-290, Austin, TX 78723 and can be served citation at **185 BERRY ST. #5000, SAN FRANCISCO, CA 94107.**

## II. JURISDICTION & VENUE

3. This Court has subject matter jurisdiction over this dispute because the amount in controversy exceeds the minimum jurisdictional limits of the Court.

4. Venue is proper in Travis County, Texas, under Tex. Civ. Prac. & Rem. Code § 15.002(a) because the events giving rise to the claims occurred in Travis County.

## III. FACTUAL BACKGROUND

5. Plaintiff was employed as an independent contractor by Defendant and was contractually entitled to access certain work-related resources, specifically Lyft's FlexDrive rental car program, necessary to fulfill job duties to earn living expense income as Plaintiff did not own a vehicle at the time.

6. On or about July 31, 2020, Plaintiff was informed that Defendant had used a fraudulent credit card number to restrict Plaintiff's access to these resources which resulted in a breach of his FlexDrive rental entitlement.

**7. However, at that time, Plaintiff did not have definitive proof of the fraudulent activity and could not confirm the breach.**

8. After exercising reasonable diligence, Plaintiff confirmed the fraudulent act on March 17, 2021.

9. Defendant's actions constitute a knowing and willful breach of contract, fraud, and tortious interference with Plaintiff's employment.

## IV. STATUTE OF LIMITATIONS & DISCOVERY RULE

10. Defendant may argue that Plaintiff's claims are barred by the statute of limitations. However, the discovery rule applies because Plaintiff could not have reasonably confirmed the fraudulent conduct until March 17, 2021 via an official letter from USAA bank.

11. Although Plaintiff was informed of potential fraud on July 31, 2020, this was not definitive proof.

12. Plaintiff diligently investigated the matter but was only able to confirm the fraud on March 17, 2021.

13. Under Tex. Civ. Prac. & Rem. Code § 16.004, the limitations period for breach of contract and fraud begins when the plaintiff knew or should have known of the injury.

14. Because Plaintiff confirmed the fraudulent act on March 17, 2021, this lawsuit is timely filed before the March 17, 2025, deadline.

## V. CAUSES OF ACTION

### A. BREACH OF CONTRACT (Tex. Civ. Prac. & Rem. Code § 16.004)

15. Plaintiff and Defendant had a valid, enforceable contract.

16. Defendant's intentional use of false payment information led to a material breach of the agreement.

17. Plaintiff suffered economic losses as a direct and proximate result of this breach.

### B. FRAUD / FRAUDULENT MISREPRESENTATION (Tex. Civ. Prac. & Rem. Code § 16.004)

18. Defendant knowingly provided false credit card information to restrict Plaintiff's access to work resources.

19. Defendant's misrepresentation was made with intent to deceive and caused actual harm to Plaintiff.

### C. TORTIOUS INTERFERENCE WITH BUSINESS OR EMPLOYMENT (Tex. Civ. Prac. & Rem. Code § 16.003)

20. Defendant intentionally interfered with Plaintiff's work by fraudulently restricting access to essential resources, thereby causing financial losses.

## VI. CRIMINAL AND FEDERAL VIOLATIONS (Supporting Civil Claims)

23. While Plaintiff acknowledges that criminal prosecution falls under law enforcement discretion, Defendant's actions potentially violate:

- Texas Penal Code § 32.31 (Credit Card or Debit Card Abuse) – Criminal offense involving the use of a fraudulent credit card number.

- 18 U.S.C. § 1029 (Federal Credit Card Fraud Statute) – Unlawful use of fraudulent payment information to cause harm.

- Texas Penal Code § 32.45 (Misapplication of Fiduciary Property) – If Defendant had a duty to provide access to work resources, misuse of such control may constitute a criminal offense.

## VII. DAMAGES & RELIEF REQUESTED

24. As a direct result of Defendant's unlawful actions, Plaintiff seeks the following relief:

- Actual damages for lost wages, missed work opportunities, and financial harm.
- Punitive damages.
- Attorney's fees and court costs.
- Pre-judgment and post-judgment interest at the maximum legal rate.
- Any other relief the Court deems just and proper.

## VIII. PRAYER FOR RELIEF

**WHEREFORE, PREMISES CONSIDERED, Plaintiff respectfully requests that Defendant be cited to appear and answer, and that upon final trial, Plaintiff be awarded:**

- Actual damages in an amount to be awarded;**$45,729**
- Punitive damages: **$20,000**
- Reasonable attorney's fees and costs;
- Pre- and post-judgment interest to be determined at trial;
- Any other relief the Court finds just and equitable which includes, but is not limited to, referring Defendant to Austin Police Department and/or Prosecutor for criminal proceedings.

# Certificate of Service

I hereby certify that a true and correct copy of this Petition has been served to Defendant by electronic filing this the 28th day of February 2025 electronically and in accordance with the Texas Rules of Civil Procedure.

D. Crockett 3/4/25

# Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Envelope ID: 98042099
Filing Code Description: Petition
Filing Description: PLAINTIFF'S ORIGINAL PETITION
Status as of 3/5/2025 1:23 PM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Bryan Pollard | | bryan.pollard@pierferd.com | 3/4/2025 1:02:42 PM | SENT |
| Bradley Bush | | bradley.bush@pierferd.com | 3/4/2025 1:02:42 PM | SENT |
| Deidra Cobb | | deidra.cobb@pierferd.com | 3/4/2025 1:02:42 PM | SENT |
| Lyft Inc | | legal@lyft.com | 3/4/2025 1:02:42 PM | SENT |
| Demetrius Crockett | | dcaustin71@gmail.com | 3/4/2025 1:02:42 PM | SENT |

## Filing Information

* Filing Code
Notice

Filing Description
CITATION FOR THIS PETITION WAS INADVERTENTLY SENT TO JUSTICE OF THE PEACE PRECINCT 5 (???) - INCLUDED IN THIS SUBMISSION IS THE ORIGINAL PETITION THA

Client Reference Number
CITATION FOR THIS PETITION WAS INADVERTENTLY SENT TO JUSTICE OF THE PEACE PRECINCT 5 (???) - INCLUDED IN THIS SUBMISSION IS THE ORIGINAL PETITION THA

Comments to Court
PLEASE BACKDATE TO 3/4/2025 1:02 PM CST. CITATION FOR THIS PETITION WAS INADVERTENTLY SENT TO JUSTICE OF THE PEACE PRECINCT 5 (???) - INCLUDED IN THIS SUBMISSION IS THE ORIGINAL PETITION THAT WAS FILED IN DISTRICT COURT AND FEES FOR (1) CITATION AND (2) DELIVERY BY CERTIFIED MAIL TO BE SENT TO THE DEFENDANTS ADDRESS AS NOTED IN THE PETITION

EXHIBIT B

3/4/2025 1:02 PM
Velva L. Price
District Clerk
Travis County
D-1-GN-25-001601
Ruben Tamez

**NOTICE: THIS DOCUMENT CONTAINS SENSITIVE DATA**

Cause Number: D-1-GN-25-001601
(The Clerk's office will fill in the Cause Number when you file this form)

Plaintiff: Demetrius T. Crockett
(Print first and last name of the person filing the lawsuit.)

In the (check one):
- [X] District Court
- [ ] County Court / County Court at Law
- [ ] Justice Court

Court Number: 261ST, DISTRICT COURT

Travis County, Texas
County

Defendant: Lyft, Inc.
(Print first and last name of the person being sued.)

## Statement of Inability to Afford Payment of Court Costs or an Appeal Bond in Justice Court

### 1. Your Information

My full legal name is: Demetrius T. Crockett (First / Middle / Last)    My date of birth is: 6/25/71 (Month/Day/Year)

My address is: (Home) 3310 W. Braker Lane, Austin, Texas 78758

(Mailing) ______

My phone number: 512.5535d55    My email: youcanusemyemailaddress@gmail.com

About my dependents: "The people who depend on me financially are listed below.

| | Name | Age | Relationship to Me |
|---|---|---|---|
| 1 | | | |
| 2 | | | |
| 3 | | | |
| 4 | | | |
| 5 | | | |
| 6 | | | |

### 2. Are you represented by Legal Aid?

- [ ] I am being represented in this case for free by an attorney who works for a legal aid provider or who received my case through a legal aid provider. I have attached the certificate the legal aid provider gave me as 'Exhibit: Legal Aid Certificate.

-or-

- [ ] I asked a legal-aid provider to represent me, and the provider determined that I am financially eligible for representation, but the provider could not take my case. I have attached documentation from legal aid stating this.

or-

- [X] I am not represented by legal aid. I did not apply for representation by legal aid.

### 3. Do you receive public benefits?

- [X] I do not receive needs-based public benefits. - or -
- [ ] I receive these **public benefits/government entitlements** that are based on indigency:
(Check ALL boxes that apply and attach proof to this form, such as a copy of an eligibility form or check)

- [ ] Food stamps/SNAP
- [ ] TANF
- [ ] Medicaid
- [ ] CHIP
- [ ] SSI
- [ ] WIC
- [ ] AABD
- [ ] Public Housing or Section 8 Housing
- [ ] Low-Income Energy Assistance
- [ ] Emergency Assistance
- [ ] Telephone Lifeline
- [ ] Community Care via DADS
- [ ] LIS in Medicare ("Extra Help")
- [ ] Needs-based VA Pension
- [ ] Child Care Assistance under Child Care and Development Block Grant
- [ ] County Assistance, County Health Care, or General Assistance (GA)
- [ ] Other: ______

reviewed 3/5/25



/s/ Daniel Smith

**4. What is your monthly income and income sources?**

"I get this monthly income:

$ 0 in monthly wages. I work as a Owner (Your job title) for Self (Your employer)

$ 0 in monthly unemployment. I have been unemployed since *(date)* September 25th 2024

$ 0 in public benefits per month.

$ 0 from other people in my household each month: *(List only if other members contribute to your household income.)*

$ 28 from ☐ Retirement/Pension ☐ Tips, bonuses ☐ Disability ☐ Worker's Comp ☐ Social Security ☐ Military Housing ☑ Dividends, interest, royalties ☐ Child/spousal support ☐ My spouse's income or income from another member of my household *(If available)*

$ 0 from other jobs/sources of income. *(Describe)*

$ 28 is my *total* **monthly** income.

**5. What is the value of your property?**

"**My property** includes:

| | **Value*** |
|---|---|
| Cash | $ 18 |
| Bank accounts, other financial assets | |
| | $ 204 |
| | $ |
| | $ |
| Vehicles (cars, boats) *(make and year)* | |
| | $ (20,000) |
| | $ |
| | $ |
| Other property (like jewelry, stocks, land, another house, etc.) | |
| | $ 3000 |
| | $ |
| | $ |
| ***Total* value of property** → | $ (16,616) |

*The value is the amount the item would sell for less the amount you still owe on it, if anything.

**6. What are your monthly expenses?**

"**My monthly expenses** are:

| | **Amount** |
|---|---|
| Rent/house payments/maintenance | $ 1200 |
| Food and household supplies | $ 150 |
| Utilities and telephone | $ 80 |
| Clothing and laundry | $ 5 |
| Medical and dental expenses | $ 20 |
| Insurance (life, health, auto, etc.) | $ 0 |
| School and child care | $ 0 |
| Transportation, auto repair, gas | $ 300 |
| Child / spousal support | $ 0 |
| Wages withheld by court order | $ 6000 |
| Debt payments paid to: *(List)* | $ |
| DA Automotive Loop 115 | $ 870 |
| DNA Properties / Credit Acceptance | $ 4400 |
| ***Total* Monthly Expenses** → | $ 13,025 |

**7. Are there debts or other facts explaining your financial situation?**

"**My debts** include: *(List debt and amount owed)* my civil rights are being violated due to an unconstitutional and unlawful judgment in a Justice of the Peace Court Precinct 5 that is prohibiting / restricting / restraining / preventing me from operating

*(If you want the court to consider other facts, such as unusual medical expenses, family emergencies, etc., attach another page to this form labeled "Exhibit: Additional Supporting Facts.")* ***Check here if you attach another page.*** ☐

**8. Declaration**

I declare under penalty of perjury that the foregoing is true and correct. I further swear:

☑ I cannot afford to pay court costs.

☑ I cannot furnish an appeal bond or pay a cash deposit to appeal a justice court decision.

My name is Demetrius Grossett. My date of birth is: 06 / 25 / 1971

My address is 3310 W. Braker Ln Austin, TX 78758 United States
(Street, City, State, Zip Code, Country)

▶ D Grossett (Signature) signed on 10 / 4 / 24 (Month/Day/Year) in Travis (county name) County, Texas (State)

# Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Envelope ID: 98042099
Filing Code Description: Petition
Filing Description: PLAINTIFF'S ORIGINAL PETITION
Status as of 3/5/2025 1:23 PM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Bryan Pollard | | bryan.pollard@pierferd.com | 3/4/2025 1:02:42 PM | NOT SENT |
| Bradley Bush | | bradley.bush@pierferd.com | 3/4/2025 1:02:42 PM | NOT SENT |
| Deidra Cobb | | deidra.cobb@pierferd.com | 3/4/2025 1:02:42 PM | NOT SENT |
| Lyft Inc | | legal@lyft.com | 3/4/2025 1:02:42 PM | NOT SENT |
| Demetrius Crockett | | dcaustin71@gmail.com | 3/4/2025 1:02:42 PM | NOT SENT |

EXHIBIT C

3/5/2025 4:48 PM
Velva L. Price
District Clerk
Travis County
D-1-GN-25-001601
Norma Ybarra

# Case: D-1-GN-25-001601

| | |
|---|---|
| **Demetrius Crockett (Plaintiff)** | **In the 261st District Court** |
| **vs** | **of** |
| **Lyft, Inc. (Defendant)** | **Travis County, Texas** |

# 60 Day Notice Of Intent To Add DTPA Offenses Pursuant To The Texas Deceptive Trade Practices Act As An Amended Claim In Plaintiff's Petition Pending Case Status At The 60 Day Mark

**Demetrius Crockett**
**3310 W. Braker Lane**
**Austin, Texas 78758**
**youcanusemyemailaddress@gmail.com**
**512-553-5455**

**March 5th, 2025**

**Lyft, Inc.**
**6375 US-290**
**Austin, Texas 78723**

**Dear Defendant(s)**

Pursuant to Texas Business & Commerce Code § 17.505(a), this letter serves as formal notice of an upcoming Deceptive Trade Practices Act (DTPA) claim against you. Texas law requires that a consumer provide at least 60 days' written notice before filing a lawsuit / making claims under the DTPA, specifying the alleged violations and the amount of damages sought.

**Nature of Complaint**

Plaintiff was employed as an independent contractor by Defendant and was contractually entitled to access certain work-related resources, specifically Lyft's FlexDrive rental car program, necessary to fulfill job duties to earn living expense income as Plaintiff did not own a

# Case # D-1-GN-25-001601

vehicle at the time. On or about July 31, 2020, Plaintiff was informed that Defendant had used a fraudulent credit card number to restrict Plaintiff's access to these resources which resulted in a breach of hisFlexDrive rental entitlement. Although Plaintiff was informed of potential fraud on July 31, 2020, this was not definitive proof. Plaintiff diligently investigated the matter but was only able to confirm the fraud on March 17, 2021 via USAA bank written statement documented on official letterhead. **(See EXHIBIT M)**

**Actions constitute deceptive trade practices under the Texas Deceptive Trade Practices Act (DTPA), specifically Tex. Bus. & Com. Code § 17.46(b)**, which **Tex. Bus. & Com. Code § 17.46(b) prohibits:**

- Misrepresenting or failing to disclose material information;
- Falsely implying that repossession actions are lawful when they are not; and
- Failing to provide reasonable opportunities to cure defaults.

**Pursuant to Texas Theft Liability Act ( Tex. Civ. Prac. & Rem. Code § 134.005)**

Defendant's actions constituted civil theft, as it wrongfully withheld access to resources that Plaintiff was entitled to use. Plaintiff seeks actual damages, treble damages, and attorney's fees under Tex. Civ. Prac. & Rem. Code § 134.005.

### Damages Sought In Accordance To Section 17.50 (b)1 of Texas DTPA

I have suffered the following **$202,916** in damages as a direct result of your actions:

1. Economic Damages: **$45,729**
2. Punitive Damages: **$20,000**
3. Treble Damages: **$137,187**
2. Mental Anguish and Additional Damages: **To be determined by Court.**
3. Attorney's Fees and Court Costs:

### Demand for Settlement

In accordance with the DTPA, I am providing you with **60 days from the date of this letter, March 5th 2025**, to resolve this matter before further legal action is taken by amending my civil Travis County District Court petition to include DTPA damages in my claims.

Please submit / file a written settlement offer addressing my claims within this 60 day period.

If no reasonable settlement is reached, I intend to proceed with amending my Petition to include DTPA damages.

I urge you to review this matter carefully and respond within the required time frame. You may contact me directly at 512-553-5455 or youcanusemyemailaddress@gmail.com to discuss a resolution. **I prefer email so nothing gets lost in translation.**

Respectfully submitted,

**Demetrius Crockett**
**3310 W. Braker Lane**
**Austin, Texas 78758**
**512-553-5455**
**youcanusemyemailaddress@gmail.com**

## Certificate of Service

**I hereby certify that a true and correct copy of the foregoing Motion for Summary Judgement has been served, via electronic filing, to Lyft, Inc. on this the 5th day of March 2025, electronically and in accordance with the Texas Rules of Civil Procedure.**

**Demetrius Crockett**

D. Crockett 3/5/25

flexdrive

# Flexdrive Rental Agreement for Lyft Drivers

**EXHIBIT A**

## Renter

DEMETRIUS CROCKETT
2121 Lohmans Crossing Rd, #211
Austin, TX 78734

dcaustin71@gmail.com
[redacted]

## Vehicle

2018 NISSAN SENTRA
VIN: 3N1AB7AP3JY248644
License Plate: KHM9593

## Rental Weekly Pricing

2019-12-06 - 2019-12-13

Base Rate: **$179.00** (excluding taxes), includes **200** Period 0 (offline) miles (as defined in the Flexdrive Rental Agreement for Lyft Drivers referenced below).

Charge for excess personal (P0) miles: **$25.00** per **50** miles, plus applicable taxes. You will be charged this amount if you exceed the personal (P0) miles allowed under your base rate as indicated above.

*Note: Please refer to your weekly billing statements (every Tuesday) for final charges.*

## Rental Weekly Taxes

Texas State Car Rental Excise Tax 1-30 Days: **$17.90**
Austin City Local Sports Venue Excise Tax: **$8.95**

## Start

2019-12-06 - 3:42pm UTC
Odometer: 116658 miles

## End

2019-12-13 - 3:42pm UTC
Odometer: -- miles

## Location

flexdrive

AUS 03 - Elmo
2101 E St. Elmo Rd, Suite 3150
Austin, TX 78744

EXHIBIT A

## Inspection

Driver Side: **Excellent**
--

Front: **Excellent**
small crack on the windshield that has been filled, bottom center. small scuff.

Front Carpets: **Excellent**
--

Front Seats: **Excellent**
--

Headliner: **Excellent**
--

Passenger Side: **Excellent**
scratch back door about 3 inch.

Rear: **Excellent**
Scuffs on the back bumper

Roof: **Excellent**
--

Rear Carpets: **Excellent**
--

Rear Seats: **Good**
staining on middle seat

Amp: **Excellent**
--

Spare Tire: **Excellent**
--

Trade Dress And Docs: **Excellent**
--

Trunk: **Excellent**
--

Fuel: **3/4**
1/8 less than a full tank of gas upon pickup

flexdrive

## Agreement

EXHIBIT A

Terms of the Flexdrive Rental Agreement for Lyft Drivers shall be found here:
https://www.lyft.com/drive/expressdrive/terms/FLEXDRIVE

I agree to rent the vehicle described in this agreement on the terms outlined above. I understand and agree that my rental of the vehicle is subject to the Flexdrive Terms of Use and my Membership Agreement, including (without limitation) charges for excess mileage fees that exceed the mileage allowance listed above. Any renewal of this rental shall be on the same terms as set forth above.

I agree that any renewal of this rental may be evidenced by (a) any written communication from me to Flexdrive, including text messages or email, (b) me accepting renewal via any Flexdrive mobile application or online interface, or (c) a confirmation text message or email from Flexdrive to me following my oral acceptance of renewal.

## Signature

# Rental end: Turner Crockett

RENTAL END

flexdrive

EXHIBIT B

## Rental agreement for Lyft drivers

### Renter

**Turner Crockett**
2121 Lohmans Crossing Rd
#211
Austin, TX 78734

dcaustin71@gmail.com
[redacted]

### Vehicle

**MIDSIZE**
**3N1AB7AP3JY248644**
2018 Nissan Sentra



TX KHM9593

### Rental details

**Rental location:**
Austin - Flexdrive - 6375 US-290
6375 US-290
Austin, TX 78723

**Rental period:**
Jul 2, 2020, 11:38:12 AM - Jul 2, 2020, 12:14:43 PM

PRICING PLAN:

**400 personal miles:**

| | |
|---|---|
| Vehicle base rate | $249.00 |
| Taxes & fees | $37.35 |
| **Total** | $286.35 |

**Extra miles:**

$25.00 per 50 miles

### Vehicle inspection & charges

CHARGES

Minor damage excess wear $250.00

EXHIBIT B

EXTERIOR DAMAGE CHARGES

Rear

Fair

Scuffs on the back bumper. dent on trunk bigger than largest circle on damage evaluator

PREEXISTING DAMAGES (DRIVER NOT RESPONSIBLE)

Front

Excellent

small crack on the windshield that has been filled, bottom center. small scuff.

Fuel

3/4

1/8 less than a full tank of gas upon pickup

Passenger side

Excellent

scratch back door about 3 inch.

Rear seats

Good

staining on middle seat

INTERIOR DAMAGE CHARGES

Front seats

Fair

interior part of driver door is torn up

**Total owed by driver** $250.00

## Agreement

I agree to rent the vehicle described in this agreement on the terms outlined above. I understand and agree that my rental of the vehicle is subject to the Flexdrive Terms of Use and my Membership Agreement, including (without limitation) charges for excess mileage fees that exceed the mileage allowance listed above. Any renewal of this rental shall be on the same terms as set forth above.

I agree that any renewal of this rental may be evidenced by (a) any written communication from me to Flexdrive, including text messages or email, (b) me accepting

renewal via any Flexdrive mobile application or online interface, or (c) a confirmation text message or email from Flexdrive to me following my oral acceptance of renewal

EXHIBIT A

Updated as of April 23, 2019

By accepting below, you (the "Renter", "you", "your") are agreeing to be a party to this Flexdrive Rental Agreement for Lyft Drivers (this "Agreement" or "Rental Agreement") with Flexdrive Services, LLC, a Delaware limited liability company ("we", "us" or "Flexdrive"). This Agreement is effective as of the date of your E-Signature, regardless of whether you use the Services (the "Effective Date").

As used in this Agreement, "Lyft" means Lyft, Inc., a transportation network company for which Renter has been approved to use the Lyft network on an independent contractor basis, and "Lyft Rental Program" means the program through which Flexdrive shall provide vehicles for rent specifically to Lyft drivers ("Lyft Drivers").

Pursuant to this Agreement, you and Flexdrive agree as follows:

1. REPRESENTATIONS ABOUT YOURSELF

A. All information provided by you in your personal profile as provided to Lyft is true and complete, and you consent to Lyft sharing that information with us to the extent necessary for us to verify your eligibility to rent vehicles from us and otherwise to perform the fleet management, rental and ancillary activities described herein. To the extent this information changes during the term of this Agreement, as defined in Section 10 below (including without limitation, if you receive, are convicted of or admit to any traffic or moving violations), you will promptly notify Lyft of the change. You acknowledge that your acceptance of the terms of this Rental Agreement does not bind Flexdrive as a party to this Agreement and that you are not a Renter for purposes of utilizing our Services until a notice of acceptance of this Agreement is delivered to you by Flexdrive.

B. As part of the application process to participate in the Lyft Rental Program, Flexdrive, Lyft and/or their licensed insurance carriers may order one or more consumer reports on you. A consumer report may contain information on driving records and criminal activity, among other things. In the event that participation in the Lyft Rental Program is denied to you based wholly or partly on information in a consumer report, you will be notified of this fact and given the name and address of the consumer reporting agency making the report. Flexdrive maintains the right to suspend and/or revoke eligibility to participate in the Lyft Rental Program at any time.

C. We are committed to protecting your privacy. Any information submitted or collected in connection with the Services or your participation in the Lyft Rental Program is subject to our Privacy Policy, the terms of which can be found on the Flexdrive website at www.flexdrive.com.

2. FLEXDRIVE SERVICES

Under the Lyft Rental Program, Flexdrive manages a fleet of vehicles and offers such vehicles for rent (each, a "Rental Car") to Renters and enables Renters who are Lyft Drivers, in connection with the rental and use of such Rental Cars, to use the corresponding websites, mobile applications, online tools and features supplied by Lyft and/or Flexdrive for the rental usage and management by the Renters (provision of Rental Cars and such additional services are collectively, the "Services"). Renter acknowledges and agrees that (i) Flexdrive may not own all such Rental Cars, which may be provided by third parties subject to lease agreements (or, in certain states, loan agreements) with Flexdrive; (ii) Flexdrive provides its Renters the ability to rent Rental Cars for specified short term periods of up to the legal limit for rentals in the area where you rent; (iii) Flexdrive does not provide transportation services, and is not a transportation carrier; and (iv) while Flexdrive offers a method to connect drivers with suitable vehicles for their needs, it does not provide transportation services or act in any manner as a transportation carrier.

Any use of or access to the Services is subject to certain eligibility requirements, and the Services are not available to or authorized for use by any users previously removed as a Renter by Flexdrive or by any users or persons acting on behalf of an organization or entity and not in his or her personal or

EXHIBIT A

individual capacity, except as required by applicable law.

TO BE ELIGIBLE FOR AND TO MAINTAIN PARTICIPATION IN THE LYFT RENTAL PROGRAM, YOU MUST PASS AND MAINTAIN THE ELIGIBILITY REQUIREMENTS TO BE A LYFT DRIVER.

3. USE OF OUR SERVICES

Your use of a rented Rental Car as a Renter must at all times comply with all the terms of this Agreement, as updated from time to time, and all applicable local, state, national, and international laws, rules and regulations. Flexdrive reserves the right to modify the terms and conditions of this Agreement at any time, effective upon posting an updated version of the Agreement on our website: www.flexdrive.com. You are responsible for regularly reviewing this Agreement. Continued use of our Services after any such changes shall constitute your consent to such changes.

NATURE OF RENTAL; RENTAL PERIOD

(1) This is a contract for the rental of a Rental Car. The rental is made in connection with Renter's participation in the Lyft Rental Program, which Renter acknowledges is intended primarily for the commercial purpose of serving as an independent contractor Lyft Driver. Renter does not have the right to sublease the Rental Car or assign any of his/her rights under this Agreement. The initial rental period for the Rental Car is 7 calendar days (i.e., one calendar week) (the "Initial Rental Period"). Unless you return the Rental Car on or before the date and time specified for return on the Rental Record ("Return Date"), the rental will automatically renew for additional 7-day periods, for a maximum of three (3) additional weeks beyond the Initial Rental Period (or such shorter period as mandated by applicable law) (together with the Initial Rental Period, the "Rental Period"); provided that: (a) you are in good standing and in compliance with your obligations under the Agreement, including the obligation to remain eligible for participation in the Lyft Rental Program; (b) Flexdrive may require Renter to return the Rental Car for inspection; and (c) the total Rental Period does not exceed the maximum duration specified in this Agreement. Renter acknowledges that taxes, fees, and other charges estimated during the Initial Rental Period may be subject to change during the remainder of the Rental Period or during subsequent Rental Periods. Renter must: (x) notify Flexdrive at the end of each Rental Period of the Rental Car's then-current mileage, and (y) exchange the Rental Car upon Flexdrive's request. Renter acknowledges that Renter has no right to renewal of a rental and that Flexdrive may refuse to renew the Rental Period or permit Renter to rent again for any reason, including without limitation excessive mileage or wear and tear on the Rental Car or failure to pay charges. If a rental is not renewed, at the discretion of Flexdrive, regular late fees will apply, if a Rental Car is not returned at the end of the Rental Period. In addition, Flexdrive may demand that Renter return the Rental Car at any time during a Rental Period. To the extent permitted by law, Flexdrive may repossess the Rental Car at your expense without notice to you, if the Rental Car is abandoned or used in violation of law or this Agreement.

ONLY FOR RENTALS IN THE STATE OF MARYLAND: For any Rental Agreement signed in, and subject to the laws of, the state of Maryland, the Rental Period (including the initial 7-day period and any renewals) shall not exceed one hundred and twelve (112) days, meaning you must return your Rental Car on or before the 112th day after you sign your Rental Agreement.

(2) Reservation of a Rental Car through the Lyft reservation system does not guarantee a reservation on the selected vehicle or the selected class of vehicle.

(3) Security deposits or non-refundable starter fees may be required to rent Rental Cars in some markets and are assessed by Lyft at the time of the Renter's first rental. Security deposits are refundable after the return of a Rental Car, via the Lyft payment process in the next pay period following the return of a Rental Car, subject to vehicle condition and to payment by Renter of any other outstanding amounts due and payable under the Lyft Rental Program (e.g., tolls, violations, etc.). At the time of return of a Rental Car, the Renter will either have the remaining balance of the Security Deposit held and applied to the next Flexdrive rental or refunded via the Lyft payment process. Starter fees are payments made by Renters to participate in the Lyft Rental Program and are only refundable in the event the Renter never drives the Rental Car, returns the Rental Car prior to the expiration of the Initial Rental Period, or as otherwise stated by Lyft during the application process, provided that the starter fee may be used and applied to any outstanding amounts due and payable under the Lyft Rental Program.

(4) In New York, Flexdrive may offer Rental Cars that are licensed with the New York Taxi & Limousine Commission ("TLC") (such Rental Cars may also be referred to herein as "TLC Rentals") to you if you are an authorized TLC driver ("TLC Driver"). Provisions in this Agreement referring to Rental Cars shall be deemed to include TLC Rentals unless stated otherwise. Provisions in this Agreement related to drivers or Lyft Drivers shall be deemed to include TLC Drivers unless stated otherwise.

EXHIBIT A

GENERAL OVERVIEW OF THE RULES

(1) Flexdrive connects drivers with Rental Cars available for rent. As such, we have a number of rules designed to ensure that our Rental Cars remain in good condition for the next driver. Accordingly, Renters should follow the guidelines below, as well as all other terms of this Agreement.

Report all damage: Before you drive away with your Rental Car, inspect your Rental Car inside and out. To report damage, a dirty Rental Car, or low fuel, inform the Lyft or Flexdrive representative before you take possession of the Rental Car. If the Rental Car sustains any damage during the Rental Period, inform your Lyft or Flexdrive representative as soon thereafter as reasonably practicable.
Keep all Rental Cars clean: Take personal belongings with you when you go and throw away or recycle any trash.
No smoking: Smoking is never permitted in a Rental Car, even with all the windows down or all the doors open. Smoking in a Rental Car is a violation of this Agreement.
Rental Car must be returned with the same level of fuel that it was originally rented with, otherwise the Renter may be charged a refueling fee.
Vehicles that are returned excessively dirty due to the presence of pets that are not service animals may be assessed an additional cleaning fee.
Drive as if it is your own car: While Flexdrive and/or Lyft maintain insurance on all Rental Cars available through the Services, to the extent permitted by law and subject to the other provisions of this Agreement, you will be responsible for all theft, uncovered damages, costs, and deductibles resulting from your use of the Rental Car and for all damages that result from a breach of this Agreement.

(2) Failure to comply with the provisions of this Agreement may cause a Renter to incur additional charges, fines and penalties, which you agree may be automatically deducted by Lyft from your Lyft Driver ride earnings or charged by Lyft to the credit card that may be kept on file by Lyft. The following fees will apply:

AMP : $50.00
EV Charge Card Replacement (Electric Vehicle Rentals Only) : $50.00
EV Charge Cord Replacement (Electric Vehicle Rentals Only) : $500.00
Excessive Pet Cleaning : $250.00
1/4 Tank of Gas Fill Up : $18.75
2/4 Tank of Gas Fill Up : $37.50
3/4 Tank of Gas Fill Up : $56.25
4/4 Tank of Gas Fill Up : $75.00
Key Fob Replacement : $300.00
Lost or Damaged Transponder : $50.00
Lyft Trade Dress : $10.00
Minor Damage : $500.00
Minor Excess Wear and Tear : $250.00
Minor Wear and Tear : $100.00
Phone Mount : $10.00
Recovery Fee : $500.00
Remote Unlock : $100.00
Smoke Removal : $300.00
Spare Tire Replacement : $200.00
Vehicle Cleaning : $50.00
Vehicle Detail : $150.00

(3) In the event Renter fails to satisfy and maintain satisfaction of the requirements under the Lyft Rental Program during the Rental Period, and therefore does not qualify as eligible to participate in the Lyft Rental Program with Flexdrive, Renter shall be charged the agreed upon rate for the Rental Car for the entire duration of the rental and will be required to return the Rental Car. In addition to the

requirements stated throughout this Agreement, the following requirements apply, without limitation:

a. Completing a minimum number of paid rides on the Lyft Platform for each calendar week during the Rental Period. The number of rides required for this weekly minimum may vary by region.
b. Maintaining all necessary licenses, permits, authorizations or permissions to use the Rental Car to provide “for hire” transportation of passengers in the jurisdiction where Renter provides such services.
c. Complying with Lyft's terms of service (found at www.lyft.com/terms) and maintaining good standing on the Lyft platform at all times during the Rental Period; and
d. Complying with the terms of this Agreement.

EXHIBIT A

PROHIBITED USES OF RENTAL CARS

(1) Any unreasonable, inappropriate or unlawful use of a Rental Car, as determined by Flexdrive in its sole discretion, may be deemed a breach of this Agreement. Without limiting the foregoing, Renters must always use Rental Cars in accordance with all traffic, motor vehicle, highway and other applicable laws and regulations. If you violate any laws, Flexdrive will report to the authorities information about you or the Rental Car as and to the extent required by applicable law. Without limiting the foregoing, the use of a Rental Car under the following conditions is prohibited:

o Any speed race or competition;
o For the purpose of towing, pushing, or propelling any trailer or any other vehicle;
o For moving furniture, household goods, or other general moving activities;
o For any commercial or business purposes other than serving as a Lyft Driver including, without limitation, for the purpose of transporting people or goods or providing transportation services through any entity other than Lyft. Any “for hire” transportation using Rental Cars other than transportation services provided on the Lyft platform is a violation of the Agreement. Notwithstanding the foregoing, this restriction shall not apply to TLC Drivers’ use of TLC Rentals, who may engage in other “for hire” transportation of passengers as permitted under applicable law.
o Any transportation services on the Lyft platform originating from locations outside of the "authorized territory" for Lyft operations as designated through the Lyft application.
o By any person who is under the influence of (i) alcohol; or, (ii) any drug or medication under the effects of which the Renter’s operation of a vehicle is impaired or the use of a vehicle is prohibited or not recommended;
o In the carrying out of any crime or for any other illegal activity or purpose;
o In an imprudent, negligent, or abusive manner or any other abnormal use of a vehicle;
o Driving or transporting a Rental Car from the US into Canada;
o Driving or transporting a Rental Car from the US into Mexico;
o Carrying a number of passengers that exceeds the designed seating capacity of the vehicle or baggage, cargo or other items that would cause the Rental Car to be overloaded or otherwise exceed its recommended weight capacity;
o Carrying or transporting any hazardous, toxic, flammable, dangerous or illegal materials;
o Driving while using a mobile communication device that may distract you from driving, including driving while texting, emailing, using a cell phone without a hands-free device or otherwise engaging in similar activities that may be prohibited by applicable law; or
o Any other activity prohibited by law or public policy.

(2) Further, Renter agrees that Renter will not (and will not permit passengers or others to): (a) smoke cigarettes, cigars, pipes or other tobacco products in the Rental Car; (b) remove, tamper with or disable the tracking device or other hardware, software or electronics that are installed in the Rental Car; (c) perform repairs or maintenance services on the Rental Car or make any modifications to the Rental Car; (d) make any cosmetic changes to the Rental Car including, without limitation, painting, striping or window tinting; (e) replace the Rental Car’s wheels or other parts; or (f) damage or deface the Rental Car.

IF YOU HAVE A BREAKDOWN OR AN INCIDENT

(1) Flexdrive provides Renter with all necessary and required routine maintenance on all Rental Cars. However, Renters are responsible for helping maintain the driving safety and performance of the Rental Car. Renters must be responsive to all warning lights, chimes and other indicators and alerts.

(2) Rental Cars may require Roadside Assistance from time to time. Flexdrive provides Roadside

Assistance support as part of the Service. If, however, a Renter's need for Roadside Assistance results from a breach of this Agreement, the Renter may be charged for the services provided.

(3) Atypical noises or driving feel, including but not limited to warning lamps, indicators, inappropriate or strange engine or other mechanical sounds, performance changes or unusual driving feel, must be reported to Lyft as soon as noted. Failure to report such irregularities during a Rental Period may result in the Renter's immediate suspension or termination of participation in the Lyft Rental Program, as well as the Renter being responsible for any damages resulting from the continued use of the Rental Car despite such irregularities to the extent permitted by law. Such damages are not covered by the insurance maintained by Flexdrive, Lyft, or otherwise through the Lyft Rental Program.

(4) You should report all breakdowns to the Lyft Rental Program's Roadside Assistance line at (844) 400-1449 as soon as reasonably practicable. Accidents or similar incidents involving Rental Cars should be reported to Lyft immediately by calling Lyft's Critical Response Line through the Lyft Driver app as well as calling 911.

(5) If a problem arises that prevents or limits the use of the Rental Car or that may compromise safety, you must notify Lyft and Flexdrive immediately and follow any communicated instructions from Lyft and/or Flexdrive.

EXHIBIT A

(6) In case of an incident involving property damage or any third party, the Renter must take the following action:
o Contact law enforcement to file a police report as soon after the incident occurs as is reasonably practicable, and, if possible, provide law enforcement a jointly agreed-upon statement between you and the third party.
o Call Lyft's Critical Response Line as soon after the incident occurs as is reasonably practicable to report the incident details, including:
a. Date, time, and place of incident;
b. The license plate numbers of any other vehicles involved, their make and year, their identification number (serial number), and the insurance certificate's number (with name, address and phone number of the insurance agent; if possible obtain a digital photo of the other driver's insurance card);
c. The names, addresses, and driver's license numbers of the persons involved in the incident;
d The name, address, and driver's license number of the owner of the car (if he or she is not the driver);
e. The name, addresses, and phone number of witnesses, passengers, and any other involved persons;
f. Circumstances of the incident; and
g. If one was completed, any police report will be required regardless of liability or fault.

(7) The Renter must provide to Lyft, Flexdrive, and any other claims adjustment service the findings of any report or any notice or other written communications relating to a claim or a lawsuit against Lyft, Flexdrive or any other claims adjustment service regarding any incident involving a Rental Car. Renter agrees to cooperate fully with Lyft, Flexdrive, and any other claims adjustment service in the investigation and defense of any such claim or lawsuit. A Renter's account and Lyft platform access may be suspended until the investigation has been concluded.

(8) The Renter will be responsible for the charges related to the theft, repair, recovery and loss of use of any Rental Car and all third party injuries and property damages resulting from any of the foregoing to the extent they are not covered by insurance and as permitted by applicable law. Estimates for any costs will be available to the Renter for review. To the extent permitted by law, the Renter will be responsible for all applicable damages and charges arising from the Renter's failure to comply with the terms of this Agreement. Insurance coverage included with the Renter's Lyft Rental Program rental is set forth in Section 6, below.

TRAFFIC/TOLL/PARKING VIOLATIONS

(1) You are responsible for any traffic violations incurred during your reservation or as a result of your use of a Rental Car. These include, but are not limited to, parking, speeding, red light, photo enforcement, and toll violations. You are liable for all penalties/fees from any such violation, including fines for late payment and any processing penalties/fees added by the issuing municipality. You are liable for payment of all tolls and any fines for toll evasion. Wherever possible it is the Renter's

responsibility to pay the relevant authorities directly. Flexdrive and/or Lyft may impose a fee in connection with processing any such violations, as described above in Rental Fees. You must report such violations to Lyft as soon as possible within the prescribed deadline for the violation (for example, if the case is being taken to court). While there may be a lag between when the infraction occurs and when you are billed for it, you are still liable for the cost regardless of the delay.

EXHIBIT A

(2) You must notify Lyft of any traffic violation notices found on a Rental Car at the time of pickup of the Rental Car. All unreported traffic violations will be the responsibility of a Renter if they occur during the time period during which such Renter is using or responsible for the Rental Car.

(3) Where a violation is incurred by a Renter and notice of the violation is sent directly to Flexdrive, Flexdrive will either pay the penalty/fee on behalf of the Renter and then add the penalty/fee to the Renter's account or Flexdrive may, if permitted by the authority issuing the violation, transfer liability for the penalty/fee to the Renter and the Renter will then be wholly responsible for all correspondence with the appropriate authority and any penalties/fees due. Flexdrive will always inform a Renter which one of these two courses of action it has taken and will endeavor to provide notice to Renters before it pays any penalties/fees attributable to them. Once paid by Flexdrive, it may not be possible for the Renter to challenge the penalty/fee. The right to appeal, or transfer liability, on any traffic or parking charge issued by any authority or body belongs to Flexdrive and will be at Flexdrive's absolute discretion. In the case of speeding notices, Flexdrive is obligated to pass on the offending Renter's details to the police, who will then contact the Renter directly.

(4) Renter is responsible for paying the charging authorities directly all tolls, including any fines for toll evasion, and other related fines, fees, and penalties assessed against Renter, Flexdrive or the Rental Car during the Rental Period. Renter should not rely on use of a toll transponder in the Rental Car (if any) in connection with Renter's payment for tolls. In order to avoid a Processing Fee (as defined below) in connection with a toll, Renter must pay the toll in cash at the applicable toll plaza (where permitted) or Renter must make arrangements to pre-pay any applicable tolls, such as by contacting the toll operator and pre-paying online, by phone, or by mail. If Renter is provided a toll transponder and uses it to pay any tolls, the toll payments as well as any fees associated with the use or possession of the toll transponder will be charged to the payment card Renter uses in connection with this rental and Renter expressly authorizes such charges. If Flexdrive is notified that it may be responsible for payment of a toll or violation, Renter will pay Flexdrive or a processing firm of Flexdrive's choosing ("Processor") an administrative fee of up to $50 for each such notification (each, a "Processing Fee") (such fee is a reasonable estimate of Flexdrive's costs in administrating resolution for a Violation or engaging a Processor to do so). If Flexdrive or the Processor pays a toll or violation on Renter's behalf even in connection with the use of a toll transponder in the Rental car (if any), Renter authorizes Flexdrive or the Processor to charge tolls or violations to the payment card Renter used in connection with this rental. As and to the extent necessary to enable Flexdrive to enforce its rights under this paragraph, Flexdrive may disclose Renter's personal information to toll authorities and/or the Processor.

(5) Flexdrive reserves the right to terminate the Rental Agreement, making the Renter ineligible for participation in the Lyft Rental Program, with any Renter who incurs (a) any unpaid moving violations, (b) red light/disobeying traffic signal violations, (c) parking citations, (d) unpaid toll violation, (e) any at fault accident, or (f) refuses to sign a payment plan, to the extent permitted by law.

4. PERSONS PERMITTED TO USE RENTAL CARS

Only properly licensed, active Renters in good standing are allowed to drive Rental Cars, subject to applicable state laws. Renter understands and agrees that in states that require a rental company to inspect the driver's license of a renter to validate that the license was issued to the renter, Renter will cooperate with Flexdrive by, as applicable, (a) physically presenting the driver's license to Lyft and/or (b) transmitting true and actual photos of the driver's license to Lyft via the Lyft app or other electronic means specified by Lyft or Flexdrive. To the extent permitted by applicable law, non-Renters are expressly prohibited from driving a Rental Car at any time. Further, to the extent permitted by applicable law, Renter may not permit any other individual to drive a Rental Car other than the specific Renter who has rented and been assigned to a specific Rental Car in compliance with this Agreement. Renter assumes liability for all damages, loss or injury to third parties arising from the use of the Rental Car by an unauthorized user, and, further, if Flexdrive is legally responsible for damages, loss or injury, then Renter agrees to defend and indemnify Flexdrive with respect to same to the extent permitted by

applicable law. Notwithstanding the foregoing, if Renter is not able to drive or obtain a driver's license due to a disability and is approved by Lyft to become a Lyft Driver, Renter may enroll to use the Services if Renter's authorized driver (an "Authorized Driver") is approved by Flexdrive to operate a Rental Car and such Authorized Driver agrees, by signing this Agreement, to operate each Rental Car pursuant to the terms of this Agreement.

EXHIBIT A

5. REPAIR, MAINTENANCE AND ROADSIDE ASSISTANCE

If Renter is notified by Lyft and/or Flexdrive of the need for routine maintenance on the Rental Car that Renter then currently has under rental, Renter will take the vehicle to the locations specified by Lyft and/or Flexdrive, which in all instances will be a Flexdrive-approved maintenance provider. If Renter believes that a Rental Car requires unscheduled repair or maintenance, Renter will contact Lyft, which will notify Flexdrive, and Flexdrive will arrange for the performance of such repair or maintenance by a Flexdrive-approved provider. Under no circumstances shall Renter arrange for repair or maintenance without Lyft's or Flexdrive's prior written authorization. Flexdrive shall include in each Rental Car contact information for approved roadside assistance providers. If Renter requires roadside assistance, Renter will contact Flexdrive's roadside assistance provider. Renter will not use an alternative roadside assistance provider without Flexdrive's prior authorization.

6. INSURANCE AND RENTAL CAR DAMAGE

Sections A-C below apply to all Rental Cars except TLC Rentals, which are expressly addressed in Section D. Section E shall apply to all Rental Cars including TLC Rentals.

A. All Rental Cars will be provided to Renters with insurance that will cover all periods of driving ("Period(s)"), provided that the Renter is otherwise in compliance with the terms of this Agreement and Lyft's Terms of Use. Depending upon the Period the insurance coverage will be maintained either by Flexdrive or by Lyft:

o "Period 0" is the period of time in which a Renter has taken possession of a Rental Car and does not have the Lyft Application in Driver Mode or is not otherwise in Period 1, 2 or 3.
o "Period 1" is the period of time in which a Renter has the Lyft Application running in Driver Mode but has not accepted any requests for transportation services from Lyft Passenger(s).
o "Period 2" is the period of time in which a Renter has the Lyft Application running in Driver Mode and has accepted a request for transportation services from Lyft Passenger(s) but does not have any Lyft Passengers occupying the Rental Car.
o "Period 3" is the period of time in which a Renter has the Lyft Application running in Driver Mode and has at least one Lyft Passenger occupying, entering or exiting the Rental Car.

For all Rental Cars except TLC Rentals, insurance maintained by Flexdrive shall apply during Period 0, and insurance maintained by Lyft shall apply during Periods 1, 2 & 3. "Driver Mode" means the state of the Lyft Application where it is running and logged in on a Renter's Lyft Driver account and is available to receive requests for transportation services from Lyft passengers.

B. Insurance maintained by Flexdrive during Period 0 for all Rental Cars except TLC Rentals:

1. Liability Coverage: State required minimum financial responsibility limits and any other compulsory requirements applicable.
2. Physical Damage Coverage: Flexdrive's insurance policy will provide coverage against physical damage to the Rental Car during Period 0. To the extent permitted by applicable law, such Physical Damage Coverage is subject to a $1,000 deductible per incident which shall be the sole responsibility of Renter; provided, however, if the cost of damages for any one incident is less than $1,000, the deductible shall equal the total cost of damages.
3. Uninsured/Underinsured Motorists Coverage: Coverage limits in accordance with local regulations and/or state laws.
C. Insurance maintained by Lyft during Periods 1, 2, and 3 for all Rental Cars except TLC Rentals:

1. During Period 1, Lyft's insurance policies will provide the following:
a. Primary commercial auto liability insurance as set forth in the applicable city's, state's or region's Transportation Network Company ordinances.
b. Auto Physical Damage providing coverage for damage to the Rental Car, subject to a $1,000

EXHIBIT A

deductible per incident (as permitted by applicable law) which shall be the sole responsibility of Renter; provided, however, if the cost of damages for any one incident is less than $1,000, the deductible shall equal the total cost of damages.
2. During Periods 2 or 3, Lyft's insurance policies will provide the following:
a. Primary commercial auto liability insurance with a minimum combined single limit of $1,000,000 per accident, including uninsured/underinsured motorist coverage limits in accordance with local regulations and/or state laws. (These limits shall apply to markets excluding Minnesota, Nevada, New Jersey, New York, North Carolina, and Rhode Island)
b. In MN, NV, NJ, NC and RI - primary commercial auto liability insurance with a minimum combined single limit of $1,500,000 per accident, including uninsured/underinsured motorist coverage with limits in accordance with local regulations and/or state laws.
c.Auto Physical Damage providing coverage for damage to the Rental Car, subject to a $1,000 deductible per incident (as permitted by applicable law), which shall be the sole responsibility of Renter; provided, however, if the cost of damages for any one incident is less than $1,000, the deductible shall equal the total cost of damages.

D. TLC Rentals
All TLC Rentals will be provided to TLC Renters with insurance procured by Flexdrive that will cover all periods of driving in coverages and amounts as required by the TLC and applicable law, provided that the Renter is otherwise in compliance with the terms of this Agreement and Lyft's Terms of Use. The coverage shall include Auto Physical Damage providing coverage for damage to the TLC Rental, subject to a $1,000 deductible per incident (as permitted by applicable law), which shall be the sole responsibility of Renter; provided, however, if the cost of damages for any one incident is less than $1,000, the deductible shall equal the total cost of damages.

E. Items Not Covered by Flexdrive or Lyft Insurance Policies for any Rental Cars, including TLC Rentals:

(1) If the total amount of the injuries and/or third party property damage in an accident exceeds the applicable coverage limits, the Renter is responsible for any amount that exceeds the liability insurance included with the Lyft Rental Program rental. Renters engaging in prohibited uses of Rental Cars may not be covered by the insurance maintained by Flexdrive or Lyft and are subject to immediate revocation of eligibility to participate in the Lyft Rental Program and/or Lyft platform access.

(2) To the extent permitted by law, for any loss or damage to the Rental Car that occurs during the Renter's rental, the Renter is responsible for the cost of the repairs or other damage amount outlined in the Renter fee schedule. This amount may vary. The insurance provided does not reduce or avoid the Renter's obligations with respect to the Rental Car damage which occurs during the Renter's rental.

(3) Questions or concerns about the insurance coverage included with the Lyft Rental Program should be referred to Lyft support at: http://lft.to/submit-request.

7. LIMITED LICENSE

Subject to the terms and conditions of this Agreement, upon your receipt of a notice of acceptance of this Agreement from Flexdrive, you are granted a non-exclusive, limited, non-transferable, freely revocable license to use the Services for personal use, for your activities as a Lyft Driver, as expressly permitted by this Agreement, and as permitted by the features of the Services and applicable law. Flexdrive reserves all rights not expressly granted herein. In addition, Renter acknowledges that all Rental Cars contain onboard hardware and software for tracking and monitoring Rental Cars, and that Renter is granted only a limited, personal, non-transferrable, and non-exclusive license to such hardware and software only for the purposes authorized by their use of the Services. All title and ownership interest in and to any intellectual property contained in the Services is the property of Flexdrive or its licensors, with the exception of data obtained from the onboard hardware and software, which is the sole property of Lyft. Renter acknowledges that Flexdrive may aggregate anonymized data regarding the Lyft Rental Program and the activities of Renters for purposes of analyzing the use of and improving the Flexdrive technology platform, analyzing trend data for purposes of product development and program development and otherwise using the aggregated data for internal purposes.

8. TELEMATICS

EXHIBIT A

A. GENERAL NOTICE AND RELEASE

The Rental Car may be equipped with global positioning satellite technology or another telematics system, and/or an event data recorder, which may be used in order to determine when the Rental Car can be safely deactivated through the use of the starter interrupt technology, as further described in Section 12 of this Agreement. Renter's use of the Rental Car may be remotely monitored by or on behalf of Flexdrive through such systems to the extent permitted by applicable law. This remote monitoring may include collection of Rental Car data, such as: odometer, oil life, fuel level, tire pressure, battery state of charge, and diagnostic trouble codes. Renter has no expectation of privacy related to Renter's use of the Rental Car. The Rental Car also may be equipped with devices that permit Renter to pair mobile devices that may download Renter's personal contacts, communications, location or other digital data. Renter will delete all personal information from the Rental Car's systems before returning it. By entering into this Agreement, you consent to the collection, use, monitoring and disclosure of Rental Car data, to the extent permitted by law, and agree that you will inform any and all Authorized Drivers and passengers of the terms of this section.

B. CONSENT TO COLLECTION AND DISCLOSURE OF PERSONAL INFORMATION BY NAUTO, INC. ("NAUTO")

(1) Collection of Information. The Rental Cars made available by Flexdrive as part of the Lyft Rental Program are equipped with a device manufactured by Nauto (the "Nauto Device"), that uses video camera and sensor technology to record safety events inside and outside of the Rental Car. This Renter Consent to Collection and Disclosure of Personal Information contained in Section 8 of the Agreement (the "Consent") is intended to (a) inform you of the information collected by the Nauto Device and how such information is used by Flexdrive, Lyft and third parties, such as companies that provide insurance for the Rental Cars; and (b) obtain your consent for such collection and use. This Consent is in addition to the other consents provided within and terms of the Agreement that governs your participation in the Lyft Rental Program.

The Nauto Device may record or collect personal information about you and your fellow passengers, including your video image and the video images of your passengers, your behavior and the behavior of your passengers, and your Rental Car's geographic location. We may also use the Nauto Device to apply facial recognition software on the facial images of drivers in order to create a profile, based on the driver's facial features, (for example, the distance between the eyes, nose and ears, for a particular individual)(collectively, "Biometric Information"), to connect a driver in one particular photo or video to another photo or video. The Nauto Device may also collect other information about your trip, including your Rental Car's speed, acceleration, braking, collision events, mileage, and relative proximity to other vehicles, area road signs and traffic signals, road conditions/hazards, traffic patterns/density, parking spaces, and license plate numbers of surrounding vehicles.

Additionally, Nauto may add contact information from Lyft, Flexdrive, or the owner of the Rental Car you rent to create a "Profile" of you, which includes personal information such as your name, email address, telephone number, emergency contact information, photograph, license plate, and vehicle information. Nauto may display this information as part of your Profile, and link your Profile with information collected by the Nauto Device, as described above. To learn more about the types of information the Nauto Device collects, see Nauto's privacy policy (the "Nauto Privacy Policy").

(2) Use and Sharing of Information. Flexdrive, through its service arrangements with Nauto, uses the information Nauto collects to help Flexdrive improve the quality and safety of the Lyft Rental Program. In addition to being shared with Flexdrive, Lyft and certain service providers, such as our insurers, information collected by the Nauto Device will be shared with Nauto, its service providers, and affiliates, in accordance with their terms of service and privacy policies. Under Nauto's privacy policy, your personal information will not be shared or sold to any third party for any commercial or marketing purpose, without your express written consent, though it may be shared with other Nauto clients for collision claims and liability. Your personal information also may be disclosed if Nauto has a good faith belief that disclosure is necessary to (1) protect property or security of Nauto, Nauto users, and clients or others; (2) prevent death or imminent bodily harm; or (3) respond to a legal request. Non-personal information, such as aggregated, anonymized data, may be shared or sold by Nauto for business purposes, including for product improvement, analytics, industry and market research, and other purposes consistent with Nauto's legitimate business needs.

(3) Retention of Facial Recognition Data. Nauto will retain facial recognition data about you only until the first of the following occurs: (i) Nauto does not collect new Biometric Information matching your profile for a period of six continuous months; (ii) three years have passed since your last interaction with Nauto; or (iii) when you request permanent deletion of your Biometric Information by submitting such request to privacy@nauto.com or otherwise as set forth in the Nauto Privacy Policy. At such time, Nauto will permanently destroy the Biometric Information about you. After the Biometric Information is destroyed, the user will need to re-enroll (and provide his or her Biometric Information to Nauto again) before he or she can use the Nauto Services.

(4) Acknowledgment and Consent. You confirm that you have read and understand the information in this Section 8(B) regarding the processing of information by the Nauto Device to ensure the safety of drivers and to improve the quality of Flexdrive and the Lyft Rental Program's operations. You consent to Flexdrive providing third party service providers (including Nauto) with your personal information in order to help Flexdrive to operate the Nauto Device in accordance with this form.

9. FEES

To the extent permitted by law, Renter will be responsible for the payment of any and all rental fees, taxes, damage fees, claims, penalties, fines, deductibles related to Rental Car damage (if permitted by applicable law), tolls (as described in greater detail below), other miscellaneous fees, or other amounts set forth in this Rental Agreement. Such payments will be collected from Renter by Lyft, and Lyft will forward such payments to Flexdrive. Flexdrive may coordinate with Lyft to deduct any such amounts Renter owes in connection with the rental of a Rental Car from the amounts Renter may earn while providing transportation services on the Lyft platform. In addition, Lyft may require Renter to provide a credit or other payment card (subject to applicable terms and conditions) in order to reserve or rent a Rental Car, that an authorization or hold amount may be placed on the card provided, and that Lyft may charge the amount owed to the payment card Renter provides at any time upon notice to Renter. Flexdrive has designated Lyft as its agent solely for the purpose of collecting these amounts on Flexdrive's behalf. For this purpose, Renter authorizes Lyft to offset these amounts from other amounts Lyft owes Renter, and if such offset does not fully pay such amounts, to charge the remaining unpaid amount to the payment method Renter has authorized for Lyft's use in connection with the Lyft platform, to the extent permitted by applicable law and upon notice to Renter. Certain amounts may be charged at or after the end of the Rental Period, such as fees for vehicle damage as may be identified during final inspection, or for unpaid tickets or tolls and associated administrative fees that are identified after the Rental Period, or otherwise, as provided in the Agreement. Renter must keep a valid payment method on file with Lyft to pay the above amounts. Notwithstanding the foregoing, if Renter fails to pay to Lyft any such fees or other amounts due and payable in accordance with this Agreement, Flexdrive is entitled to seek to collect such amounts directly from Renter, and Renter hereby agrees that Lyft is entitled to provide to Flexdrive (a) a copy of the Rental Agreement; (b) any executed Payment Plan Agreement; (c) Renter contact information; (d) any correspondence between Renter and Lyft or its agents that relates to the collection of such amounts; and (e) Renter's payment information.

10. TERM

This Agreement shall be effective from the Effective Date, as noted to you in Flexdrive's acceptance of your application, and shall remain in effect for one year, subject to automatic one year renewals, unless earlier terminated by either party as set forth below. During the term of the Agreement, each Renter will have the ability to rent Rental Cars for those periods set forth in Renter's registration process.

11. SUSPENSION OR TERMINATION

Flexdrive may immediately suspend or terminate the use of its Service by any Renter for any reason, including for a violation of this Agreement. Termination of this Agreement will additionally terminate any Renter reservation then placed or in effect, and you will promptly follow Lyft's instructions regarding the return of any Rental Car then in your possession. If your use of Services or any rental of a Rental Car is suspended by Flexdrive, we may, in our sole discretion, reinstate your eligibility for participation in the Lyft Rental Program following your cure of any such violation. Subject to each Rental being for a minimum of seven (7) days, Renter may schedule a return and/or terminate this

Agreement at any time. After the initial seven (7) day rental, the Renter can return the Rental Car to the location from which the Renter rented it at any time during normal business hours and receive a pro-rated charge. Any voluntary termination of this Agreement or reduction in Rental Period by a Renter shall not result in reimbursement of any rental fees for any outstanding reservation or rental of a Rental Car.

EXHIBIT A

12. REPOSSESSION AND RECOVERY OF RENTAL CARS; USE OF STARTER INTERRUPT TECHNOLOGY

To the extent permitted by applicable law, Flexdrive reserves the right to recover or repossess or to assist in the recovery and repossession of the Rental Cars, at any time, without notice, and at Renter's expense if Renter violates this Agreement (including, but not limited to, by failing to pay all fees or other amounts due and payable in accordance with this Agreement or by failing to return the Rental Car at the end of the Rental Period) or upon termination of this Agreement. To the extent permitted by and in accordance with applicable law, Flexdrive may assist in the recovery or repossession of a Rental Car or may recover or repossess a Rental Car by remotely deactivating such Rental Car through the use of starter interrupt technology that is part of or attached to the Rental Car. Renter agrees to pay all costs, including, but not limited to, reasonable legal fees or attorneys' fees, if any, associated with the repossession or recovery of any Rental Car pursuant to this Section 12. Renter hereby agrees to waive all claims for damages connected with the repossession or recovery of any Rental Car pursuant to this Section 12 and use of starter interrupt technology.

13. INDEMNIFICATION

To the extent permitted by applicable law, Renter agrees to defend, indemnify and hold harmless Flexdrive and Lyft, and each of their respective subsidiaries, agents, licensors, managers, and other affiliated companies, and their employees, contractors, agents, officers and directors, from and against any and all claims, damages, obligations, losses, liabilities, costs or debt, and expenses (including but not limited to attorney's fees) arising from: (i) Renter's violation of any term of this Agreement, including without limitation your breach of any of the representations and warranties above; (ii) Renter's violation of any third-party right, including without limitation any right of privacy or intellectual property rights; (iii) Renter's violation of any applicable law, rule or regulation; and (iv) any claims or damages that arise as a result of Renter's use of a Rental Car which are not covered by insurance provided for Renter by Flexdrive or is subject to fee schedule provided by Flexdrive.

14. NO WARRANTY

The Services are provided on an "as is" and "as available" basis. Rental and use of the Rental Car is at your own risk. To the maximum extent permitted by applicable law, Rental Cars are provided without warranties of any kind, whether express or implied, including, but not limited to, implied warranties of merchantability, fitness for a particular purpose, or non- infringement. No advice or information, whether oral or written, obtained by you from Flexdrive or through the Services will create any warranty not expressly stated herein, including with respect to driver or passenger safety. Without limiting the foregoing, Flexdrive, its subsidiaries, and its licensors do not warrant that the Services will meet your requirements; that the Services will be available at any particular time or location; that any defects or errors will be corrected; or that the Services are free of viruses or other harmful components. Any content downloaded or otherwise obtained through the use of the Services is downloaded at your own risk, and you will be solely responsible for any damage to your computer system or mobile device or loss of data that results from such download or your use of the Service.

15. LIMITATION OF LIABILITY

A. To the maximum extent permitted by applicable law, in no event shall Flexdrive, its affiliates, agents, directors, employees, contractors or licensors be liable for any direct, indirect, punitive, incidental, special, consequential or exemplary damages, including without limitation damages for loss of profits, goodwill, use, data or other intangible losses, that result from the use of, or inability to use, the Services. Under no circumstances will Flexdrive be responsible for any damage, loss or injury resulting from hacking, tampering or other unauthorized access or use of the Services or your account or the information contained therein. In no event shall Flexdrive, its affiliates, agents, directors, employees, contractors, or licensors be liable to you for any claims, proceedings, liabilities, obligations, damages, losses or costs in an amount exceeding $1,000.00.

B. This limitation of liability section applies whether the alleged liability is based on contract, tort, negligence, strict liability, or any other basis, even if Flexdrive has been advised of the possibility of such damage. The foregoing limitation of liability shall apply to the fullest extent permitted by law in the applicable jurisdiction. Some states do not allow the exclusion of implied warranties or the exclusion or limitation of incidental or consequential damages, so the above limitations or exclusions may not apply to you. This Agreement gives you specific legal rights, and you may also have other rights, which vary from state to state. The disclaimers, exclusions, and limitations of liability under this Agreement will not apply to the extent prohibited by applicable law.

EXHIBIT A

16. NOTICES

Flexdrive and Lyft may provide any notices required to you hereunder at the email address (or, if you opt out of such delivery method, at the home address) indicated in your reservation request, and you shall update any such information promptly to the extent such information changes; provided that Flexdrive and Lyft shall have no liability for your failure to provide such updates and any notices delivered by Flexdrive to the address on file in our records shall be deemed effective when given. You may give notice to Flexdrive by sending any such notice to Flexdrive Services, LLC, Attn: Legal Department, 2002 Summit Blvd., Suite 750, Atlanta, GA 30319.

17. DISPUTES AND GOVERNING LAW

This Agreement shall be governed by the laws of the State of Georgia in the United States without regard to any conflict of law principles. This Agreement is a contract for services and not for the sale of goods. The UN Convention on the International Sale of Goods is excluded. No claim or action arising out of the transactions under this Agreement may be brought by you against Flexdrive more than one year after the cause of action has accrued. You, Flexdrive and Lyft specifically agree to waive the right to trial by jury.

18. GENERAL

This Agreement constitutes the entire agreement between the parties in connection with the subject matter hereof and supersedes all agreements, proposals, representations and other understandings, oral or written, of the parties. No alteration or modification of this Agreement shall be valid unless made in writing and signed by each party. The waiver by either party of a breach of any provision of this Agreement shall not operate or be construed as a waiver of any subsequent breach and any waiver must be in writing and signed by the affected party hereto. If any provision of this Agreement is held to be invalid or unenforceable, the remaining provisions shall continue in full force and effect. Any terms of this Agreement which by their nature extend beyond its termination remain in effect until fulfilled and apply to respective successors and rightful assignees.

19. ELECTRONIC DOCUMENT AND SIGNATURE

For contractual purposes, you: (a) consent to receive communications from Flexdrive in electronic form, and (b) agree that all terms and conditions, agreements, notices, disclosures and any other communications that Flexdrive provides to you electronically satisfy any legal requirement that such communications would satisfy if they were in a print-on-paper writing. By clicking "Accept", you are signing this Agreement electronically, and such selection (your "E-Signature") constitutes your legal signature, acceptance and agreement to the terms of the Flexdrive "Lyft Driver Rental Program" Agreement, as if this Agreement were actually signed by such Party in "print-on-paper" or "wet ink" writing. You also agree that no certification, authority, or other third party verification is necessary to validate your E-Signature and that the lack of such certification or third party verification will not in any way affect the enforceability of your E-Signature or any resulting contract between you and Flexdrive.

20. LOCATION SPECIFIC DISCLOSURES

Renter further acknowledges that Renter has received, read, understands and agrees to the following state-specific disclosures, notices, and terms and conditions if a Rental Car is rented in one of the jurisdictions listed below. Renter is advised to review the applicable paragraphs before renting or operating a Rental Car in the location(s) set forth below. These disclosures, notices, and terms and conditions may modify or replace, as applicable, Renter's obligations set forth above. In the event of a direct conflict between any of the terms set forth above and this Location Specific Disclosures Section,

EXHIBIT A

the terms contained in this Location Specific Disclosures Section will govern.

California.

Personal Information; Communications. Renter agrees that Flexdrive may disclose personally identifiable information about Renter and the Rental Car to applicable law enforcement agencies or to Flexdrive's affiliates or third parties in connection with our enforcement of Flexdrive's rights under this Agreement and for other legitimate business purposes. Pursuant to Section 1939.22 of the Cal. Civ. Code, Renter agrees that Flexdrive or an assignee may contact Renter by calling or sending text messages or emails to any email address or telephone number Renter provides to Lyft or Flexdrive, including wireless telephone numbers, which could result in additional charges to Renter. Renter represents that Renter is either the owner or primary user of the number(s) and email address renter provided. Methods of contact may include pre-recorded/artificial voice messages and/or use of an automatic dialing device. Renter may revoke Renter's consent at any time by contacting Flexdrive in writing at the address set forth in the Corporate Identity section of the Agreement.

Failure to Return Vehicle. If the Rental Car is not returned within seventy-two (72) hours following the Return Date or extension of the Return Date, as permitted by this Agreement, Flexdrive may activate electronic surveillance technology, such as GPS vehicle tracking technology, to locate the Rental Car. Flexdrive will provide Renter with notice of activation of the electronic surveillance technology twenty-four (24) hours prior to such activation by telephone and electronically unless Renter has not provided a telephone number to Flexdrive or has not agreed to electronic communication pursuant to Section 1932.22 of the Cal. Civ. Code.

Renter acknowledges that electronic surveillance technology may be activated if the Rental Car is not returned within seventy-two (72) hours following the Return Date or extension of the Return Date, as permitted by this Agreement, in order to locate the Rental Car and in order to determine when the Rental Car can be safely deactivated through the use of the starter interrupt technology, as further described in Section 12 of this Agreement.

Responsibility for Damage or Loss. Renter is responsible for all damage to, or loss of, the Rental Car in connection with this rental caused by collision, regardless of the cause of such damage. Renter responsibility may include, to the extent permissible by law: (a) all physical and mechanical damage to the Rental Car measured as follows: (i) if Flexdrive determines that the Rental Car is a total loss, the total loss vehicle value of the Rental Car calculated in accordance with California Civil Code Section 1939.07, as amended from time to time, less salvage; (ii) if Flexdrive determines that the Rental Car is repairable: the actual cost of repair that Flexdrive incurs to repair the Rental Car or that Flexdrive would incur if Flexdrive chose to repair the Rental Car, all as calculated pursuant to California Civil Code Sections 1939.03, 1939.05, and 1939.07, as applicable, and as may be amended from time to time; (b) an administrative fee calculated pursuant to California Civil Code Sections 1939.03 and 1939.05, as amended from time to time; (c) Flexdrive's actual charges for towing, storage, and impound; and (d) all costs associated with Flexdrive's enforcement of this Agreement or collection of Fees, including attorneys' fees, collection fees, and costs whether or not litigation is commenced. Renter is responsible for: (i) loss due to theft of the Rental Car and any damage caused by vandalism that occurs in connection with a theft if Renter fails to exercise ordinary care while in possession of the Rental Car, (ii) damage due to vandalism not associated with theft of the Rental Car up to a maximum of $500, and (iii) replacing missing Rental Car documents and keys.

Illinois.

Responsibility for Damage or Loss to the Vehicle. Renter is responsible for all physical and mechanical damage to or loss of the Rental Car, regardless of the cause of such damage or loss and whether or not Renter is at fault, up to the maximum amounts specified by law pursuant to 625 ILCS 5/6-305.2, as amended from time to time. Renter's responsibility may include: (a) if the Rental Car has a manufacturer's suggested retail price ("MSRP") of $50,000.00 or less: (1) in the case of damage or loss, except for theft, the lesser of: (A) the actual and reasonable costs that Flexdrive incurred to repair the Rental Car or that Flexdrive would have incurred if the Rental Car had been repaired; or (B) the fair market value of the Rental Car immediately before the damage occurred, as determined in the customary market for the retail sale of the Rental Car; and (2) actual and reasonable costs incurred by loss due to theft of the Rental Car up to $2,000.00; provided, however, that if it is established that Renter failed to exercise ordinary care while in possession of the Rental Car or that Renter committed

or aided and abetted the commission of the theft, then the damages shall be the actual and reasonable costs of the Rental Car up to its fair market value, as determined by the customary market for the sale of that vehicle; (b) if the Rental Car has an MSRP of more than $50,000.00: (1) in the case of damage or loss, except for theft, the lesser of: (A) the actual and reasonable costs that Flexdrive incurred to repair the Rental Car or that Flexdrive would have incurred if the Rental Car had been repaired; or (B) the fair market value of the Rental Car immediately before the damage occurred, as determined in the customary market for the retail sale of the Rental Car; and (2) the actual and reasonable costs incurred by loss due to theft of the Rental Car up to $40,000. For purposes of section (a) of this paragraph, for the period beginning June 1, 2018, the maximum recovery shall not exceed $18,500.00. Beginning June 1, 2019 and annually each June 1 thereafter, the maximum amount that may be recovered from Renter will be increased by $500.00 above the maximum recovery allowed immediately prior to June 1 of that year. For purposes of section (b) of this paragraph, on October 1, 2018, the maximum amount that may be recovered from Renter shall be $47,500, on October 1, 2019, the maximum amount shall be increased to $50,000, and on October 1, 2020 and on each October 1 thereafter, the maximum amount that may be recovered from Renter shall be increased by $1,000.00 above the prior year's maximum recovery. Allowing anyone other than Renter to use the Rental Car is not an exercise of ordinary care, but a willful and reckless act that is a breach of this Agreement.

**EXHIBIT A**

New York.

Responsibility for Damage or Loss to the Vehicle. Renter is responsible for: (a) all physical damage to the Rental Car that occurs during the time the Rental Car is under this Agreement that is unrelated to normal wear and tear (as defined in New York General Business Law Section 396-z, as amended from time to time); and (b) all mechanical damage to the Rental Car that is unrelated to normal wear and tear (as defined in New York General Business Law Section 396-z) or that could reasonably be expected from normal use of the Rental Car that occurs during the time the Rental Car is under this Agreement, in all cases up to the amounts permissible by law. Renter's responsibility for such damage or loss will include: (x) the lesser of (both as calculated in accordance with New York General Business Law Section 396-z, as amended from time to time): (i) the actual and reasonable costs that Flexdrive incurs to repair the Rental Car or that Flexdrive would incur if we chose to repair the Rental Car, and (ii) the fair market value of the Rental Car immediately before the damage occurred, as determined in the applicable market for the retail sale of the Rental Car, less any net disposal proceeds; and (y) Flexdrive's actual charges for towing, storage, and impound. Renter is responsible for loss due to theft of the Rental Car up to its fair market value, as determined by the applicable market for the retail sale of the Rental Car, if Renter fails to exercise ordinary care while in possession of the Rental Car or if Renter commits, aids or abets such theft. Allowing anyone other than Renter to use the Rental Car is not an exercise of ordinary care, but a willful and reckless act that is a breach of this Agreement.

Use of the starter interrupt technology. Prior to remotely deactivating a Rental Car through the use of starter interrupt technology, as further described in Section 12 of this Agreement, Flexdrive will send you a notice by registered or certified mail to your address on record with Flexdrive, giving notice that Flexdrive may activate the starter interrupt technology in ten (10) days in accordance with Section 12 of this Agreement.

---

## Signature



**EXHIBIT A**

EXHIBIT C

Gmail

Tread Carefully <dcaustin71@gmail.com>

# [Request received] Follow-up from Lyft

**Lyft** <support@lyft-new.zendesk.com> Fri, May 29, 2020 at 10:26 AM
Reply-To: Lyft <support+id168179095@lyft-new.zendesk.com>
To: Turner Crockett <dcaustin71@gmail.com>

##- Please type your reply above this line -##

Your request (168179095) has been received and is being reviewed by our support staff.

To add additional comments, reply to this email.

---

**Vanessa** (Lyft)
May 29, 2020, 8:25:58 AM PDT

Hi this is Vanessa from Express Drive. Our records indicate your vehicle is past due for its preventative maintenance. Per your signed rental agreement, this is required to remain eligible to rent with us. Please schedule and complete the necessary maintenance with one of our partners and complete in the next 48 hours to remain eligible to rent with Lyft. Please send your completed receipt to txinspections@lyft.com for confirmation. You can use this link to find an approved maintenance provider https://lft.to/locations

Vanessa
Lyft Support
help.lyft.com

---

This email is a service from Lyft. Delivered by Zendesk | Privacy Policy

**EXHIBIT D**

Gmail Tread Carefully <dcaustin71@gmail.com>

# [Lyft] Re: Follow-up from Lyft

**Lyft** <support@lyft-new.zendesk.com> Thu, Jul 9, 2020 at 3:34 PM
Reply-To: Lyft <support+id169427307@lyft-new.zendesk.com>
To: Turner Crockett <dcaustin71@gmail.com>

Your request (169427307) has been updated. To add additional comments, reply to this email.

**Daniela** (Lyft)

Hello Turner,

Lyft routinely conducts background checks to evaluate continued eligibility to drive on the Lyft platform. You will be unable to drive while the background check is processing.

Most background checks take a few days to process, but keep in mind that it can take a few weeks, depending on a number of factors.

To see the status of your background check, or to ensure no additional steps are required, go to https://candidate.checkr.com.

We appreciate your patience during this process.

Best,

Daniela
Lyft Support
help.lyft.com

Zendesk Privacy Policy

**DOLLAR RENT A CAR**
Phone: 800-800-5252
Web: www.dollar.com

dollar. CAR RENTAL

**Rental Agreement No:** 547787833
**Date:** 07/14/2020
**Document:** 950003023901

**Direct All Inquiries To:**
DOLLAR RENT A CAR
PO BOX 35250
TULSA, OK 74153-1167

TAX Id: 73-1389882

**CHARGE DETAIL**

**Renter:** DEMETRIUS CROCKETT
**Account No.:** ************6966 VIS

**EXHIBIT E**

**DEMETRIUS CROCKETT**
**2121 LOHMANS CROSSING RD 211**
**AUSTIN, TX 78734**

## RENTAL REFERENCE

**Rental Agreement No:** 547787833
**Reservation ID:** J4524607789
**Special Bill Info:** GECIO

## RENTAL DETAILS

**Rate Plan:** IN: RCW55 OUT: RCUE3
**Rented On:** 07/09/2020 13:08 LOC# 090525
AUSTIN, TX
**Returned On:** 07/14/2020 06:38 LOC# 090525
AUSTIN, TX
**Car Description:** SIR SPARKFW1.4N ABZA58
**Veh. No.:** 8855603
**CAR CLASS Charged:** A **MILEAGE In:** 6,721
**Rented:** A **Out:** 6,048
**Reserved:** A **Driven:** 673

## MISCELLANEOUS INFORMATION

| | | |
|---|---|---|
| CC AUTH: 821476 | DATE: 2020/07/09 | AMT: 273.00 |
| CC AUTH: 863242 | DATE: 2020/07/14 | AMT: 104.00 |
| CC AUTH: 878330 | DATE: 2020/07/12 | AMT: 144.00 |

## RENTAL CHARGES

| | | | |
|---|---|---|---|
| WEEKS | 1 @ | 371.80 | 371.80 |
| SUBTOTAL | | | 371.80 |
| CONCESSION FEE RECOVERY | | | 45.00 |
| VEHICLE LICENSE FEE | | | 9.70 |
| CUSTOMER FACILITY CHARGE | | | 29.75 |
| LATE RETURN FEE | | | 12.00 |
| RETURN CHANGE FEE | | | 10.00 |
| ENERGY SURCHARGE | | | 1.49 |
| TAX | | 15.00% | 71.96 |
| TOTAL CHARGES | | | 551.70 USD |

**E-RETURN RECEIPT**

**THANK YOU FOR RENTING FROM DOLLAR**

**ALL CHARGES HAVE BEEN BILLED TO YOUR ACCOUNT.**

**Rental Agreement No:** 547787833
**Date:** 07/14/2020
**Document:** 950003023901

**Direct All Inquiries To:**
DOLLAR RENT A CAR
PO BOX 35250
TULSA, OK 74153-1167
UNITED STATES

**Renter:** DEMETRIUS CROCKETT
**Account No.:** ************6966 VIS

**Phone:** 800-800-5252
**Web:** www.dollar.com

**TOTAL CHARGES 551.70 USD**

GDOL02P 0095 GC

**DOLLAR RENT A CAR**
Phone: 800-800-5252
Web: www.dollar.com

**Rental Agreement No:** 549004186
**Date:** 08/20/2020
**Document:** 950003120205

**Direct All Inquiries To:**
DOLLAR RENT A CAR
PO BOX 35250
TULSA, OK 74153-1167

TAX Id: 73-1389882

**CHARGE DETAIL**

**Renter:** DEMETRIUS CROCKETT
**Account No.:** ************6966 VIS

**EXHIBIT E**

**DEMETRIUS CROCKETT**
**2121 LOHAMANS**
**AUSTIN, TX 78734**

**RENTAL REFERENCE**

**Rental Agreement No:** 549004186
**Reservation ID:** J45831184A6

**RENTAL DETAILS**

**Rate Plan:** IN: RCUW5 OUT: RCUW5
**Rented On:** 07/15/2020 12:51 LOC# 090525
AUSTIN, TX
**Returned On:** 07/28/2020 12:00 LOC# 090525
AUSTIN, TX
**Car Description:** COROLLA DFMM09
**Veh. No.:** 2007706
**CAR CLASS Charged:** B **MILEAGE** **In:** 9,200
**Rented:** C **Out:** 9,162
**Reserved:** B **Driven:** 38

**MISCELLANEOUS INFORMATION**

| | | |
|---|---|---|
| CC AUTH: 784061 | DATE: 2020/07/15 | AMT: 363.00 |
| CC AUTH: 818502 | DATE: 2020/08/17 | AMT: 2218.00 |

**RENTAL CHARGES**

| | | | |
|---|---|---|---|
| WEEKS | 1 @ | 263.12 | 263.12 |
| EXTRA DAYS | 6 @ | 36.99 | 221.94 |
| SUBTOTAL | | | 485.06 |
| CONCESSION FEE RECOVERY | | | 63.30 |
| VEHICLE LICENSE FEE | | | 25.22 |
| CUSTOMER FACILITY CHARGE | | | 77.35 |
| RETURN CHANGE FEE | | | 10.00 |
| LATE RETURN FEE | | | 48.00 |
| ENERGY SURCHARGE | | | 1.49 |
| TAX | | 15.00% | 106.56 |
| TOTAL CHARGES | | | 816.98 USD |

**E-RETURN RECEIPT**

**THANK YOU FOR RENTING FROM DOLLAR**

**ALL CHARGES HAVE BEEN BILLED TO YOUR ACCOUNT.**

**Rental Agreement No:** 549004186
**Date:** 08/20/2020
**Document:** 950003120205

**Direct All Inquiries To:**
DOLLAR RENT A CAR
PO BOX 35250
TULSA, OK 74153-1167
UNITED STATES

**Renter:** DEMETRIUS CROCKETT
**Account No.:** ************6966 VIS

**Phone:** 800-800-5252
**Web:** www.dollar.com

**TOTAL CHARGES** **816.98 USD**

GDOL02P 0095 GC

**DOLLAR RENT A CAR**
Phone: 800-800-5252
Web: www.dollar.com

dollar. CAR RENTAL

| | |
|---|---|
| **Rental Agreement No:** | 578003753 |
| **Date:** | 09/25/2020 |
| **Document:** | 950003252947 |

**Direct All Inquiries To:**
DOLLAR RENT A CAR
PO BOX 35250
TULSA, OK 74153-1167

TAX Id: 73-1389882

**CHARGE DETAIL**

**Renter:** DEME CROCKETT
**Account No.:** ************6966 VIS

# EXHIBIT E

**DEME CROCKETT**
**2121 LOHMANS COURT**
**AUSTIN, TX 78734**

## RENTAL REFERENCE

| | |
|---|---|
| **Rental Agreement No:** | 578003753 |
| **Reservation ID:** | J5012601461 |
| **I.T. No.:** | 1006244 |
| **Voucher:** | 0000001080 |

## MISCELLANEOUS INFORMATION

CC AUTH: 850496 DATE: 2020/08/27 AMT: 311.00

## RENTAL DETAILS

**Rate Plan:** IN: ZAPW5 OUT: ZAPW5
**Rented On:** 08/27/2020 16:45 LOC# 090525
AUSTIN, TX
**Returned On:** 09/24/2020 23:16 LOC# 090525
AUSTIN, TX
**Car Description:** SIRMALIBU 1.5 N FP59479
**Veh. No.:** 8627861
**CAR CLASS Charged:** A **MILEAGE In:** 49,227
**Rented:** F **Out:** 46,495
**Reserved:** A **Driven:** 2,732

## RENTAL CHARGES

| | | | |
|---|---|---|---|
| WEEKS | 4 @ | 157.58 | 630.32 |
| EXTRA DAYS | 1 @ | 21.99 | 21.99 |
| SUBTOTAL | | | 652.31 |
| CONCESSION FEE RECOVERY | | | 86.67 |
| VEHICLE LICENSE FEE | | | 56.26 |
| CUSTOMER FACILITY CHARGE | | | 172.55 |
| LATE RETURN FEE | | | 60.00 |
| RETURN CHANGE FEE | | | 10.00 |
| ENERGY SURCHARGE | | | 1.49 |
| VOUCHER VALUE | | | -157.58 |
| TAX | | 15.00% | 155.89 |
| TOTAL CHARGES | | | 1037.59 USD |

**E-RETURN RECEIPT**

**THANK YOU FOR RENTING FROM DOLLAR**

**ALL CHARGES HAVE BEEN BILLED TO YOUR ACCOUNT.**

| | |
|---|---|
| **Rental Agreement No:** | 578003753 |
| **Date:** | 09/25/2020 |
| **Document:** | 950003252947 |

**Direct All Inquiries To:**
DOLLAR RENT A CAR
PO BOX 35250
TULSA, OK 74153-1167
UNITED STATES

**Renter:** DEME CROCKETT
**Account No.:** ************6966 VIS

**Phone:** 800-800-5252
**Web:** www.dollar.com

| | |
|---|---|
| **TOTAL CHARGES** | **1037.59 USD** |

GDOL02P 0095 GC

**DOLLAR RENT A CAR**
Phone: 800-800-5252
Web: www.dollar.com

| | |
|---|---|
| **Rental Agreement No:** | 597999861 |
| **Date:** | 12/24/2020 |
| **Document:** | 950003768433 |

**Direct All Inquiries To:**
DOLLAR RENT A CAR
PO BOX 35250
TULSA, OK 74153-1167

TAX Id: 73-1389882

**CHARGE DETAIL**

**Renter:** DEMETRIUS CROCKETT
**Account No.:** ************3828 VIS

**EXHIBIT E**

**DEMETRIUS CROCKETT**
**3310 W BRAKER LN**
**AUSTIN, TX 78758**

**RENTAL REFERENCE**

| | |
|---|---|
| **Rental Agreement No:** | 597999861 |
| **Reservation ID:** | J5833752244 |
| **I.T. No.:** | 1006244 |
| **Voucher:** | 0000393585 |

**RENTAL DETAILS**

**Rate Plan:** IN: CNVM OUT: ZAPE3
**Rented On:** 11/18/2020 09:22 LOC# 090525
AUSTIN, TX
**Returned On:** 12/24/2020 08:00 LOC# 090525
AUSTIN, TX
**Car Description:** SIR SPARKFW1.4N FP117160
**Veh. No.:** 6514608
**CAR CLASS Charged:** A **MILEAGE** **In:** 17,252
**Rented:** A **Out:** 13,022
**Reserved:** A **Driven:** 4,230

**MISCELLANEOUS INFORMATION**

CC AUTH: 509214 DATE: 2020/11/18 AMT: 220.00

**RENTAL CHARGES**

| | | | |
|---|---|---|---|
| MONTHS | 1 @ | 745.80 | 745.80 |
| EXTRA DAYS | 5 @ | 24.86 | 124.30 |
| SUBTOTAL | | | 870.10 |
| CONCESSION FEE RECOVERY | | | 112.37 |
| VEHICLE LICENSE FEE | | | 69.84 |
| CUSTOMER FACILITY CHARGE | | | 214.20 |
| LATE RETURN FEE | | | 60.00 |
| RETURN CHANGE FEE | | | 10.00 |
| ENERGY SURCHARGE | | | 1.49 |
| VOUCHER VALUE | | | -29.93 |
| TAX | | 6.25% | 83.62 |

TOTAL CHARGES 1391.69 USD

**E-RETURN RECEIPT**

**THANK YOU FOR RENTING FROM DOLLAR**

**ALL CHARGES HAVE BEEN BILLED TO YOUR ACCOUNT.**

| | |
|---|---|
| **Rental Agreement No:** | 597999861 |
| **Date:** | 12/24/2020 |
| **Document:** | 950003768433 |

**Direct All Inquiries To:**
DOLLAR RENT A CAR
PO BOX 35250
TULSA, OK 74153-1167
UNITED STATES

**Renter:** DEMETRIUS CROCKETT
**Account No.:** ************3828 VIS

**Phone:** 800-800-5252
**Web:** www.dollar.com

**TOTAL CHARGES** **1391.69 USD**

GDOL02P 0095 GC

EXHIBIT F

Gmail Tread Carefully <dcaustin71@gmail.com>

# Re: Lyft Help - Request Received

1 message

**Tread Carefully** <dcaustin71@gmail.com> Fri, Jul 31, 2020 at 12:41 PM
To: Lyft <support+id170104950@lyft-new.zendesk.com>

...here at the Austin Texas Hub to pick up my Flexdrive Rental and I'm being told to contact you regarding a chargeback flag on my Flexdrive account. Please advise on the date, amount and account used pertaining to this flag because it appears to be a mistake. The card that Lyft has on file and that was my default services charge account (per historicals) ends in 5782.

On Fri, Jul 31, 2020 at 11:06 AM Lyft <support@lyft-new.zendesk.com> wrote:

> This is an automatic confirmation to let you know we received your request for help from the Lyft app.
>
> A customer support associate will investigate and reach out to you soon.
>
> Thanks for your patience,
>
> Lyft
>
> Zendesk Privacy Policy
>
> [XZG9OE-WL8W]

--

This email is confidential. It is not permitted or approved, by the email's owner/originator, to be shared outside of the parties copied by the email's originator without the explicit consent and approval of the email's originator.

EXHIBIT G

Gmail

Tread Carefully <dcaustin71@gmail.com>

## Re: [Lyft] Re: Follow-up from Lyft

**Tread Carefully** <dcaustin71@gmail.com> Sun, Aug 2, 2020 at 11:40 AM
To: Lyft <support+id170104950@lyft-new.zendesk.com>

Thank you for letting me know. My app still says I have a chargeback and I'm unable to schedule an appointment to pick up my Flexdrive rental in my app.

What is the status of the investigation?

On Sat, Aug 1, 2020 at 6:31 PM Lyft <support@lyft-new.zendesk.com> wrote:

> Your request (170104950) has been updated. To add additional comments, reply to this email.
>
> **Jeremiah** (Lyft)
>
> Hi Turner,
>
> There is a team investigating this for you.
>
> All the best,
>
> Jeremiah
> Lyft Support
> help.lyft.com
>
> Zendesk Privacy Policy
>
> [XZG9OE-WL8W]

--
This email is confidential. It is not permitted or approved, by the email's owner/originator, to be shared outside of the parties copied by the email's originator without the explicit consent and approval of the email's originator.

**EXHIBIT H**

Gmail Tread Carefully <dcaustin71@gmail.com>

## Re: [Lyft] Re: Follow-up from Lyft

1 message

**Tread Carefully** <dcaustin71@gmail.com> Wed, Oct 28, 2020 at 4:17 PM
To: Lyft <support+id170104950@lyft-new.zendesk.com>
Cc: Tread Carefully <dcaustin71@gmail.com>

Since I do not own a vehicle and utilized Lyft's Flex Drive program for Lyft independent contractor work, this internal Lyft system glitch completely crippled my ability to earn income to pay bills and take care of my family thus resulting in severe financial hardship.

Given Lyft HQs acknowledgment of an internal system glitch that took place **4 months ago,** as of right now, October 28th, 2020, am I now able to make an appointment to pick up a Flex Drive rental today October 28th, 2020 or tomorrow October 29th, 2020?

Also I should not have to pay a deposit to rent a vehicle given the circumstances of what has transpired.

Your prompt attention and ownership to address my questions regarding my ability to rent a Flexdrive vehicle immediately is greatly appreciated.

On Sun, Oct 25, 2020 at 1:19 PM Lyft <support@lyft-new.zendesk.com> wrote:

> Your request (170104950) has been updated. To add additional comments, reply to this email.
>
> **Seth** (Lyft)
>
> Hi Turner,
>
> I apologize for the delay between messages. As mentioned in the last update from my colleague, Rhys, we're currently looking into this issue. Since we're not sure why this is happening from my team side of things, we're working with our engineering team to try and identify what is happening internally so we can get this resolved for you as quickly as possible.
>
> When we have any updated information, we'll reach out to you to keep you up to date.

**EXHIBIT H**

Seth
Lyft Support
help.lyft.com

---

Zendesk

[XZG9OE-WL8W]

--

This email is confidential. It is not permitted or approved, by the email's owner/originator, to be shared outside of the parties copied by the email's originator without the explicit consent and approval of the email's originator.

EXHIBIT I

Gmail Tread Carefully <dcaustin71@gmail.com>

# Re: [Lyft] Re: Follow-up from Lyft

**Tread Carefully** <dcaustin71@gmail.com> Mon, Dec 21, 2020 at 4:42 PM
To: Lyft <support+id170104950@lyft-new.zendesk.com>

What is the status of this investigation from July 2020?

This matter has caused, and continues to cause me a substantial loss of income and I continue to experience financial hardship as a result.

Am I now able to make an appointment to pick up my rental at the Austin Lyft hub?

On Sun, Oct 25, 2020 at 1:19 PM Lyft <support@lyft-new.zendesk.com> wrote:

> ##- Please type your reply above this line -##
>
> Your request (170104950) has been updated. To add additional comments, reply to this email.
>
> **Seth** (Lyft)
> Oct 25, 2020, 11:19 AM PDT
>
> Hi Turner,
>
> I apologize for the delay between messages. As mentioned in the last update from my colleague, Rhys, we're currently looking into this issue. Since we're not sure why this is happening from my team side of things, we're working with our engineering team to try and identify what is happening internally so we can get this resolved for you as quickly as possible.
>
> When we have any updated information, we'll reach out to you to keep you up to date.
>
> Seth
> Lyft Support
> help.lyft.com

Not required to mail or fax this copy to [redacted]

# MOTOR VEHICLE RETAIL INSTALLMENT SALES CONTRACT

ACCOUNT # [redacted]

LOT # GGL

| Buyer Name and Address | Co-Buyer Name and Address | Creditor-Seller Name and Address |
|---|---|---|
| DEMETRIUS T CROCKETT<br>2121 LOHMANS CROSSING RD<br>AUSTIN, TX 78734 | N/A | DRIVE 512 AUTORANCH LLC<br>6219 S CONGRESS AVE<br>AUSTIN, TX 78745 |

**EXHIBIT J**

The Buyer and any Co-Buyer is referred to as "I", "my" or "me." The Seller is referred to as "you" or "your." This contract may be transferred by the Seller.

**PROMISE TO PAY**

The credit price is shown below as the "Total Sales Price." The "Cash Price" is also shown in Line 1 on Page 2. By signing this contract, I choose to purchase the motor vehicle on credit according to the terms of this contract. I agree to pay you the Amount Financed, Finance Charge, and any other charges in this contract. I agree to make payments according to the Payment Schedule in this contract. If more than one person signs as a buyer, I agree to keep all the promises in this agreement even if the others do not.

I have thoroughly inspected, accepted, and approved the motor vehicle in all respects.

| Year | Make | Model | Vehicle Identification Number | | USE FOR WHICH PURCHASED |
|---|---|---|---|---|---|
| 2017 | Mitsubishi | Mirage | [redacted] | ☐ New<br>☐ Demonstrator<br>☐ Factory<br>☐ Official/Executive<br>☒ Used | ☒ PERSONAL, FAMILY OR HOUSEHOLD<br>☐ BUSINESS OR COMMERCIAL<br>☐ AGRICULTURAL |

Trade-in: Year N/A Make N/A Model N/A VIN N/A License No. N/A

Trade-in: Year N/A Make N/A Model N/A VIN N/A License No. N/A

## TRUTH IN LENDING DISCLOSURES

| ANNUAL PERCENTAGE RATE<br>The cost of my credit as a yearly rate. | FINANCE CHARGE<br>The dollar amount the credit will cost me. | Amount Financed<br>The amount of credit provided to me or on my behalf. | Total of Payments<br>The amount I will have paid after I have made all payments as scheduled. | Total Sale Price<br>The total cost of my purchase on credit, including my down payment of $ 1,428.00 is |
|---|---|---|---|---|
| [redacted] % | $ [redacted] | [redacted] | $ 19,589.00 | $ 20,589.00 |

**Payment Schedule:** My payment schedule will be:

COPY OF ELECTRONIC ORIGINAL

| No. of Payments | Amount of Payments | When Payments Are Due |
|---|---|---|
| 1 | $ 428.00 | January 12, 2021 |
| | $ | |
| 60 | $ 319.35 | Monthly Beginning January 23, 2021 |

**Security:** You will have a security interest in the motor vehicle being purchased.
**Late Charge:** If you do not receive my entire payment within 15 days after it is due (10 days if I am buying a heavy commercial vehicle), I will pay a late charge of 5% of the scheduled payment.
**Prepayment:** I can pay all that I owe early. If I do so, I can get a refund of part of the Finance Charge.
**Additional Information:** I will refer to this document for information about nonpayment, default, security interests, any required repayment in full before the scheduled date, and prepayment refunds.

***The Annual Percentage Rate may be negotiated with the Seller. The Seller may assign this contract and retain its right to receive a part of the Finance Charge.***

**PROPERTY INSURANCE: I must keep the collateral insured against damage or loss in the amount I owe. I must keep this insurance until I have paid all that I owe under this contract. I may obtain property insurance from anyone I want or provide proof of insurance I already have. The insurer must be authorized to do business in Texas. The maximum deductible is $550.**

I agree to give you proof of property insurance. I must name you as the person to be paid under the policy in the event of damage or loss.

**LIABILITY INSURANCE**

**THIS CONTRACT DOES NOT INCLUDE INSURANCE COVERAGE FOR PERSONAL LIABILITY AND PROPERTY DAMAGE CAUSED TO OTHERS .**


© 2012 - 2016 Credit Acceptance Corporation.
All Rights Reserved.



Sign Buyer's Initials DTC

Buyer's Initials

**EXHIBIT K**

Gmail

Tread Carefully <dcaustin71@gmail.com>

## [Lyft] Re: Follow-up from Lyft

1 message

**Lyft** <support@lyft-new.zendesk.com> Wed, Jan 6, 2021 at 3:47 PM
Reply-To: Lyft <support+id170104950@lyft-new.zendesk.com>
To: Turner Crockett <dcaustin71@gmail.com>

Your request (170104950) has been updated. To add additional comments, reply to this email.

**Kat** (Lyft)

Hello Turner,

Thanks very much for all your patience with this issue. I can assure that multiple teams including our engineering staff have investigated this issue to make sure that all concerns were addressed.

Our engineering team thoroughly checked your account and the instance of charge back in question but did not find there to be any type of error or glitch in our system to cause it. The charge back was issued on the USAA card ending in 3869 which you placed on file on 12/6/19 and previously used to place a rental deposit with Express Drive. There was no indication on our end that anything fraudulent occurred and again, no evidence that a glitch in our system caused an incorrect charge back.

Unfortunately, we are unable to place you in another Express Drive rental as we take instances of charge backs very seriously. I understand this is not the answer you were hoping for. Please know that your driver account is still active and you are welcome to add a personal vehicle to the platform if you're interested in driving with us in the future.

We truly appreciate all the time and miles you've logged with Lyft Express Drive and I am sorry that this matter could not be resolved in your favor. We

**EXHIBIT K**

hope that you are well, and wish you a healthy and happy New Year!

Kat
Lyft Support
help.lyft.com

---

Zendesk

[XZG9OE-WL8W]

**EXHIBIT L**

Gmail Tread Carefully <dcaustin71@gmail.com>

## USAA Cited By Lyft As Culprit

1 message

**Tread Carefully** <dcaustin71@gmail.com> Thu, Jan 28, 2021 at 2:07 PM
To: Lyft <support+id170104950@lyft-new.zendesk.com>, "Abuse@usaa.com" <Abuse@usaa.com>
Cc: Tread Carefully <dcaustin71@gmail.com>

At 3:58 PM CST yesterday I called 877-762-7256 (USAA's Fraud Department) and spoke with Alexis.

Alexis took my personal information and conducted a deep dive database search into USAA historical intel and (as I told you Lyft) she verified / confirmed / validated that **I have NEVER had a USAA account EVER.**

After 6 months of what appears to be a botched investigation by Lyft operations, Lyft's continued consciousness and willful display of discrimination and reckless negligence to address a civil injustice matter promptly and with integrity, adds to my suspicions of malicious intent and civil injury that's still causing undue emotional distress and financial hardships for me and my family.

USAA's Financial Intelligence Unit has been assigned to this case of civil injustice for further investigation.

And to add further insult to injury, Lyft also stole $250 from me!!!

I. AM. NOT. GOING. AWAY...justice will be served!

https://youtu.be/32E6B8P3J8M

On Wednesday, January 13, 2021, Tread Carefully <dcaustin71@gmail.com> wrote:

> Hello USAA,
>
> After 6 months of "research" by a company known as Lyft (copied on this communication) , to identify a creditor who has caused unprecedented hardships for me and my family due to a chargeback on June 16, 2020 (see below) that took two weeks to process which I was never made aware of, **Lyft has cited USAA (see full disclosure below) as the creditor that caused the issue with my Lyft account**.
>
> I do not recall ever having a USAA account.
>
> Can you please assist and advise on how USAA got involved here?
>
> **Date of Charge**: 6/16/20
> **Amount**: $17.13
> **Visa card**: *3869
> **Date of Chargeback**: 7/4/20
>
> We also have this information:

**EXHIBIT L**

# **Case Number:** 801833861101
# **Reason Code:** 1040

On Wed, Jan 6, 2021 at 3:47 PM Lyft <support@lyft-new.zendesk.com> wrote:

Your request (170104950) has been updated. To add additional comments, reply to this email.

**Kat** (Lyft)

Hello Turner,

Thanks very much for all your patience with this issue. I can assure that multiple teams including our engineering staff have investigated this issue to make sure that all concerns were addressed.

Our engineering team thoroughly checked your account and the instance of charge back in question but did not find there to be any type of error or glitch in our system to cause it. The charge back was issued on the USAA card ending in 3869 which you placed on file on 12/6/19 and previously used to place a rental deposit with Express Drive. There was no indication on our end that anything fraudulent occurred and again, no evidence that a glitch in our system caused an incorrect charge back.

Unfortunately, we are unable to place you in another Express Drive rental as we take instances of charge backs very seriously. I understand this is not the answer you were hoping for. Please know that your driver account is still active and you are welcome to add a personal vehicle to the platform if you're interested in driving with us in the future.

We truly appreciate all the time and miles you've logged with Lyft Express Drive and I am sorry that this matter could not be resolved in your favor. We hope that you are well, and wish you a healthy and happy New Year!

Kat
Lyft Support
help.lyft.com

**USAA FEDERAL SAVINGS BANK**
10750 McDermott Freeway
San Antonio, Texas 78288

**EXHIBIT M**

USAA

Mr. Demetrius Turner Crockett
3310 West Braker Lane 300-401
Austin, TX 78758

March 17, 2021

Dear Mr. Crockett:

This letter is in response to your request for membership verification with USAA Federal Savings Bank (FSB). We hope the following information is helpful.

Thank you for speaking with Robert Casiano, of our staff, regarding your concerns. As Mr. Casiano explained in your conversation on March 11, 2021, the FSB is unable to determine ownership of any accounts without a full account number. A systems audit was conducted using the personally identifiable information you provided, including your name, email address d****tin7*@gmail.com, phone numbers ending in 5192 and 1136, and a social security number. We are unable to substantiate that you currently or previously established or qualified for USAA membership and/or FSB products and services. For more information regarding membership eligibility, please visit us at usaa.com. We appreciate the opportunity to respond to your concerns.

Sincerely,

Michael J. Rodriguez

Michael J. Rodriguez
Director, Advocacy
USAA Federal Savings Bank

Subject: Your ride with Karina on July 2

**Lyft Ride Receipt** <no-reply@lyftmail.com> Thu, Jul 2, 2020, 4:53
to dcaustin71

**EXHIBIT N**

**JULY 2, 2020 AT 4:34 PM**

# Thanks for riding with Karina!

100% of tips go to drivers. Add a tip

| | |
|---|---|
| Lyft fare (8.52mi, 12m 12s) | $18.38 |
| Tip | $3.31 |

| | |
|---|---|
| VISA Visa *5782 | **$21.69** |

Subject: Your ride with Ramon on July 2

**Lyft Ride Receipt** <no-reply@lyftmail.com>
to dcaustin71

Thu, Jul 2, 2020, 5:49

EXHIBIT N

**JULY 2, 2020 AT 5:32 PM**

# Thanks for riding with Ramon!

100% of tips go to drivers. Add a tip

| | |
|---|---|
| Lyft fare (7.94mi, 11m 29s) | $17.16 |
| Tip | $3.09 |

Visa *5782 **$20.25**

Subject: Your ride with Mike on July 3

**Lyft Ride Receipt** <no-reply@lyftmail.com> Fri, Jul 3, 2020, 12:41
to dcaustin71

**EXHIBIT N**

**JULY 3, 2020 AT 12:06 AM**

# Thanks for riding with Mike!

100% of tips go to drivers. Add a tip

| | |
|---|---|
| Lyft fare (7.34mi, 12m 44s) | $17.75 |
| Tip | $3.20 |

Visa *5782 **$20.95**

Subject: Lyft Ride Receipt - Charge Failed

**Lyft Ride Receipt** <no-reply@lyftmail.com> Fri, Jul 3, 2020, 5:13
to dcaustin71

EXHIBIT N

**$2.99 Balance Due**

We were unable to charge your Visa *5782 for your last ride. To continue using Lyft, please update your payment information in the app to settle your balance.

**JULY 3, 2020 AT 3:30 PM**

# Thanks for riding with Joel!

100% of tips go to drivers. Add a tip

Since you updated your stop or destination, your fare reflects actual time and distance
Learn more

| | |
|---|---|
| Base fare | $1.04 |
| 29m 23s | $7.93 |
| 4.98 mi | $4.83 |
| Service fee | $2.85 |
| Tip | $3.00 |

VISA Visa *5782 **$19.65**

Subject: Your ride with Oscar on July 3

**Lyft Ride Receipt** <no-reply@lyftmail.com> Fri, Jul 3, 2020, 5:53
to dcaustin71

EXHIBIT N

JULY 3, 2020 AT 5:27 PM

# Thanks for riding with Oscar!

100% of tips go to drivers. Add a tip

| | |
|---|---|
| Lyft fare (8.23mi, 17m 50s) | $20.90 |
| Tip | $3.76 |

Visa *5782 **$24.66**

Subject: Your ride with Muhammad on July 3

**Lyft Ride Receipt** <no-reply@lyftmail.com> Fri, Jul 3, 2020, 11:54
to dcaustin71

**EXHIBIT N**

**JULY 3, 2020 AT 9:04 PM**

# Thanks for riding with Muhammad!

100% of tips go to drivers. Add a tip

| | |
|---|---|
| Lyft fare (11.02mi, 15m 15s) | $20.07 |
| Visa *5782 | **$20.07** |

Subject: Your ride with Hany on July 4

**Lyft Ride Receipt** <no-reply@lyftmail.com> Sat, Jul 4, 2020, 5:25
to dcaustin71

EXHIBIT N

**JULY 4, 2020 AT 5:06 AM**

# Thanks for riding with Hany!

100% of tips go to drivers. Add a tip

| | |
|---|---|
| Lyft fare (1.54mi, 6m 30s) | $7.55 |
| Tip | $2.00 |
| Lyft Credits | -$5.00 |

Visa *5782 **$4.55**

Subject: Your ride with Hal on July 4

**Lyft Ride Receipt** <no-reply@lyftmail.com> Sat, Jul 4, 2020, 6:25
to dcaustin71

EXHIBIT N

**JULY 4, 2020 AT 5:33 AM**

# Thanks for riding with Hal!

100% of tips go to drivers. Add a tip

| | |
|---|---|
| Lyft fare (1.87mi, 7m 40s) | $7.44 |
| Tip | $2.00 |

Visa *5782 **$9.44**

Subject: Your ride with Rene on July 4

**Lyft Ride Receipt** <no-reply@lyftmail.com>
to dcaustin71

Sat, Jul 4, 2020, 12:51

**EXHIBIT N**

**JULY 4, 2020 AT 12:03 PM**

# Thanks for riding with Rene!

100% of tips go to drivers. Add a tip

| | |
|---|---|
| Lyft fare (4.71mi, 12m 34s) | $11.79 |
| Tip | $2.00 |

Visa *5782 **$13.79**

Subject: Your ride with Hal on July 4

**Lyft Ride Receipt** <no-reply@lyftmail.com> Sat, Jul 4, 2020, 11:59
to dcaustin71

lyft

**EXHIBIT N**

**JULY 4, 2020 AT 6:33 AM**

# Thanks for riding with Hal!

100% of tips go to drivers. Add a tip

| | |
|---|---|
| Lyft fare (0.43mi, 3m 11s) | $6.89 |
| Tip | $2.00 |

VISA Visa *5782 **$8.89**

Subject: Your ride with Teddy on July 4

**Lyft Ride Receipt** <no-reply@lyftmail.com> Sat, Jul 4, 2020, 1:48
to dcaustin71

EXHIBIT N

**JULY 4, 2020 AT 1:25 PM**

# Thanks for riding with Teddy!

100% of tips go to drivers. Add a tip

| | |
|---|---|
| Lyft fare (8.89mi, 18m 22s) | $17.53 |
| Tip | $2.00 |

VISA Visa *5782 **$19.53**

Subject: Your ride with Aaron on July 4

**Lyft Ride Receipt** <no-reply@lyftmail.com> Sun, Jul 5, 2020, 7:20
to dcaustin71

EXHIBIT N

**JULY 4, 2020 AT 7:05 PM**

# Thanks for riding with Aaron!

100% of tips go to drivers. Add a tip

| | |
|---|---|
| Lyft fare (11.01mi, 13m 43s) | $22.70 |
| Visa *5782 | **$22.70** |

Subject: Your ride with Satish on July 6

**Lyft Ride Receipt** <no-reply@lyftmail.com> Mon, Jul 6, 2020, 1:59
to dcaustin71

**EXHIBIT N**

**JULY 6, 2020 AT 12:40 AM**

# Thanks for riding with Satish!

100% of tips go to drivers. Add a tip

| | |
|---|---|
| Lyft fare (2.59mi, 8m 13s) | $8.52 |
| VISA Visa *5782 | **$8.52** |

Subject: Your ride with Henry on July 6

**Lyft Ride Receipt** <no-reply@lyftmail.com> Mon, Jul 6, 2020, 2:33
to dcaustin71

**EXHIBIT N**

**JULY 6, 2020 AT 2:11 AM**

# Thanks for riding with Henry!

100% of tips go to drivers. Add a tip

Since you updated your stop or destination, your fare reflects actual time and distance
Learn more

| | |
|---|---|
| Base fare | $1.04 |
| 19m 38s | $5.30 |
| 4.15 mi | $4.02 |
| Service fee | $2.85 |

VISA Visa *5782 **$13.21**

Subject: Your ride with Damon on July 6

**Lyft Ride Receipt** <no-reply@lyftmail.com>
to dcaustin71

Mon, Jul 6, 2020, 1:14

**EXHIBIT N**

**JULY 6, 2020 AT 10:24 AM**

# Thanks for riding with Damon!

100% of tips go to drivers. Add a tip

| | |
|---|---|
| Lyft fare (8.30mi, 18m 21s) | $21.60 |
| VISA Visa *5782 | **$21.60** |

Subject: Your ride with Hui on July 6

Lyft Ride Receipt <no-reply@lyftmail.com> Tue, Jul 7, 2020, 9:39
to dcaustin71

EXHIBIT N

JULY 6, 2020 AT 1:25 PM

# Thanks for riding with Hui!

100% of tips go to drivers. Add a tip

Since you updated your stop or destination, your fare reflects actual time and distance
Learn more

| | |
|---|---|
| Base fare | $1.04 |
| 38m 25s | $10.37 |
| 21.17 mi | $20.53 |
| Service fee | $2.85 |
| AUS Airport - Airport Fee | $2.50 |

VISA Visa *5782 **$37.29**

Subject: Your ride with Mark on July 9

**Lyft Ride Receipt** <no-reply@lyftmail.com> Thu, Jul 9, 2020, 3:09
to dcaustin71

**EXHIBIT N**

**JULY 9, 2020 AT 12:43 PM**

# Thanks for riding with Mark!

100% of tips go to drivers. Add a tip

| | |
|---|---|
| Lyft fare (11.46mi, 17m 17s) | $22.13 |
| Visa *1560 | **$22.13** |

Subject: Your ride with Ikechukwu on July 14

**Lyft Ride Receipt** <no-reply@lyftmail.com> Tue, Jul 14, 2020, 1:04
to dcaustin71

EXHIBIT N

JULY 14, 2020 AT 12:27 AM

# Thanks for riding with Ikechukwu!

100% of tips go to drivers. Add a tip

| | |
|---|---|
| Lyft fare (7.95mi, 10m 33s) | $17.27 |
| Tip | $4.00 |

VISA Visa *5782 **$21.27**

Subject: Your ride with José on July 15

**Lyft Ride Receipt** <no-reply@lyftmail.com> Wed, Jul 15, 2020, 10:14
to dcaustin71

**EXHIBIT N**

**JULY 15, 2020 AT 12:35 PM**

# Thanks for riding with José!

100% of tips go to drivers. Add a tip

Lyft fare (8.49mi, 11m 8s) $18.21

VISA Visa *5782 **$18.21**

Subject: Your ride with Jose on July 31

**Lyft Ride Receipt** <no-reply@lyftmail.com>
to dcaustin71

Fri, Jul 31, 2020, 6:37

EXHIBIT N

**JULY 31, 2020 AT 5:32 PM**

# Thanks for riding with Jose!

100% of tips go to drivers. Add a tip

| | |
|---|---|
| Lyft fare (12.20mi, 31m 19s) | $23.67 |
| Tip | $5.92 |

Visa *5782 **$29.59**

**Lyft Ride Receipt** <no-reply@lyftmail.com> Sat, Aug 1, 2020, 7:14
to dcaustin71

EXHIBIT N

JULY 31, 2020 AT 6:53 PM

# Thanks for riding with Vincent!

100% of tips go to drivers. Add a tip

| | |
|---|---|
| Lyft fare (13.58mi, 19m 47s) | $21.16 |

Visa *5782 **$21.16**

Subject: Your ride with Joseph on August 3

**Lyft Ride Receipt** <no-reply@lyftmail.com> Mon, Aug 3, 2020, 1:25
to dcaustin71

EXHIBIT N

AUGUST 3, 2020 AT 12:52 PM

# Thanks for riding with Joseph!

100% of tips go to drivers. Add a tip

| | |
|---|---|
| Lyft fare (5.92mi, 21m 4s) | $15.27 |
| Tip | $2.00 |

Visa *5782 **$17.27**

Subject: Your ride with William on August 3

**Lyft Ride Receipt** <no-reply@lyftmail.com> Mon, Aug 3, 2020, 1:55
to dcaustin71

EXHIBIT N

**AUGUST 3, 2020 AT 1:39 PM**

# Thanks for riding with William!

100% of tips go to drivers. Add a tip

| | |
|---|---|
| Lyft fare (4.21mi, 8m 37s) | $11.27 |
| VISA Visa *5782 | **$11.27** |

Subject: Your ride with Ivan on August 4

**Lyft Ride Receipt** <no-reply@lyftmail.com>
to dcaustin71

Tue, Aug 4, 2020, 9:39

EXHIBIT N

AUGUST 4, 2020 AT 1:18 AM

# Thanks for riding with Ivan!

100% of tips go to drivers. Add a tip

| | |
|---|---|
| Lyft fare (2.79mi, 6m 8s) | $9.82 |
| VISA Visa *5782 | **$9.82** |

Subject: Your ride with Cyril on August 4

**Lyft Ride Receipt** <no-reply@lyftmail.com> Wed, Aug 5, 2020, 9:52
to dcaustin71

EXHIBIT N

AUGUST 4, 2020 AT 9:45 AM

# Thanks for riding with Cyril!

100% of tips go to drivers. Add a tip

| | |
|---|---|
| Lyft fare (2.85mi, 6m 23s) | $8.88 |
| Visa *5782 | **$8.88** |

Subject: Your ride with Abdul on August 5

**Lyft Ride Receipt** <no-reply@lyftmail.com>
to dcaustin71

Wed, Aug 5, 2020, 4:35

EXHIBIT N

**AUGUST 5, 2020 AT 3:11 PM**

# Thanks for riding with Abdul!

100% of tips go to drivers. Add a tip

Lyft fare (7.10mi, 14m 43s) $13.81

VISA Visa *5782 **$13.81**

Subject: Your ride with Alejandro on August 5

**Lyft Ride Receipt** <no-reply@lyftmail.com> Thu, Aug 6, 2020, 11:19
to dcaustin71

EXHIBIT N

AUGUST 5, 2020 AT 4:39 PM

# Thanks for riding with Alejandro!

100% of tips go to drivers. Add a tip

| | |
|---|---|
| Lyft fare (7.64mi, 16m 39s) | $15.69 |
| Visa *5782 | **$15.69** |

Subject: Your ride with Eric on August 6

Lyft Ride Receipt <no-reply@lyftmail.com>
to dcaustin71

Thu, Aug 6, 2020, 5:57

EXHIBIT N

AUGUST 6, 2020 AT 11:49 AM

# Thanks for riding with Eric!

100% of tips go to drivers. Add a tip

| | |
|---|---|
| Lyft fare (39.87mi, 76m 2s) | $50.02 |
| VISA Visa *5782 | **$50.02** |

Subject: Your ride with Donna on August 6

**Lyft Ride Receipt** <no-reply@lyftmail.com>
to dcaustin71

Thu, Aug 6, 2020, 7:19

lyft

**EXHIBIT N**

**AUGUST 6, 2020 AT 6:21 PM**

# Thanks for riding with Donna!

100% of tips go to drivers. Add a tip

| | |
|---|---|
| Lyft fare (1.66mi, 5m 20s) | $6.70 |
| VISA Visa *5782 | **$6.70** |

Subject: Your ride with Teklu on August 6

Lyft Ride Receipt <no-reply@lyftmail.com> Fri, Aug 7, 2020, 7:29
to dcaustin71

EXHIBIT N

AUGUST 6, 2020 AT 7:19 PM

# Thanks for riding with Teklu!

100% of tips go to drivers. Add a tip

| | |
|---|---|
| Lyft fare (1.66mi, 8m 29s) | $6.56 |
| Visa *5782 | **$6.56** |

Subject: Your ride with Sterling G on August 9

**Lyft Ride Receipt** <no-reply@lyftmail.com> Mon, Aug 10, 2020, 5:04
to dcaustin71

**EXHIBIT N**

**AUGUST 9, 2020 AT 4:09 PM**

# Thanks for riding with Sterling G!

100% of tips go to drivers. Add a tip

| | |
|---|---|
| Lyft fare (3.04mi, 20m 45s) | $8.66 |
| VISA Visa *6966 | **$8.66** |

Subject: Your ride with Abdul wakeel on August 11

**Lyft Ride Receipt** <no-reply@lyftmail.com>
to dcaustin71

Wed, Aug 12, 2020, 10:52

EXHIBIT N

AUGUST 11, 2020 AT 10:32 PM

# Thanks for riding with Abdul wakeel!

100% of tips go to drivers. Add a tip

| | |
|---|---|
| Lyft fare (11.97mi, 18m 59s) | $20.55 |
| Visa *6966 | **$20.55** |

Subject: Your ride with Henry on August 15

**Lyft Ride Receipt** <no-reply@lyftmail.com> Sat, Aug 15, 2020, 1:43
to dcaustin71

lyft

**EXHIBIT N**

**AUGUST 15, 2020 AT 12:40 AM**

# Thanks for riding with Henry!

100% of tips go to drivers. Add a tip

| | |
|---|---|
| Lyft fare (14.82mi, 16m 13s) | $23.87 |
| VISA Visa *5782 | **$23.87** |

Subject: Your ride with Doug on August 15

**Lyft Ride Receipt** <no-reply@lyftmail.com> Sat, Aug 15, 2020, 3:00
to dcaustin71

EXHIBIT N

**AUGUST 15, 2020 AT 2:09 AM**

# Thanks for riding with Doug!

100% of tips go to drivers. Add a tip

| | |
|---|---|
| Lyft fare (2.62mi, 6m 30s) | $8.61 |
| VISA Visa *5782 | **$8.61** |

Subject: Your ride with Ghulam on August 23

Lyft Ride Receipt <no-reply@lyftmail.com> Sun, Aug 23, 2020, 4:30
to dcaustin71

EXHIBIT N

AUGUST 23, 2020 AT 4:10 AM

# Thanks for riding with Ghulam!

100% of tips go to drivers. Add a tip

Since you updated your stop or destination, your fare reflects actual time and distance
Learn more

| | |
|---|---|
| Base fare | $1.08 |
| 14m 33s | $4.07 |
| 11.12 mi | $11.23 |
| Service fee | $2.85 |

VISA Visa *5782 **$19.23**

Subject: Your ride with Yosbel on August 26

**Lyft Ride Receipt** <no-reply@lyftmail.com> Thu, Aug 27, 2020, 2:04
to dcaustin71

EXHIBIT N

AUGUST 26, 2020 AT 9:51 PM

# Thanks for riding with Yosbel!

100% of tips go to drivers. Add a tip

| | |
|---|---|
| Lyft fare (5.71mi, 21m 50s) | $13.60 |
| VISA Visa *5782 | **$13.60** |

Subject: Your ride with Spencer on August 27

**Lyft Ride Receipt** <no-reply@lyftmail.com>
to dcaustin71

Thu, Aug 27, 2020, 4:46

EXHIBIT N

**AUGUST 27, 2020 AT 2:12 AM**

# Thanks for riding with Spencer!

100% of tips go to drivers. Add a tip

| | |
|---|---|
| Lyft fare (2.35mi, 8m 7s) | $7.81 |
| Visa *5782 | **$7.81** |

Subject: Your ride with Tommy on August 27

**Lyft Ride Receipt** <no-reply@lyftmail.com> Thu, Aug 27, 2020, 11:26
to dcaustin71

**EXHIBIT N**

**AUGUST 27, 2020 AT 5:08 AM**

# Thanks for riding with Tommy!

100% of tips go to drivers. Add a tip

| | |
|---|---|
| Lyft fare (2.71mi, 13m 27s) | $9.27 |
| VISA Visa *5782 | **$9.27** |

Subject: Your ride with Jesse on August 28

**Lyft Ride Receipt** <no-reply@lyftmail.com> Fri, Aug 28, 2020, 3:13
to dcaustin71

EXHIBIT N

**AUGUST 28, 2020 AT 2:36 AM**

# Thanks for riding with Jesse!

100% of tips go to drivers. Add a tip

Since you updated your stop or destination, your fare reflects actual time and distance
Learn more

| | |
|---|---|
| Base fare | $1.08 |
| 10m 24s | $2.91 |
| 2.22 mi | $2.24 |
| Service fee | $2.85 |

VISA Visa *5782 **$9.08**

Subject: Your ride with Joe on August 27

**Lyft Ride Receipt** <no-reply@lyftmail.com> Fri, Aug 28, 2020, 2:20
to dcaustin71

EXHIBIT N

AUGUST 27, 2020 AT 4:10 PM

# Thanks for riding with Joe!

100% of tips go to drivers. Add a tip

| | |
|---|---|
| Lyft fare (12.03mi, 30m 36s) | $23.18 |
| VISA Visa *6966 | **$23.18** |

Gmail Tread Carefully <dcaustin71@gmail.com>

**Lyft Rental Charge Receipt**

**Lyft** <receipts@lyftmail.com> Tue, May 5, 2020 at 6:33 AM
To: dcaustin71@gmail.com

lyft

**EXHIBIT N**

# $27.50 Thanks! We've processed your payment successfully

Charges to card ending with ***5782: $27.50

Contact

548 Market St., P.O. Box 68514, San Francisco, CA 94104
© 2020 Lyft, Inc.
CPUC ID No. TCP0032513 - P

Gmail Tread Carefully <dcaustin71@gmail.com>

**Lyft Rental Charge Receipt**

**Lyft** <receipts@lyftmail.com> Tue, Jun 2, 2020 at 8:56 AM
To: dcaustin71@gmail.com

**EXHIBIT O**

lyft

# $8.50 Thanks! We've processed your payment successfully

Charges to card ending with ***5782: $8.50

Contact

548 Market St., P.O. Box 68514, San Francisco, CA 94104
© 2020 Lyft, Inc.
CPUC ID No. TCP0032513 - P

Gmail Tread Carefully <dcaustin71@gmail.com>

**Lyft Rental Charge Receipt**

**Lyft** <receipts@lyftmail.com> Tue, Jun 30, 2020 at 9:54 AM
To: dcaustin71@gmail.com

**EXHIBIT O**

lyft

# $97.38 Thanks! We've processed your payment successfully

Charges to card ending with ***5782: $97.38

Contact

548 Market St., P.O. Box 68514, San Francisco, CA 94104
© 2020 Lyft, Inc.
CPUC ID No. TCP0032513 - P

Gmail Tread Carefully <dcaustin71@gmail.com>

**Lyft Rental Charge Receipt**

**Lyft** <receipts@lyftmail.com> Tue, Jul 7, 2020 at 8:51 AM
To: dcaustin71@gmail.com

**EXHIBIT O**

lyft

# $73.34 Thanks! We've processed your payment successfully

Charges to card ending with ***5782: $73.34

Contact

548 Market St., P.O. Box 68514, San Francisco, CA 94104
© 2020 Lyft, Inc.
CPUC ID No. TCP0032513 - P

**EXHIBIT P**

Gmail Tread Carefully <dcaustin71@gmail.com>

# Re: Lyft Help - Request Received

**Tread Carefully** <dcaustin71@gmail.com> Sat, Jul 4, 2020 at 6:46 PM
To: Lyft <support+id169279366@lyft-new.zendesk.com>

My Lyft Driver app is incorrectly stating that a Ford Fiesta is "IN USE" on my account. This is NOT true because I haven't owned a Ford Fiesta since November 2019. The app is not allowing me to change the status to NOT IN USE nor delete the vehicle from my account.

Please assist.




On Sat, Jul 4, 2020 at 6:44 PM Lyft <support@lyft-new.zendesk.com> wrote:

EXHIBIT P

##- Please type your reply above this line -##

This is an automatic confirmation to let you know we received your request for help from the Lyft app.

A customer support associate will investigate and reach out to you soon.

Thanks for your patience,

Lyft

This email is a service from Lyft. Delivered by Zendesk | Privacy Policy

--

This email is confidential. It is not permitted or approved, by the email's owner/originator, to be shared outside of the parties copied by the email's originator without the explicit consent and approval of the email's originator.

Lyft, Inc
185 Berry St. Suite 5000
San Francisco, CA 94107

**EXHIBIT Q**

If you have questions contact:
Lyft
Phone: (855) 280-0278

DEMETRIUS CROCKETT
3310 W. BRAKER LANE
AUSTIN, TX 78758

## Instructions for Payee

You have received this form because you have either (a) accepted payment cards for payments, or (b) received payments through a third party network that exceeded $20,000 in gross total reportable transactions and the aggregate number of those transactions exceeded 200 for the calendar year. Merchant acquirers and third party settlement organizations, as payment settlement entities (PSEs), must report the proceeds of payment card and third party network transactions made to you on Form 1099-K under Internal Revenue Code section 6050W. The PSE may have contracted with an electronic payment facilitator (EPF) or other third party payer to make payments to you.

If you have questions about the amounts reported on this form, contact the FILER whose information is shown in the upper left corner on the front of this form. If you do not recognize the FILER shown in the upper left corner of the form, contact the PSE whose name and phone number are shown in the lower left corner of the form above your account number.

See the separate instructions for your income tax return for using the information reported on this form.

**Payee's taxpayer identification number (TIN).** For your protection, this form may show only the last four digits of your TIN (social security number (SSN), individual taxpayer identification number (ITIN), adoption taxpayer identification number (ATIN), or employer identification number (EIN)). However, the issuer has reported your complete TIN to the IRS.

**Account number.** May show an account number or other unique number the PSE assigned to distinguish your account.

**Box 1a.** Shows the aggregate gross amount of payment card/third party network transactions made to you through the PSE during the calendar year.

**Box 1b.** Shows the aggregate gross amount of all reportable payment transactions made to you through the PSE during the calendar year where the card was not present at the time of the transaction or the card number was keyed into the terminal. Typically, this relates to online sales, phone sales, or catalogue sales. If the box for third party network is checked, or if these are third party network transactions, Card Not Present transactions will not be reported.

**Box 2.** Shows the merchant category code used for payment card/third party network transactions (if available) reported on this form.

**Box 3.** Shows the number of payment transactions (not including refund transactions) processed through the payment card/third party network.

**Box 4.** Shows backup withholding. Generally, a payer must backup withhold if you did not furnish your TIN or you did not furnish the correct TIN to the payer. See Form W-9, Request for Taxpayer Identification Number and Certification, and Pub. 505. Include this amount on your income tax return as tax withheld.

**Boxes 5a-5l.** Show the gross amount of payment card/third party network transactions made to you for each month of the calendar year.

**Boxes 6-8.** Show state and local income tax withheld from the payments.

**Future developments.** For the latest information about developments related to Form 1099-K and its instructions, such as legislation enacted after they were published, go to *www.irs.gov/Form1099K.*

X CORRECTED (if checked)

FILER'S name, street address, city or town, state or province, country, ZIP or foreign postal code, and telephone no.
Lyft, Inc
185 Berry St. Suite 5000
San Francisco, CA 94107

FILER'S TIN: 20-8809830

PAYEE'S TIN: [redacted]

OMB No. 1545-2205

**2020**

**Payment Card and Third Party Network Transactions**

Form **1099-K**

**Copy B**
**For Payee**

This is important tax information and is being furnished to the IRS. If you are required to file a return, a negligence penalty or other sanction may be imposed on you if taxable income results from this transaction and the IRS determines that it has not been reported.

Check to indicate if FILER is a (an):
- Payment settlement entity (PSE): X
- Electronic Payment Facilitator (EPF)/Other third party: ☐

Check to indicate transactions reported are:
- Payment card: ☐
- Third party network: X

PAYEE'S name, street address (including apt. no.), city or town, state or province, country, and ZIP or foreign postal code
DEMETRIUS CROCKETT
3310 W. BRAKER LANE
AUSTIN, TX 78758

PSE'S name and telephone number

Account number (see instructions): [redacted]

| Box | Description | Amount |
|---|---|---|
| 1a | Gross amount of payment card/third party network transactions | $ 20,009.11 |
| 1b | Card Not Present transactions | $ 0.00 |
| 2 | Merchant category code | 4121 |
| 3 | Number of payment transactions | 1,218 |
| 4 | Federal income tax withheld | $ |
| 5a | January | $ 5,503.42 |
| 5b | February | $ 4,990.26 |
| 5c | March | $ 3,938.62 |
| 5d | April | $ 2,610.55 |
| 5e | May | $ 1,940.48 |
| 5f | June | $ 1,015.67 |
| 5g | July | $ 10.11 |
| 5h | August | $ |
| 5i | September | $ |
| 5j | October | $ |
| 5k | November | $ |
| 5l | December | $ |
| 6 | State | TX |
| 7 | State identification no. | |
| 8 | State income tax withheld | $ |

Form **1099-K** (Keep for your records) www.irs.gov/Form1099K Department of the Treasury - Internal Revenue Service

0H8701 2.000

Lyft, Inc
185 Berry St. Suite 5000
San Francisco, CA 94107

EXHIBIT Q

Box 1 (NEC) = Nonemployee Compensation = $ 649.55

If you have questions contact:
Lyft
Phone: (855) 280-0278

DEMETRIUS CROCKETT
3310 W. BRAKER LANE
AUSTIN, TX 78758

## Instructions for Recipient

**Recipient's taxpayer identification number (TIN).** For your protection, this form may show only the last four digits of your TIN (social security number (SSN), individual taxpayer identification number (ITIN), adoption taxpayer identification number (ATIN), or employer identification number (EIN)). However, the issuer has reported your complete TIN to the IRS.

**FATCA filing requirement.** If the FATCA filing requirement box is checked, the payer is reporting on this Form 1099 to satisfy its chapter 4 account reporting requirement. You may also have a filing requirement. See the Instructions for Form 8938.

**Account number.** May show an account or other unique number the payer assigned to distinguish your account.

**Box 1.** Shows nonemployee compensation and/or nonqualified deferred compensation (NQDC). If you are in the trade or business of catching fish, box 1 may show cash you received for the sale of fish. If the amount in this box is self-employment (SE) income, report it on Schedule C or F (Form 1040 or 1040-SR), and complete Schedule SE (Form 1040 or 1040-SR). You received this form instead of Form W-2 because the payer did not consider you an employee and did not withhold income tax or social security and Medicare tax. If you believe you are an employee and cannot get the payer to correct this form, report this amount on the line for "Wages, salaries, tips, etc." of Form 1040, 1040-SR, or 1040-NR. You must also complete Form 8919 and attach it to your return. If you are not an employee but the amount in this box is not SE income (for example, it is income from a sporadic activity or a hobby), report this amount on the "Other income" line (on Schedule 1 (Form 1040 or 1040-SR); or on Form 1040-NR).

The amounts being reported as NQDC are includible in gross income for failure to meet the requirements under section 409A. This amount is also reported on Form 1099-MISC for additional tax calculation. See the Instructions for Forms 1040 and 1040-SR, or the Instructions for Form 1040-NR

**Box 2.** Reserved

**Box 3.** Reserved

**Box 4.** Shows backup withholding. A payer must backup withhold on certain payments if you did not give your TIN to the payer. See Form W-9, Request for Taxpayer Identification Number and Certification, for information on backup withholding. Include this amount on your income tax return as tax withheld.

**Boxes 5-7.** State income tax withheld reporting boxes.

**Future developments.** For the latest information about developments related to Form 1099-NEC and its instructions, such as legislation enacted after they were published, go to *www.irs.gov/Form1099NEC*

☐ CORRECTED (if checked)

REISSUED STATEMENT

OMB No. 1545-0116

**2020**

Form **1099-NEC**

**Nonemployee Compensation**

**Copy B**

**For Recipient**

PAYER'S name, street address, city or town, state or province, country, ZIP or foreign postal code, and telephone no.

Lyft, Inc
185 Berry St. Suite 5000
San Francisco, CA 94107

1 Nonemployee compensation
$649.55

PAYER'S TIN: 20-8809830

RECIPIENT'S TIN: [redacted]

2

3

RECIPIENT'S name, street address (including apt. no.), city or town, state or province, country, and ZIP or foreign postal code

DEMETRIUS CROCKETT
3310 W. BRAKER LANE
AUSTIN, TX 78758

**4 Federal income tax withheld**
$

This is important tax information and is being furnished to the IRS. If you are required to file a return, a negligence penalty or other sanction may be imposed on you if this income is taxable and the IRS determines that it has not been reported.

FATCA filing requirement ☐

Account number (see instructions) [redacted]

| 5 State tax withheld | 6 State/Payer's state no. | 7 State income |
|---|---|---|
| $ | TX / | $ |

Form **1099-NEC** (keep for your records)

www.irs.gov/Form1099NEC Department of the Treasury - Internal Revenue Service

0H8164 6.000

## Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Envelope ID: 98117451
Filing Code Description: No Fee Documents
Filing Description: 60 Day Notice Of Intent To Add DTPA Offenses Pursuant To The Texas Deceptive Trade Practices Act As An Amended Claim In Plaintiff's Petition Pending Case Status At The 60 Day Mark
Status as of 3/6/2025 5:41 AM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Demetrius Crockett | | dcaustin71@gmail.com | 3/5/2025 4:48:29 PM | SENT |
| Lyft Inc | | legal@lyft.com | 3/5/2025 4:48:29 PM | SENT |
| Deidra Cobb | | deidra.cobb@pierferd.com | 3/5/2025 4:48:29 PM | SENT |
| Bradley Bush | | bradley.bush@pierferd.com | 3/5/2025 4:48:29 PM | SENT |
| Bryan Pollard | | bryan.pollard@pierferd.com | 3/5/2025 4:48:29 PM | SENT |

EXHIBIT D

3/5/2025 5:34 PM
Velva L. Price
District Clerk
Travis County
D-1-GN-25-001601
Candy Schmidt

# Case # D-1-GN-25-001601

**Demetrius Crockett**
**(Plaintiff)**

**Vs**

**Lyft, Inc.**
**(Defendant)**

**In the 261st**

**District Court**

**of**

**Travis County, Texas**

# Motion for Summary Judgment

**TO THE HONORABLE JUDGE OF SAID COURT, NOW COMES Demetrius Crockett, the Plaintiff in the above-styled and numbered cause, and files this Motion for Summary Judgment pursuant to Rule 166a of the Texas Rules of Civil Procedure, for judicial efficiency, and in support thereof would respectfully show the Court as follows:**

## I. INTRODUCTION

1. This is a Motion for Summary Judgment based on grounds of undisputed material facts and specific legal principles.

2. Summary judgment is proper in this case because there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law.

## II. STATEMENT OF UNDISPUTED FACTS

**On Fri, Dec 6th, 2019** Plaintiff signed a rental car agreement under the Defendant's Flexdrive rental car program. **(See Exhibit A)**. The rental agreement clearly states "*Renter acknowledges that Renter has no right to renewal of a rental and that Flexdrive may refuse to renew the Rental Period or permit Renter to rent again for any reason*, including without limitation excessive mileage or wear and tear on the Rental Car *or failure to pay charges*." **(See Exhibit A Pg. 4)**

**On Fri, May 29th, 2020 at 10:26 AM CST**, Plaintiff was contacted by Lyft to "*Please schedule and complete the necessary maintenance with one of our partners and complete in the next 48 hours to remain eligible to rent with Lyft*" **(See Exhibit C)** which the Plaintiff complied with.

**On Jul 2, 2020, 12:14:43 PM CST,** unbeknownst to the Plaintiff, Lyft Inc. had already ended the Plaintiff's rental agreement internally, in their systems, **(See Contract End Exhibit B),** which Plaintiff discovered after the conducting due diligence discovery for lawsuit.

# Case # D-1-GN-25-001601

What follows are date and time stamped accurate and truthful accounts of the Defendant unlawfully and unconstitutionally leading the Plaintiff on and deceiving the Plaintiff, making him believe that the rental car's routine maintenance was being conducted while what can only be concluded taking place was, but not limited to, devising an agenda to falsify records, commit blatant fraud, violate the Plaintiff's civil /constitutional rights and violate Texas Penal Codes to inflict unlawful, malicious, cruel and intentional, emotional distress and overwhelming financial hardships upon the Plaintiff and his family.

**On Sat, July 4th, 2020 at 6:46 PM CST,** Plaintiff reached out the Defendant again in good-faith, under extreme emotional distress and surmounting financial hardships to inform the Defendant of the toll the incident was taking on him and to remind the Defendant's that he has no vehicle to use on the Lyft Platform. **(See Exhibit P)**

**On Thu, Jul 9th, 2020 at 3:34 PM CST,** Plaintiff was informed via email that a routine background check was being run and he would not be able to drive nor earn living expenses on the Lyft platform period. **(See Exhibit D)**

**On Thu, Jul 9th, 2020,** after receiving the Jul 9th, 2020 3:34 PM CST emotionally distressing message that would make it impossible for the Plaintiff to earn further living expense income on the Defendant's platform during the extensive background check, Plaintiff incurred alternative rental car expenses equating to **$3,798** , that span over 5 months **(See Exhibit E )**, as means for transportation to earn income on alternate Gig Worker platforms.

**On Fri, Jul 31st, 2020 at 12:41 PM CST**, Plaintiff returned to pick up his rental after it had been routinely serviced to find out that his background check was fine, but the Defendant had cited him for a chargeback / failure to pay. The Defendant also informed the Plaintiff that his Lyft Driver Account would remain on hold **(See Exhibit F).** The Plaintiff's renter's rights were denied and he was not allowed to resolve the matter through another form of credit card owner payment.

**On Sat, Aug 1, 2020 at 6:31 PM CST**, Plaintiff was informed by a Lyft Representative that the chargeback / failure to pay incident was being investigated. **(See Exhibit G)**

**On Wed, Oct 28, 2020 at 4:17 PM CST**, Plaintiff reached out the Defendant again in good-faith, under extreme emotional distress and surmounting financial hardships to understand what was transpiring with the investigation and didn't get a progress report from the Defendant other than internal systems causing a problem. **(See Exhibit H)**

# Case # D-1-GN-25-001601

**On Mon, Dec 21, 2020, 4:42 PM CST,** after no professional courtesy follow up from the Defendant, Plaintiff reached out to the Defendant *again* in good-faith, under extreme emotional distress and surmounting financial hardships regarding a status update for the thorough investigation into what transpired with the Plaintiff's Lyft Driver account's credit card that Lyft claimed caused the chargeback / failure to pay and got same no progress update response. **(See Exhibit I)**

**On Wed, Dec 23rd, 2020,** due to the Defendant's lengthy (**approaching 5 months**) hold on his Lyft Flexdrive rental rights and lengthy investigation that ultimately and irrefutably proved fraud was committed by the Defendant and due to surmounting living expenses, the Plaintiff had to incur further emotional distress, debt and financial burden equating to **$20, 589,** for a vehicle purchase as a means to continue Gig Work on alternate platforms for living expense income. **(See Exhibit J)**

**On Wed, Jan 6, 2021 at 3:47 PM CST, *almost 6 months after a suspicious hold*** was put on the Plaintiff's Lyft Driver account, Defendant informed the Plaintiff that their **thorough** investigation found that the chargeback / failure to pay was from the Plaintiff's USAA credit card ***ending in 3869*** **(See Exhibit K).** Plaintiff has never had, nor owned, a USAA account nor has the Plaintiff ever owned a USAA credit card ***ending in 3869***.

**On Wed, January 27th, 2021 at 3:58 PM CST** per an official USAA's Fraud Department's initial investigation into the Defendant's claims and allegations against Plaintiff, it was confirmed that the Plaintiff has never had a USAA account, nor has the Plaintiff ever owned a USAA credit card further confirming and validating that fraud, falsification of records, deception, misrepresentation and breach of contract had been committed by the Defendant. **(See Exhibit L)**

**On Wed, March 17th, 2021**, after the Plaintiff provided his name, address, email address, phone number (at that time) and social security number again to USAA for a thorough investigation, Plaintiff received confirmation and validation, on official USAA letterhead from Advocacy Director, Michael J. Rodriguez of never owning a USAA account nor a USAA credit card. **(See Exhibit M)**

The Defendant, to this day, refuses to lawfully correct the fraud, deceit, defamation and inaccuracies on the Plaintiff's Lyft Driver account to enable his rental ability.

Since the Plaintiff also purchased personal miles with every week of Lyft Flexdrive rental, as a direct result of the Defendant's civil and criminal offenses, the Plaintiff incurred unnecessary rideshare expenses equating to **$683** for transport over the incident's duration. **(See Exhibit N)**

# Case # D-1-GN-25-001601

Documents labeled as "**Exhibit O**" show date and time stamped records, from the Defendant, regarding the Plaintiff's use of his credit card **ending in 5782 for Lyft Inc. Flexdrive rental service payments, *not a credit card ending in 3869*** as well as some, of many, examples of suspiciously unethical operational integrity and prejudice towards the Plaintiff while active on the Lyft Driver app platform that led up to the unlawful and unconstitutional chargeback that indefinitely prohibited the Plaintiff's Flexdrive rental ability. Additionally Plaintiff lost $3443.11 per month / $**20,659** in earnings, based on YTD earnings totals on the Defendant's platform, due to Defendant's civil and criminal offenses over a 6 month timeframe. **(See Exhibit Q)**

## III. LEGAL STANDARD

Under Rule 166a of the Texas Rules of Civil Procedure, summary judgment shall be rendered if the pleadings, depositions, admissions, affidavits, and other evidence on file show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

## IV. ARGUMENT

**Legal Principle 1**: Plaintiff's credit card used for a rental charge was falsified by Defendant. Plaintiff never committed the offense nor violated his contract; the Defendant made false allegations and **defamed the Plaintiff (Civil and Criminal Offense) under Texas Civil Practice & Remedies Code 73.001**.

**Legal Principle 2**: Defendant committed **blatant fraud** (Criminal Offense) against the Plaintiff and **violated Texas Penal Code 32.46**.

**Legal Principle 3**: Defendant falsified Plaintiff's ownership of a credit card in his name which is **Forgery under Texas Penal Code 32.21** (Criminal Offense).

**Legal Principle 4**: Defendant committed fraud / falsification of Plaintiff's credit card records that caused a violation with the Plaintiff's Flexdrive contract so it would appear that he breached the contract. The Plaintiff was denied good-faith efforts to resolve the matter with a credit card that he lawfully owned, in his name. **The Defendant's actions involving civil and criminal offenses breached the Plaintiff's Lyft Flexdrive rental agreement** (Criminal and Civil Offense).

# Case # D-1-GN-25-001601

**Legal Principle 5**: Defendant operated with complete unlawful and unconstitutional disregard for ethical principles, lawful remedies, accurate record keeping and operational integrity in **bold violation and defiance of the Texas Deceptive Trade Practices Act (DTPA) (Civil Offense)**.
**Legal Principle 6**: **Defendant's actions were malicious; as of Sat, July 4th, 2020** at 6:46 PM CST, the Defendant was well aware of the Plaintiff not owning a vehicle **(See Exhibit P)** to conduct Lyft Inc. independent contractor work for living expense income and further prohibited the Plaintiff from using Lyft's Flexdrive rental program to conduct independent contractor work for income. **This resulted in severe infliction of emotional distress and infliction of overwhelming financial hardship upon the Plaintiff and his family.** (Criminal and Civil Offense).

**Legal Principle 7:** The Defendant wrongly and unlawfully cited and blamed USAA as the entity responsible for fraud committed against the Plaintiff which is **Tortious Interference with USAA's business relations and disrupted USAA's internal operations** (Civil Offense).

## V. EVIDENCE

This motion is supported by the following evidence:

1. USAA Advocacy Director, Michael J. Rodriguez letter to Plaintiff on official USAA letterhead. **(See Exhibit M)**
2. All Exhibits presented with this Motion for Summary Judgment.

## VI. PRAYER FOR RELIEF

WHEREFORE, PREMISES CONSIDERED, Demetrius Crockett respectfully requests that this Court grant this Motion for Summary Judgment and render judgment in favor of the Plaintiff as follows:

**1. Personal Damages**

- **Actual damages in an amount to be awarded;$45,729**
- **Punitive damages: $20,000**
- **Reasonable attorney's fees and costs;**
- **Pre- and post-judgment interest to be determined at trial;**
- **Any other relief the Court finds just and equitable**

**2** . Refer Defendant to Austin Police Department or prosecutor for criminal proceedings.
**3** . Such other and further relief to which Plaintiff may be entitled.

4 . Order Defendant to remove the unlawful and unconstitutional Lyft rental car ban and all instances of defamation against Plaintiff on Lyft's Driver platform, Plaintiff's Driver records and all independent contractor partner records.

**5 . For each year the Plaintiff was unlawfully and unconstitutionally wronged, award the Plaintiff a Top-Tier Lyft rental car of his choice.**

Respectfully submitted,

**Demetrius Crockett**
**3310 W. Braker Lane**
**Austin, Texas 78758**
**512-553-5455**
**youcanusemyemailaddress@gmail.com**

## Certificate of Service

**I hereby certify that a true and correct copy of the foregoing Motion for Summary Judgement has been served, via electronic filing, to Lyft Inc., on this the 5th day of March 2025, electronically and in accordance with the Texas Rules of Civil Procedure.**

**Demetrius Crockett**

D. Crockett 3/5/25

flexdrive

# Flexdrive Rental Agreement for Lyft Drivers

**EXHIBIT A**

## Renter

DEMETRIUS CROCKETT
2121 Lohmans Crossing Rd, #211
Austin, TX 78734

dcaustin71@gmail.com
[redacted]

## Vehicle

2018 NISSAN SENTRA
VIN: 3N1AB7AP3JY248644
License Plate: KHM9593

## Rental Weekly Pricing

2019-12-06 - 2019-12-13

Base Rate: **$179.00** (excluding taxes), includes **200** Period 0 (offline) miles (as defined in the Flexdrive Rental Agreement for Lyft Drivers referenced below).

Charge for excess personal (P0) miles: **$25.00** per **50** miles, plus applicable taxes. You will be charged this amount if you exceed the personal (P0) miles allowed under your base rate as indicated above.

*Note: Please refer to your weekly billing statements (every Tuesday) for final charges.*

## Rental Weekly Taxes

Texas State Car Rental Excise Tax 1-30 Days: **$17.90**
Austin City Local Sports Venue Excise Tax: **$8.95**

## Start

2019-12-06 - 3:42pm UTC
Odometer: 116658 miles

## End

2019-12-13 - 3:42pm UTC
Odometer: -- miles

## Location

flexdrive

AUS 03 - Elmo
2101 E St. Elmo Rd, Suite 3150
Austin, TX 78744

EXHIBIT A

## Inspection

Driver Side: **Excellent**
--

Front: **Excellent**
small crack on the windshield that has been filled, bottom center. small scuff.

Front Carpets: **Excellent**
--

Front Seats: **Excellent**
--

Headliner: **Excellent**
--

Passenger Side: **Excellent**
scratch back door about 3 inch.

Rear: **Excellent**
Scuffs on the back bumper

Roof: **Excellent**
--

Rear Carpets: **Excellent**
--

Rear Seats: **Good**
staining on middle seat

Amp: **Excellent**
--

Spare Tire: **Excellent**
--

Trade Dress And Docs: **Excellent**
--

Trunk: **Excellent**
--

Fuel: **3/4**
1/8 less than a full tank of gas upon pickup

flexdrive

EXHIBIT A

## Agreement

Terms of the Flexdrive Rental Agreement for Lyft Drivers shall be found here: https://www.lyft.com/drive/expressdrive/terms/FLEXDRIVE

I agree to rent the vehicle described in this agreement on the terms outlined above. I understand and agree that my rental of the vehicle is subject to the Flexdrive Terms of Use and my Membership Agreement, including (without limitation) charges for excess mileage fees that exceed the mileage allowance listed above. Any renewal of this rental shall be on the same terms as set forth above.

I agree that any renewal of this rental may be evidenced by (a) any written communication from me to Flexdrive, including text messages or email, (b) me accepting renewal via any Flexdrive mobile application or online interface, or (c) a confirmation text message or email from Flexdrive to me following my oral acceptance of renewal.

## Signature

# Rental end: Turner Crockett

flexdrive

RENTAL END

**EXHIBIT B**

## Rental agreement for Lyft drivers

### Renter

**Turner Crockett**
2121 Lohmans Crossing Rd
#211
Austin, TX 78734

dcaustin71@gmail.com
[redacted]

### Vehicle

**MIDSIZE**
**3N1AB7AP3JY248644**
2018 Nissan Sentra



TX KHM9593

### Rental details

**Rental location:**
Austin - Flexdrive - 6375 US-290
6375 US-290
Austin, TX 78723

**Rental period:**
Jul 2, 2020, 11:38:12 AM - Jul 2, 2020, 12:14:43 PM

**PRICING PLAN:**

**400 personal miles:**

| | |
|---|---|
| Vehicle base rate | $249.00 |
| Taxes & fees | $37.35 |
| **Total** | $286.35 |

**Extra miles:**

$25.00 per 50 miles

### Vehicle inspection & charges

**CHARGES**

Minor damage excess wear $250.00

**EXTERIOR DAMAGE CHARGES**

EXHIBIT B

Rear

Fair

Scuffs on the back bumper. dent on trunk bigger than largest circle on damage evaluator

**PREEXISTING DAMAGES (DRIVER NOT RESPONSIBLE)**

Front

Excellent

small crack on the windshield that has been filled, bottom center. small scuff.

Fuel

3/4

1/8 less than a full tank of gas upon pickup

Passenger side

Excellent

scratch back door about 3 inch.

Rear seats

Good

staining on middle seat

**INTERIOR DAMAGE CHARGES**

Front seats

Fair

interior part of driver door is torn up

**Total owed by driver** $250.00

## Agreement

I agree to rent the vehicle described in this agreement on the terms outlined above. I understand and agree that my rental of the vehicle is subject to the Flexdrive Terms of Use and my Membership Agreement, including (without limitation) charges for excess mileage fees that exceed the mileage allowance listed above. Any renewal of this rental shall be on the same terms as set forth above.

I agree that any renewal of this rental may be evidenced by (a) any written communication from me to Flexdrive, including text messages or email, (b) me accepting

renewal via any Flexdrive mobile application or online interface, or (c) a confirmation text message or email from Flexdrive to me following my oral acceptance of renewal

EXHIBIT A

Updated as of April 23, 2019

By accepting below, you (the "Renter", "you", "your") are agreeing to be a party to this Flexdrive Rental Agreement for Lyft Drivers (this "Agreement" or "Rental Agreement") with Flexdrive Services, LLC, a Delaware limited liability company ("we", "us" or "Flexdrive"). This Agreement is effective as of the date of your E-Signature, regardless of whether you use the Services (the "Effective Date").

As used in this Agreement, "Lyft" means Lyft, Inc., a transportation network company for which Renter has been approved to use the Lyft network on an independent contractor basis, and "Lyft Rental Program" means the program through which Flexdrive shall provide vehicles for rent specifically to Lyft drivers ("Lyft Drivers").

Pursuant to this Agreement, you and Flexdrive agree as follows:

1. REPRESENTATIONS ABOUT YOURSELF

A. All information provided by you in your personal profile as provided to Lyft is true and complete, and you consent to Lyft sharing that information with us to the extent necessary for us to verify your eligibility to rent vehicles from us and otherwise to perform the fleet management, rental and ancillary activities described herein. To the extent this information changes during the term of this Agreement, as defined in Section 10 below (including without limitation, if you receive, are convicted of or admit to any traffic or moving violations), you will promptly notify Lyft of the change. You acknowledge that your acceptance of the terms of this Rental Agreement does not bind Flexdrive as a party to this Agreement and that you are not a Renter for purposes of utilizing our Services until a notice of acceptance of this Agreement is delivered to you by Flexdrive.

B. As part of the application process to participate in the Lyft Rental Program, Flexdrive, Lyft and/or their licensed insurance carriers may order one or more consumer reports on you. A consumer report may contain information on driving records and criminal activity, among other things. In the event that participation in the Lyft Rental Program is denied to you based wholly or partly on information in a consumer report, you will be notified of this fact and given the name and address of the consumer reporting agency making the report. Flexdrive maintains the right to suspend and/or revoke eligibility to participate in the Lyft Rental Program at any time.

C. We are committed to protecting your privacy. Any information submitted or collected in connection with the Services or your participation in the Lyft Rental Program is subject to our Privacy Policy, the terms of which can be found on the Flexdrive website at www.flexdrive.com.

2. FLEXDRIVE SERVICES

Under the Lyft Rental Program, Flexdrive manages a fleet of vehicles and offers such vehicles for rent (each, a "Rental Car") to Renters and enables Renters who are Lyft Drivers, in connection with the rental and use of such Rental Cars, to use the corresponding websites, mobile applications, online tools and features supplied by Lyft and/or Flexdrive for the rental usage and management by the Renters (provision of Rental Cars and such additional services are collectively, the "Services"). Renter acknowledges and agrees that (i) Flexdrive may not own all such Rental Cars, which may be provided by third parties subject to lease agreements (or, in certain states, loan agreements) with Flexdrive; (ii) Flexdrive provides its Renters the ability to rent Rental Cars for specified short term periods of up to the legal limit for rentals in the area where you rent; (iii) Flexdrive does not provide transportation services, and is not a transportation carrier; and (iv) while Flexdrive offers a method to connect drivers with suitable vehicles for their needs, it does not provide transportation services or act in any manner as a transportation carrier.

Any use of or access to the Services is subject to certain eligibility requirements, and the Services are not available to or authorized for use by any users previously removed as a Renter by Flexdrive or by any users or persons acting on behalf of an organization or entity and not in his or her personal or

individual capacity, except as required by applicable law.

TO BE ELIGIBLE FOR AND TO MAINTAIN PARTICIPATION IN THE LYFT RENTAL PROGRAM, YOU MUST PASS AND MAINTAIN THE ELIGIBILITY REQUIREMENTS TO BE A LYFT DRIVER.

3. USE OF OUR SERVICES

Your use of a rented Rental Car as a Renter must at all times comply with all the terms of this Agreement, as updated from time to time, and all applicable local, state, national, and international laws, rules and regulations. Flexdrive reserves the right to modify the terms and conditions of this Agreement at any time, effective upon posting an updated version of the Agreement on our website: www.flexdrive.com. You are responsible for regularly reviewing this Agreement. Continued use of our Services after any such changes shall constitute your consent to such changes.

NATURE OF RENTAL; RENTAL PERIOD

(1) This is a contract for the rental of a Rental Car. The rental is made in connection with Renter's participation in the Lyft Rental Program, which Renter acknowledges is intended primarily for the commercial purpose of serving as an independent contractor Lyft Driver. Renter does not have the right to sublease the Rental Car or assign any of his/her rights under this Agreement. The initial rental period for the Rental Car is 7 calendar days (i.e., one calendar week) (the "Initial Rental Period"). Unless you return the Rental Car on or before the date and time specified for return on the Rental Record ("Return Date"), the rental will automatically renew for additional 7-day periods, for a maximum of three (3) additional weeks beyond the Initial Rental Period (or such shorter period as mandated by applicable law) (together with the Initial Rental Period, the "Rental Period"); provided that: (a) you are in good standing and in compliance with your obligations under the Agreement, including the obligation to remain eligible for participation in the Lyft Rental Program; (b) Flexdrive may require Renter to return the Rental Car for inspection; and (c) the total Rental Period does not exceed the maximum duration specified in this Agreement. Renter acknowledges that taxes, fees, and other charges estimated during the Initial Rental Period may be subject to change during the remainder of the Rental Period or during subsequent Rental Periods. Renter must: (x) notify Flexdrive at the end of each Rental Period of the Rental Car's then-current mileage, and (y) exchange the Rental Car upon Flexdrive's request. Renter acknowledges that Renter has no right to renewal of a rental and that Flexdrive may refuse to renew the Rental Period or permit Renter to rent again for any reason, including without limitation excessive mileage or wear and tear on the Rental Car or failure to pay charges. If a rental is not renewed, at the discretion of Flexdrive, regular late fees will apply, if a Rental Car is not returned at the end of the Rental Period. In addition, Flexdrive may demand that Renter return the Rental Car at any time during a Rental Period. To the extent permitted by law, Flexdrive may repossess the Rental Car at your expense without notice to you, if the Rental Car is abandoned or used in violation of law or this Agreement.

ONLY FOR RENTALS IN THE STATE OF MARYLAND: For any Rental Agreement signed in, and subject to the laws of, the state of Maryland, the Rental Period (including the initial 7-day period and any renewals) shall not exceed one hundred and twelve (112) days, meaning you must return your Rental Car on or before the 112th day after you sign your Rental Agreement.

(2) Reservation of a Rental Car through the Lyft reservation system does not guarantee a reservation on the selected vehicle or the selected class of vehicle.

(3) Security deposits or non-refundable starter fees may be required to rent Rental Cars in some markets and are assessed by Lyft at the time of the Renter's first rental. Security deposits are refundable after the return of a Rental Car, via the Lyft payment process in the next pay period following the return of a Rental Car, subject to vehicle condition and to payment by Renter of any other outstanding amounts due and payable under the Lyft Rental Program (e.g., tolls, violations, etc.). At the time of return of a Rental Car, the Renter will either have the remaining balance of the Security Deposit held and applied to the next Flexdrive rental or refunded via the Lyft payment process. Starter fees are payments made by Renters to participate in the Lyft Rental Program and are only refundable in the event the Renter never drives the Rental Car, returns the Rental Car prior to the expiration of the Initial Rental Period, or as otherwise stated by Lyft during the application process, provided that the starter fee may be used and applied to any outstanding amounts due and payable under the Lyft Rental Program.

EXHIBIT A

(4) In New York, Flexdrive may offer Rental Cars that are licensed with the New York Taxi & Limousine Commission ("TLC") (such Rental Cars may also be referred to herein as "TLC Rentals") to you if you are an authorized TLC driver ("TLC Driver"). Provisions in this Agreement referring to Rental Cars shall be deemed to include TLC Rentals unless stated otherwise. Provisions in this Agreement related to drivers or Lyft Drivers shall be deemed to include TLC Drivers unless stated otherwise.

GENERAL OVERVIEW OF THE RULES

(1) Flexdrive connects drivers with Rental Cars available for rent. As such, we have a number of rules designed to ensure that our Rental Cars remain in good condition for the next driver. Accordingly, Renters should follow the guidelines below, as well as all other terms of this Agreement.

Report all damage: Before you drive away with your Rental Car, inspect your Rental Car inside and out. To report damage, a dirty Rental Car, or low fuel, inform the Lyft or Flexdrive representative before you take possession of the Rental Car. If the Rental Car sustains any damage during the Rental Period, inform your Lyft or Flexdrive representative as soon thereafter as reasonably practicable.
Keep all Rental Cars clean: Take personal belongings with you when you go and throw away or recycle any trash.
No smoking: Smoking is never permitted in a Rental Car, even with all the windows down or all the doors open. Smoking in a Rental Car is a violation of this Agreement.
Rental Car must be returned with the same level of fuel that it was originally rented with, otherwise the Renter may be charged a refueling fee.
Vehicles that are returned excessively dirty due to the presence of pets that are not service animals may be assessed an additional cleaning fee.
Drive as if it is your own car: While Flexdrive and/or Lyft maintain insurance on all Rental Cars available through the Services, to the extent permitted by law and subject to the other provisions of this Agreement, you will be responsible for all theft, uncovered damages, costs, and deductibles resulting from your use of the Rental Car and for all damages that result from a breach of this Agreement.

(2) Failure to comply with the provisions of this Agreement may cause a Renter to incur additional charges, fines and penalties, which you agree may be automatically deducted by Lyft from your Lyft Driver ride earnings or charged by Lyft to the credit card that may be kept on file by Lyft. The following fees will apply:

AMP : $50.00
EV Charge Card Replacement (Electric Vehicle Rentals Only) : $50.00
EV Charge Cord Replacement (Electric Vehicle Rentals Only) : $500.00
Excessive Pet Cleaning : $250.00
1/4 Tank of Gas Fill Up : $18.75
2/4 Tank of Gas Fill Up : $37.50
3/4 Tank of Gas Fill Up : $56.25
4/4 Tank of Gas Fill Up : $75.00
Key Fob Replacement : $300.00
Lost or Damaged Transponder : $50.00
Lyft Trade Dress : $10.00
Minor Damage : $500.00
Minor Excess Wear and Tear : $250.00
Minor Wear and Tear : $100.00
Phone Mount : $10.00
Recovery Fee : $500.00
Remote Unlock : $100.00
Smoke Removal : $300.00
Spare Tire Replacement : $200.00
Vehicle Cleaning : $50.00
Vehicle Detail : $150.00

(3) In the event Renter fails to satisfy and maintain satisfaction of the requirements under the Lyft Rental Program during the Rental Period, and therefore does not qualify as eligible to participate in the Lyft Rental Program with Flexdrive, Renter shall be charged the agreed upon rate for the Rental Car for the entire duration of the rental and will be required to return the Rental Car. In addition to the

requirements stated throughout this Agreement, the following requirements apply, without limitation:

a. Completing a minimum number of paid rides on the Lyft Platform for each calendar week during the Rental Period. The number of rides required for this weekly minimum may vary by region.
b. Maintaining all necessary licenses, permits, authorizations or permissions to use the Rental Car to provide “for hire” transportation of passengers in the jurisdiction where Renter provides such services.
c. Complying with Lyft's terms of service (found at www.lyft.com/terms) and maintaining good standing on the Lyft platform at all times during the Rental Period; and
d. Complying with the terms of this Agreement.

EXHIBIT A

PROHIBITED USES OF RENTAL CARS

(1) Any unreasonable, inappropriate or unlawful use of a Rental Car, as determined by Flexdrive in its sole discretion, may be deemed a breach of this Agreement. Without limiting the foregoing, Renters must always use Rental Cars in accordance with all traffic, motor vehicle, highway and other applicable laws and regulations. If you violate any laws, Flexdrive will report to the authorities information about you or the Rental Car as and to the extent required by applicable law. Without limiting the foregoing, the use of a Rental Car under the following conditions is prohibited:

o Any speed race or competition;
o For the purpose of towing, pushing, or propelling any trailer or any other vehicle;
o For moving furniture, household goods, or other general moving activities;
o For any commercial or business purposes other than serving as a Lyft Driver including, without limitation, for the purpose of transporting people or goods or providing transportation services through any entity other than Lyft. Any “for hire” transportation using Rental Cars other than transportation services provided on the Lyft platform is a violation of the Agreement. Notwithstanding the foregoing, this restriction shall not apply to TLC Drivers’ use of TLC Rentals, who may engage in other “for hire” transportation of passengers as permitted under applicable law.
o Any transportation services on the Lyft platform originating from locations outside of the "authorized territory" for Lyft operations as designated through the Lyft application.
o By any person who is under the influence of (i) alcohol; or, (ii) any drug or medication under the effects of which the Renter’s operation of a vehicle is impaired or the use of a vehicle is prohibited or not recommended;
o In the carrying out of any crime or for any other illegal activity or purpose;
o In an imprudent, negligent, or abusive manner or any other abnormal use of a vehicle;
o Driving or transporting a Rental Car from the US into Canada;
o Driving or transporting a Rental Car from the US into Mexico;
o Carrying a number of passengers that exceeds the designed seating capacity of the vehicle or baggage, cargo or other items that would cause the Rental Car to be overloaded or otherwise exceed its recommended weight capacity;
o Carrying or transporting any hazardous, toxic, flammable, dangerous or illegal materials;
o Driving while using a mobile communication device that may distract you from driving, including driving while texting, emailing, using a cell phone without a hands-free device or otherwise engaging in similar activities that may be prohibited by applicable law; or
o Any other activity prohibited by law or public policy.

(2) Further, Renter agrees that Renter will not (and will not permit passengers or others to): (a) smoke cigarettes, cigars, pipes or other tobacco products in the Rental Car; (b) remove, tamper with or disable the tracking device or other hardware, software or electronics that are installed in the Rental Car; (c) perform repairs or maintenance services on the Rental Car or make any modifications to the Rental Car; (d) make any cosmetic changes to the Rental Car including, without limitation, painting, striping or window tinting; (e) replace the Rental Car’s wheels or other parts; or (f) damage or deface the Rental Car.

IF YOU HAVE A BREAKDOWN OR AN INCIDENT

(1) Flexdrive provides Renter with all necessary and required routine maintenance on all Rental Cars. However, Renters are responsible for helping maintain the driving safety and performance of the Rental Car. Renters must be responsive to all warning lights, chimes and other indicators and alerts.

(2) Rental Cars may require Roadside Assistance from time to time. Flexdrive provides Roadside

Assistance support as part of the Service. If, however, a Renter's need for Roadside Assistance results from a breach of this Agreement, the Renter may be charged for the services provided.

(3) Atypical noises or driving feel, including but not limited to warning lamps, indicators, inappropriate or strange engine or other mechanical sounds, performance changes or unusual driving feel, must be reported to Lyft as soon as noted. Failure to report such irregularities during a Rental Period may result in the Renter's immediate suspension or termination of participation in the Lyft Rental Program, as well as the Renter being responsible for any damages resulting from the continued use of the Rental Car despite such irregularities to the extent permitted by law. Such damages are not covered by the insurance maintained by Flexdrive, Lyft, or otherwise through the Lyft Rental Program.

(4) You should report all breakdowns to the Lyft Rental Program's Roadside Assistance line at (844) 400-1449 as soon as reasonably practicable. Accidents or similar incidents involving Rental Cars should be reported to Lyft immediately by calling Lyft's Critical Response Line through the Lyft Driver app as well as calling 911.

(5) If a problem arises that prevents or limits the use of the Rental Car or that may compromise safety, you must notify Lyft and Flexdrive immediately and follow any communicated instructions from Lyft and/or Flexdrive.

EXHIBIT A

(6) In case of an incident involving property damage or any third party, the Renter must take the following action:
o Contact law enforcement to file a police report as soon after the incident occurs as is reasonably practicable, and, if possible, provide law enforcement a jointly agreed-upon statement between you and the third party.
o Call Lyft's Critical Response Line as soon after the incident occurs as is reasonably practicable to report the incident details, including:
a. Date, time, and place of incident;
b. The license plate numbers of any other vehicles involved, their make and year, their identification number (serial number), and the insurance certificate's number (with name, address and phone number of the insurance agent; if possible obtain a digital photo of the other driver's insurance card);
c. The names, addresses, and driver's license numbers of the persons involved in the incident;
d The name, address, and driver's license number of the owner of the car (if he or she is not the driver);
e. The name, addresses, and phone number of witnesses, passengers, and any other involved persons;
f. Circumstances of the incident; and
g. If one was completed, any police report will be required regardless of liability or fault.

(7) The Renter must provide to Lyft, Flexdrive, and any other claims adjustment service the findings of any report or any notice or other written communications relating to a claim or a lawsuit against Lyft, Flexdrive or any other claims adjustment service regarding any incident involving a Rental Car. Renter agrees to cooperate fully with Lyft, Flexdrive, and any other claims adjustment service in the investigation and defense of any such claim or lawsuit. A Renter's account and Lyft platform access may be suspended until the investigation has concluded.

(8) The Renter will be responsible for the charges related to the theft, repair, recovery and loss of use of any Rental Car and all third party injuries and property damages resulting from any of the foregoing to the extent they are not covered by insurance and as permitted by applicable law. Estimates for any costs will be available to the Renter for review. To the extent permitted by law, the Renter will be responsible for all applicable damages and charges arising from the Renter's failure to comply with the terms of this Agreement. Insurance coverage included with the Renter's Lyft Rental Program rental is set forth in Section 6, below.

TRAFFIC/TOLL/PARKING VIOLATIONS

(1) You are responsible for any traffic violations incurred during your reservation or as a result of your use of a Rental Car. These include, but are not limited to, parking, speeding, red light, photo enforcement, and toll violations. You are liable for all penalties/fees from any such violation, including fines for late payment and any processing penalties/fees added by the issuing municipality. You are liable for payment of all tolls and any fines for toll evasion. Wherever possible it is the Renter's

responsibility to pay the relevant authorities directly. Flexdrive and/or Lyft may impose a fee in connection with processing any such violations, as described above in Rental Fees. You must report such violations to Lyft as soon as possible within the prescribed deadline for the violation (for example, if the case is being taken to court). While there may be a lag between when the infraction occurs and when you are billed for it, you are still liable for the cost regardless of the delay.

EXHIBIT A

(2) You must notify Lyft of any traffic violation notices found on a Rental Car at the time of pickup of the Rental Car. All unreported traffic violations will be the responsibility of a Renter if they occur during the time period during which such Renter is using or responsible for the Rental Car.

(3) Where a violation is incurred by a Renter and notice of the violation is sent directly to Flexdrive, Flexdrive will either pay the penalty/fee on behalf of the Renter and then add the penalty/fee to the Renter's account or Flexdrive may, if permitted by the authority issuing the violation, transfer liability for the penalty/fee to the Renter and the Renter will then be wholly responsible for all correspondence with the appropriate authority and any penalties/fees due. Flexdrive will always inform a Renter which one of these two courses of action it has taken and will endeavor to provide notice to Renters before it pays any penalties/fees attributable to them. Once paid by Flexdrive, it may not be possible for the Renter to challenge the penalty/fee. The right to appeal, or transfer liability, on any traffic or parking charge issued by any authority or body belongs to Flexdrive and will be at Flexdrive's absolute discretion. In the case of speeding notices, Flexdrive is obligated to pass on the offending Renter's details to the police, who will then contact the Renter directly.

(4) Renter is responsible for paying the charging authorities directly all tolls, including any fines for toll evasion, and other related fines, fees, and penalties assessed against Renter, Flexdrive or the Rental Car during the Rental Period. Renter should not rely on use of a toll transponder in the Rental Car (if any) in connection with Renter's payment for tolls. In order to avoid a Processing Fee (as defined below) in connection with a toll, Renter must pay the toll in cash at the applicable toll plaza (where permitted) or Renter must make arrangements to pre-pay any applicable tolls, such as by contacting the toll operator and pre-paying online, by phone, or by mail. If Renter is provided a toll transponder and uses it to pay any tolls, the toll payments as well as any fees associated with the use or possession of the toll transponder will be charged to the payment card Renter uses in connection with this rental and Renter expressly authorizes such charges. If Flexdrive is notified that it may be responsible for payment of a toll or violation, Renter will pay Flexdrive or a processing firm of Flexdrive's choosing ("Processor") an administrative fee of up to $50 for each such notification (each, a "Processing Fee") (such fee is a reasonable estimate of Flexdrive's costs in administrating resolution for a Violation or engaging a Processor to do so). If Flexdrive or the Processor pays a toll or violation on Renter's behalf even in connection with the use of a toll transponder in the Rental car (if any), Renter authorizes Flexdrive or the Processor to charge tolls or violations to the payment card Renter used in connection with this rental. As and to the extent necessary to enable Flexdrive to enforce its rights under this paragraph, Flexdrive may disclose Renter's personal information to toll authorities and/or the Processor.

(5) Flexdrive reserves the right to terminate the Rental Agreement, making the Renter ineligible for participation in the Lyft Rental Program, with any Renter who incurs (a) any unpaid moving violations, (b) red light/disobeying traffic signal violations, (c) parking citations, (d) unpaid toll violation, (e) any at fault accident, or (f) refuses to sign a payment plan, to the extent permitted by law.

4. PERSONS PERMITTED TO USE RENTAL CARS

Only properly licensed, active Renters in good standing are allowed to drive Rental Cars, subject to applicable state laws. Renter understands and agrees that in states that require a rental company to inspect the driver's license of a renter to validate that the license was issued to the renter, Renter will cooperate with Flexdrive by, as applicable, (a) physically presenting the driver's license to Lyft and/or (b) transmitting true and actual photos of the driver's license to Lyft via the Lyft app or other electronic means specified by Lyft or Flexdrive. To the extent permitted by applicable law, non-Renters are expressly prohibited from driving a Rental Car at any time. Further, to the extent permitted by applicable law, Renter may not permit any other individual to drive a Rental Car other than the specific Renter who has rented and been assigned to a specific Rental Car in compliance with this Agreement. Renter assumes liability for all damages, loss or injury to third parties arising from the use of the Rental Car by an unauthorized user, and, further, if Flexdrive is legally responsible for damages, loss or injury, then Renter agrees to defend and indemnify Flexdrive with respect to same to the extent permitted by

applicable law. Notwithstanding the foregoing, if Renter is not able to drive or obtain a driver's license due to a disability and is approved by Lyft to become a Lyft Driver, Renter may enroll to use the Services if Renter's authorized driver (an "Authorized Driver") is approved by Flexdrive to operate a Rental Car and such Authorized Driver agrees, by signing this Agreement, to operate each Rental Car pursuant to the terms of this Agreement.

EXHIBIT A

5. REPAIR, MAINTENANCE AND ROADSIDE ASSISTANCE

If Renter is notified by Lyft and/or Flexdrive of the need for routine maintenance on the Rental Car that Renter then currently has under rental, Renter will take the vehicle to the locations specified by Lyft and/or Flexdrive, which in all instances will be a Flexdrive-approved maintenance provider. If Renter believes that a Rental Car requires unscheduled repair or maintenance, Renter will contact Lyft, which will notify Flexdrive, and Flexdrive will arrange for the performance of such repair or maintenance by a Flexdrive-approved provider. Under no circumstances shall Renter arrange for repair or maintenance without Lyft's or Flexdrive's prior written authorization. Flexdrive shall include in each Rental Car contact information for approved roadside assistance providers. If Renter requires roadside assistance, Renter will contact Flexdrive's roadside assistance provider. Renter will not use an alternative roadside assistance provider without Flexdrive's prior authorization.

6. INSURANCE AND RENTAL CAR DAMAGE

Sections A-C below apply to all Rental Cars except TLC Rentals, which are expressly addressed in Section D. Section E shall apply to all Rental Cars including TLC Rentals.

A. All Rental Cars will be provided to Renters with insurance that will cover all periods of driving ("Period(s)"), provided that the Renter is otherwise in compliance with the terms of this Agreement and Lyft's Terms of Use. Depending upon the Period the insurance coverage will be maintained either by Flexdrive or by Lyft:

o "Period 0" is the period of time in which a Renter has taken possession of a Rental Car and does not have the Lyft Application in Driver Mode or is not otherwise in Period 1, 2 or 3.
o "Period 1" is the period of time in which a Renter has the Lyft Application running in Driver Mode but has not accepted any requests for transportation services from Lyft Passenger(s).
o "Period 2" is the period of time in which a Renter has the Lyft Application running in Driver Mode and has accepted a request for transportation services from Lyft Passenger(s) but does not have any Lyft Passengers occupying the Rental Car.
o "Period 3" is the period of time in which a Renter has the Lyft Application running in Driver Mode and has at least one Lyft Passenger occupying, entering or exiting the Rental Car.

For all Rental Cars except TLC Rentals, insurance maintained by Flexdrive shall apply during Period 0, and insurance maintained by Lyft shall apply during Periods 1, 2 & 3. "Driver Mode" means the state of the Lyft Application where it is running and logged in on a Renter's Lyft Driver account and is available to receive requests for transportation services from Lyft passengers.

B. Insurance maintained by Flexdrive during Period 0 for all Rental Cars except TLC Rentals:

1. Liability Coverage: State required minimum financial responsibility limits and any other compulsory requirements applicable.
2. Physical Damage Coverage: Flexdrive's insurance policy will provide coverage against physical damage to the Rental Car during Period 0. To the extent permitted by applicable law, such Physical Damage Coverage is subject to a $1,000 deductible per incident which shall be the sole responsibility of Renter; provided, however, if the cost of damages for any one incident is less than $1,000, the deductible shall equal the total cost of damages.
3. Uninsured/Underinsured Motorists Coverage: Coverage limits in accordance with local regulations and/or state laws.
C. Insurance maintained by Lyft during Periods 1, 2, and 3 for all Rental Cars except TLC Rentals:

1. During Period 1, Lyft's insurance policies will provide the following:
a. Primary commercial auto liability insurance as set forth in the applicable city's, state's or region's Transportation Network Company ordinances.
b. Auto Physical Damage providing coverage for damage to the Rental Car, subject to a $1,000

EXHIBIT A

deductible per incident (as permitted by applicable law) which shall be the sole responsibility of Renter; provided, however, if the cost of damages for any one incident is less than $1,000, the deductible shall equal the total cost of damages.
2. During Periods 2 or 3, Lyft's insurance policies will provide the following:
a. Primary commercial auto liability insurance with a minimum combined single limit of $1,000,000 per accident, including uninsured/underinsured motorist coverage limits in accordance with local regulations and/or state laws. (These limits shall apply to markets excluding Minnesota, Nevada, New Jersey, New York, North Carolina, and Rhode Island)
b. In MN, NV, NJ, NC and RI - primary commercial auto liability insurance with a minimum combined single limit of $1,500,000 per accident, including uninsured/underinsured motorist coverage with limits in accordance with local regulations and/or state laws.
c.Auto Physical Damage providing coverage for damage to the Rental Car, subject to a $1,000 deductible per incident (as permitted by applicable law), which shall be the sole responsibility of Renter; provided, however, if the cost of damages for any one incident is less than $1,000, the deductible shall equal the total cost of damages.

D. TLC Rentals
All TLC Rentals will be provided to TLC Renters with insurance procured by Flexdrive that will cover all periods of driving in coverages and amounts as required by the TLC and applicable law, provided that the Renter is otherwise in compliance with the terms of this Agreement and Lyft's Terms of Use. The coverage shall include Auto Physical Damage providing coverage for damage to the TLC Rental, subject to a $1,000 deductible per incident (as permitted by applicable law), which shall be the sole responsibility of Renter; provided, however, if the cost of damages for any one incident is less than $1,000, the deductible shall equal the total cost of damages.

E. Items Not Covered by Flexdrive or Lyft Insurance Policies for any Rental Cars, including TLC Rentals:

(1) If the total amount of the injuries and/or third party property damage in an accident exceeds the applicable coverage limits, the Renter is responsible for any amount that exceeds the liability insurance included with the Lyft Rental Program rental. Renters engaging in prohibited uses of Rental Cars may not be covered by the insurance maintained by Flexdrive or Lyft and are subject to immediate revocation of eligibility to participate in the Lyft Rental Program and/or Lyft platform access.

(2) To the extent permitted by law, for any loss or damage to the Rental Car that occurs during the Renter's rental, the Renter is responsible for the cost of the repairs or other damage amount outlined in the Renter fee schedule. This amount may vary. The insurance provided does not reduce or avoid the Renter's obligations with respect to the Rental Car damage which occurs during the Renter's rental.

(3) Questions or concerns about the insurance coverage included with the Lyft Rental Program should be referred to Lyft support at: http://lft.to/submit-request.

7. LIMITED LICENSE

Subject to the terms and conditions of this Agreement, upon your receipt of a notice of acceptance of this Agreement from Flexdrive, you are granted a non-exclusive, limited, non-transferable, freely revocable license to use the Services for personal use, for your activities as a Lyft Driver, as expressly permitted by this Agreement, and as permitted by the features of the Services and applicable law. Flexdrive reserves all rights not expressly granted herein. In addition, Renter acknowledges that all Rental Cars contain onboard hardware and software for tracking and monitoring Rental Cars, and that Renter is granted only a limited, personal, non-transferrable, and non-exclusive license to such hardware and software only for the purposes authorized by their use of the Services. All title and ownership interest in and to any intellectual property contained in the Services is the property of Flexdrive or its licensors, with the exception of data obtained from the onboard hardware and software, which is the sole property of Lyft. Renter acknowledges that Flexdrive may aggregate anonymized data regarding the Lyft Rental Program and the activities of Renters for purposes of analyzing the use of and improving the Flexdrive technology platform, analyzing trend data for purposes of product development and program development and otherwise using the aggregated data for internal purposes.

8. TELEMATICS

EXHIBIT A

A. GENERAL NOTICE AND RELEASE

The Rental Car may be equipped with global positioning satellite technology or another telematics system, and/or an event data recorder, which may be used in order to determine when the Rental Car can be safely deactivated through the use of the starter interrupt technology, as further described in Section 12 of this Agreement. Renter's use of the Rental Car may be remotely monitored by or on behalf of Flexdrive through such systems to the extent permitted by applicable law. This remote monitoring may include collection of Rental Car data, such as: odometer, oil life, fuel level, tire pressure, battery state of charge, and diagnostic trouble codes. Renter has no expectation of privacy related to Renter's use of the Rental Car. The Rental Car also may be equipped with devices that permit Renter to pair mobile devices that may download Renter's personal contacts, communications, location or other digital data. Renter will delete all personal information from the Rental Car's systems before returning it. By entering into this Agreement, you consent to the collection, use, monitoring and disclosure of Rental Car data, to the extent permitted by law, and agree that you will inform any and all Authorized Drivers and passengers of the terms of this section.

B. CONSENT TO COLLECTION AND DISCLOSURE OF PERSONAL INFORMATION BY NAUTO, INC. ("NAUTO")

(1) Collection of Information. The Rental Cars made available by Flexdrive as part of the Lyft Rental Program are equipped with a device manufactured by Nauto (the "Nauto Device"), that uses video camera and sensor technology to record safety events inside and outside of the Rental Car. This Renter Consent to Collection and Disclosure of Personal Information contained in Section 8 of the Agreement (the "Consent") is intended to (a) inform you of the information collected by the Nauto Device and how such information is used by Flexdrive, Lyft and third parties, such as companies that provide insurance for the Rental Cars; and (b) obtain your consent for such collection and use. This Consent is in addition to the other consents provided within and terms of the Agreement that governs your participation in the Lyft Rental Program.

The Nauto Device may record or collect personal information about you and your fellow passengers, including your video image and the video images of your passengers, your behavior and the behavior of your passengers, and your Rental Car's geographic location. We may also use the Nauto Device to apply facial recognition software on the facial images of drivers in order to create a profile, based on the driver's facial features, (for example, the distance between the eyes, nose and ears, for a particular individual)(collectively, "Biometric Information"), to connect a driver in one particular photo or video to another photo or video. The Nauto Device may also collect other information about your trip, including your Rental Car's speed, acceleration, braking, collision events, mileage, and relative proximity to other vehicles, area road signs and traffic signals, road conditions/hazards, traffic patterns/density, parking spaces, and license plate numbers of surrounding vehicles.

Additionally, Nauto may add contact information from Lyft, Flexdrive, or the owner of the Rental Car you rent to create a "Profile" of you, which includes personal information such as your name, email address, telephone number, emergency contact information, photograph, license plate, and vehicle information. Nauto may display this information as part of your Profile, and link your Profile with information collected by the Nauto Device, as described above. To learn more about the types of information the Nauto Device collects, see Nauto's privacy policy (the "Nauto Privacy Policy").

(2) Use and Sharing of Information. Flexdrive, through its service arrangements with Nauto, uses the information Nauto collects to help Flexdrive improve the quality and safety of the Lyft Rental Program. In addition to being shared with Flexdrive, Lyft and certain service providers, such as our insurers, information collected by the Nauto Device will be shared with Nauto, its service providers, and affiliates, in accordance with their terms of service and privacy policies. Under Nauto's privacy policy, your personal information will not be shared or sold to any third party for any commercial or marketing purpose, without your express written consent, though it may be shared with other Nauto clients for collision claims and liability. Your personal information also may be disclosed if Nauto has a good faith belief that disclosure is necessary to (1) protect property or security of Nauto, Nauto users, and clients or others; (2) prevent death or imminent bodily harm; or (3) respond to a legal request. Non-personal information, such as aggregated, anonymized data, may be shared or sold by Nauto for business purposes, including for product improvement, analytics, industry and market research, and other purposes consistent with Nauto's legitimate business needs.

(3) Retention of Facial Recognition Data. Nauto will retain facial recognition data about you only until the first of the following occurs: (i) Nauto does not collect new Biometric Information matching your profile for a period of six continuous months; (ii) three years have passed since your last interaction with Nauto; or (iii) when you request permanent deletion of your Biometric Information by submitting such request to privacy@nauto.com or otherwise as set forth in the Nauto Privacy Policy. At such time, Nauto will permanently destroy the Biometric Information about you. After the Biometric Information is destroyed, the user will need to re-enroll (and provide his or her Biometric Information to Nauto again) before he or she can use the Nauto Services.

(4) Acknowledgment and Consent. You confirm that you have read and understand the information in this Section 8(B) regarding the processing of information by the Nauto Device to ensure the safety of drivers and to improve the quality of Flexdrive and the Lyft Rental Program's operations. You consent to Flexdrive providing third party service providers (including Nauto) with your personal information in order to help Flexdrive to operate the Nauto Device in accordance with this form.

9. FEES

To the extent permitted by law, Renter will be responsible for the payment of any and all rental fees, taxes, damage fees, claims, penalties, fines, deductibles related to Rental Car damage (if permitted by applicable law), tolls (as described in greater detail below), other miscellaneous fees, or other amounts set forth in this Rental Agreement. Such payments will be collected from Renter by Lyft, and Lyft will forward such payments to Flexdrive. Flexdrive may coordinate with Lyft to deduct any such amounts Renter owes in connection with the rental of a Rental Car from the amounts Renter may earn while providing transportation services on the Lyft platform. In addition, Lyft may require Renter to provide a credit or other payment card (subject to applicable terms and conditions) in order to reserve or rent a Rental Car, that an authorization or hold amount may be placed on the card provided, and that Lyft may charge the amount owed to the payment card Renter provides at any time upon notice to Renter. Flexdrive has designated Lyft as its agent solely for the purpose of collecting these amounts on Flexdrive's behalf. For this purpose, Renter authorizes Lyft to offset these amounts from other amounts Lyft owes Renter, and if such offset does not fully pay such amounts, to charge the remaining unpaid amount to the payment method Renter has authorized for Lyft's use in connection with the Lyft platform, to the extent permitted by applicable law and upon notice to Renter. Certain amounts may be charged at or after the end of the Rental Period, such as fees for vehicle damage as may be identified during final inspection, or for unpaid tickets or tolls and associated administrative fees that are identified after the Rental Period, or otherwise, as provided in the Agreement. Renter must keep a valid payment method on file with Lyft to pay the above amounts. Notwithstanding the foregoing, if Renter fails to pay to Lyft any such fees or other amounts due and payable in accordance with this Agreement, Flexdrive is entitled to seek to collect such amounts directly from Renter, and Renter hereby agrees that Lyft is entitled to provide to Flexdrive (a) a copy of the Rental Agreement; (b) any executed Payment Plan Agreement; (c) Renter contact information; (d) any correspondence between Renter and Lyft or its agents that relates to the collection of such amounts; and (e) Renter's payment information.

10. TERM

This Agreement shall be effective from the Effective Date, as noted to you in Flexdrive's acceptance of your application, and shall remain in effect for one year, subject to automatic one year renewals, unless earlier terminated by either party as set forth below. During the term of the Agreement, each Renter will have the ability to rent Rental Cars for those periods set forth in Renter's registration process.

11. SUSPENSION OR TERMINATION

Flexdrive may immediately suspend or terminate the use of its Service by any Renter for any reason, including for a violation of this Agreement. Termination of this Agreement will additionally terminate any Renter reservation then placed or in effect, and you will promptly follow Lyft's instructions regarding the return of any Rental Car then in your possession. If your use of Services or any rental of a Rental Car is suspended by Flexdrive, we may, in our sole discretion, reinstate your eligibility for participation in the Lyft Rental Program following your cure of any such violation. Subject to each Rental being for a minimum of seven (7) days, Renter may schedule a return and/or terminate this

Agreement at any time. After the initial seven (7) day rental, the Renter can return the Rental Car to the location from which the Renter rented it at any time during normal business hours and receive a pro-rated charge. Any voluntary termination of this Agreement or reduction in Rental Period by a Renter shall not result in reimbursement of any rental fees for any outstanding reservation or rental of a Rental Car.

EXHIBIT A

12. REPOSSESSION AND RECOVERY OF RENTAL CARS; USE OF STARTER INTERRUPT TECHNOLOGY

To the extent permitted by applicable law, Flexdrive reserves the right to recover or repossess or to assist in the recovery and repossession of the Rental Cars, at any time, without notice, and at Renter's expense if Renter violates this Agreement (including, but not limited to, by failing to pay all fees or other amounts due and payable in accordance with this Agreement or by failing to return the Rental Car at the end of the Rental Period) or upon termination of this Agreement. To the extent permitted by and in accordance with applicable law, Flexdrive may assist in the recovery or repossession of a Rental Car or may recover or repossess a Rental Car by remotely deactivating such Rental Car through the use of starter interrupt technology that is part of or attached to the Rental Car. Renter agrees to pay all costs, including, but not limited to, reasonable legal fees or attorneys' fees, if any, associated with the repossession or recovery of any Rental Car pursuant to this Section 12. Renter hereby agrees to waive all claims for damages connected with the repossession or recovery of any Rental Car pursuant to this Section 12 and use of starter interrupt technology.

13. INDEMNIFICATION

To the extent permitted by applicable law, Renter agrees to defend, indemnify and hold harmless Flexdrive and Lyft, and each of their respective subsidiaries, agents, licensors, managers, and other affiliated companies, and their employees, contractors, agents, officers and directors, from and against any and all claims, damages, obligations, losses, liabilities, costs or debt, and expenses (including but not limited to attorney's fees) arising from: (i) Renter's violation of any term of this Agreement, including without limitation your breach of any of the representations and warranties above; (ii) Renter's violation of any third-party right, including without limitation any right of privacy or intellectual property rights; (iii) Renter's violation of any applicable law, rule or regulation; and (iv) any claims or damages that arise as a result of Renter's use of a Rental Car which are not covered by insurance provided for Renter by Flexdrive or is subject to fee schedule provided by Flexdrive.

14. NO WARRANTY

The Services are provided on an "as is" and "as available" basis. Rental and use of the Rental Car is at your own risk. To the maximum extent permitted by applicable law, Rental Cars are provided without warranties of any kind, whether express or implied, including, but not limited to, implied warranties of merchantability, fitness for a particular purpose, or non- infringement. No advice or information, whether oral or written, obtained by you from Flexdrive or through the Services will create any warranty not expressly stated herein, including with respect to driver or passenger safety. Without limiting the foregoing, Flexdrive, its subsidiaries, and its licensors do not warrant that the Services will meet your requirements; that the Services will be available at any particular time or location; that any defects or errors will be corrected; or that the Services are free of viruses or other harmful components. Any content downloaded or otherwise obtained through the use of the Services is downloaded at your own risk, and you will be solely responsible for any damage to your computer system or mobile device or loss of data that results from such download or your use of the Service.

15. LIMITATION OF LIABILITY

A. To the maximum extent permitted by applicable law, in no event shall Flexdrive, its affiliates, agents, directors, employees, contractors or licensors be liable for any direct, indirect, punitive, incidental, special, consequential or exemplary damages, including without limitation damages for loss of profits, goodwill, use, data or other intangible losses, that result from the use of, or inability to use, the Services. Under no circumstances will Flexdrive be responsible for any damage, loss or injury resulting from hacking, tampering or other unauthorized access or use of the Services or your account or the information contained therein. In no event shall Flexdrive, its affiliates, agents, directors, employees, contractors, or licensors be liable to you for any claims, proceedings, liabilities, obligations, damages, losses or costs in an amount exceeding $1,000.00.

B. This limitation of liability section applies whether the alleged liability is based on contract, tort, negligence, strict liability, or any other basis, even if Flexdrive has been advised of the possibility of such damage. The foregoing limitation of liability shall apply to the fullest extent permitted by law in the applicable jurisdiction. Some states do not allow the exclusion of implied warranties or the exclusion or limitation of incidental or consequential damages, so the above limitations or exclusions may not apply to you. This Agreement gives you specific legal rights, and you may also have other rights, which vary from state to state. The disclaimers, exclusions, and limitations of liability under this Agreement will not apply to the extent prohibited by applicable law.

EXHIBIT A

16. NOTICES

Flexdrive and Lyft may provide any notices required to you hereunder at the email address (or, if you opt out of such delivery method, at the home address) indicated in your reservation request, and you shall update any such information promptly to the extent such information changes; provided that Flexdrive and Lyft shall have no liability for your failure to provide such updates and any notices delivered by Flexdrive to the address on file in our records shall be deemed effective when given. You may give notice to Flexdrive by sending any such notice to Flexdrive Services, LLC, Attn: Legal Department, 2002 Summit Blvd., Suite 750, Atlanta, GA 30319.

17. DISPUTES AND GOVERNING LAW

This Agreement shall be governed by the laws of the State of Georgia in the United States without regard to any conflict of law principles. This Agreement is a contract for services and not for the sale of goods. The UN Convention on the International Sale of Goods is excluded. No claim or action arising out of the transactions under this Agreement may be brought by you against Flexdrive more than one year after the cause of action has accrued. You, Flexdrive and Lyft specifically agree to waive the right to trial by jury.

18. GENERAL

This Agreement constitutes the entire agreement between the parties in connection with the subject matter hereof and supersedes all agreements, proposals, representations and other understandings, oral or written, of the parties. No alteration or modification of this Agreement shall be valid unless made in writing and signed by each party. The waiver by either party of a breach of any provision of this Agreement shall not operate or be construed as a waiver of any subsequent breach and any waiver must be in writing and signed by the affected party hereto. If any provision of this Agreement is held to be invalid or unenforceable, the remaining provisions shall continue in full force and effect. Any terms of this Agreement which by their nature extend beyond its termination remain in effect until fulfilled and apply to respective successors and rightful assignees.

19. ELECTRONIC DOCUMENT AND SIGNATURE

For contractual purposes, you: (a) consent to receive communications from Flexdrive in electronic form, and (b) agree that all terms and conditions, agreements, notices, disclosures and any other communications that Flexdrive provides to you electronically satisfy any legal requirement that such communications would satisfy if they were in a print-on-paper writing. By clicking "Accept", you are signing this Agreement electronically, and such selection (your "E-Signature") constitutes your legal signature, acceptance and agreement to the terms of the Flexdrive "Lyft Driver Rental Program" Agreement, as if this Agreement were actually signed by such Party in "print-on-paper" or "wet ink" writing. You also agree that no certification, authority, or other third party verification is necessary to validate your E-Signature and that the lack of such certification or third party verification will not in any way affect the enforceability of your E-Signature or any resulting contract between you and Flexdrive.

20. LOCATION SPECIFIC DISCLOSURES

Renter further acknowledges that Renter has received, read, understands and agrees to the following state-specific disclosures, notices, and terms and conditions if a Rental Car is rented in one of the jurisdictions listed below. Renter is advised to review the applicable paragraphs before renting or operating a Rental Car in the location(s) set forth below. These disclosures, notices, and terms and conditions may modify or replace, as applicable, Renter's obligations set forth above. In the event of a direct conflict between any of the terms set forth above and this Location Specific Disclosures Section,

EXHIBIT A

the terms contained in this Location Specific Disclosures Section will govern.

California.

Personal Information; Communications. Renter agrees that Flexdrive may disclose personally identifiable information about Renter and the Rental Car to applicable law enforcement agencies or to Flexdrive's affiliates or third parties in connection with our enforcement of Flexdrive's rights under this Agreement and for other legitimate business purposes. Pursuant to Section 1939.22 of the Cal. Civ. Code, Renter agrees that Flexdrive or an assignee may contact Renter by calling or sending text messages or emails to any email address or telephone number Renter provides to Lyft or Flexdrive, including wireless telephone numbers, which could result in additional charges to Renter. Renter represents that Renter is either the owner or primary user of the number(s) and email address renter provided. Methods of contact may include pre-recorded/artificial voice messages and/or use of an automatic dialing device. Renter may revoke Renter's consent at any time by contacting Flexdrive in writing at the address set forth in the Corporate Identity section of the Agreement.

Failure to Return Vehicle. If the Rental Car is not returned within seventy-two (72) hours following the Return Date or extension of the Return Date, as permitted by this Agreement, Flexdrive may activate electronic surveillance technology, such as GPS vehicle tracking technology, to locate the Rental Car. Flexdrive will provide Renter with notice of activation of the electronic surveillance technology twenty-four (24) hours prior to such activation by telephone and electronically unless Renter has not provided a telephone number to Flexdrive or has not agreed to electronic communication pursuant to Section 1932.22 of the Cal. Civ. Code.

Renter acknowledges that electronic surveillance technology may be activated if the Rental Car is not returned within seventy-two (72) hours following the Return Date or extension of the Return Date, as permitted by this Agreement, in order to locate the Rental Car and in order to determine when the Rental Car can be safely deactivated through the use of the starter interrupt technology, as further described in Section 12 of this Agreement.

Responsibility for Damage or Loss. Renter is responsible for all damage to, or loss of, the Rental Car in connection with this rental caused by collision, regardless of the cause of such damage. Renter responsibility may include, to the extent permissible by law: (a) all physical and mechanical damage to the Rental Car measured as follows: (i) if Flexdrive determines that the Rental Car is a total loss, the total loss vehicle value of the Rental Car calculated in accordance with California Civil Code Section 1939.07, as amended from time to time, less salvage; (ii) if Flexdrive determines that the Rental Car is repairable: the actual cost of repair that Flexdrive incurs to repair the Rental Car or that Flexdrive would incur if Flexdrive chose to repair the Rental Car, all as calculated pursuant to California Civil Code Sections 1939.03, 1939.05, and 1939.07, as applicable, and as may be amended from time to time; (b) an administrative fee calculated pursuant to California Civil Code Sections 1939.03 and 1939.05, as amended from time to time; (c) Flexdrive's actual charges for towing, storage, and impound; and (d) all costs associated with Flexdrive's enforcement of this Agreement or collection of Fees, including attorneys' fees, collection fees, and costs whether or not litigation is commenced. Renter is responsible for: (i) loss due to theft of the Rental Car and any damage caused by vandalism that occurs in connection with a theft if Renter fails to exercise ordinary care while in possession of the Rental Car, (ii) damage due to vandalism not associated with theft of the Rental Car up to a maximum of $500, and (iii) replacing missing Rental Car documents and keys.

Illinois.

Responsibility for Damage or Loss to the Vehicle. Renter is responsible for all physical and mechanical damage to or loss of the Rental Car, regardless of the cause of such damage or loss and whether or not Renter is at fault, up to the maximum amounts specified by law pursuant to 625 ILCS 5/6-305.2, as amended from time to time. Renter's responsibility may include: (a) if the Rental Car has a manufacturer's suggested retail price ("MSRP") of $50,000.00 or less: (1) in the case of damage or loss, except for theft, the lesser of: (A) the actual and reasonable costs that Flexdrive incurred to repair the Rental Car or that Flexdrive would have incurred if the Rental Car had been repaired; or (B) the fair market value of the Rental Car immediately before the damage occurred, as determined in the customary market for the retail sale of the Rental Car; and (2) actual and reasonable costs incurred by loss due to theft of the Rental Car up to $2,000.00; provided, however, that if it is established that Renter failed to exercise ordinary care while in possession of the Rental Car or that Renter committed

or aided and abetted the commission of the theft, then the damages shall be the actual and reasonable costs of the Rental Car up to its fair market value, as determined by the customary market for the sale of that vehicle; (b) if the Rental Car has an MSRP of more than $50,000.00: (1) in the case of damage or loss, except for theft, the lesser of: (A) the actual and reasonable costs that Flexdrive incurred to repair the Rental Car or that Flexdrive would have incurred if the Rental Car had been repaired; or (B) the fair market value of the Rental Car immediately before the damage occurred, as determined in the customary market for the retail sale of the Rental Car; and (2) the actual and reasonable costs incurred by loss due to theft of the Rental Car up to $40,000. For purposes of section (a) of this paragraph, for the period beginning June 1, 2018, the maximum recovery shall not exceed $18,500.00. Beginning June 1, 2019 and annually each June 1 thereafter, the maximum amount that may be recovered from Renter will be increased by $500.00 above the maximum recovery allowed immediately prior to June 1 of that year. For purposes of section (b) of this paragraph, on October 1, 2018, the maximum amount that may be recovered from Renter shall be $47,500, on October 1, 2019, the maximum amount shall be increased to $50,000, and on October 1, 2020 and on each October 1 thereafter, the maximum amount that may be recovered from Renter shall be increased by $1,000.00 above the prior year's maximum recovery. Allowing anyone other than Renter to use the Rental Car is not an exercise of ordinary care, but a willful and reckless act that is a breach of this Agreement.

EXHIBIT A

New York.

Responsibility for Damage or Loss to the Vehicle. Renter is responsible for: (a) all physical damage to the Rental Car that occurs during the time the Rental Car is under this Agreement that is unrelated to normal wear and tear (as defined in New York General Business Law Section 396-z, as amended from time to time); and (b) all mechanical damage to the Rental Car that is unrelated to normal wear and tear (as defined in New York General Business Law Section 396-z) or that could reasonably be expected from normal use of the Rental Car that occurs during the time the Rental Car is under this Agreement, in all cases up to the amounts permissible by law. Renter's responsibility for such damage or loss will include: (x) the lesser of (both as calculated in accordance with New York General Business Law Section 396-z, as amended from time to time): (i) the actual and reasonable costs that Flexdrive incurs to repair the Rental Car or that Flexdrive would incur if we chose to repair the Rental Car, and (ii) the fair market value of the Rental Car immediately before the damage occurred, as determined in the applicable market for the retail sale of the Rental Car, less any net disposal proceeds; and (y) Flexdrive's actual charges for towing, storage, and impound. Renter is responsible for loss due to theft of the Rental Car up to its fair market value, as determined by the applicable market for the retail sale of the Rental Car, if Renter fails to exercise ordinary care while in possession of the Rental Car or if Renter commits, aids or abets such theft. Allowing anyone other than Renter to use the Rental Car is not an exercise of ordinary care, but a willful and reckless act that is a breach of this Agreement.

Use of the starter interrupt technology. Prior to remotely deactivating a Rental Car through the use of starter interrupt technology, as further described in Section 12 of this Agreement, Flexdrive will send you a notice by registered or certified mail to your address on record with Flexdrive, giving notice that Flexdrive may activate the starter interrupt technology in ten (10) days in accordance with Section 12 of this Agreement.

---

## Signature



EXHIBIT A

**EXHIBIT C**

Gmail Tread Carefully <dcaustin71@gmail.com>

## [Request received] Follow-up from Lyft

**Lyft** <support@lyft-new.zendesk.com> Fri, May 29, 2020 at 10:26 AM
Reply-To: Lyft <support+id168179095@lyft-new.zendesk.com>
To: Turner Crockett <dcaustin71@gmail.com>

##- Please type your reply above this line -##

Your request (168179095) has been received and is being reviewed by our support staff.

To add additional comments, reply to this email.

**Vanessa** (Lyft)
May 29, 2020, 8:25:58 AM PDT

Hi this is Vanessa from Express Drive. Our records indicate your vehicle is past due for its preventative maintenance. Per your signed rental agreement, this is required to remain eligible to rent with us. Please schedule and complete the necessary maintenance with one of our partners and complete in the next 48 hours to remain eligible to rent with Lyft. Please send your completed receipt to txinspections@lyft.com for confirmation. You can use this link to find an approved maintenance provider https://lft.to/locations

Vanessa
Lyft Support
help.lyft.com

This email is a service from Lyft. Delivered by Zendesk | Privacy Policy

EXHIBIT D

Gmail Tread Carefully <dcaustin71@gmail.com>

## [Lyft] Re: Follow-up from Lyft

**Lyft** <support@lyft-new.zendesk.com> Thu, Jul 9, 2020 at 3:34 PM
Reply-To: Lyft <support+id169427307@lyft-new.zendesk.com>
To: Turner Crockett <dcaustin71@gmail.com>

Your request (169427307) has been updated. To add additional comments, reply to this email.

**Daniela** (Lyft)

Hello Turner,

Lyft routinely conducts background checks to evaluate continued eligibility to drive on the Lyft platform. You will be unable to drive while the background check is processing.

Most background checks take a few days to process, but keep in mind that it can take a few weeks, depending on a number of factors.

To see the status of your background check, or to ensure no additional steps are required, go to https://candidate.checkr.com.

We appreciate your patience during this process.

Best,

Daniela
Lyft Support
help.lyft.com

Zendesk Privacy Policy

**DOLLAR RENT A CAR**
Phone: 800-800-5252
Web: www.dollar.com

dollar. CAR RENTAL

**Rental Agreement No:** 547787833
**Date:** 07/14/2020
**Document:** 950003023901

**Direct All Inquiries To:**
DOLLAR RENT A CAR
PO BOX 35250
TULSA, OK 74153-1167

TAX Id: 73-1389882

**CHARGE DETAIL**

**Renter:** DEMETRIUS CROCKETT
**Account No.:** ************6966 VIS

**EXHIBIT E**

**DEMETRIUS CROCKETT**
**2121 LOHMANS CROSSING RD 211**
**AUSTIN, TX 78734**

## RENTAL REFERENCE

**Rental Agreement No:** 547787833
**Reservation ID:** J4524607789
**Special Bill Info:** GEICO

## RENTAL DETAILS

**Rate Plan:** IN: RCW55 OUT: RCUE3
**Rented On:** 07/09/2020 13:08 LOC# 090525 AUSTIN, TX
**Returned On:** 07/14/2020 06:38 LOC# 090525 AUSTIN, TX
**Car Description:** SIR SPARKFW1.4N ABZA58
**Veh. No.:** 8855603
**CAR CLASS Charged:** A **MILEAGE In:** 6,721
**Rented:** A **Out:** 6,048
**Reserved:** A **Driven:** 673

## MISCELLANEOUS INFORMATION

| | | | | | |
|---|---|---|---|---|---|
| CC AUTH: | 821476 | DATE: | 2020/07/09 | AMT: | 273.00 |
| CC AUTH: | 863242 | DATE: | 2020/07/14 | AMT: | 104.00 |
| CC AUTH: | 878330 | DATE: | 2020/07/12 | AMT: | 144.00 |

## RENTAL CHARGES

| | | | |
|---|---|---|---|
| WEEKS | 1 @ | 371.80 | 371.80 |
| SUBTOTAL | | | 371.80 |
| CONCESSION FEE RECOVERY | | | 45.00 |
| VEHICLE LICENSE FEE | | | 9.70 |
| CUSTOMER FACILITY CHARGE | | | 29.75 |
| LATE RETURN FEE | | | 12.00 |
| RETURN CHANGE FEE | | | 10.00 |
| ENERGY SURCHARGE | | | 1.49 |
| TAX | | 15.00% | 71.96 |
| TOTAL CHARGES | | | 551.70 USD |

**E-RETURN RECEIPT**

**THANK YOU FOR RENTING FROM DOLLAR**

**ALL CHARGES HAVE BEEN BILLED TO YOUR ACCOUNT.**

**Rental Agreement No:** 547787833
**Date:** 07/14/2020
**Document:** 950003023901

**Direct All Inquiries To:**
DOLLAR RENT A CAR
PO BOX 35250
TULSA, OK 74153-1167
UNITED STATES

**Renter:** DEMETRIUS CROCKETT
**Account No.:** ************6966 VIS

**Phone:** 800-800-5252
**Web:** www.dollar.com

**TOTAL CHARGES** **551.70 USD**

GDOL02P 0095 GC

**DOLLAR RENT A CAR**
Phone: 800-800-5252
Web: www.dollar.com

dollar. CAR RENTAL

| | |
|---|---|
| **Rental Agreement No:** | 549004186 |
| **Date:** | 08/20/2020 |
| **Document:** | 950003120205 |

**Direct All Inquiries To:**
DOLLAR RENT A CAR
PO BOX 35250
TULSA, OK 74153-1167

TAX Id: 73-1389882

**CHARGE DETAIL**

**Renter:** DEMETRIUS CROCKETT
**Account No.:** ************6966 VIS

**EXHIBIT E**

**DEMETRIUS CROCKETT**
**2121 LOHAMANS**
**AUSTIN, TX 78734**

## RENTAL REFERENCE

**Rental Agreement No:** 549004186
**Reservation ID:** J45831184A6

## RENTAL DETAILS

**Rate Plan:** IN: RCUW5 OUT: RCUW5
**Rented On:** 07/15/2020 12:51 LOC# 090525
AUSTIN, TX
**Returned On:** 07/28/2020 12:00 LOC# 090525
AUSTIN, TX
**Car Description:** COROLLA DFMM09
**Veh. No.:** 2007706
**CAR CLASS Charged:** B
**Rented:** C
**Reserved:** B

**MILEAGE**
**In:** 9,200
**Out:** 9,162
**Driven:** 38

## MISCELLANEOUS INFORMATION

| | | | | | |
|---|---|---|---|---|---|
| CC AUTH: | 784061 | DATE: | 2020/07/15 | AMT: | 363.00 |
| CC AUTH: | 818502 | DATE: | 2020/08/17 | AMT: | 2218.00 |

## RENTAL CHARGES

| | | | |
|---|---|---|---|
| WEEKS | 1 @ | 263.12 | 263.12 |
| EXTRA DAYS | 6 @ | 36.99 | 221.94 |
| SUBTOTAL | | | 485.06 |
| CONCESSION FEE RECOVERY | | | 63.30 |
| VEHICLE LICENSE FEE | | | 25.22 |
| CUSTOMER FACILITY CHARGE | | | 77.35 |
| RETURN CHANGE FEE | | | 10.00 |
| LATE RETURN FEE | | | 48.00 |
| ENERGY SURCHARGE | | | 1.49 |
| TAX | | 15.00% | 106.56 |
| TOTAL CHARGES | | | 816.98 USD |

**E-RETURN RECEIPT**

**THANK YOU FOR RENTING FROM DOLLAR**

**ALL CHARGES HAVE BEEN BILLED TO YOUR ACCOUNT.**


| | |
|---|---|
| **Rental Agreement No:** | 549004186 |
| **Date:** | 08/20/2020 |
| **Document:** | 950003120205 |

**Direct All Inquiries To:**
DOLLAR RENT A CAR
PO BOX 35250
TULSA, OK 74153-1167
UNITED STATES

**Renter:** DEMETRIUS CROCKETT
**Account No.:** ************6966 VIS

**Phone:** **800-800-5252**
**Web:** **www.dollar.com**

**TOTAL CHARGES** **816.98 USD**


GDOL02P 0095 GC

**DOLLAR RENT A CAR**
Phone: 800-800-5252
Web: www.dollar.com

dollar. CAR RENTAL

| | |
|---|---|
| **Rental Agreement No:** | 578003753 |
| **Date:** | 09/25/2020 |
| **Document:** | 950003252947 |

**Direct All Inquiries To:**
DOLLAR RENT A CAR
PO BOX 35250
TULSA, OK 74153-1167

TAX Id: 73-1389882

**CHARGE DETAIL**

**Renter:** DEME CROCKETT
**Account No.:** ************6966 VIS

EXHIBIT E

**DEME CROCKETT**
**2121 LOHMANS COURT**
**AUSTIN, TX 78734**

**RENTAL REFERENCE**

| | |
|---|---|
| **Rental Agreement No:** | 578003753 |
| **Reservation ID:** | J5012601461 |
| **I.T. No.:** | 1006244 |
| **Voucher:** | 0000001080 |

**RENTAL DETAILS**

**Rate Plan:** IN: ZAPW5 OUT: ZAPW5
**Rented On:** 08/27/2020 16:45 LOC# 090525 AUSTIN, TX
**Returned On:** 09/24/2020 23:16 LOC# 090525 AUSTIN, TX
**Car Description:** SIRMALIBU 1.5 N FP59479
**Veh. No.:** 8627861
**CAR CLASS Charged:** A **Rented:** F **Reserved:** A
**MILEAGE In:** 49,227 **Out:** 46,495 **Driven:** 2,732

**MISCELLANEOUS INFORMATION**

CC AUTH: 850496 DATE: 2020/08/27 AMT: 311.00

**RENTAL CHARGES**

| | | | |
|---|---|---|---|
| WEEKS | 4 @ | 157.58 | 630.32 |
| EXTRA DAYS | 1 @ | 21.99 | 21.99 |
| SUBTOTAL | | | 652.31 |
| CONCESSION FEE RECOVERY | | | 86.67 |
| VEHICLE LICENSE FEE | | | 56.26 |
| CUSTOMER FACILITY CHARGE | | | 172.55 |
| LATE RETURN FEE | | | 60.00 |
| RETURN CHANGE FEE | | | 10.00 |
| ENERGY SURCHARGE | | | 1.49 |
| VOUCHER VALUE | | | -157.58 |
| TAX | | 15.00% | 155.89 |
| TOTAL CHARGES | | | 1037.59 USD |

**E-RETURN RECEIPT**

**THANK YOU FOR RENTING FROM DOLLAR**

**ALL CHARGES HAVE BEEN BILLED TO YOUR ACCOUNT.**


| | |
|---|---|
| **Rental Agreement No:** | 578003753 |
| **Date:** | 09/25/2020 |
| **Document:** | 950003252947 |

**Direct All Inquiries To:**
DOLLAR RENT A CAR
PO BOX 35250
TULSA, OK 74153-1167

UNITED STATES


**Renter:** DEME CROCKETT
**Account No.:** ************6966 VIS

**Phone:** 800-800-5252
**Web:** www.dollar.com


**TOTAL CHARGES** **1037.59 USD**

GDOL02P 0095 GC

**DOLLAR RENT A CAR**
Phone: 800-800-5252
Web: www.dollar.com

**Rental Agreement No:** 597999861
**Date:** 12/24/2020
**Document:** 950003768433

**Direct All Inquiries To:**
DOLLAR RENT A CAR
PO BOX 35250
TULSA, OK 74153-1167

TAX Id: 73-1389882

**CHARGE DETAIL**

**Renter:** DEMETRIUS CROCKETT
**Account No.:** ************3828 VIS

EXHIBIT E

**DEMETRIUS CROCKETT**
**3310 W BRAKER LN**
**AUSTIN, TX 78758**

## RENTAL REFERENCE

**Rental Agreement No:** 597999861
**Reservation ID:** J5833752244
**I.T. No.:** 1006244
**Voucher:** 0000393585

## RENTAL DETAILS

**Rate Plan:** IN: CNVM OUT: ZAPE3
**Rented On:** 11/18/2020 09:22 LOC# 090525 AUSTIN, TX
**Returned On:** 12/24/2020 08:00 LOC# 090525 AUSTIN, TX
**Car Description:** SIR SPARKFW1.4N FP117160
**Veh. No.:** 6514608
**CAR CLASS Charged:** A **MILEAGE In:** 17,252
**Rented:** A **Out:** 13,022
**Reserved:** A **Driven:** 4,230

## MISCELLANEOUS INFORMATION

CC AUTH: 509214 DATE: 2020/11/18 AMT: 220.00

## RENTAL CHARGES

| | | | |
|---|---|---|---|
| MONTHS | 1 @ | 745.80 | 745.80 |
| EXTRA DAYS | 5 @ | 24.86 | 124.30 |
| SUBTOTAL | | | 870.10 |
| CONCESSION FEE RECOVERY | | | 112.37 |
| VEHICLE LICENSE FEE | | | 69.84 |
| CUSTOMER FACILITY CHARGE | | | 214.20 |
| LATE RETURN FEE | | | 60.00 |
| RETURN CHANGE FEE | | | 10.00 |
| ENERGY SURCHARGE | | | 1.49 |
| VOUCHER VALUE | | | -29.93 |
| TAX | | 6.25% | 83.62 |

TOTAL CHARGES 1391.69 USD

**E-RETURN RECEIPT**

**THANK YOU FOR RENTING FROM DOLLAR**

**ALL CHARGES HAVE BEEN BILLED TO YOUR ACCOUNT.**

**Rental Agreement No:** 597999861
**Date:** 12/24/2020
**Document:** 950003768433

**Direct All Inquiries To:**
DOLLAR RENT A CAR
PO BOX 35250
TULSA, OK 74153-1167
UNITED STATES

**Renter:** DEMETRIUS CROCKETT
**Account No.:** ************3828 VIS

**Phone:** 800-800-5252
**Web:** www.dollar.com

**TOTAL CHARGES** **1391.69 USD**

GDOL02P 0095 GC

**EXHIBIT F**

Gmail Tread Carefully <dcaustin71@gmail.com>

## Re: Lyft Help - Request Received

1 message

**Tread Carefully** <dcaustin71@gmail.com> Fri, Jul 31, 2020 at 12:41 PM
To: Lyft <support+id170104950@lyft-new.zendesk.com>

...here at the Austin Texas Hub to pick up my Flexdrive Rental and I'm being told to contact you regarding a chargeback flag on my Flexdrive account. Please advise on the date, amount and account used pertaining to this flag because it appears to be a mistake. The card that Lyft has on file and that was my default services charge account (per historicals) ends in 5782.

On Fri, Jul 31, 2020 at 11:06 AM Lyft <support@lyft-new.zendesk.com> wrote:

> This is an automatic confirmation to let you know we received your request for help from the Lyft app.
>
> A customer support associate will investigate and reach out to you soon.
>
> Thanks for your patience,
>
> Lyft
>
> Zendesk Privacy Policy
>
> [XZG9OE-WL8W]

--

This email is confidential. It is not permitted or approved, by the email's owner/originator, to be shared outside of the parties copied by the email's originator without the explicit consent and approval of the email's originator.

**EXHIBIT G**

Gmail Tread Carefully <dcaustin71@gmail.com>

## Re: [Lyft] Re: Follow-up from Lyft

**Tread Carefully** <dcaustin71@gmail.com> Sun, Aug 2, 2020 at 11:40 AM
To: Lyft <support+id170104950@lyft-new.zendesk.com>

Thank you for letting me know. My app still says I have a chargeback and I'm unable to schedule an appointment to pick up my Flexdrive rental in my app.

What is the status of the investigation?

On Sat, Aug 1, 2020 at 6:31 PM Lyft <support@lyft-new.zendesk.com> wrote:

> Your request (170104950) has been updated. To add additional comments, reply to this email.
>
> **Jeremiah** (Lyft)
>
> Hi Turner,
>
> There is a team investigating this for you.
>
> All the best,
>
> Jeremiah
> Lyft Support
> help.lyft.com
>
> Zendesk Privacy Policy
>
> [XZG9OE-WL8W]

--
This email is confidential. It is not permitted or approved, by the email's owner/originator, to be shared outside of the parties copied by the email's originator without the explicit consent and approval of the email's originator.

**EXHIBIT H**

Gmail

Tread Carefully <dcaustin71@gmail.com>

## Re: [Lyft] Re: Follow-up from Lyft

1 message

**Tread Carefully** <dcaustin71@gmail.com> Wed, Oct 28, 2020 at 4:17 PM
To: Lyft <support+id170104950@lyft-new.zendesk.com>
Cc: Tread Carefully <dcaustin71@gmail.com>

Since I do not own a vehicle and utilized Lyft's Flex Drive program for Lyft independent contractor work, this internal Lyft system glitch completely crippled my ability to earn income to pay bills and take care of my family thus resulting in severe financial hardship.

Given Lyft HQs acknowledgment of an internal system glitch that took place **4 months ago,** as of right now, October 28th, 2020, am I now able to make an appointment to pick up a Flex Drive rental today October 28th, 2020 or tomorrow October 29th, 2020?

Also I should not have to pay a deposit to rent a vehicle given the circumstances of what has transpired.

Your prompt attention and ownership to address my questions regarding my ability to rent a Flexdrive vehicle immediately is greatly appreciated.

On Sun, Oct 25, 2020 at 1:19 PM Lyft <support@lyft-new.zendesk.com> wrote:

> Your request (170104950) has been updated. To add additional comments, reply to this email.
>
> **Seth** (Lyft)
>
> Hi Turner,
>
> I apologize for the delay between messages. As mentioned in the last update from my colleague, Rhys, we're currently looking into this issue. Since we're not sure why this is happening from my team side of things, we're working with our engineering team to try and identify what is happening internally so we can get this resolved for you as quickly as possible.
>
> When we have any updated information, we'll reach out to you to keep you up to date.

**EXHIBIT H**

Seth
Lyft Support
help.lyft.com

Zendesk

[XZG9OE-WL8W]

--

This email is confidential. It is not permitted or approved, by the email's owner/originator, to be shared outside of the parties copied by the email's originator without the explicit consent and approval of the email's originator.

EXHIBIT I

Gmail Tread Carefully <dcaustin71@gmail.com>

# Re: [Lyft] Re: Follow-up from Lyft

**Tread Carefully** <dcaustin71@gmail.com> Mon, Dec 21, 2020 at 4:42 PM
To: Lyft <support+id170104950@lyft-new.zendesk.com>

What is the status of this investigation from July 2020?

This matter has caused, and continues to cause me a substantial loss of income and I continue to experience financial hardship as a result.

Am I now able to make an appointment to pick up my rental at the Austin Lyft hub?

On Sun, Oct 25, 2020 at 1:19 PM Lyft <support@lyft-new.zendesk.com> wrote:

> ##- Please type your reply above this line -##
>
> Your request (170104950) has been updated. To add additional comments, reply to this email.
>
> **Seth** (Lyft)
> Oct 25, 2020, 11:19 AM PDT
>
> Hi Turner,
>
> I apologize for the delay between messages. As mentioned in the last update from my colleague, Rhys, we're currently looking into this issue. Since we're not sure why this is happening from my team side of things, we're working with our engineering team to try and identify what is happening internally so we can get this resolved for you as quickly as possible.
>
> When we have any updated information, we'll reach out to you to keep you up to date.
>
> Seth
> Lyft Support
> help.lyft.com

Not required to mail or fax this copy to [redacted]

## MOTOR VEHICLE RETAIL INSTALLMENT SALES CONTRACT

ACCOUNT # [redacted]

LOT # GGL

| Buyer Name and Address | Co-Buyer Name and Address | Creditor-Seller Name and Address |
|---|---|---|
| DEMETRIUS T CROCKETT<br>2121 LOHMANS CROSSING RD<br>AUSTIN, TX 78734 | N/A | DRIVE 512 AUTORANCH LLC<br>6219 S CONGRESS AVE<br>AUSTIN, TX 78745 |

**EXHIBIT J**

The Buyer and any Co-Buyer is referred to as "I", "my" or "me." The Seller is referred to as "you" or "your." This contract may be transferred by the Seller.

**PROMISE TO PAY**

The credit price is shown below as the "Total Sales Price." The "Cash Price" is also shown in Line 1 on Page 2. By signing this contract, I choose to purchase the motor vehicle on credit according to the terms of this contract. I agree to pay you the Amount Financed, Finance Charge, and any other charges in this contract. I agree to make payments according to the Payment Schedule in this contract. If more than one person signs as a buyer, I agree to keep all the promises in this agreement even if the others do not.

I have thoroughly inspected, accepted, and approved the motor vehicle in all respects.

| Year | Make | Model | Vehicle Identification Number | | USE FOR WHICH PURCHASED |
|---|---|---|---|---|---|
| 2017 | Mitsubishi | Mirage | [redacted] | ☐ New<br>☐ Demonstrator<br>☐ Factory<br>☐ Official/Executive<br>☒ Used | ☒ PERSONAL, FAMILY OR HOUSEHOLD<br>☐ BUSINESS OR COMMERCIAL<br>☐ AGRICULTURAL |

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Trade-in: Year | N/A | Make | N/A | Model | N/A | VIN | N/A | License No. | N/A |
| Trade-in: Year | N/A | Make | N/A | Model | N/A | VIN | N/A | License No. | N/A |

### TRUTH IN LENDING DISCLOSURES

| ANNUAL PERCENTAGE RATE | FINANCE CHARGE | Amount Financed | Total of Payments | Total Sale Price |
|---|---|---|---|---|
| The cost of my credit as a yearly rate. | The dollar amount the credit will cost me. | The amount of credit provided to me or on my behalf. | The amount I will have paid after I have made all payments as scheduled. | The total cost of my purchase on credit, including my down payment of $ 1,428.00 is |
| [redacted] % | $ [redacted] | [redacted] | $ 19,589.00 | $ 20,589.00 |

**Payment Schedule:** My payment schedule will be:

COPY OF ELECTRONIC ORIGINAL

| No. of Payments | Amount of Payments | When Payments Are Due |
|---|---|---|
| 1 | $ 428.00 | January 12, 2021 |
| | $ | |
| 60 | $ 319.35 | Monthly Beginning January 23, 2021 |

**Security:** You will have a security interest in the motor vehicle being purchased.
**Late Charge:** If you do not receive my entire payment within 15 days after it is due (10 days if I am buying a heavy commercial vehicle), I will pay a late charge of 5% of the scheduled payment.
**Prepayment:** I can pay all that I owe early. If I do so, I can get a refund of part of the Finance Charge.
**Additional Information:** I will refer to this document for information about nonpayment, default, security interests, any required repayment in full before the scheduled date, and prepayment refunds.

***The Annual Percentage Rate may be negotiated with the Seller. The Seller may assign this contract and retain its right to receive a part of the Finance Charge.***

**PROPERTY INSURANCE: I must keep the collateral insured against damage or loss in the amount I owe. I must keep this insurance until I have paid all that I owe under this contract. I may obtain property insurance from anyone I want or provide proof of insurance I already have. The insurer must be authorized to do business in Texas. The maximum deductible is $550.**

I agree to give you proof of property insurance. I must name you as the person to be paid under the policy in the event of damage or loss.

**LIABILITY INSURANCE**

**THIS CONTRACT DOES NOT INCLUDE INSURANCE COVERAGE FOR PERSONAL LIABILITY AND PROPERTY DAMAGE CAUSED TO OTHERS .**


**© 2012 - 2016 Credit Acceptance Corporation.
All Rights Reserved.**



Sign Buyer's Initials DTC

Buyer's Initials

**EXHIBIT K**

Gmail Tread Carefully <dcaustin71@gmail.com>

## [Lyft] Re: Follow-up from Lyft

1 message

**Lyft** <support@lyft-new.zendesk.com> Wed, Jan 6, 2021 at 3:47 PM
Reply-To: Lyft <support+id170104950@lyft-new.zendesk.com>
To: Turner Crockett <dcaustin71@gmail.com>

Your request (170104950) has been updated. To add additional comments, reply to this email.

**Kat** (Lyft)

Hello Turner,

Thanks very much for all your patience with this issue. I can assure that multiple teams including our engineering staff have investigated this issue to make sure that all concerns were addressed.

Our engineering team thoroughly checked your account and the instance of charge back in question but did not find there to be any type of error or glitch in our system to cause it. The charge back was issued on the USAA card ending in 3869 which you placed on file on 12/6/19 and previously used to place a rental deposit with Express Drive. There was no indication on our end that anything fraudulent occurred and again, no evidence that a glitch in our system caused an incorrect charge back.

Unfortunately, we are unable to place you in another Express Drive rental as we take instances of charge backs very seriously. I understand this is not the answer you were hoping for. Please know that your driver account is still active and you are welcome to add a personal vehicle to the platform if you're interested in driving with us in the future.

We truly appreciate all the time and miles you've logged with Lyft Express Drive and I am sorry that this matter could not be resolved in your favor. We

**EXHIBIT K**

hope that you are well, and wish you a healthy and happy New Year!

Kat
Lyft Support
help.lyft.com

---

This email is a service from Lyft. Delivered by Zendesk

[XZG9OE-WL8W]

**EXHIBIT L**

Gmail Tread Carefully <dcaustin71@gmail.com>

## USAA Cited By Lyft As Culprit

1 message

**Tread Carefully** <dcaustin71@gmail.com> Thu, Jan 28, 2021 at 2:07 PM
To: Lyft <support+id170104950@lyft-new.zendesk.com>, "Abuse@usaa.com" <Abuse@usaa.com>
Cc: Tread Carefully <dcaustin71@gmail.com>

At 3:58 PM CST yesterday I called 877-762-7256 (USAA's Fraud Department) and spoke with Alexis.

Alexis took my personal information and conducted a deep dive database search into USAA historical intel and (as I told you Lyft) she verified / confirmed / validated that **I have NEVER had a USAA account EVER.**

After 6 months of what appears to be a botched investigation by Lyft operations, Lyft's continued consciousness and willful display of discrimination and reckless negligence to address a civil injustice matter promptly and with integrity, adds to my suspicions of malicious intent and civil injury that's still causing undue emotional distress and financial hardships for me and my family.

USAA's Financial Intelligence Unit has been assigned to this case of civil injustice for further investigation.

And to add further insult to injury, Lyft also stole $250 from me!!!

I. AM. NOT. GOING. AWAY...justice will be served!

https://youtu.be/32E6B8P3J8M

On Wednesday, January 13, 2021, Tread Carefully <dcaustin71@gmail.com> wrote:

> Hello USAA,
>
> After 6 months of "research" by a company known as Lyft (copied on this communication) , to identify a creditor who has caused unprecedented hardships for me and my family due to a chargeback on June 16, 2020 (see below) that took two weeks to process which I was never made aware of, **Lyft has cited USAA (see full disclosure below) as the creditor that caused the issue with my Lyft account**.
>
> I do not recall ever having a USAA account.
>
> Can you please assist and advise on how USAA got involved here?
>
> **Date of Charge**: 6/16/20
> **Amount**: $17.13
> **Visa card**: *3869
> **Date of Chargeback**: 7/4/20
>
> We also have this information:

EXHIBIT L

# Case Number: 801833861101
# Reason Code: 1040

On Wed, Jan 6, 2021 at 3:47 PM Lyft <support@lyft-new.zendesk.com> wrote:

Your request (170104950) has been updated. To add additional comments, reply to this email.

**Kat** (Lyft)

Hello Turner,

Thanks very much for all your patience with this issue. I can assure that multiple teams including our engineering staff have investigated this issue to make sure that all concerns were addressed.

Our engineering team thoroughly checked your account and the instance of charge back in question but did not find there to be any type of error or glitch in our system to cause it. The charge back was issued on the USAA card ending in 3869 which you placed on file on 12/6/19 and previously used to place a rental deposit with Express Drive. There was no indication on our end that anything fraudulent occurred and again, no evidence that a glitch in our system caused an incorrect charge back.

Unfortunately, we are unable to place you in another Express Drive rental as we take instances of charge backs very seriously. I understand this is not the answer you were hoping for. Please know that your driver account is still active and you are welcome to add a personal vehicle to the platform if you're interested in driving with us in the future.

We truly appreciate all the time and miles you've logged with Lyft Express Drive and I am sorry that this matter could not be resolved in your favor. We hope that you are well, and wish you a healthy and happy New Year!

Kat
Lyft Support
help.lyft.com

**USAA FEDERAL SAVINGS BANK**
10750 McDermott Freeway
San Antonio, Texas 78288

**EXHIBIT M**

USAA

Mr. Demetrius Turner Crockett
3310 West Braker Lane 300-401
Austin, TX 78758

March 17, 2021

Dear Mr. Crockett:

This letter is in response to your request for membership verification with USAA Federal Savings Bank (FSB). We hope the following information is helpful.

Thank you for speaking with Robert Casiano, of our staff, regarding your concerns. As Mr. Casiano explained in your conversation on March 11, 2021, the FSB is unable to determine ownership of any accounts without a full account number. A systems audit was conducted using the personally identifiable information you provided, including your name, email address d****tin7*@gmail.com, phone numbers ending in 5192 and 1136, and a social security number. We are unable to substantiate that you currently or previously established or qualified for USAA membership and/or FSB products and services. For more information regarding membership eligibility, please visit us at usaa.com. We appreciate the opportunity to respond to your concerns.

Sincerely,

Michael J. Rodriguez

Michael J. Rodriguez
Director, Advocacy
USAA Federal Savings Bank

Subject: Your ride with Karina on July 2

**Lyft Ride Receipt** <no-reply@lyftmail.com>
to dcaustin71

Thu, Jul 2, 2020, 4:53

EXHIBIT N

**JULY 2, 2020 AT 4:34 PM**

# Thanks for riding with Karina!

100% of tips go to drivers. Add a tip

| | |
|---|---|
| Lyft fare (8.52mi, 12m 12s) | $18.38 |
| Tip | $3.31 |

Visa *5782 **$21.69**

Subject: Your ride with Ramon on July 2

**Lyft Ride Receipt** <no-reply@lyftmail.com>
to dcaustin71

Thu, Jul 2, 2020, 5:49

**EXHIBIT N**

**JULY 2, 2020 AT 5:32 PM**

# Thanks for riding with Ramon!

100% of tips go to drivers. Add a tip

| | |
|---|---|
| Lyft fare (7.94mi, 11m 29s) | $17.16 |
| Tip | $3.09 |

Visa *5782 **$20.25**

Subject: Your ride with Mike on July 3

**Lyft Ride Receipt** <no-reply@lyftmail.com> Fri, Jul 3, 2020, 12:41
to dcaustin71

**EXHIBIT N**

**JULY 3, 2020 AT 12:06 AM**

# Thanks for riding with Mike!

100% of tips go to drivers. Add a tip

| | |
|---|---|
| Lyft fare (7.34mi, 12m 44s) | $17.75 |
| Tip | $3.20 |

Visa *5782 **$20.95**

Subject: Lyft Ride Receipt - Charge Failed

Lyft Ride Receipt <no-reply@lyftmail.com> Fri, Jul 3, 2020, 5:13
to dcaustin71

EXHIBIT N

**$2.99 Balance Due**

We were unable to charge your Visa *5782 for your last ride. To continue using Lyft, please update your payment information in the app to settle your balance.

**JULY 3, 2020 AT 3:30 PM**

# Thanks for riding with Joel!

100% of tips go to drivers. Add a tip

Since you updated your stop or destination, your fare reflects actual time and distance
Learn more

| | |
|---|---|
| Base fare | $1.04 |
| 29m 23s | $7.93 |
| 4.98 mi | $4.83 |
| Service fee | $2.85 |
| Tip | $3.00 |

VISA Visa *5782 **$19.65**

Subject: Your ride with Oscar on July 3

**Lyft Ride Receipt** <no-reply@lyftmail.com> Fri, Jul 3, 2020, 5:53
to dcaustin71

EXHIBIT N

**JULY 3, 2020 AT 5:27 PM**

# Thanks for riding with Oscar!

100% of tips go to drivers. Add a tip

| | |
|---|---|
| Lyft fare (8.23mi, 17m 50s) | $20.90 |
| Tip | $3.76 |

Visa *5782 **$24.66**

Subject: Your ride with Muhammad on July 3

**Lyft Ride Receipt** <no-reply@lyftmail.com> Fri, Jul 3, 2020, 11:54
to dcaustin71

**EXHIBIT N**

**JULY 3, 2020 AT 9:04 PM**

# Thanks for riding with Muhammad!

100% of tips go to drivers. Add a tip

| | |
|---|---|
| Lyft fare (11.02mi, 15m 15s) | $20.07 |
| VISA Visa *5782 | **$20.07** |

Subject: Your ride with Hany on July 4

**Lyft Ride Receipt** <no-reply@lyftmail.com> Sat, Jul 4, 2020, 5:25
to dcaustin71

**EXHIBIT N**

**JULY 4, 2020 AT 5:06 AM**

# Thanks for riding with Hany!

100% of tips go to drivers. Add a tip

| | |
|---|---|
| Lyft fare (1.54mi, 6m 30s) | $7.55 |
| Tip | $2.00 |
| Lyft Credits | -$5.00 |

| | |
|---|---|
| Visa *5782 | **$4.55** |

Subject: Your ride with Hal on July 4

**Lyft Ride Receipt** <no-reply@lyftmail.com> Sat, Jul 4, 2020, 6:25
to dcaustin71

**EXHIBIT N**

**JULY 4, 2020 AT 5:33 AM**

# Thanks for riding with Hal!

100% of tips go to drivers. Add a tip

| | |
|---|---|
| Lyft fare (1.87mi, 7m 40s) | $7.44 |
| Tip | $2.00 |

Visa *5782 **$9.44**

Subject: Your ride with Rene on July 4

**Lyft Ride Receipt** <no-reply@lyftmail.com> Sat, Jul 4, 2020, 12:51
to dcaustin71

EXHIBIT N

**JULY 4, 2020 AT 12:03 PM**

# Thanks for riding with Rene!

100% of tips go to drivers. Add a tip

| | |
|---|---|
| Lyft fare (4.71mi, 12m 34s) | $11.79 |
| Tip | $2.00 |

VISA Visa *5782 **$13.79**

Subject: Your ride with Hal on July 4

Lyft Ride Receipt <no-reply@lyftmail.com>
to dcaustin71

Sat, Jul 4, 2020, 11:59

EXHIBIT N

JULY 4, 2020 AT 6:33 AM

# Thanks for riding with Hal!

100% of tips go to drivers. Add a tip

| | |
|---|---|
| Lyft fare (0.43mi, 3m 11s) | $6.89 |
| Tip | $2.00 |

VISA Visa *5782 **$8.89**

Subject: Your ride with Teddy on July 4

**Lyft Ride Receipt** <no-reply@lyftmail.com> Sat, Jul 4, 2020, 1:48
to dcaustin71

**EXHIBIT N**

**JULY 4, 2020 AT 1:25 PM**

# Thanks for riding with Teddy!

100% of tips go to drivers. Add a tip

| | |
|---|---|
| Lyft fare (8.89mi, 18m 22s) | $17.53 |
| Tip | $2.00 |

Visa *5782 **$19.53**

Subject: Your ride with Aaron on July 4

**Lyft Ride Receipt** <no-reply@lyftmail.com> Sun, Jul 5, 2020, 7:20

to dcaustin71

EXHIBIT N

**JULY 4, 2020 AT 7:05 PM**

# Thanks for riding with Aaron!

100% of tips go to drivers. Add a tip

| | |
|---|---|
| Lyft fare (11.01mi, 13m 43s) | $22.70 |
| Visa *5782 | **$22.70** |

Subject: Your ride with Satish on July 6

**Lyft Ride Receipt** <no-reply@lyftmail.com> Mon, Jul 6, 2020, 1:59
to dcaustin71

**EXHIBIT N**

**JULY 6, 2020 AT 12:40 AM**

# Thanks for riding with Satish!

100% of tips go to drivers. Add a tip

| | |
|---|---|
| Lyft fare (2.59mi, 8m 13s) | $8.52 |
| Visa *5782 | **$8.52** |

Subject: Your ride with Henry on July 6

**Lyft Ride Receipt** <no-reply@lyftmail.com>
to dcaustin71

Mon, Jul 6, 2020, 2:33

**EXHIBIT N**

**JULY 6, 2020 AT 2:11 AM**

# Thanks for riding with Henry!

100% of tips go to drivers. Add a tip

Since you updated your stop or destination, your fare reflects actual time and distance
Learn more

| | |
|---|---|
| Base fare | $1.04 |
| 19m 38s | $5.30 |
| 4.15 mi | $4.02 |
| Service fee | $2.85 |

VISA Visa *5782 **$13.21**

Subject: Your ride with Damon on July 6

**Lyft Ride Receipt** <no-reply@lyftmail.com> Mon, Jul 6, 2020, 1:14
to dcaustin71

EXHIBIT N

**JULY 6, 2020 AT 10:24 AM**

# Thanks for riding with Damon!

100% of tips go to drivers. Add a tip

| | |
|---|---|
| Lyft fare (8.30mi, 18m 21s) | $21.60 |
| Visa *5782 | **$21.60** |

Subject: Your ride with Hui on July 6

**Lyft Ride Receipt** <no-reply@lyftmail.com> Tue, Jul 7, 2020, 9:39
to dcaustin71

EXHIBIT N

**JULY 6, 2020 AT 1:25 PM**

# Thanks for riding with Hui!

100% of tips go to drivers. Add a tip

Since you updated your stop or destination, your fare reflects actual time and distance
Learn more

| | |
|---|---|
| Base fare | $1.04 |
| 38m 25s | $10.37 |
| 21.17 mi | $20.53 |
| Service fee | $2.85 |
| AUS Airport - Airport Fee | $2.50 |

VISA Visa *5782 **$37.29**

Subject: Your ride with Mark on July 9

**Lyft Ride Receipt** <no-reply@lyftmail.com> Thu, Jul 9, 2020, 3:09
to dcaustin71

**EXHIBIT N**

**JULY 9, 2020 AT 12:43 PM**

# Thanks for riding with Mark!

100% of tips go to drivers. Add a tip

| | |
|---|---|
| Lyft fare (11.46mi, 17m 17s) | $22.13 |
| VISA Visa *1560 | **$22.13** |

Subject: Your ride with Ikechukwu on July 14

**Lyft Ride Receipt** <no-reply@lyftmail.com> Tue, Jul 14, 2020, 1:04
to dcaustin71

**EXHIBIT N**

**JULY 14, 2020 AT 12:27 AM**

# Thanks for riding with Ikechukwu!

100% of tips go to drivers. Add a tip

| | |
|---|---|
| Lyft fare (7.95mi, 10m 33s) | $17.27 |
| Tip | $4.00 |

Visa *5782 **$21.27**

Subject: Your ride with José on July 15

**Lyft Ride Receipt** <no-reply@lyftmail.com>
to dcaustin71

Wed, Jul 15, 2020, 10:14

EXHIBIT N

JULY 15, 2020 AT 12:35 PM

# Thanks for riding with José!

100% of tips go to drivers. Add a tip

| | |
|---|---|
| Lyft fare (8.49mi, 11m 8s) | $18.21 |
| VISA Visa *5782 | **$18.21** |

Subject: Your ride with Jose on July 31

**Lyft Ride Receipt** <no-reply@lyftmail.com> Fri, Jul 31, 2020, 6:37
to dcaustin71

**EXHIBIT N**

JULY 31, 2020 AT 5:32 PM

# Thanks for riding with Jose!

100% of tips go to drivers. Add a tip

| | |
|---|---|
| Lyft fare (12.20mi, 31m 19s) | $23.67 |
| Tip | $5.92 |

VISA Visa *5782 **$29.59**

**Lyft Ride Receipt** <no-reply@lyftmail.com> Sat, Aug 1, 2020, 7:14
to dcaustin71

**EXHIBIT N**

**JULY 31, 2020 AT 6:53 PM**

# Thanks for riding with Vincent!

100% of tips go to drivers. Add a tip

| | |
|---|---|
| Lyft fare (13.58mi, 19m 47s) | $21.16 |
| Visa *5782 | **$21.16** |

Subject: Your ride with Joseph on August 3

**Lyft Ride Receipt** <no-reply@lyftmail.com> Mon, Aug 3, 2020, 1:25
to dcaustin71

**EXHIBIT N**

**AUGUST 3, 2020 AT 12:52 PM**

# Thanks for riding with Joseph!

100% of tips go to drivers. Add a tip

| | |
|---|---|
| Lyft fare (5.92mi, 21m 4s) | $15.27 |
| Tip | $2.00 |

VISA Visa *5782 **$17.27**

Subject: Your ride with William on August 3

**Lyft Ride Receipt** <no-reply@lyftmail.com> Mon, Aug 3, 2020, 1:55
to dcaustin71

EXHIBIT N

AUGUST 3, 2020 AT 1:39 PM

# Thanks for riding with William!

100% of tips go to drivers. Add a tip

| | |
|---|---|
| Lyft fare (4.21mi, 8m 37s) | $11.27 |
| Visa *5782 | **$11.27** |

Subject: Your ride with Ivan on August 4

**Lyft Ride Receipt** <no-reply@lyftmail.com> Tue, Aug 4, 2020, 9:39
to dcaustin71

**EXHIBIT N**

**AUGUST 4, 2020 AT 1:18 AM**

# Thanks for riding with Ivan!

100% of tips go to drivers. Add a tip

| | |
|---|---|
| Lyft fare (2.79mi, 6m 8s) | $9.82 |
| Visa *5782 | **$9.82** |

Subject: Your ride with Cyril on August 4

**Lyft Ride Receipt** <no-reply@lyftmail.com>
to dcaustin71

Wed, Aug 5, 2020, 9:52

EXHIBIT N

AUGUST 4, 2020 AT 9:45 AM

# Thanks for riding with Cyril!

100% of tips go to drivers. Add a tip

| | |
|---|---|
| Lyft fare (2.85mi, 6m 23s) | $8.88 |
| VISA Visa *5782 | **$8.88** |

Subject: Your ride with Abdul on August 5

**Lyft Ride Receipt** <no-reply@lyftmail.com>
to dcaustin71

Wed, Aug 5, 2020, 4:35

lyft

**EXHIBIT N**

**AUGUST 5, 2020 AT 3:11 PM**

# Thanks for riding with Abdul!

100% of tips go to drivers. Add a tip

| | |
|---|---|
| Lyft fare (7.10mi, 14m 43s) | $13.81 |
| VISA Visa *5782 | **$13.81** |

Subject: Your ride with Alejandro on August 5

**Lyft Ride Receipt** <no-reply@lyftmail.com> Thu, Aug 6, 2020, 11:19
to dcaustin71

**EXHIBIT N**

**AUGUST 5, 2020 AT 4:39 PM**

# Thanks for riding with Alejandro!

100% of tips go to drivers. Add a tip

| | |
|---|---|
| Lyft fare (7.64mi, 16m 39s) | $15.69 |
| Visa *5782 | **$15.69** |

Subject: Your ride with Eric on August 6

**Lyft Ride Receipt** <no-reply@lyftmail.com> Thu, Aug 6, 2020, 5:57
to dcaustin71

EXHIBIT N

AUGUST 6, 2020 AT 11:49 AM

# Thanks for riding with Eric!

100% of tips go to drivers. Add a tip

| | |
|---|---|
| Lyft fare (39.87mi, 76m 2s) | $50.02 |
| Visa *5782 | **$50.02** |

Subject: Your ride with Donna on August 6

**Lyft Ride Receipt** <no-reply@lyftmail.com>
to dcaustin71

Thu, Aug 6, 2020, 7:19

lyft

EXHIBIT N

AUGUST 6, 2020 AT 6:21 PM

# Thanks for riding with Donna!

100% of tips go to drivers. Add a tip

| | |
|---|---|
| Lyft fare (1.66mi, 5m 20s) | $6.70 |
| VISA Visa *5782 | **$6.70** |

Subject: Your ride with Teklu on August 6

**Lyft Ride Receipt** <no-reply@lyftmail.com> Fri, Aug 7, 2020, 7:29
to dcaustin71

**EXHIBIT N**

**AUGUST 6, 2020 AT 7:19 PM**

# Thanks for riding with Teklu!

100% of tips go to drivers. Add a tip

| | |
|---|---|
| Lyft fare (1.66mi, 8m 29s) | $6.56 |
| VISA Visa *5782 | **$6.56** |

Subject: Your ride with Sterling G on August 9

**Lyft Ride Receipt** <no-reply@lyftmail.com> Mon, Aug 10, 2020, 5:04
to dcaustin71

EXHIBIT N

**AUGUST 9, 2020 AT 4:09 PM**

# Thanks for riding with Sterling G!

100% of tips go to drivers. Add a tip

| | |
|---|---|
| Lyft fare (3.04mi, 20m 45s) | $8.66 |
| Visa *6966 | **$8.66** |

Subject: Your ride with Abdul wakeel on August 11

**Lyft Ride Receipt** <no-reply@lyftmail.com> Wed, Aug 12, 2020, 10:52
to dcaustin71

**EXHIBIT N**

**AUGUST 11, 2020 AT 10:32 PM**

# Thanks for riding with Abdul wakeel!

100% of tips go to drivers. Add a tip

| | |
|---|---|
| Lyft fare (11.97mi, 18m 59s) | $20.55 |
| VISA Visa *6966 | **$20.55** |

Subject: Your ride with Henry on August 15

**Lyft Ride Receipt** <no-reply@lyftmail.com> Sat, Aug 15, 2020, 1:43
to dcaustin71

**EXHIBIT N**

**AUGUST 15, 2020 AT 12:40 AM**

# Thanks for riding with Henry!

100% of tips go to drivers. Add a tip

| | |
|---|---|
| Lyft fare (14.82mi, 16m 13s) | $23.87 |
| VISA Visa *5782 | **$23.87** |

Subject: Your ride with Doug on August 15

Lyft Ride Receipt <no-reply@lyftmail.com>
to dcaustin71

Sat, Aug 15, 2020, 3:00

EXHIBIT N

AUGUST 15, 2020 AT 2:09 AM

# Thanks for riding with Doug!

100% of tips go to drivers. Add a tip

| | |
|---|---|
| Lyft fare (2.62mi, 6m 30s) | $8.61 |
| Visa *5782 | **$8.61** |

Subject: Your ride with Ghulam on August 23

**Lyft Ride Receipt** <no-reply@lyftmail.com> Sun, Aug 23, 2020, 4:30
to dcaustin71

**EXHIBIT N**

**AUGUST 23, 2020 AT 4:10 AM**

# Thanks for riding with Ghulam!

100% of tips go to drivers. Add a tip

Since you updated your stop or destination, your fare reflects actual time and distance
Learn more

| | |
|---|---|
| Base fare | $1.08 |
| 14m 33s | $4.07 |
| 11.12 mi | $11.23 |
| Service fee | $2.85 |

Visa *5782 **$19.23**

Subject: Your ride with Yosbel on August 26

**Lyft Ride Receipt** <no-reply@lyftmail.com> Thu, Aug 27, 2020, 2:04
to dcaustin71

**EXHIBIT N**

**AUGUST 26, 2020 AT 9:51 PM**

# Thanks for riding with Yosbel!

100% of tips go to drivers. Add a tip

| | |
|---|---|
| Lyft fare (5.71mi, 21m 50s) | $13.60 |
| Visa *5782 | **$13.60** |

Subject: Your ride with Spencer on August 27

Lyft Ride Receipt <no-reply@lyftmail.com> Thu, Aug 27, 2020, 4:46
to dcaustin71

EXHIBIT N

AUGUST 27, 2020 AT 2:12 AM

# Thanks for riding with Spencer!

100% of tips go to drivers. Add a tip

| | |
|---|---|
| Lyft fare (2.35mi, 8m 7s) | $7.81 |
| VISA Visa *5782 | **$7.81** |

Subject: Your ride with Tommy on August 27

**Lyft Ride Receipt** <no-reply@lyftmail.com> Thu, Aug 27, 2020, 11:26
to dcaustin71

EXHIBIT N

**AUGUST 27, 2020 AT 5:08 AM**

# Thanks for riding with Tommy!

100% of tips go to drivers. Add a tip

Lyft fare (2.71mi, 13m 27s) $9.27

Visa *5782 **$9.27**

Subject: Your ride with Jesse on August 28

Lyft Ride Receipt <no-reply@lyftmail.com> Fri, Aug 28, 2020, 3:13
to dcaustin71

lyft

EXHIBIT N

AUGUST 28, 2020 AT 2:36 AM

# Thanks for riding with Jesse!

100% of tips go to drivers. Add a tip

Since you updated your stop or destination, your fare reflects actual time and distance
Learn more

| | |
|---|---|
| Base fare | $1.08 |
| 10m 24s | $2.91 |
| 2.22 mi | $2.24 |
| Service fee | $2.85 |

VISA Visa *5782 **$9.08**

Subject: Your ride with Joe on August 27

**Lyft Ride Receipt** <no-reply@lyftmail.com> Fri, Aug 28, 2020, 2:20

to dcaustin71

**EXHIBIT N**

**AUGUST 27, 2020 AT 4:10 PM**

# Thanks for riding with Joe!

100% of tips go to drivers. Add a tip

| | |
|---|---|
| Lyft fare (12.03mi, 30m 36s) | $23.18 |
| Visa *6966 | **$23.18** |

Gmail

Tread Carefully <dcaustin71@gmail.com>

**Lyft Rental Charge Receipt**

**Lyft** <receipts@lyftmail.com>
To: dcaustin71@gmail.com

Tue, May 5, 2020 at 6:33 AM

lyft

**EXHIBIT N**

# $27.50 Thanks! We've processed your payment successfully

Charges to card ending with ***5782: $27.50

Contact

548 Market St., P.O. Box 68514, San Francisco, CA 94104

© 2020 Lyft, Inc.

CPUC ID No. TCP0032513 - P

Gmail Tread Carefully <dcaustin71@gmail.com>

**Lyft Rental Charge Receipt**

**Lyft** <receipts@lyftmail.com> Tue, Jun 2, 2020 at 8:56 AM
To: dcaustin71@gmail.com

**EXHIBIT O**

lyft

# $8.50 Thanks! We've processed your payment successfully

Charges to card ending with ***5782: $8.50

Contact

548 Market St., P.O. Box 68514, San Francisco, CA 94104

© 2020 Lyft, Inc.

CPUC ID No. TCP0032513 - P

Gmail Tread Carefully <dcaustin71@gmail.com>

**Lyft Rental Charge Receipt**

**Lyft** <receipts@lyftmail.com> Tue, Jun 30, 2020 at 9:54 AM
To: dcaustin71@gmail.com

**EXHIBIT O**

lyft

# $97.38 Thanks! We've processed your payment successfully

Charges to card ending with ***5782: $97.38

Contact

548 Market St., P.O. Box 68514, San Francisco, CA 94104

© 2020 Lyft, Inc.

CPUC ID No. TCP0032513 - P

Gmail Tread Carefully <dcaustin71@gmail.com>

**Lyft Rental Charge Receipt**

**Lyft** <receipts@lyftmail.com> Tue, Jul 7, 2020 at 8:51 AM
To: dcaustin71@gmail.com

**EXHIBIT O**

lyft

# $73.34 Thanks! We've processed your payment successfully

Charges to card ending with ***5782: $73.34

Contact

548 Market St., P.O. Box 68514, San Francisco, CA 94104

© 2020 Lyft, Inc.

CPUC ID No. TCP0032513 - P

EXHIBIT P

Gmail Tread Carefully <dcaustin71@gmail.com>

# Re: Lyft Help - Request Received

**Tread Carefully** <dcaustin71@gmail.com> Sat, Jul 4, 2020 at 6:46 PM
To: Lyft <support+id169279366@lyft-new.zendesk.com>

My Lyft Driver app is incorrectly stating that a Ford Fiesta is “IN USE” on my account. This is NOT true because I haven’t owned a Ford Fiesta since November 2019. The app is not allowing me to change the status to NOT IN USE nor delete the vehicle from my account.

Please assist.




On Sat, Jul 4, 2020 at 6:44 PM Lyft <support@lyft-new.zendesk.com> wrote:

EXHIBIT P

##- Please type your reply above this line -##

This is an automatic confirmation to let you know we received your request for help from the Lyft app.

A customer support associate will investigate and reach out to you soon.

Thanks for your patience,

Lyft

---

This email is a service from Lyft. Delivered by Zendesk | Privacy Policy

--

This email is confidential. It is not permitted or approved, by the email's owner/originator, to be shared outside of the parties copied by the email's originator without the explicit consent and approval of the email's originator.

Lyft, Inc
185 Berry St. Suite 5000
San Francisco, CA 94107

**EXHIBIT Q**

If you have questions contact:
Lyft
Phone: (855) 280-0278

DEMETRIUS CROCKETT
3310 W. BRAKER LANE
AUSTIN, TX 78758

## Instructions for Payee

You have received this form because you have either (a) accepted payment cards for payments, or (b) received payments through a third party network that exceeded $20,000 in gross total reportable transactions and the aggregate number of those transactions exceeded 200 for the calendar year. Merchant acquirers and third party settlement organizations, as payment settlement entities (PSEs), must report the proceeds of payment card and third party network transactions made to you on Form 1099-K under Internal Revenue Code section 6050W. The PSE may have contracted with an electronic payment facilitator (EPF) or other third party payer to make payments to you.

If you have questions about the amounts reported on this form, contact the FILER whose information is shown in the upper left corner on the front of this form. If you do not recognize the FILER shown in the upper left corner of the form, contact the PSE whose name and phone number are shown in the lower left corner of the form above your account number.

See the separate instructions for your income tax return for using the information reported on this form.

**Payee's taxpayer identification number (TIN).** For your protection, this form may show only the last four digits of your TIN (social security number (SSN), individual taxpayer identification number (ITIN), adoption taxpayer identification number (ATIN), or employer identification number (EIN)). However, the issuer has reported your complete TIN to the IRS.

**Account number.** May show an account number or other unique number the PSE assigned to distinguish your account.

**Box 1a.** Shows the aggregate gross amount of payment card/third party network transactions made to you through the PSE during the calendar year.

**Box 1b.** Shows the aggregate gross amount of all reportable payment transactions made to you through the PSE during the calendar year where the card was not present at the time of the transaction or the card number was keyed into the terminal. Typically, this relates to online sales, phone sales, or catalogue sales. If the box for third party network is checked, or if these are third party network transactions, Card Not Present transactions will not be reported.

**Box 2.** Shows the merchant category code used for payment card/third party network transactions (if available) reported on this form.

**Box 3.** Shows the number of payment transactions (not including refund transactions) processed through the payment card/third party network.

**Box 4.** Shows backup withholding. Generally, a payer must backup withhold if you did not furnish your TIN or you did not furnish the correct TIN to the payer. See Form W-9, Request for Taxpayer Identification Number and Certification, and Pub. 505. Include this amount on your income tax return as tax withheld.

**Boxes 5a-5l.** Show the gross amount of payment card/third party network transactions made to you for each month of the calendar year.

**Boxes 6-8.** Show state and local income tax withheld from the payments.

**Future developments.** For the latest information about developments related to Form 1099-K and its instructions, such as legislation enacted after they were published, go to *www.irs.gov/Form1099K.*

X CORRECTED (if checked)

FILER'S name, street address, city or town, state or province, country, ZIP or foreign postal code, and telephone no.
Lyft, Inc
185 Berry St. Suite 5000
San Francisco, CA 94107

FILER'S TIN: 20-8809830

PAYEE'S TIN: [redacted]

OMB No. 1545-2205

**2020**

**Payment Card and Third Party Network Transactions**

Form **1099-K**

**Copy B**

**For Payee**

This is important tax information and is being furnished to the IRS. If you are required to file a return, a negligence penalty or other sanction may be imposed on you if taxable income results from this transaction and the IRS determines that it has not been reported.

Check to indicate if FILER is a (an):
Payment settlement entity (PSE) [X]
Electronic Payment Facilitator (EPF)/Other third party [ ]

Check to indicate transactions reported are:
Payment card [ ]
Third party network [X]

PAYEE'S name, street address (including apt. no.), city or town, state or province, country, and ZIP or foreign postal code
DEMETRIUS CROCKETT
3310 W. BRAKER LANE
AUSTIN, TX 78758

PSE'S name and telephone number

Account number (see instructions) [redacted]

| | |
|---|---|
| **1a** Gross amount of payment card/third party network transactions: $ 20,009.11 | |
| **1b** Card Not Present transactions: $ 0.00 | **2** Merchant category code: 4121 |
| **3** Number of payment transactions: 1,218 | **4** Federal income tax withheld: $ |
| **5a** January: $ 5,503.42 | **5b** February: $ 4,990.26 |
| **5c** March: $ 3,938.62 | **5d** April: $ 2,610.55 |
| **5e** May: $ 1,940.48 | **5f** June: $ 1,015.67 |
| **5g** July: $ 10.11 | **5h** August: $ |
| **5i** September: $ | **5j** October: $ |
| **5k** November: $ | **5l** December: $ |
| **6** State: TX | **7** State identification no. |
| **8** State income tax withheld: $ | |

Form **1099-K** (Keep for your records) www.irs.gov/Form1099K Department of the Treasury - Internal Revenue Service

0H8701 2.000

Lyft, Inc
185 Berry St. Suite 5000
San Francisco, CA 94107

**EXHIBIT Q**

Box 1 (NEC) = Nonemployee Compensation = $ 649.55

If you have questions contact:
Lyft
Phone: (855) 280-0278

DEMETRIUS CROCKETT
3310 W. BRAKER LANE
AUSTIN, TX 78758

## Instructions for Recipient

**Recipient's taxpayer identification number (TIN).** For your protection, this form may show only the last four digits of your TIN (social security number (SSN), individual taxpayer identification number (ITIN), adoption taxpayer identification number (ATIN), or employer identification number (EIN)). However, the issuer has reported your complete TIN to the IRS.

**FATCA filing requirement.** If the FATCA filing requirement box is checked, the payer is reporting on this Form 1099 to satisfy its chapter 4 account reporting requirement. You may also have a filing requirement. See the Instructions for Form 8938.

**Account number.** May show an account or other unique number the payer assigned to distinguish your account.

**Box 1.** Shows nonemployee compensation and/or nonqualified deferred compensation (NQDC). If you are in the trade or business of catching fish, box 1 may show cash you received for the sale of fish. If the amount in this box is self-employment (SE) income, report it on Schedule C or F (Form 1040 or 1040-SR), and complete Schedule SE (Form 1040 or 1040-SR). You received this form instead of Form W-2 because the payer did not consider you an employee and did not withhold income tax or social security and Medicare tax. If you believe you are an employee and cannot get the payer to correct this form, report this amount on the line for "Wages, salaries, tips, etc." of Form 1040, 1040-SR, or 1040-NR. You must also complete Form 8919 and attach it to your return. If you are not an employee but the amount in this box is not SE income (for example, it is income from a sporadic activity or a hobby), report this amount on the "Other income" line (on Schedule 1 (Form 1040 or 1040-SR); or on Form 1040-NR).

The amounts being reported as NQDC are includible in gross income for failure to meet the requirements under section 409A. This amount is also reported on Form 1099-MISC for additional tax calculation. See the Instructions for Forms 1040 and 1040-SR, or the Instructions for Form 1040-NR

**Box 2.** Reserved

**Box 3.** Reserved

**Box 4.** Shows backup withholding. A payer must backup withhold on certain payments if you did not give your TIN to the payer. See Form W-9, Request for Taxpayer Identification Number and Certification, for information on backup withholding. Include this amount on your income tax return as tax withheld.

**Boxes 5-7.** State income tax withheld reporting boxes.

**Future developments.** For the latest information about developments related to Form 1099-NEC and its instructions, such as legislation enacted after they were published, go to *www.irs.gov/Form1099NEC*

☐ CORRECTED (if checked)

REISSUED STATEMENT

OMB No. 1545-0116

**2020**

Form **1099-NEC**

**Nonemployee Compensation**

**Copy B**

**For Recipient**

PAYER'S name, street address, city or town, state or province, country, ZIP or foreign postal code, and telephone no.

Lyft, Inc
185 Berry St. Suite 5000
San Francisco, CA 94107

1 Nonemployee compensation
$649.55

PAYER'S TIN: 20-8809830

RECIPIENT'S TIN: [redacted]

2

3

RECIPIENT'S name, street address (including apt. no.), city or town, state or province, country, and ZIP or foreign postal code

DEMETRIUS CROCKETT
3310 W. BRAKER LANE
AUSTIN, TX 78758

**4 Federal income tax withheld**
$

This is important tax information and is being furnished to the IRS. If you are required to file a return, a negligence penalty or other sanction may be imposed on you if this income is taxable and the IRS determines that it has not been reported.

FATCA filing requirement ☐

Account number (see instructions) [redacted]

| 5 State tax withheld | 6 State/Payer's state no. | 7 State income |
|---|---|---|
| $ | TX / | $ |

Form **1099-NEC** (keep for your records)

www.irs.gov/Form1099NEC Department of the Treasury - Internal Revenue Service

0H8164 6.000

# Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Envelope ID: 98120147
Filing Code Description: Motion (No Fee)
Filing Description: MOTION FOR SUMMARY JUDGMENT
Status as of 3/6/2025 9:21 AM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Demetrius Crockett | | dcaustin71@gmail.com | 3/5/2025 5:34:28 PM | SENT |
| Lyft Inc | | legal@lyft.com | 3/5/2025 5:34:28 PM | SENT |
| Deidra Cobb | | deidra.cobb@pierferd.com | 3/5/2025 5:34:28 PM | SENT |
| Bradley Bush | | bradley.bush@pierferd.com | 3/5/2025 5:34:28 PM | SENT |
| Bryan Pollard | | bryan.pollard@pierferd.com | 3/5/2025 5:34:28 PM | SENT |

EXHIBIT E

# Case # D-1-GN-25-001601

**Demetrius Crockett**
**(Plaintiff)**

**Vs**

**Lyft, Inc.**
**(Defendant)**

**In the 261st**

**District Court**

**of**

**Travis County, Texas**

**AMENDED PUNITIVE DAMAGES**

# Motion for Summary Judgment

**AMENDED PUNITIVE DAMAGES**

**TO THE HONORABLE JUDGE OF SAID COURT, NOW COMES Demetrius Crockett, the Plaintiff in the above-styled and numbered cause, and files this Motion for Summary Judgment pursuant to Rule 166a of the Texas Rules of Civil Procedure, for judicial efficiency, and in support thereof would respectfully show the Court as follows:**

## I. INTRODUCTION

1. This is a Motion for Summary Judgment based on grounds of undisputed material facts and specific legal principles.

2. Summary judgment is proper in this case because there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law.

## II. STATEMENT OF UNDISPUTED FACTS

**On Fri, Dec 6th, 2019** Plaintiff signed a rental car agreement under the Defendant's Flexdrive rental car program. **(See Exhibit A)**. The rental agreement clearly states "*Renter acknowledges that Renter has no right to renewal of a rental and that Flexdrive may refuse to renew the Rental Period or permit Renter to rent again for any reason*, including without limitation excessive mileage or wear and tear on the Rental Car *or failure to pay charges*." **(See Exhibit A Pg. 4)**

**On Fri, May 29th, 2020 at 10:26 AM CST**, Plaintiff was contacted by Lyft to "*Please schedule and complete the necessary maintenance with one of our partners and complete in the next 48 hours to remain eligible to rent with Lyft*" **(See Exhibit C)** which the Plaintiff complied with.

**On Jul 2, 2020, 12:14:43 PM CST,** unbeknownst to the Plaintiff, Lyft Inc. had already ended the Plaintiff's rental agreement internally, in their systems, **(See Contract End Exhibit B),** which Plaintiff discovered after the conducting due diligence discovery for lawsuit.

# Case # D-1-GN-25-001601

What follows are date and time stamped accurate and truthful accounts of the Defendant unlawfully and unconstitutionally leading the Plaintiff on and deceiving the Plaintiff, making him believe that the rental car's routine maintenance was being conducted while what can only be concluded taking place was, but not limited to, devising an agenda to falsify records, commit blatant fraud, violate the Plaintiff's civil /constitutional rights and violate Texas Penal Codes to inflict unlawful, malicious, cruel and intentional, emotional distress and overwhelming financial hardships upon the Plaintiff and his family.

**On Sat, July 4th, 2020 at 6:46 PM CST,** Plaintiff reached out the Defendant again in good-faith, under extreme emotional distress and surmounting financial hardships to inform the Defendant of the toll the incident was taking on him and to remind the Defendant's that he has no vehicle to use on the Lyft Platform. **(See Exhibit P)**

**On Thu, Jul 9th, 2020 at 3:34 PM CST,** Plaintiff was informed via email that a routine background check was being run and he would not be able to drive nor earn living expenses on the Lyft platform period. **(See Exhibit D)**

**On Thu, Jul 9th, 2020,** after receiving the Jul 9th, 2020 3:34 PM CST emotionally distressing message that would make it impossible for the Plaintiff to earn further living expense income on the Defendant's platform during the extensive background check, Plaintiff incurred alternative rental car expenses equating to **$3,798** , that span over 5 months **(See Exhibit E )**, as means for transportation to earn income on alternate Gig Worker platforms.

**On Fri, Jul 31st, 2020 at 12:41 PM CST**, Plaintiff returned to pick up his rental after it had been routinely serviced to find out that his background check was fine, but the Defendant had cited him for a chargeback / failure to pay. The Defendant also informed the Plaintiff that his Lyft Driver Account would remain on hold **(See Exhibit F).** The Plaintiff's renter's rights were denied and he was not allowed to resolve the matter through another form of credit card owner payment.

**On Sat, Aug 1, 2020 at 6:31 PM CST**, Plaintiff was informed by a Lyft Representative that the chargeback / failure to pay incident was being investigated. **(See Exhibit G)**

**On Wed, Oct 28, 2020 at 4:17 PM CST**, Plaintiff reached out the Defendant again in good-faith, under extreme emotional distress and surmounting financial hardships to understand what was transpiring with the investigation and didn't get a progress report from the Defendant other than internal systems causing a problem. **(See Exhibit H)**

# Case # D-1-GN-25-001601

**On Mon, Dec 21, 2020, 4:42 PM CST,** after no professional courtesy follow up from the Defendant, Plaintiff reached out to the Defendant *again* in good-faith, under extreme emotional distress and surmounting financial hardships regarding a status update for the thorough investigation into what transpired with the Plaintiff's Lyft Driver account's credit card that Lyft claimed caused the chargeback / failure to pay and got same no progress update response. **(See Exhibit I)**

**On Wed, Dec 23rd, 2020,** due to the Defendant's lengthy (**approaching 5 months**) hold on his Lyft Flexdrive rental rights and lengthy investigation that ultimately and irrefutably proved fraud was committed by the Defendant and due to surmounting living expenses, the Plaintiff had to incur further emotional distress, debt and financial burden equating to **$20, 589,** for a vehicle purchase as a means to continue Gig Work on alternate platforms for living expense income. **(See Exhibit J)**

**On Wed, Jan 6, 2021 at 3:47 PM CST,** ***almost 6 months after a suspicious hold*** was put on the Plaintiff's Lyft Driver account, Defendant informed the Plaintiff that their **thorough** investigation found that the chargeback / failure to pay was from the Plaintiff's USAA credit card ***ending in 3869*** **(See Exhibit K).** Plaintiff has never had, nor owned, a USAA account nor has the Plaintiff ever owned a USAA credit card ***ending in 3869***.

**On Wed, January 27th, 2021 at 3:58 PM CST** per an official USAA's Fraud Department's initial investigation into the Defendant's claims and allegations against Plaintiff, it was confirmed that the Plaintiff has never had a USAA account, nor has the Plaintiff ever owned a USAA credit card further confirming and validating that fraud, falsification of records, deception, misrepresentation and breach of contract had been committed by the Defendant. **(See Exhibit L)**

**On Wed, March 17th, 2021**, after the Plaintiff provided his name, address, email address, phone number (at that time) and social security number again to USAA for a thorough investigation, Plaintiff received confirmation and validation, on official USAA letterhead from Advocacy Director, Michael J. Rodriguez of never owning a USAA account nor a USAA credit card. **(See Exhibit M)**

The Defendant, to this day, refuses to lawfully correct the fraud, deceit, defamation and inaccuracies on the Plaintiff's Lyft Driver account to enable his rental ability.

Since the Plaintiff also purchased personal miles with every week of Lyft Flexdrive rental, as a direct result of the Defendant's civil and criminal offenses, the Plaintiff incurred unnecessary rideshare expenses equating to **$683** for transport over the incident's duration. **(See Exhibit N)**

# Case # D-1-GN-25-001601

Documents labeled as "**Exhibit O**" show date and time stamped records, from the Defendant, regarding the Plaintiff's use of his credit card **ending in 5782 for Lyft Inc. Flexdrive rental service payments, *not a credit card ending in 3869*** as well as some, of many, examples of suspiciously unethical operational integrity and prejudice towards the Plaintiff while active on the Lyft Driver app platform that led up to the unlawful and unconstitutional chargeback that indefinitely prohibited the Plaintiff's Flexdrive rental ability. Additionally Plaintiff lost $3443.11 per month / $**20,659** in earnings, based on YTD earnings totals on the Defendant's platform, due to Defendant's civil and criminal offenses over a 6 month timeframe. **(See Exhibit Q)**

## III. LEGAL STANDARD

Under Rule 166a of the Texas Rules of Civil Procedure, summary judgment shall be rendered if the pleadings, depositions, admissions, affidavits, and other evidence on file show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

## IV. ARGUMENT

**Legal Principle 1**: Plaintiff's credit card used for a rental charge was falsified by Defendant. Plaintiff never committed the offense nor violated his contract; the Defendant made false allegations and **defamed the Plaintiff (Civil and Criminal Offense) under Texas Civil Practice & Remedies Code 73.001**.

**Legal Principle 2**: Defendant committed **blatant fraud** (Criminal Offense) against the Plaintiff and **violated Texas Penal Code 32.46**.

**Legal Principle 3**: Defendant falsified Plaintiff's ownership of a credit card in his name which is **Forgery under Texas Penal Code 32.21** (Criminal Offense).

**Legal Principle 4**: Defendant committed fraud / falsification of Plaintiff's credit card records that caused a violation with the Plaintiff's Flexdrive contract so it would appear that he breached the contract. The Plaintiff was denied good-faith efforts to resolve the matter with a credit card that he lawfully owned, in his name. **The Defendant's actions involving civil and criminal offenses breached the Plaintiff's Lyft Flexdrive rental agreement** (Criminal and Civil Offense).

# Case # D-1-GN-25-001601

**Legal Principle 5**: Defendant operated with complete unlawful and unconstitutional disregard for ethical principles, lawful remedies, accurate record keeping and operational integrity in **bold violation and defiance of the Texas Deceptive Trade Practices Act (DTPA) (Civil Offense)**.
**Legal Principle 6**: **Defendant's actions were malicious; as of Sat, July 4th, 2020** at 6:46 PM CST, the Defendant was well aware of the Plaintiff not owning a vehicle **(See Exhibit P)** to conduct Lyft Inc. independent contractor work for living expense income and further prohibited the Plaintiff from using Lyft's Flexdrive rental program to conduct independent contractor work for income. **This resulted in severe infliction of emotional distress and infliction of overwhelming financial hardship upon the Plaintiff and his family.** (Criminal and Civil Offense).

**Legal Principle 7:** The Defendant wrongly and unlawfully cited and blamed USAA as the entity responsible for fraud committed against the Plaintiff which is **Tortious Interference with USAA's business relations and disrupted USAA's internal operations** (Civil Offense).

## V. EVIDENCE

This motion is supported by the following evidence:

1. USAA Advocacy Director, Michael J. Rodriguez letter to Plaintiff on official USAA letterhead. **(See Exhibit M)**
2. All Exhibits presented with this Motion for Summary Judgment.

## VI. PRAYER FOR RELIEF

WHEREFORE, PREMISES CONSIDERED, Demetrius Crockett respectfully requests that this Court grant this Motion for Summary Judgment and render judgment in favor of the Plaintiff as follows:

**1. Personal Damages**

- **Actual damages in an amount to be awarded;$45,729**
- **Punitive damages: $91,458**
- **Reasonable attorney's fees and costs;**
- **Pre- and post-judgment interest to be determined at trial;**
- **Any other relief the Court finds just and equitable**

**2** . Refer Defendant to Austin Police Department or prosecutor for criminal proceedings.
**3** . Such other and further relief to which Plaintiff may be entitled.

**4** . Order Defendant to remove the unlawful and unconstitutional Lyft rental car ban and all instances of defamation against Plaintiff on Lyft's Driver platform, Plaintiff's Driver records and all independent contractor partner records.

**5 . For each year the Plaintiff was unlawfully and unconstitutionally wronged, award the Plaintiff a Top-Tier Lyft rental car of his choice.**

Respectfully submitted,

**Demetrius Crockett**
**3310 W. Braker Lane**
**Austin, Texas 78758**
**512-553-5455**
**youcanusemyemailaddress@gmail.com**

## Certificate of Service

**I hereby certify that a true and correct copy of the foregoing Motion for Summary Judgement has been served, via electronic filing, to Lyft Inc., on this the 5th day of March 2025, electronically and in accordance with the Texas Rules of Civil Procedure.**

**Demetrius Crockett**

D. Crockett 3/5/25

flexdrive

# Flexdrive Rental Agreement for Lyft Drivers

**EXHIBIT A**

## Renter

DEMETRIUS CROCKETT
2121 Lohmans Crossing Rd, #211
Austin, TX 78734

dcaustin71@gmail.com
[redacted]

## Vehicle

2018 NISSAN SENTRA
VIN: 3N1AB7AP3JY248644
License Plate: KHM9593

## Rental Weekly Pricing

2019-12-06 - 2019-12-13

Base Rate: **$179.00** (excluding taxes), includes **200** Period 0 (offline) miles (as defined in the Flexdrive Rental Agreement for Lyft Drivers referenced below).

Charge for excess personal (P0) miles: **$25.00** per **50** miles, plus applicable taxes. You will be charged this amount if you exceed the personal (P0) miles allowed under your base rate as indicated above.

*Note: Please refer to your weekly billing statements (every Tuesday) for final charges.*

## Rental Weekly Taxes

Texas State Car Rental Excise Tax 1-30 Days: **$17.90**
Austin City Local Sports Venue Excise Tax: **$8.95**

## Start

2019-12-06 - 3:42pm UTC
Odometer: 116658 miles

## End

2019-12-13 - 3:42pm UTC
Odometer: -- miles

## Location

flexdrive

AUS 03 - Elmo
2101 E St. Elmo Rd, Suite 3150
Austin, TX 78744

EXHIBIT A

## Inspection

Driver Side: **Excellent**
--

Front: **Excellent**
small crack on the windshield that has been filled, bottom center. small scuff.

Front Carpets: **Excellent**
--

Front Seats: **Excellent**
--

Headliner: **Excellent**
--

Passenger Side: **Excellent**
scratch back door about 3 inch.

Rear: **Excellent**
Scuffs on the back bumper

Roof: **Excellent**
--

Rear Carpets: **Excellent**
--

Rear Seats: **Good**
staining on middle seat

Amp: **Excellent**
--

Spare Tire: **Excellent**
--

Trade Dress And Docs: **Excellent**
--

Trunk: **Excellent**
--

Fuel: **3/4**
1/8 less than a full tank of gas upon pickup

## Agreement

EXHIBIT A

Terms of the Flexdrive Rental Agreement for Lyft Drivers shall be found here:
https://www.lyft.com/drive/expressdrive/terms/FLEXDRIVE

I agree to rent the vehicle described in this agreement on the terms outlined above. I understand and agree that my rental of the vehicle is subject to the Flexdrive Terms of Use and my Membership Agreement, including (without limitation) charges for excess mileage fees that exceed the mileage allowance listed above. Any renewal of this rental shall be on the same terms as set forth above.

I agree that any renewal of this rental may be evidenced by (a) any written communication from me to Flexdrive, including text messages or email, (b) me accepting renewal via any Flexdrive mobile application or online interface, or (c) a confirmation text message or email from Flexdrive to me following my oral acceptance of renewal.

## Signature



# Rental end: Turner Crockett

RENTAL END

flexdrive

**EXHIBIT B**

## Rental agreement for Lyft drivers

### Renter

**Turner Crockett**
2121 Lohmans Crossing Rd
#211
Austin, TX 78734

dcaustin71@gmail.com
[redacted]

### Vehicle

**MIDSIZE**
**3N1AB7AP3JY248644**
2018 Nissan Sentra



TX KHM9593

### Rental details

**Rental location:**
Austin - Flexdrive - 6375 US-290
6375 US-290
Austin, TX 78723

**Rental period:**
Jul 2, 2020, 11:38:12 AM - Jul 2, 2020, 12:14:43 PM

PRICING PLAN:

**400 personal miles:**

| | |
|---|---|
| Vehicle base rate | $249.00 |
| Taxes & fees | $37.35 |
| **Total** | $286.35 |

**Extra miles:**

$25.00 per 50 miles

### Vehicle inspection & charges

CHARGES

Minor damage excess wear $250.00

EXTERIOR DAMAGE CHARGES

EXHIBIT B

Rear

Fair

Scuffs on the back bumper. dent on trunk bigger than largest circle on damage evaluator

PREEXISTING DAMAGES (DRIVER NOT RESPONSIBLE)

Front

Excellent

small crack on the windshield that has been filled, bottom center. small scuff.

Fuel

3/4

1/8 less than a full tank of gas upon pickup

Passenger side

Excellent

scratch back door about 3 inch.

Rear seats

Good

staining on middle seat

INTERIOR DAMAGE CHARGES

Front seats

Fair

interior part of driver door is torn up

**Total owed by driver** $250.00

## Agreement

I agree to rent the vehicle described in this agreement on the terms outlined above. I understand and agree that my rental of the vehicle is subject to the Flexdrive Terms of Use and my Membership Agreement, including (without limitation) charges for excess mileage fees that exceed the mileage allowance listed above. Any renewal of this rental shall be on the same terms as set forth above.

I agree that any renewal of this rental may be evidenced by (a) any written communication from me to Flexdrive, including text messages or email, (b) me accepting

renewal via any Flexdrive mobile application or online interface, or (c) a confirmation text message or email from Flexdrive to me following my oral acceptance of renewal

EXHIBIT A

Updated as of April 23, 2019

By accepting below, you (the “Renter”, “you”, “your”) are agreeing to be a party to this Flexdrive Rental Agreement for Lyft Drivers (this “Agreement” or “Rental Agreement”) with Flexdrive Services, LLC, a Delaware limited liability company ("we", “us” or "Flexdrive"). This Agreement is effective as of the date of your E-Signature, regardless of whether you use the Services (the “Effective Date”).

As used in this Agreement, “Lyft” means Lyft, Inc., a transportation network company for which Renter has been approved to use the Lyft network on an independent contractor basis, and “Lyft Rental Program” means the program through which Flexdrive shall provide vehicles for rent specifically to Lyft drivers (“Lyft Drivers”).

Pursuant to this Agreement, you and Flexdrive agree as follows:

1. REPRESENTATIONS ABOUT YOURSELF

A. All information provided by you in your personal profile as provided to Lyft is true and complete, and you consent to Lyft sharing that information with us to the extent necessary for us to verify your eligibility to rent vehicles from us and otherwise to perform the fleet management, rental and ancillary activities described herein. To the extent this information changes during the term of this Agreement, as defined in Section 10 below (including without limitation, if you receive, are convicted of or admit to any traffic or moving violations), you will promptly notify Lyft of the change. You acknowledge that your acceptance of the terms of this Rental Agreement does not bind Flexdrive as a party to this Agreement and that you are not a Renter for purposes of utilizing our Services until a notice of acceptance of this Agreement is delivered to you by Flexdrive.

B. As part of the application process to participate in the Lyft Rental Program, Flexdrive, Lyft and/or their licensed insurance carriers may order one or more consumer reports on you. A consumer report may contain information on driving records and criminal activity, among other things. In the event that participation in the Lyft Rental Program is denied to you based wholly or partly on information in a consumer report, you will be notified of this fact and given the name and address of the consumer reporting agency making the report. Flexdrive maintains the right to suspend and/or revoke eligibility to participate in the Lyft Rental Program at any time.

C. We are committed to protecting your privacy. Any information submitted or collected in connection with the Services or your participation in the Lyft Rental Program is subject to our Privacy Policy, the terms of which can be found on the Flexdrive website at www.flexdrive.com.

2. FLEXDRIVE SERVICES

Under the Lyft Rental Program, Flexdrive manages a fleet of vehicles and offers such vehicles for rent (each, a “Rental Car”) to Renters and enables Renters who are Lyft Drivers, in connection with the rental and use of such Rental Cars, to use the corresponding websites, mobile applications, online tools and features supplied by Lyft and/or Flexdrive for the rental usage and management by the Renters (provision of Rental Cars and such additional services are collectively, the “Services”). Renter acknowledges and agrees that (i) Flexdrive may not own all such Rental Cars, which may be provided by third parties subject to lease agreements (or, in certain states, loan agreements) with Flexdrive; (ii) Flexdrive provides its Renters the ability to rent Rental Cars for specified short term periods of up to the legal limit for rentals in the area where you rent; (iii) Flexdrive does not provide transportation services, and is not a transportation carrier; and (iv) while Flexdrive offers a method to connect drivers with suitable vehicles for their needs, it does not provide transportation services or act in any manner as a transportation carrier.

Any use of or access to the Services is subject to certain eligibility requirements, and the Services are not available to or authorized for use by any users previously removed as a Renter by Flexdrive or by any users or persons acting on behalf of an organization or entity and not in his or her personal or

individual capacity, except as required by applicable law.

TO BE ELIGIBLE FOR AND TO MAINTAIN PARTICIPATION IN THE LYFT RENTAL PROGRAM, YOU MUST PASS AND MAINTAIN THE ELIGIBILITY REQUIREMENTS TO BE A LYFT DRIVER.

3. USE OF OUR SERVICES

Your use of a rented Rental Car as a Renter must at all times comply with all the terms of this Agreement, as updated from time to time, and all applicable local, state, national, and international laws, rules and regulations. Flexdrive reserves the right to modify the terms and conditions of this Agreement at any time, effective upon posting an updated version of the Agreement on our website: www.flexdrive.com. You are responsible for regularly reviewing this Agreement. Continued use of our Services after any such changes shall constitute your consent to such changes.

NATURE OF RENTAL; RENTAL PERIOD

(1) This is a contract for the rental of a Rental Car. The rental is made in connection with Renter's participation in the Lyft Rental Program, which Renter acknowledges is intended primarily for the commercial purpose of serving as an independent contractor Lyft Driver. Renter does not have the right to sublease the Rental Car or assign any of his/her rights under this Agreement. The initial rental period for the Rental Car is 7 calendar days (i.e., one calendar week) (the "Initial Rental Period"). Unless you return the Rental Car on or before the date and time specified for return on the Rental Record ("Return Date"), the rental will automatically renew for additional 7-day periods, for a maximum of three (3) additional weeks beyond the Initial Rental Period (or such shorter period as mandated by applicable law) (together with the Initial Rental Period, the "Rental Period"); provided that: (a) you are in good standing and in compliance with your obligations under the Agreement, including the obligation to remain eligible for participation in the Lyft Rental Program; (b) Flexdrive may require Renter to return the Rental Car for inspection; and (c) the total Rental Period does not exceed the maximum duration specified in this Agreement. Renter acknowledges that taxes, fees, and other charges estimated during the Initial Rental Period may be subject to change during the remainder of the Rental Period or during subsequent Rental Periods. Renter must: (x) notify Flexdrive at the end of each Rental Period of the Rental Car's then-current mileage, and (y) exchange the Rental Car upon Flexdrive's request. Renter acknowledges that Renter has no right to renewal of a rental and that Flexdrive may refuse to renew the Rental Period or permit Renter to rent again for any reason, including without limitation excessive mileage or wear and tear on the Rental Car or failure to pay charges. If a rental is not renewed, at the discretion of Flexdrive, regular late fees will apply, if a Rental Car is not returned at the end of the Rental Period. In addition, Flexdrive may demand that Renter return the Rental Car at any time during a Rental Period. To the extent permitted by law, Flexdrive may repossess the Rental Car at your expense without notice to you, if the Rental Car is abandoned or used in violation of law or this Agreement.

ONLY FOR RENTALS IN THE STATE OF MARYLAND: For any Rental Agreement signed in, and subject to the laws of, the state of Maryland, the Rental Period (including the initial 7-day period and any renewals) shall not exceed one hundred and twelve (112) days, meaning you must return your Rental Car on or before the 112th day after you sign your Rental Agreement.

(2) Reservation of a Rental Car through the Lyft reservation system does not guarantee a reservation on the selected vehicle or the selected class of vehicle.

(3) Security deposits or non-refundable starter fees may be required to rent Rental Cars in some markets and are assessed by Lyft at the time of the Renter's first rental. Security deposits are refundable after the return of a Rental Car, via the Lyft payment process in the next pay period following the return of a Rental Car, subject to vehicle condition and to payment by Renter of any other outstanding amounts due and payable under the Lyft Rental Program (e.g., tolls, violations, etc.). At the time of return of a Rental Car, the Renter will either have the remaining balance of the Security Deposit held and applied to the next Flexdrive rental or refunded via the Lyft payment process. Starter fees are payments made by Renters to participate in the Lyft Rental Program and are only refundable in the event the Renter never drives the Rental Car, returns the Rental Car prior to the expiration of the Initial Rental Period, or as otherwise stated by Lyft during the application process, provided that the starter fee may be used and applied to any outstanding amounts due and payable under the Lyft Rental Program.

(4) In New York, Flexdrive may offer Rental Cars that are licensed with the New York Taxi & Limousine Commission ("TLC") (such Rental Cars may also be referred to herein as "TLC Rentals") to you if you are an authorized TLC driver ("TLC Driver"). Provisions in this Agreement referring to Rental Cars shall be deemed to include TLC Rentals unless stated otherwise. Provisions in this Agreement related to drivers or Lyft Drivers shall be deemed to include TLC Drivers unless stated otherwise.

EXHIBIT A

GENERAL OVERVIEW OF THE RULES

(1) Flexdrive connects drivers with Rental Cars available for rent. As such, we have a number of rules designed to ensure that our Rental Cars remain in good condition for the next driver. Accordingly, Renters should follow the guidelines below, as well as all other terms of this Agreement.

Report all damage: Before you drive away with your Rental Car, inspect your Rental Car inside and out. To report damage, a dirty Rental Car, or low fuel, inform the Lyft or Flexdrive representative before you take possession of the Rental Car. If the Rental Car sustains any damage during the Rental Period, inform your Lyft or Flexdrive representative as soon thereafter as reasonably practicable.
Keep all Rental Cars clean: Take personal belongings with you when you go and throw away or recycle any trash.
No smoking: Smoking is never permitted in a Rental Car, even with all the windows down or all the doors open. Smoking in a Rental Car is a violation of this Agreement.
Rental Car must be returned with the same level of fuel that it was originally rented with, otherwise the Renter may be charged a refueling fee.
Vehicles that are returned excessively dirty due to the presence of pets that are not service animals may be assessed an additional cleaning fee.
Drive as if it is your own car: While Flexdrive and/or Lyft maintain insurance on all Rental Cars available through the Services, to the extent permitted by law and subject to the other provisions of this Agreement, you will be responsible for all theft, uncovered damages, costs, and deductibles resulting from your use of the Rental Car and for all damages that result from a breach of this Agreement.

(2) Failure to comply with the provisions of this Agreement may cause a Renter to incur additional charges, fines and penalties, which you agree may be automatically deducted by Lyft from your Lyft Driver ride earnings or charged by Lyft to the credit card that may be kept on file by Lyft. The following fees will apply:

AMP : $50.00
EV Charge Card Replacement (Electric Vehicle Rentals Only) : $50.00
EV Charge Cord Replacement (Electric Vehicle Rentals Only) : $500.00
Excessive Pet Cleaning : $250.00
1/4 Tank of Gas Fill Up : $18.75
2/4 Tank of Gas Fill Up : $37.50
3/4 Tank of Gas Fill Up : $56.25
4/4 Tank of Gas Fill Up : $75.00
Key Fob Replacement : $300.00
Lost or Damaged Transponder : $50.00
Lyft Trade Dress : $10.00
Minor Damage : $500.00
Minor Excess Wear and Tear : $250.00
Minor Wear and Tear : $100.00
Phone Mount : $10.00
Recovery Fee : $500.00
Remote Unlock : $100.00
Smoke Removal : $300.00
Spare Tire Replacement : $200.00
Vehicle Cleaning : $50.00
Vehicle Detail : $150.00

(3) In the event Renter fails to satisfy and maintain satisfaction of the requirements under the Lyft Rental Program during the Rental Period, and therefore does not qualify as eligible to participate in the Lyft Rental Program with Flexdrive, Renter shall be charged the agreed upon rate for the Rental Car for the entire duration of the rental and will be required to return the Rental Car. In addition to the

requirements stated throughout this Agreement, the following requirements apply, without limitation:

a. Completing a minimum number of paid rides on the Lyft Platform for each calendar week during the Rental Period. The number of rides required for this weekly minimum may vary by region.
b. Maintaining all necessary licenses, permits, authorizations or permissions to use the Rental Car to provide "for hire" transportation of passengers in the jurisdiction where Renter provides such services.
c. Complying with Lyft's terms of service (found at www.lyft.com/terms) and maintaining good standing on the Lyft platform at all times during the Rental Period; and
d. Complying with the terms of this Agreement.

EXHIBIT A

PROHIBITED USES OF RENTAL CARS

(1) Any unreasonable, inappropriate or unlawful use of a Rental Car, as determined by Flexdrive in its sole discretion, may be deemed a breach of this Agreement. Without limiting the foregoing, Renters must always use Rental Cars in accordance with all traffic, motor vehicle, highway and other applicable laws and regulations. If you violate any laws, Flexdrive will report to the authorities information about you or the Rental Car as and to the extent required by applicable law. Without limiting the foregoing, the use of a Rental Car under the following conditions is prohibited:

o Any speed race or competition;
o For the purpose of towing, pushing, or propelling any trailer or any other vehicle;
o For moving furniture, household goods, or other general moving activities;
o For any commercial or business purposes other than serving as a Lyft Driver including, without limitation, for the purpose of transporting people or goods or providing transportation services through any entity other than Lyft. Any "for hire" transportation using Rental Cars other than transportation services provided on the Lyft platform is a violation of the Agreement. Notwithstanding the foregoing, this restriction shall not apply to TLC Drivers' use of TLC Rentals, who may engage in other "for hire" transportation of passengers as permitted under applicable law.
o Any transportation services on the Lyft platform originating from locations outside of the "authorized territory" for Lyft operations as designated through the Lyft application.
o By any person who is under the influence of (i) alcohol; or, (ii) any drug or medication under the effects of which the Renter's operation of a vehicle is impaired or the use of a vehicle is prohibited or not recommended;
o In the carrying out of any crime or for any other illegal activity or purpose;
o In an imprudent, negligent, or abusive manner or any other abnormal use of a vehicle;
o Driving or transporting a Rental Car from the US into Canada;
o Driving or transporting a Rental Car from the US into Mexico;
o Carrying a number of passengers that exceeds the designed seating capacity of the vehicle or baggage, cargo or other items that would cause the Rental Car to be overloaded or otherwise exceed its recommended weight capacity;
o Carrying or transporting any hazardous, toxic, flammable, dangerous or illegal materials;
o Driving while using a mobile communication device that may distract you from driving, including driving while texting, emailing, using a cell phone without a hands-free device or otherwise engaging in similar activities that may be prohibited by applicable law; or
o Any other activity prohibited by law or public policy.

(2) Further, Renter agrees that Renter will not (and will not permit passengers or others to): (a) smoke cigarettes, cigars, pipes or other tobacco products in the Rental Car; (b) remove, tamper with or disable the tracking device or other hardware, software or electronics that are installed in the Rental Car; (c) perform repairs or maintenance services on the Rental Car or make any modifications to the Rental Car; (d) make any cosmetic changes to the Rental Car including, without limitation, painting, striping or window tinting; (e) replace the Rental Car's wheels or other parts; or (f) damage or deface the Rental Car.

IF YOU HAVE A BREAKDOWN OR AN INCIDENT

(1) Flexdrive provides Renter with all necessary and required routine maintenance on all Rental Cars. However, Renters are responsible for helping maintain the driving safety and performance of the Rental Car. Renters must be responsive to all warning lights, chimes and other indicators and alerts.

(2) Rental Cars may require Roadside Assistance from time to time. Flexdrive provides Roadside

Assistance support as part of the Service. If, however, a Renter's need for Roadside Assistance results from a breach of this Agreement, the Renter may be charged for the services provided.

(3) Atypical noises or driving feel, including but not limited to warning lamps, indicators, inappropriate or strange engine or other mechanical sounds, performance changes or unusual driving feel, must be reported to Lyft as soon as noted. Failure to report such irregularities during a Rental Period may result in the Renter's immediate suspension or termination of participation in the Lyft Rental Program, as well as the Renter being responsible for any damages resulting from the continued use of the Rental Car despite such irregularities to the extent permitted by law. Such damages are not covered by the insurance maintained by Flexdrive, Lyft, or otherwise through the Lyft Rental Program.

(4) You should report all breakdowns to the Lyft Rental Program's Roadside Assistance line at (844) 400-1449 as soon as reasonably practicable. Accidents or similar incidents involving Rental Cars should be reported to Lyft immediately by calling Lyft's Critical Response Line through the Lyft Driver app as well as calling 911.

(5) If a problem arises that prevents or limits the use of the Rental Car or that may compromise safety, you must notify Lyft and Flexdrive immediately and follow any communicated instructions from Lyft and/or Flexdrive.

EXHIBIT A

(6) In case of an incident involving property damage or any third party, the Renter must take the following action:
o Contact law enforcement to file a police report as soon after the incident occurs as is reasonably practicable, and, if possible, provide law enforcement a jointly agreed-upon statement between you and the third party.
o Call Lyft's Critical Response Line as soon after the incident occurs as is reasonably practicable to report the incident details, including:
a. Date, time, and place of incident;
b. The license plate numbers of any other vehicles involved, their make and year, their identification number (serial number), and the insurance certificate's number (with name, address and phone number of the insurance agent; if possible obtain a digital photo of the other driver's insurance card);
c. The names, addresses, and driver's license numbers of the persons involved in the incident;
d The name, address, and driver's license number of the owner of the car (if he or she is not the driver);
e. The name, addresses, and phone number of witnesses, passengers, and any other involved persons;
f. Circumstances of the incident; and
g. If one was completed, any police report will be required regardless of liability or fault.

(7) The Renter must provide to Lyft, Flexdrive, and any other claims adjustment service the findings of any report or any notice or other written communications relating to a claim or a lawsuit against Lyft, Flexdrive or any other claims adjustment service regarding any incident involving a Rental Car. Renter agrees to cooperate fully with Lyft, Flexdrive, and any other claims adjustment service in the investigation and defense of any such claim or lawsuit. A Renter's account and Lyft platform access may be suspended until the investigation has been concluded.

(8) The Renter will be responsible for the charges related to the theft, repair, recovery and loss of use of any Rental Car and all third party injuries and property damages resulting from any of the foregoing to the extent they are not covered by insurance and as permitted by applicable law. Estimates for any costs will be available to the Renter for review. To the extent permitted by law, the Renter will be responsible for all applicable damages and charges arising from the Renter's failure to comply with the terms of this Agreement. Insurance coverage included with the Renter's Lyft Rental Program rental is set forth in Section 6, below.

TRAFFIC/TOLL/PARKING VIOLATIONS

(1) You are responsible for any traffic violations incurred during your reservation or as a result of your use of a Rental Car. These include, but are not limited to, parking, speeding, red light, photo enforcement, and toll violations. You are liable for all penalties/fees from any such violation, including fines for late payment and any processing penalties/fees added by the issuing municipality. You are liable for payment of all tolls and any fines for toll evasion. Wherever possible it is the Renter's

responsibility to pay the relevant authorities directly. Flexdrive and/or Lyft may impose a fee in connection with processing any such violations, as described above in Rental Fees. You must report such violations to Lyft as soon as possible within the prescribed deadline for the violation (for example, if the case is being taken to court). While there may be a lag between when the infraction occurs and when you are billed for it, you are still liable for the cost regardless of the delay.

EXHIBIT A

(2) You must notify Lyft of any traffic violation notices found on a Rental Car at the time of pickup of the Rental Car. All unreported traffic violations will be the responsibility of a Renter if they occur during the time period during which such Renter is using or responsible for the Rental Car.

(3) Where a violation is incurred by a Renter and notice of the violation is sent directly to Flexdrive, Flexdrive will either pay the penalty/fee on behalf of the Renter and then add the penalty/fee to the Renter's account or Flexdrive may, if permitted by the authority issuing the violation, transfer liability for the penalty/fee to the Renter and the Renter will then be wholly responsible for all correspondence with the appropriate authority and any penalties/fees due. Flexdrive will always inform a Renter which one of these two courses of action it has taken and will endeavor to provide notice to Renters before it pays any penalties/fees attributable to them. Once paid by Flexdrive, it may not be possible for the Renter to challenge the penalty/fee. The right to appeal, or transfer liability, on any traffic or parking charge issued by any authority or body belongs to Flexdrive and will be at Flexdrive's absolute discretion. In the case of speeding notices, Flexdrive is obligated to pass on the offending Renter's details to the police, who will then contact the Renter directly.

(4) Renter is responsible for paying the charging authorities directly all tolls, including any fines for toll evasion, and other related fines, fees, and penalties assessed against Renter, Flexdrive or the Rental Car during the Rental Period. Renter should not rely on use of a toll transponder in the Rental Car (if any) in connection with Renter's payment for tolls. In order to avoid a Processing Fee (as defined below) in connection with a toll, Renter must pay the toll in cash at the applicable toll plaza (where permitted) or Renter must make arrangements to pre-pay any applicable tolls, such as by contacting the toll operator and pre-paying online, by phone, or by mail. If Renter is provided a toll transponder and uses it to pay any tolls, the toll payments as well as any fees associated with the use or possession of the toll transponder will be charged to the payment card Renter uses in connection with this rental and Renter expressly authorizes such charges. If Flexdrive is notified that it may be responsible for payment of a toll or violation, Renter will pay Flexdrive or a processing firm of Flexdrive's choosing ("Processor") an administrative fee of up to $50 for each such notification (each, a "Processing Fee") (such fee is a reasonable estimate of Flexdrive's costs in administrating resolution for a Violation or engaging a Processor to do so). If Flexdrive or the Processor pays a toll or violation on Renter's behalf even in connection with the use of a toll transponder in the Rental car (if any), Renter authorizes Flexdrive or the Processor to charge tolls or violations to the payment card Renter used in connection with this rental. As and to the extent necessary to enable Flexdrive to enforce its rights under this paragraph, Flexdrive may disclose Renter's personal information to toll authorities and/or the Processor.

(5) Flexdrive reserves the right to terminate the Rental Agreement, making the Renter ineligible for participation in the Lyft Rental Program, with any Renter who incurs (a) any unpaid moving violations, (b) red light/disobeying traffic signal violations, (c) parking citations, (d) unpaid toll violation, (e) any at fault accident, or (f) refuses to sign a payment plan, to the extent permitted by law.

4. PERSONS PERMITTED TO USE RENTAL CARS

Only properly licensed, active Renters in good standing are allowed to drive Rental Cars, subject to applicable state laws. Renter understands and agrees that in states that require a rental company to inspect the driver's license of a renter to validate that the license was issued to the renter, Renter will cooperate with Flexdrive by, as applicable, (a) physically presenting the driver's license to Lyft and/or (b) transmitting true and actual photos of the driver's license to Lyft via the Lyft app or other electronic means specified by Lyft or Flexdrive. To the extent permitted by applicable law, non-Renters are expressly prohibited from driving a Rental Car at any time. Further, to the extent permitted by applicable law, Renter may not permit any other individual to drive a Rental Car other than the specific Renter who has rented and been assigned to a specific Rental Car in compliance with this Agreement. Renter assumes liability for all damages, loss or injury to third parties arising from the use of the Rental Car by an unauthorized user, and, further, if Flexdrive is legally responsible for damages, loss or injury, then Renter agrees to defend and indemnify Flexdrive with respect to same to the extent permitted by

applicable law. Notwithstanding the foregoing, if Renter is not able to drive or obtain a driver's license due to a disability and is approved by Lyft to become a Lyft Driver, Renter may enroll to use the Services if Renter's authorized driver (an "Authorized Driver") is approved by Flexdrive to operate a Rental Car and such Authorized Driver agrees, by signing this Agreement, to operate each Rental Car pursuant to the terms of this Agreement.

EXHIBIT A

5. REPAIR, MAINTENANCE AND ROADSIDE ASSISTANCE

If Renter is notified by Lyft and/or Flexdrive of the need for routine maintenance on the Rental Car that Renter then currently has under rental, Renter will take the vehicle to the locations specified by Lyft and/or Flexdrive, which in all instances will be a Flexdrive-approved maintenance provider. If Renter believes that a Rental Car requires unscheduled repair or maintenance, Renter will contact Lyft, which will notify Flexdrive, and Flexdrive will arrange for the performance of such repair or maintenance by a Flexdrive-approved provider. Under no circumstances shall Renter arrange for repair or maintenance without Lyft's or Flexdrive's prior written authorization. Flexdrive shall include in each Rental Car contact information for approved roadside assistance providers. If Renter requires roadside assistance, Renter will contact Flexdrive's roadside assistance provider. Renter will not use an alternative roadside assistance provider without Flexdrive's prior authorization.

6. INSURANCE AND RENTAL CAR DAMAGE

Sections A-C below apply to all Rental Cars except TLC Rentals, which are expressly addressed in Section D. Section E shall apply to all Rental Cars including TLC Rentals.

A. All Rental Cars will be provided to Renters with insurance that will cover all periods of driving ("Period(s)"), provided that the Renter is otherwise in compliance with the terms of this Agreement and Lyft's Terms of Use. Depending upon the Period the insurance coverage will be maintained either by Flexdrive or by Lyft:

o "Period 0" is the period of time in which a Renter has taken possession of a Rental Car and does not have the Lyft Application in Driver Mode or is not otherwise in Period 1, 2 or 3.
o "Period 1" is the period of time in which a Renter has the Lyft Application running in Driver Mode but has not accepted any requests for transportation services from Lyft Passenger(s).
o "Period 2" is the period of time in which a Renter has the Lyft Application running in Driver Mode and has accepted a request for transportation services from Lyft Passenger(s) but does not have any Lyft Passengers occupying the Rental Car.
o "Period 3" is the period of time in which a Renter has the Lyft Application running in Driver Mode and has at least one Lyft Passenger occupying, entering or exiting the Rental Car.

For all Rental Cars except TLC Rentals, insurance maintained by Flexdrive shall apply during Period 0, and insurance maintained by Lyft shall apply during Periods 1, 2 & 3. "Driver Mode" means the state of the Lyft Application where it is running and logged in on a Renter's Lyft Driver account and is available to receive requests for transportation services from Lyft passengers.

B. Insurance maintained by Flexdrive during Period 0 for all Rental Cars except TLC Rentals:

1. Liability Coverage: State required minimum financial responsibility limits and any other compulsory requirements applicable.
2. Physical Damage Coverage: Flexdrive's insurance policy will provide coverage against physical damage to the Rental Car during Period 0. To the extent permitted by applicable law, such Physical Damage Coverage is subject to a $1,000 deductible per incident which shall be the sole responsibility of Renter; provided, however, if the cost of damages for any one incident is less than $1,000, the deductible shall equal the total cost of damages.
3. Uninsured/Underinsured Motorists Coverage: Coverage limits in accordance with local regulations and/or state laws.
C. Insurance maintained by Lyft during Periods 1, 2, and 3 for all Rental Cars except TLC Rentals:

1. During Period 1, Lyft's insurance policies will provide the following:
a. Primary commercial auto liability insurance as set forth in the applicable city's, state's or region's Transportation Network Company ordinances.
b. Auto Physical Damage providing coverage for damage to the Rental Car, subject to a $1,000

EXHIBIT A

deductible per incident (as permitted by applicable law) which shall be the sole responsibility of Renter; provided, however, if the cost of damages for any one incident is less than $1,000, the deductible shall equal the total cost of damages.
2. During Periods 2 or 3, Lyft's insurance policies will provide the following:
a. Primary commercial auto liability insurance with a minimum combined single limit of $1,000,000 per accident, including uninsured/underinsured motorist coverage limits in accordance with local regulations and/or state laws. (These limits shall apply to markets excluding Minnesota, Nevada, New Jersey, New York, North Carolina, and Rhode Island)
b. In MN, NV, NJ, NC and RI - primary commercial auto liability insurance with a minimum combined single limit of $1,500,000 per accident, including uninsured/underinsured motorist coverage with limits in accordance with local regulations and/or state laws.
c.Auto Physical Damage providing coverage for damage to the Rental Car, subject to a $1,000 deductible per incident (as permitted by applicable law), which shall be the sole responsibility of Renter; provided, however, if the cost of damages for any one incident is less than $1,000, the deductible shall equal the total cost of damages.

D. TLC Rentals
All TLC Rentals will be provided to TLC Renters with insurance procured by Flexdrive that will cover all periods of driving in coverages and amounts as required by the TLC and applicable law, provided that the Renter is otherwise in compliance with the terms of this Agreement and Lyft's Terms of Use. The coverage shall include Auto Physical Damage providing coverage for damage to the TLC Rental, subject to a $1,000 deductible per incident (as permitted by applicable law), which shall be the sole responsibility of Renter; provided, however, if the cost of damages for any one incident is less than $1,000, the deductible shall equal the total cost of damages.

E. Items Not Covered by Flexdrive or Lyft Insurance Policies for any Rental Cars, including TLC Rentals:

(1) If the total amount of the injuries and/or third party property damage in an accident exceeds the applicable coverage limits, the Renter is responsible for any amount that exceeds the liability insurance included with the Lyft Rental Program rental. Renters engaging in prohibited uses of Rental Cars may not be covered by the insurance maintained by Flexdrive or Lyft and are subject to immediate revocation of eligibility to participate in the Lyft Rental Program and/or Lyft platform access.

(2) To the extent permitted by law, for any loss or damage to the Rental Car that occurs during the Renter's rental, the Renter is responsible for the cost of the repairs or other damage amount outlined in the Renter fee schedule. This amount may vary. The insurance provided does not reduce or avoid the Renter's obligations with respect to the Rental Car damage which occurs during the Renter's rental.

(3) Questions or concerns about the insurance coverage included with the Lyft Rental Program should be referred to Lyft support at: http://lft.to/submit-request.

7. LIMITED LICENSE

Subject to the terms and conditions of this Agreement, upon your receipt of a notice of acceptance of this Agreement from Flexdrive, you are granted a non-exclusive, limited, non-transferable, freely revocable license to use the Services for personal use, for your activities as a Lyft Driver, as expressly permitted by this Agreement, and as permitted by the features of the Services and applicable law. Flexdrive reserves all rights not expressly granted herein. In addition, Renter acknowledges that all Rental Cars contain onboard hardware and software for tracking and monitoring Rental Cars, and that Renter is granted only a limited, personal, non-transferrable, and non-exclusive license to such hardware and software only for the purposes authorized by their use of the Services. All title and ownership interest in and to any intellectual property contained in the Services is the property of Flexdrive or its licensors, with the exception of data obtained from the onboard hardware and software, which is the sole property of Lyft. Renter acknowledges that Flexdrive may aggregate anonymized data regarding the Lyft Rental Program and the activities of Renters for purposes of analyzing the use of and improving the Flexdrive technology platform, analyzing trend data for purposes of product development and program development and otherwise using the aggregated data for internal purposes.

8. TELEMATICS

EXHIBIT A

A. GENERAL NOTICE AND RELEASE

The Rental Car may be equipped with global positioning satellite technology or another telematics system, and/or an event data recorder, which may be used in order to determine when the Rental Car can be safely deactivated through the use of the starter interrupt technology, as further described in Section 12 of this Agreement. Renter's use of the Rental Car may be remotely monitored by or on behalf of Flexdrive through such systems to the extent permitted by applicable law. This remote monitoring may include collection of Rental Car data, such as: odometer, oil life, fuel level, tire pressure, battery state of charge, and diagnostic trouble codes. Renter has no expectation of privacy related to Renter's use of the Rental Car. The Rental Car also may be equipped with devices that permit Renter to pair mobile devices that may download Renter's personal contacts, communications, location or other digital data. Renter will delete all personal information from the Rental Car's systems before returning it. By entering into this Agreement, you consent to the collection, use, monitoring and disclosure of Rental Car data, to the extent permitted by law, and agree that you will inform any and all Authorized Drivers and passengers of the terms of this section.

B. CONSENT TO COLLECTION AND DISCLOSURE OF PERSONAL INFORMATION BY NAUTO, INC. ("NAUTO")

(1) Collection of Information. The Rental Cars made available by Flexdrive as part of the Lyft Rental Program are equipped with a device manufactured by Nauto (the "Nauto Device"), that uses video camera and sensor technology to record safety events inside and outside of the Rental Car. This Renter Consent to Collection and Disclosure of Personal Information contained in Section 8 of the Agreement (the "Consent") is intended to (a) inform you of the information collected by the Nauto Device and how such information is used by Flexdrive, Lyft and third parties, such as companies that provide insurance for the Rental Cars; and (b) obtain your consent for such collection and use. This Consent is in addition to the other consents provided within and terms of the Agreement that governs your participation in the Lyft Rental Program.

The Nauto Device may record or collect personal information about you and your fellow passengers, including your video image and the video images of your passengers, your behavior and the behavior of your passengers, and your Rental Car's geographic location. We may also use the Nauto Device to apply facial recognition software on the facial images of drivers in order to create a profile, based on the driver's facial features, (for example, the distance between the eyes, nose and ears, for a particular individual)(collectively, "Biometric Information"), to connect a driver in one particular photo or video to another photo or video. The Nauto Device may also collect other information about your trip, including your Rental Car's speed, acceleration, braking, collision events, mileage, and relative proximity to other vehicles, area road signs and traffic signals, road conditions/hazards, traffic patterns/density, parking spaces, and license plate numbers of surrounding vehicles.

Additionally, Nauto may add contact information from Lyft, Flexdrive, or the owner of the Rental Car you rent to create a "Profile" of you, which includes personal information such as your name, email address, telephone number, emergency contact information, photograph, license plate, and vehicle information. Nauto may display this information as part of your Profile, and link your Profile with information collected by the Nauto Device, as described above. To learn more about the types of information the Nauto Device collects, see Nauto's privacy policy (the "Nauto Privacy Policy").

(2) Use and Sharing of Information. Flexdrive, through its service arrangements with Nauto, uses the information Nauto collects to help Flexdrive improve the quality and safety of the Lyft Rental Program. In addition to being shared with Flexdrive, Lyft and certain service providers, such as our insurers, information collected by the Nauto Device will be shared with Nauto, its service providers, and affiliates, in accordance with their terms of service and privacy policies. Under Nauto's privacy policy, your personal information will not be shared or sold to any third party for any commercial or marketing purpose, without your express written consent, though it may be shared with other Nauto clients for collision claims and liability. Your personal information also may be disclosed if Nauto has a good faith belief that disclosure is necessary to (1) protect property or security of Nauto, Nauto users, and clients or others; (2) prevent death or imminent bodily harm; or (3) respond to a legal request. Non-personal information, such as aggregated, anonymized data, may be shared or sold by Nauto for business purposes, including for product improvement, analytics, industry and market research, and other purposes consistent with Nauto's legitimate business needs.

(3) Retention of Facial Recognition Data. Nauto will retain facial recognition data about you only until the first of the following occurs: (i) Nauto does not collect new Biometric Information matching your profile for a period of six continuous months; (ii) three years have passed since your last interaction with Nauto; or (iii) when you request permanent deletion of your Biometric Information by submitting such request to privacy@nauto.com or otherwise as set forth in the Nauto Privacy Policy. At such time, Nauto will permanently destroy the Biometric Information about you. After the Biometric Information is destroyed, the user will need to re-enroll (and provide his or her Biometric Information to Nauto again) before he or she can use the Nauto Services.

(4) Acknowledgment and Consent. You confirm that you have read and understand the information in this Section 8(B) regarding the processing of information by the Nauto Device to ensure the safety of drivers and to improve the quality of Flexdrive and the Lyft Rental Program's operations. You consent to Flexdrive providing third party service providers (including Nauto) with your personal information in order to help Flexdrive to operate the Nauto Device in accordance with this form.

9. FEES

To the extent permitted by law, Renter will be responsible for the payment of any and all rental fees, taxes, damage fees, claims, penalties, fines, deductibles related to Rental Car damage (if permitted by applicable law), tolls (as described in greater detail below), other miscellaneous fees, or other amounts set forth in this Rental Agreement. Such payments will be collected from Renter by Lyft, and Lyft will forward such payments to Flexdrive. Flexdrive may coordinate with Lyft to deduct any such amounts Renter owes in connection with the rental of a Rental Car from the amounts Renter may earn while providing transportation services on the Lyft platform. In addition, Lyft may require Renter to provide a credit or other payment card (subject to applicable terms and conditions) in order to reserve or rent a Rental Car, that an authorization or hold amount may be placed on the card provided, and that Lyft may charge the amount owed to the payment card Renter provides at any time upon notice to Renter. Flexdrive has designated Lyft as its agent solely for the purpose of collecting these amounts on Flexdrive's behalf. For this purpose, Renter authorizes Lyft to offset these amounts from other amounts Lyft owes Renter, and if such offset does not fully pay such amounts, to charge the remaining unpaid amount to the payment method Renter has authorized for Lyft's use in connection with the Lyft platform, to the extent permitted by applicable law and upon notice to Renter. Certain amounts may be charged at or after the end of the Rental Period, such as fees for vehicle damage as may be identified during final inspection, or for unpaid tickets or tolls and associated administrative fees that are identified after the Rental Period, or otherwise, as provided in the Agreement. Renter must keep a valid payment method on file with Lyft to pay the above amounts. Notwithstanding the foregoing, if Renter fails to pay to Lyft any such fees or other amounts due and payable in accordance with this Agreement, Flexdrive is entitled to seek to collect such amounts directly from Renter, and Renter hereby agrees that Lyft is entitled to provide to Flexdrive (a) a copy of the Rental Agreement; (b) any executed Payment Plan Agreement; (c) Renter contact information; (d) any correspondence between Renter and Lyft or its agents that relates to the collection of such amounts; and (e) Renter's payment information.

10. TERM

This Agreement shall be effective from the Effective Date, as noted to you in Flexdrive's acceptance of your application, and shall remain in effect for one year, subject to automatic one year renewals, unless earlier terminated by either party as set forth below. During the term of the Agreement, each Renter will have the ability to rent Rental Cars for those periods set forth in Renter's registration process.

11. SUSPENSION OR TERMINATION

Flexdrive may immediately suspend or terminate the use of its Service by any Renter for any reason, including for a violation of this Agreement. Termination of this Agreement will additionally terminate any Renter reservation then placed or in effect, and you will promptly follow Lyft's instructions regarding the return of any Rental Car then in your possession. If your use of Services or any rental of a Rental Car is suspended by Flexdrive, we may, in our sole discretion, reinstate your eligibility for participation in the Lyft Rental Program following your cure of any such violation. Subject to each Rental being for a minimum of seven (7) days, Renter may schedule a return and/or terminate this

Agreement at any time. After the initial seven (7) day rental, the Renter can return the Rental Car to the location from which the Renter rented it at any time during normal business hours and receive a pro-rated charge. Any voluntary termination of this Agreement or reduction in Rental Period by a Renter shall not result in reimbursement of any rental fees for any outstanding reservation or rental of a Rental Car.

EXHIBIT A

12. REPOSSESSION AND RECOVERY OF RENTAL CARS; USE OF STARTER INTERRUPT TECHNOLOGY

To the extent permitted by applicable law, Flexdrive reserves the right to recover or repossess or to assist in the recovery and repossession of the Rental Cars, at any time, without notice, and at Renter's expense if Renter violates this Agreement (including, but not limited to, by failing to pay all fees or other amounts due and payable in accordance with this Agreement or by failing to return the Rental Car at the end of the Rental Period) or upon termination of this Agreement. To the extent permitted by and in accordance with applicable law, Flexdrive may assist in the recovery or repossession of a Rental Car or may recover or repossess a Rental Car by remotely deactivating such Rental Car through the use of starter interrupt technology that is part of or attached to the Rental Car. Renter agrees to pay all costs, including, but not limited to, reasonable legal fees or attorneys' fees, if any, associated with the repossession or recovery of any Rental Car pursuant to this Section 12. Renter hereby agrees to waive all claims for damages connected with the repossession or recovery of any Rental Car pursuant to this Section 12 and use of starter interrupt technology.

13. INDEMNIFICATION

To the extent permitted by applicable law, Renter agrees to defend, indemnify and hold harmless Flexdrive and Lyft, and each of their respective subsidiaries, agents, licensors, managers, and other affiliated companies, and their employees, contractors, agents, officers and directors, from and against any and all claims, damages, obligations, losses, liabilities, costs or debt, and expenses (including but not limited to attorney's fees) arising from: (i) Renter's violation of any term of this Agreement, including without limitation your breach of any of the representations and warranties above; (ii) Renter's violation of any third-party right, including without limitation any right of privacy or intellectual property rights; (iii) Renter's violation of any applicable law, rule or regulation; and (iv) any claims or damages that arise as a result of Renter's use of a Rental Car which are not covered by insurance provided for Renter by Flexdrive or is subject to fee schedule provided by Flexdrive.

14. NO WARRANTY

The Services are provided on an "as is" and "as available" basis. Rental and use of the Rental Car is at your own risk. To the maximum extent permitted by applicable law, Rental Cars are provided without warranties of any kind, whether express or implied, including, but not limited to, implied warranties of merchantability, fitness for a particular purpose, or non- infringement. No advice or information, whether oral or written, obtained by you from Flexdrive or through the Services will create any warranty not expressly stated herein, including with respect to driver or passenger safety. Without limiting the foregoing, Flexdrive, its subsidiaries, and its licensors do not warrant that the Services will meet your requirements; that the Services will be available at any particular time or location; that any defects or errors will be corrected; or that the Services are free of viruses or other harmful components. Any content downloaded or otherwise obtained through the use of the Services is downloaded at your own risk, and you will be solely responsible for any damage to your computer system or mobile device or loss of data that results from such download or your use of the Service.

15. LIMITATION OF LIABILITY

A. To the maximum extent permitted by applicable law, in no event shall Flexdrive, its affiliates, agents, directors, employees, contractors or licensors be liable for any direct, indirect, punitive, incidental, special, consequential or exemplary damages, including without limitation damages for loss of profits, goodwill, use, data or other intangible losses, that result from the use of, or inability to use, the Services. Under no circumstances will Flexdrive be responsible for any damage, loss or injury resulting from hacking, tampering or other unauthorized access or use of the Services or your account or the information contained therein. In no event shall Flexdrive, its affiliates, agents, directors, employees, contractors, or licensors be liable to you for any claims, proceedings, liabilities, obligations, damages, losses or costs in an amount exceeding $1,000.00.

B. This limitation of liability section applies whether the alleged liability is based on contract, tort, negligence, strict liability, or any other basis, even if Flexdrive has been advised of the possibility of such damage. The foregoing limitation of liability shall apply to the fullest extent permitted by law in the applicable jurisdiction. Some states do not allow the exclusion of implied warranties or the exclusion or limitation of incidental or consequential damages, so the above limitations or exclusions may not apply to you. This Agreement gives you specific legal rights, and you may also have other rights, which vary from state to state. The disclaimers, exclusions, and limitations of liability under this Agreement will not apply to the extent prohibited by applicable law.

EXHIBIT A

16. NOTICES

Flexdrive and Lyft may provide any notices required to you hereunder at the email address (or, if you opt out of such delivery method, at the home address) indicated in your reservation request, and you shall update any such information promptly to the extent such information changes; provided that Flexdrive and Lyft shall have no liability for your failure to provide such updates and any notices delivered by Flexdrive to the address on file in our records shall be deemed effective when given. You may give notice to Flexdrive by sending any such notice to Flexdrive Services, LLC, Attn: Legal Department, 2002 Summit Blvd., Suite 750, Atlanta, GA 30319.

17. DISPUTES AND GOVERNING LAW

This Agreement shall be governed by the laws of the State of Georgia in the United States without regard to any conflict of law principles. This Agreement is a contract for services and not for the sale of goods. The UN Convention on the International Sale of Goods is excluded. No claim or action arising out of the transactions under this Agreement may be brought by you against Flexdrive more than one year after the cause of action has accrued. You, Flexdrive and Lyft specifically agree to waive the right to trial by jury.

18. GENERAL

This Agreement constitutes the entire agreement between the parties in connection with the subject matter hereof and supersedes all agreements, proposals, representations and other understandings, oral or written, of the parties. No alteration or modification of this Agreement shall be valid unless made in writing and signed by each party. The waiver by either party of a breach of any provision of this Agreement shall not operate or be construed as a waiver of any subsequent breach and any waiver must be in writing and signed by the affected party hereto. If any provision of this Agreement is held to be invalid or unenforceable, the remaining provisions shall continue in full force and effect. Any terms of this Agreement which by their nature extend beyond its termination remain in effect until fulfilled and apply to respective successors and rightful assignees.

19. ELECTRONIC DOCUMENT AND SIGNATURE

For contractual purposes, you: (a) consent to receive communications from Flexdrive in electronic form, and (b) agree that all terms and conditions, agreements, notices, disclosures and any other communications that Flexdrive provides to you electronically satisfy any legal requirement that such communications would satisfy if they were in a print-on-paper writing. By clicking "Accept", you are signing this Agreement electronically, and such selection (your "E-Signature") constitutes your legal signature, acceptance and agreement to the terms of the Flexdrive "Lyft Driver Rental Program" Agreement, as if this Agreement were actually signed by such Party in "print-on-paper" or "wet ink" writing. You also agree that no certification, authority, or other third party verification is necessary to validate your E-Signature and that the lack of such certification or third party verification will not in any way affect the enforceability of your E-Signature or any resulting contract between you and Flexdrive.

20. LOCATION SPECIFIC DISCLOSURES

Renter further acknowledges that Renter has received, read, understands and agrees to the following state-specific disclosures, notices, and terms and conditions if a Rental Car is rented in one of the jurisdictions listed below. Renter is advised to review the applicable paragraphs before renting or operating a Rental Car in the location(s) set forth below. These disclosures, notices, and terms and conditions may modify or replace, as applicable, Renter's obligations set forth above. In the event of a direct conflict between any of the terms set forth above and this Location Specific Disclosures Section,

EXHIBIT A

the terms contained in this Location Specific Disclosures Section will govern.

California.

Personal Information; Communications. Renter agrees that Flexdrive may disclose personally identifiable information about Renter and the Rental Car to applicable law enforcement agencies or to Flexdrive's affiliates or third parties in connection with our enforcement of Flexdrive's rights under this Agreement and for other legitimate business purposes. Pursuant to Section 1939.22 of the Cal. Civ. Code, Renter agrees that Flexdrive or an assignee may contact Renter by calling or sending text messages or emails to any email address or telephone number Renter provides to Lyft or Flexdrive, including wireless telephone numbers, which could result in additional charges to Renter. Renter represents that Renter is either the owner or primary user of the number(s) and email address renter provided. Methods of contact may include pre-recorded/artificial voice messages and/or use of an automatic dialing device. Renter may revoke Renter's consent at any time by contacting Flexdrive in writing at the address set forth in the Corporate Identity section of the Agreement.

Failure to Return Vehicle. If the Rental Car is not returned within seventy-two (72) hours following the Return Date or extension of the Return Date, as permitted by this Agreement, Flexdrive may activate electronic surveillance technology, such as GPS vehicle tracking technology, to locate the Rental Car. Flexdrive will provide Renter with notice of activation of the electronic surveillance technology twenty-four (24) hours prior to such activation by telephone and electronically unless Renter has not provided a telephone number to Flexdrive or has not agreed to electronic communication pursuant to Section 1932.22 of the Cal. Civ. Code.

Renter acknowledges that electronic surveillance technology may be activated if the Rental Car is not returned within seventy-two (72) hours following the Return Date or extension of the Return Date, as permitted by this Agreement, in order to locate the Rental Car and in order to determine when the Rental Car can be safely deactivated through the use of the starter interrupt technology, as further described in Section 12 of this Agreement.

Responsibility for Damage or Loss. Renter is responsible for all damage to, or loss of, the Rental Car in connection with this rental caused by collision, regardless of the cause of such damage. Renter responsibility may include, to the extent permissible by law: (a) all physical and mechanical damage to the Rental Car measured as follows: (i) if Flexdrive determines that the Rental Car is a total loss, the total loss vehicle value of the Rental Car calculated in accordance with California Civil Code Section 1939.07, as amended from time to time, less salvage; (ii) if Flexdrive determines that the Rental Car is repairable: the actual cost of repair that Flexdrive incurs to repair the Rental Car or that Flexdrive would incur if Flexdrive chose to repair the Rental Car, all as calculated pursuant to California Civil Code Sections 1939.03, 1939.05, and 1939.07, as applicable, and as may be amended from time to time; (b) an administrative fee calculated pursuant to California Civil Code Sections 1939.03 and 1939.05, as amended from time to time; (c) Flexdrive's actual charges for towing, storage, and impound; and (d) all costs associated with Flexdrive's enforcement of this Agreement or collection of Fees, including attorneys' fees, collection fees, and costs whether or not litigation is commenced. Renter is responsible for: (i) loss due to theft of the Rental Car and any damage caused by vandalism that occurs in connection with a theft if Renter fails to exercise ordinary care while in possession of the Rental Car, (ii) damage due to vandalism not associated with theft of the Rental Car up to a maximum of $500, and (iii) replacing missing Rental Car documents and keys.

Illinois.

Responsibility for Damage or Loss to the Vehicle. Renter is responsible for all physical and mechanical damage to or loss of the Rental Car, regardless of the cause of such damage or loss and whether or not Renter is at fault, up to the maximum amounts specified by law pursuant to 625 ILCS 5/6-305.2, as amended from time to time. Renter's responsibility may include: (a) if the Rental Car has a manufacturer's suggested retail price ("MSRP") of $50,000.00 or less: (1) in the case of damage or loss, except for theft, the lesser of: (A) the actual and reasonable costs that Flexdrive incurred to repair the Rental Car or that Flexdrive would have incurred if the Rental Car had been repaired; or (B) the fair market value of the Rental Car immediately before the damage occurred, as determined in the customary market for the retail sale of the Rental Car; and (2) actual and reasonable costs incurred by loss due to theft of the Rental Car up to $2,000.00; provided, however, that if it is established that Renter failed to exercise ordinary care while in possession of the Rental Car or that Renter committed

or aided and abetted the commission of the theft, then the damages shall be the actual and reasonable costs of the Rental Car up to its fair market value, as determined by the customary market for the sale of that vehicle; (b) if the Rental Car has an MSRP of more than $50,000.00: (1) in the case of damage or loss, except for theft, the lesser of: (A) the actual and reasonable costs that Flexdrive incurred to repair the Rental Car or that Flexdrive would have incurred if the Rental Car had been repaired; or (B) the fair market value of the Rental Car immediately before the damage occurred, as determined in the customary market for the retail sale of the Rental Car; and (2) the actual and reasonable costs incurred by loss due to theft of the Rental Car up to $40,000. For purposes of section (a) of this paragraph, for the period beginning June 1, 2018, the maximum recovery shall not exceed $18,500.00. Beginning June 1, 2019 and annually each June 1 thereafter, the maximum amount that may be recovered from Renter will be increased by $500.00 above the maximum recovery allowed immediately prior to June 1 of that year. For purposes of section (b) of this paragraph, on October 1, 2018, the maximum amount that may be recovered from Renter shall be $47,500, on October 1, 2019, the maximum amount shall be increased to $50,000, and on October 1, 2020 and on each October 1 thereafter, the maximum amount that may be recovered from Renter shall be increased by $1,000.00 above the prior year's maximum recovery. Allowing anyone other than Renter to use the Rental Car is not an exercise of ordinary care, but a willful and reckless act that is a breach of this Agreement.

EXHIBIT A

New York.

Responsibility for Damage or Loss to the Vehicle. Renter is responsible for: (a) all physical damage to the Rental Car that occurs during the time the Rental Car is under this Agreement that is unrelated to normal wear and tear (as defined in New York General Business Law Section 396-z, as amended from time to time); and (b) all mechanical damage to the Rental Car that is unrelated to normal wear and tear (as defined in New York General Business Law Section 396-z) or that could reasonably be expected from normal use of the Rental Car that occurs during the time the Rental Car is under this Agreement, in all cases up to the amounts permissible by law. Renter's responsibility for such damage or loss will include: (x) the lesser of (both as calculated in accordance with New York General Business Law Section 396-z, as amended from time to time): (i) the actual and reasonable costs that Flexdrive incurs to repair the Rental Car or that Flexdrive would incur if we chose to repair the Rental Car, and (ii) the fair market value of the Rental Car immediately before the damage occurred, as determined in the applicable market for the retail sale of the Rental Car, less any net disposal proceeds; and (y) Flexdrive's actual charges for towing, storage, and impound. Renter is responsible for loss due to theft of the Rental Car up to its fair market value, as determined by the applicable market for the retail sale of the Rental Car, if Renter fails to exercise ordinary care while in possession of the Rental Car or if Renter commits, aids or abets such theft. Allowing anyone other than Renter to use the Rental Car is not an exercise of ordinary care, but a willful and reckless act that is a breach of this Agreement.

Use of the starter interrupt technology. Prior to remotely deactivating a Rental Car through the use of starter interrupt technology, as further described in Section 12 of this Agreement, Flexdrive will send you a notice by registered or certified mail to your address on record with Flexdrive, giving notice that Flexdrive may activate the starter interrupt technology in ten (10) days in accordance with Section 12 of this Agreement.

## Signature



**EXHIBIT A**

EXHIBIT C

Gmail

Tread Carefully <dcaustin71@gmail.com>

# [Request received] Follow-up from Lyft

**Lyft** <support@lyft-new.zendesk.com> Fri, May 29, 2020 at 10:26 AM
Reply-To: Lyft <support+id168179095@lyft-new.zendesk.com>
To: Turner Crockett <dcaustin71@gmail.com>

##- Please type your reply above this line -##

Your request (168179095) has been received and is being reviewed by our support staff.

To add additional comments, reply to this email.

**Vanessa** (Lyft)
May 29, 2020, 8:25:58 AM PDT

Hi this is Vanessa from Express Drive. Our records indicate your vehicle is past due for its preventative maintenance. Per your signed rental agreement, this is required to remain eligible to rent with us. Please schedule and complete the necessary maintenance with one of our partners and complete in the next 48 hours to remain eligible to rent with Lyft. Please send your completed receipt to txinspections@lyft.com for confirmation. You can use this link to find an approved maintenance provider https://lft.to/locations

Vanessa
Lyft Support
help.lyft.com

This email is a service from Lyft. Delivered by Zendesk | Privacy Policy

**EXHIBIT D**

Gmail Tread Carefully <dcaustin71@gmail.com>

## [Lyft] Re: Follow-up from Lyft

**Lyft** <support@lyft-new.zendesk.com> Thu, Jul 9, 2020 at 3:34 PM
Reply-To: Lyft <support+id169427307@lyft-new.zendesk.com>
To: Turner Crockett <dcaustin71@gmail.com>

Your request (169427307) has been updated. To add additional comments, reply to this email.

**Daniela** (Lyft)

Hello Turner,

Lyft routinely conducts background checks to evaluate continued eligibility to drive on the Lyft platform. You will be unable to drive while the background check is processing.

Most background checks take a few days to process, but keep in mind that it can take a few weeks, depending on a number of factors.

To see the status of your background check, or to ensure no additional steps are required, go to https://candidate.checkr.com.

We appreciate your patience during this process.

Best,

Daniela
Lyft Support
help.lyft.com

Zendesk Privacy Policy

**DOLLAR RENT A CAR**
Phone: 800-800-5252
Web: www.dollar.com

**Rental Agreement No:** 547787833
**Date:** 07/14/2020
**Document:** 950003023901

**Direct All Inquiries To:**
DOLLAR RENT A CAR
PO BOX 35250
TULSA, OK 74153-1167

TAX Id: 73-1389882

**CHARGE DETAIL**

**Renter:** DEMETRIUS CROCKETT
**Account No.:** ************6966 VIS

**EXHIBIT E**

**DEMETRIUS CROCKETT**
**2121 LOHMANS CROSSING RD 211**
**AUSTIN, TX 78734**

## RENTAL REFERENCE

**Rental Agreement No:** 547787833
**Reservation ID:** J4524607789
**Special Bill Info:** GEICO

## RENTAL DETAILS

**Rate Plan:** IN: RCW55 OUT: RCUE3
**Rented On:** 07/09/2020 13:08 LOC# 090525 AUSTIN, TX
**Returned On:** 07/14/2020 06:38 LOC# 090525 AUSTIN, TX
**Car Description:** SIR SPARKFW1.4N ABZA58
**Veh. No.:** 8855603
**CAR CLASS Charged:** A **MILEAGE In:** 6,721
**Rented:** A **Out:** 6,048
**Reserved:** A **Driven:** 673

## MISCELLANEOUS INFORMATION

| | | |
|---|---|---|
| CC AUTH: 821476 | DATE: 2020/07/09 | AMT: 273.00 |
| CC AUTH: 863242 | DATE: 2020/07/14 | AMT: 104.00 |
| CC AUTH: 878330 | DATE: 2020/07/12 | AMT: 144.00 |

## RENTAL CHARGES

| | | | |
|---|---|---|---|
| WEEKS | 1 @ | 371.80 | 371.80 |
| SUBTOTAL | | | 371.80 |
| CONCESSION FEE RECOVERY | | | 45.00 |
| VEHICLE LICENSE FEE | | | 9.70 |
| CUSTOMER FACILITY CHARGE | | | 29.75 |
| LATE RETURN FEE | | | 12.00 |
| RETURN CHANGE FEE | | | 10.00 |
| ENERGY SURCHARGE | | | 1.49 |
| TAX | | 15.00% | 71.96 |

TOTAL CHARGES 551.70 USD

**E-RETURN RECEIPT**

**THANK YOU FOR RENTING FROM DOLLAR**

**ALL CHARGES HAVE BEEN BILLED TO YOUR ACCOUNT.**

**Rental Agreement No:** 547787833
**Date:** 07/14/2020
**Document:** 950003023901

**Direct All Inquiries To:**
DOLLAR RENT A CAR
PO BOX 35250
TULSA, OK 74153-1167
UNITED STATES

**Renter:** DEMETRIUS CROCKETT
**Account No.:** ************6966 VIS

**Phone:** 800-800-5252
**Web:** www.dollar.com

**TOTAL CHARGES 551.70 USD**

GDOL02P 0095 GC

**DOLLAR RENT A CAR**
Phone: 800-800-5252
Web: www.dollar.com

dollar. CAR RENTAL

| | |
|---|---|
| **Rental Agreement No:** | 549004186 |
| **Date:** | 08/20/2020 |
| **Document:** | 950003120205 |

**Direct All Inquiries To:**
DOLLAR RENT A CAR
PO BOX 35250
TULSA, OK 74153-1167

TAX Id: 73-1389882

**CHARGE DETAIL**

**Renter:** DEMETRIUS CROCKETT
**Account No.:** ************6966 VIS

**EXHIBIT E**

**DEMETRIUS CROCKETT**
**2121 LOHAMANS**
**AUSTIN, TX 78734**

## RENTAL REFERENCE

**Rental Agreement No:** 549004186
**Reservation ID:** J45831184A6

## RENTAL DETAILS

**Rate Plan:** IN: RCUW5 OUT: RCUW5
**Rented On:** 07/15/2020 12:51 LOC# 090525
AUSTIN, TX
**Returned On:** 07/28/2020 12:00 LOC# 090525
AUSTIN, TX
**Car Description:** COROLLA DFMM09
**Veh. No.:** 2007706
**CAR CLASS Charged:** B **MILEAGE In:** 9,200
**Rented:** C **Out:** 9,162
**Reserved:** B **Driven:** 38

## MISCELLANEOUS INFORMATION

CC AUTH: 784061 DATE: 2020/07/15 AMT: 363.00
CC AUTH: 818502 DATE: 2020/08/17 AMT: 2218.00

## RENTAL CHARGES

| | | | |
|---|---|---|---|
| WEEKS | 1 @ | 263.12 | 263.12 |
| EXTRA DAYS | 6 @ | 36.99 | 221.94 |
| SUBTOTAL | | | 485.06 |
| CONCESSION FEE RECOVERY | | | 63.30 |
| VEHICLE LICENSE FEE | | | 25.22 |
| CUSTOMER FACILITY CHARGE | | | 77.35 |
| RETURN CHANGE FEE | | | 10.00 |
| LATE RETURN FEE | | | 48.00 |
| ENERGY SURCHARGE | | | 1.49 |
| TAX | | 15.00% | 106.56 |
| TOTAL CHARGES | | | 816.98 USD |

**E-RETURN RECEIPT**

**THANK YOU FOR RENTING FROM DOLLAR**

**ALL CHARGES HAVE BEEN BILLED TO YOUR ACCOUNT.**

| | |
|---|---|
| **Rental Agreement No:** | 549004186 |
| **Date:** | 08/20/2020 |
| **Document:** | 950003120205 |

**Direct All Inquiries To:**
DOLLAR RENT A CAR
PO BOX 35250
TULSA, OK 74153-1167
UNITED STATES

**Renter:** DEMETRIUS CROCKETT
**Account No.:** ************6966 VIS

**Phone:** 800-800-5252
**Web:** www.dollar.com

**TOTAL CHARGES** **816.98 USD**

GDOL02P 0095 GC

**DOLLAR RENT A CAR**
Phone: 800-800-5252
Web: www.dollar.com

| | |
|---|---|
| **Rental Agreement No:** | 578003753 |
| **Date:** | 09/25/2020 |
| **Document:** | 950003252947 |

**Direct All Inquiries To:**
DOLLAR RENT A CAR
PO BOX 35250
TULSA, OK 74153-1167

TAX Id: 73-1389882

**CHARGE DETAIL**

**Renter:** DEME CROCKETT
**Account No.:** ************6966 VIS

EXHIBIT E

**DEME CROCKETT**
**2121 LOHMANS COURT**
**AUSTIN, TX 78734**

**RENTAL REFERENCE**

| | |
|---|---|
| **Rental Agreement No:** | 578003753 |
| **Reservation ID:** | J5012601461 |
| **I.T. No.:** | 1006244 |
| **Voucher:** | 0000001080 |

**MISCELLANEOUS INFORMATION**

CC AUTH: 850496 DATE: 2020/08/27 AMT: 311.00

**RENTAL DETAILS**

**Rate Plan:** IN: ZAPW5 OUT: ZAPW5
**Rented On:** 08/27/2020 16:45 LOC# 090525
AUSTIN, TX
**Returned On:** 09/24/2020 23:16 LOC# 090525
AUSTIN, TX
**Car Description:** SIRMALIBU 1.5 N FP59479
**Veh. No.:** 8627861
**CAR CLASS Charged:** A **MILEAGE In:** 49,227
**Rented:** F **Out:** 46,495
**Reserved:** A **Driven:** 2,732

**RENTAL CHARGES**

| | | | |
|---|---|---|---|
| WEEKS | 4 @ | 157.58 | 630.32 |
| EXTRA DAYS | 1 @ | 21.99 | 21.99 |
| SUBTOTAL | | | 652.31 |
| CONCESSION FEE RECOVERY | | | 86.67 |
| VEHICLE LICENSE FEE | | | 56.26 |
| CUSTOMER FACILITY CHARGE | | | 172.55 |
| LATE RETURN FEE | | | 60.00 |
| RETURN CHANGE FEE | | | 10.00 |
| ENERGY SURCHARGE | | | 1.49 |
| VOUCHER VALUE | | | -157.58 |
| TAX | | 15.00% | 155.89 |
| TOTAL CHARGES | | | 1037.59 USD |

**E-RETURN RECEIPT**

**THANK YOU FOR RENTING FROM DOLLAR**

**ALL CHARGES HAVE BEEN BILLED TO YOUR ACCOUNT.**

| | |
|---|---|
| **Rental Agreement No:** | 578003753 |
| **Date:** | 09/25/2020 |
| **Document:** | 950003252947 |

**Direct All Inquiries To:**
DOLLAR RENT A CAR
PO BOX 35250
TULSA, OK 74153-1167
UNITED STATES

**Renter:** DEME CROCKETT
**Account No.:** ************6966 VIS

**Phone:** 800-800-5252
**Web:** www.dollar.com

**TOTAL CHARGES** **1037.59 USD**

GDOL02P 0095 GC

**DOLLAR RENT A CAR**
Phone: 800-800-5252
Web: www.dollar.com

dollar. CAR RENTAL

**Rental Agreement No:** 597999861
**Date:** 12/24/2020
**Document:** 950003768433

**Direct All Inquiries To:**
DOLLAR RENT A CAR
PO BOX 35250
TULSA, OK 74153-1167

TAX Id: 73-1389882

**CHARGE DETAIL**

**Renter:** DEMETRIUS CROCKETT
**Account No.:** ************3828 VIS

EXHIBIT E

**DEMETRIUS CROCKETT**
**3310 W BRAKER LN**
**AUSTIN, TX 78758**

## RENTAL REFERENCE

**Rental Agreement No:** 597999861
**Reservation ID:** J5833752244
**I.T. No.:** 1006244
**Voucher:** 0000393585

## RENTAL DETAILS

**Rate Plan:** IN: CNVM OUT: ZAPE3
**Rented On:** 11/18/2020 09:22 LOC# 090525
AUSTIN, TX
**Returned On:** 12/24/2020 08:00 LOC# 090525
AUSTIN, TX
**Car Description:** SIR SPARKFW1.4N FP117160
**Veh. No.:** 6514608
**CAR CLASS Charged:** A **MILEAGE In:** 17,252
**Rented:** A **Out:** 13,022
**Reserved:** A **Driven:** 4,230

## MISCELLANEOUS INFORMATION

CC AUTH: 509214 DATE: 2020/11/18 AMT: 220.00

## RENTAL CHARGES

| | | | |
|---|---|---|---|
| MONTHS | 1 @ | 745.80 | 745.80 |
| EXTRA DAYS | 5 @ | 24.86 | 124.30 |
| SUBTOTAL | | | 870.10 |
| CONCESSION FEE RECOVERY | | | 112.37 |
| VEHICLE LICENSE FEE | | | 69.84 |
| CUSTOMER FACILITY CHARGE | | | 214.20 |
| LATE RETURN FEE | | | 60.00 |
| RETURN CHANGE FEE | | | 10.00 |
| ENERGY SURCHARGE | | | 1.49 |
| VOUCHER VALUE | | | -29.93 |
| TAX | | 6.25% | 83.62 |
| TOTAL CHARGES | | | 1391.69 USD |

**E-RETURN RECEIPT**

**THANK YOU FOR RENTING FROM DOLLAR**

**ALL CHARGES HAVE BEEN BILLED TO YOUR ACCOUNT.**

**Rental Agreement No:** 597999861
**Date:** 12/24/2020
**Document:** 950003768433

**Direct All Inquiries To:**
DOLLAR RENT A CAR
PO BOX 35250
TULSA, OK 74153-1167
UNITED STATES

**Renter:** DEMETRIUS CROCKETT
**Account No.:** ************3828 VIS

**Phone:** 800-800-5252
**Web:** www.dollar.com

**TOTAL CHARGES** **1391.69 USD**

GDOL02P 0095 GC

**EXHIBIT F**

Gmail

Tread Carefully <dcaustin71@gmail.com>

## Re: Lyft Help - Request Received

1 message

**Tread Carefully** <dcaustin71@gmail.com> Fri, Jul 31, 2020 at 12:41 PM
To: Lyft <support+id170104950@lyft-new.zendesk.com>

...here at the Austin Texas Hub to pick up my Flexdrive Rental and I'm being told to contact you regarding a chargeback flag on my Flexdrive account. Please advise on the date, amount and account used pertaining to this flag because it appears to be a mistake. The card that Lyft has on file and that was my default services charge account (per historicals) ends in 5782.

On Fri, Jul 31, 2020 at 11:06 AM Lyft <support@lyft-new.zendesk.com> wrote:

> This is an automatic confirmation to let you know we received your request for help from the Lyft app.
>
> A customer support associate will investigate and reach out to you soon.
>
> Thanks for your patience,
>
> Lyft
>
> Zendesk Privacy Policy
>
> [XZG9OE-WL8W]

--

This email is confidential. It is not permitted or approved, by the email's owner/originator, to be shared outside of the parties copied by the email's originator without the explicit consent and approval of the email's originator.

**EXHIBIT G**

Gmail

Tread Carefully <dcaustin71@gmail.com>

## Re: [Lyft] Re: Follow-up from Lyft

**Tread Carefully** <dcaustin71@gmail.com> Sun, Aug 2, 2020 at 11:40 AM
To: Lyft <support+id170104950@lyft-new.zendesk.com>

Thank you for letting me know. My app still says I have a chargeback and I'm unable to schedule an appointment to pick up my Flexdrive rental in my app.

What is the status of the investigation?

On Sat, Aug 1, 2020 at 6:31 PM Lyft <support@lyft-new.zendesk.com> wrote:

> Your request (170104950) has been updated. To add additional comments, reply to this email.
>
> **Jeremiah** (Lyft)
>
> Hi Turner,
>
> There is a team investigating this for you.
>
> All the best,
>
> Jeremiah
> Lyft Support
> help.lyft.com
>
> Zendesk Privacy Policy
>
> [XZG9OE-WL8W]

--
This email is confidential. It is not permitted or approved, by the email's owner/originator, to be shared outside of the parties copied by the email's originator without the explicit consent and approval of the email's originator.

**EXHIBIT H**

Gmail

Tread Carefully <dcaustin71@gmail.com>

## Re: [Lyft] Re: Follow-up from Lyft

1 message

**Tread Carefully** <dcaustin71@gmail.com> Wed, Oct 28, 2020 at 4:17 PM
To: Lyft <support+id170104950@lyft-new.zendesk.com>
Cc: Tread Carefully <dcaustin71@gmail.com>

Since I do not own a vehicle and utilized Lyft's Flex Drive program for Lyft independent contractor work, this internal Lyft system glitch completely crippled my ability to earn income to pay bills and take care of my family thus resulting in severe financial hardship.

Given Lyft HQs acknowledgment of an internal system glitch that took place **4 months ago,** as of right now, October 28th, 2020, am I now able to make an appointment to pick up a Flex Drive rental today October 28th, 2020 or tomorrow October 29th, 2020?

Also I should not have to pay a deposit to rent a vehicle given the circumstances of what has transpired.

Your prompt attention and ownership to address my questions regarding my ability to rent a Flexdrive vehicle immediately is greatly appreciated.

On Sun, Oct 25, 2020 at 1:19 PM Lyft <support@lyft-new.zendesk.com> wrote:

> Your request (170104950) has been updated. To add additional comments, reply to this email.
>
> **Seth** (Lyft)
>
> Hi Turner,
>
> I apologize for the delay between messages. As mentioned in the last update from my colleague, Rhys, we're currently looking into this issue. Since we're not sure why this is happening from my team side of things, we're working with our engineering team to try and identify what is happening internally so we can get this resolved for you as quickly as possible.
>
> When we have any updated information, we'll reach out to you to keep you up to date.

**EXHIBIT H**

Seth
Lyft Support
help.lyft.com

Zendesk

[XZG9OE-WL8W]

--

This email is confidential. It is not permitted or approved, by the email's owner/originator, to be shared outside of the parties copied by the email's originator without the explicit consent and approval of the email's originator.

EXHIBIT I

Gmail

Tread Carefully <dcaustin71@gmail.com>

# Re: [Lyft] Re: Follow-up from Lyft

**Tread Carefully** <dcaustin71@gmail.com> Mon, Dec 21, 2020 at 4:42 PM
To: Lyft <support+id170104950@lyft-new.zendesk.com>

What is the status of this investigation from July 2020?

This matter has caused, and continues to cause me a substantial loss of income and I continue to experience financial hardship as a result.

Am I now able to make an appointment to pick up my rental at the Austin Lyft hub?

On Sun, Oct 25, 2020 at 1:19 PM Lyft <support@lyft-new.zendesk.com> wrote:

> ##- Please type your reply above this line -##
>
> Your request (170104950) has been updated. To add additional comments, reply to this email.
>
> **Seth** (Lyft)
> Oct 25, 2020, 11:19 AM PDT
>
> Hi Turner,
>
> I apologize for the delay between messages. As mentioned in the last update from my colleague, Rhys, we're currently looking into this issue. Since we're not sure why this is happening from my team side of things, we're working with our engineering team to try and identify what is happening internally so we can get this resolved for you as quickly as possible.
>
> When we have any updated information, we'll reach out to you to keep you up to date.
>
> Seth
> Lyft Support
> help.lyft.com

Not required to mail or fax this copy to [redacted]

## MOTOR VEHICLE RETAIL INSTALLMENT SALES CONTRACT

ACCOUNT # [redacted]

LOT # GGL

| Buyer Name and Address | Co-Buyer Name and Address | Creditor-Seller Name and Address |
|---|---|---|
| DEMETRIUS T CROCKETT<br>2121 LOHMANS CROSSING RD<br>AUSTIN, TX 78734 | N/A | DRIVE 512 AUTORANCH LLC<br>6219 S CONGRESS AVE<br>AUSTIN, TX 78745 |

**EXHIBIT J**

The Buyer and any Co-Buyer is referred to as “I”, “my” or “me.” The Seller is referred to as “you” or “your.” This contract may be transferred by the Seller.

**PROMISE TO PAY**

The credit price is shown below as the “Total Sales Price.” The “Cash Price” is also shown in Line 1 on Page 2. By signing this contract, I choose to purchase the motor vehicle on credit according to the terms of this contract. I agree to pay you the Amount Financed, Finance Charge, and any other charges in this contract. I agree to make payments according to the Payment Schedule in this contract. If more than one person signs as a buyer, I agree to keep all the promises in this agreement even if the others do not.

I have thoroughly inspected, accepted, and approved the motor vehicle in all respects.

| Year | Make | Model | Vehicle Identification Number | | Use for which purchased |
|---|---|---|---|---|---|
| 2017 | Mitsubishi | Mirage | [redacted] | ☐ New<br>☐ Demonstrator<br>☐ Factory<br>☐ Official/Executive<br>☒ Used | ☒ PERSONAL, FAMILY OR HOUSEHOLD<br>☐ BUSINESS OR COMMERCIAL<br>☐ AGRICULTURAL |

Trade-in: Year N/A Make N/A Model N/A VIN N/A License No. N/A

Trade-in: Year N/A Make N/A Model N/A VIN N/A License No. N/A

## TRUTH IN LENDING DISCLOSURES

| ANNUAL PERCENTAGE RATE | FINANCE CHARGE | Amount Financed | Total of Payments | Total Sale Price |
|---|---|---|---|---|
| The cost of my credit as a yearly rate. | The dollar amount the credit will cost me. | The amount of credit provided to me or on my behalf. | The amount I will have paid after I have made all payments as scheduled. | The total cost of my purchase on credit, including my down payment of $ 1,428.00 is |
| [redacted] % | $ [redacted] | [redacted] | $ 19,589.00 | $ 20,589.00 |

**Payment Schedule:** My payment schedule will be:

COPY OF ELECTRONIC ORIGINAL

| No. of Payments | Amount of Payments | When Payments Are Due |
|---|---|---|
| 1 | $ 428.00 | January 12, 2021 |
| | $ | |
| 60 | $ 319.35 | Monthly Beginning January 23, 2021 |

**Security:** You will have a security interest in the motor vehicle being purchased.
**Late Charge:** If you do not receive my entire payment within 15 days after it is due (10 days if I am buying a heavy commercial vehicle), I will pay a late charge of 5% of the scheduled payment.
**Prepayment:** I can pay all that I owe early. If I do so, I can get a refund of part of the Finance Charge.
**Additional Information:** I will refer to this document for information about nonpayment, default, security interests, any required repayment in full before the scheduled date, and prepayment refunds.

***The Annual Percentage Rate may be negotiated with the Seller. The Seller may assign this contract and retain its right to receive a part of the Finance Charge.***

**PROPERTY INSURANCE: I must keep the collateral insured against damage or loss in the amount I owe. I must keep this insurance until I have paid all that I owe under this contract. I may obtain property insurance from anyone I want or provide proof of insurance I already have. The insurer must be authorized to do business in Texas. The maximum deductible is $550.**

I agree to give you proof of property insurance. I must name you as the person to be paid under the policy in the event of damage or loss.

**LIABILITY INSURANCE**

**THIS CONTRACT DOES NOT INCLUDE INSURANCE COVERAGE FOR PERSONAL LIABILITY AND PROPERTY DAMAGE CAUSED TO OTHERS .**

Sign ⇨ Buyer's Initials DTC

Buyer's Initials


**© 2012 - 2016 Credit Acceptance Corporation. All Rights Reserved.**

**EXHIBIT K**

Gmail

Tread Carefully <dcaustin71@gmail.com>

## [Lyft] Re: Follow-up from Lyft

1 message

**Lyft** <support@lyft-new.zendesk.com> Wed, Jan 6, 2021 at 3:47 PM
Reply-To: Lyft <support+id170104950@lyft-new.zendesk.com>
To: Turner Crockett <dcaustin71@gmail.com>

Your request (170104950) has been updated. To add additional comments, reply to this email.

**Kat** (Lyft)

Hello Turner,

Thanks very much for all your patience with this issue. I can assure that multiple teams including our engineering staff have investigated this issue to make sure that all concerns were addressed.

Our engineering team thoroughly checked your account and the instance of charge back in question but did not find there to be any type of error or glitch in our system to cause it. The charge back was issued on the USAA card ending in 3869 which you placed on file on 12/6/19 and previously used to place a rental deposit with Express Drive. There was no indication on our end that anything fraudulent occurred and again, no evidence that a glitch in our system caused an incorrect charge back.

Unfortunately, we are unable to place you in another Express Drive rental as we take instances of charge backs very seriously. I understand this is not the answer you were hoping for. Please know that your driver account is still active and you are welcome to add a personal vehicle to the platform if you're interested in driving with us in the future.

We truly appreciate all the time and miles you've logged with Lyft Express Drive and I am sorry that this matter could not be resolved in your favor. We

**EXHIBIT K**

hope that you are well, and wish you a healthy and happy New Year!

Kat
Lyft Support
help.lyft.com

Zendesk

[XZG9OE-WL8W]

**EXHIBIT L**

Gmail

Tread Carefully <dcaustin71@gmail.com>

## USAA Cited By Lyft As Culprit

1 message

**Tread Carefully** <dcaustin71@gmail.com> Thu, Jan 28, 2021 at 2:07 PM
To: Lyft <support+id170104950@lyft-new.zendesk.com>, "Abuse@usaa.com" <Abuse@usaa.com>
Cc: Tread Carefully <dcaustin71@gmail.com>

At 3:58 PM CST yesterday I called 877-762-7256 (USAA's Fraud Department) and spoke with Alexis.

Alexis took my personal information and conducted a deep dive database search into USAA historical intel and (as I told you Lyft) she verified / confirmed / validated that **I have NEVER had a USAA account EVER.**

After 6 months of what appears to be a botched investigation by Lyft operations, Lyft's continued consciousness and willful display of discrimination and reckless negligence to address a civil injustice matter promptly and with integrity, adds to my suspicions of malicious intent and civil injury that's still causing undue emotional distress and financial hardships for me and my family.

USAA's Financial Intelligence Unit has been assigned to this case of civil injustice for further investigation.

And to add further insult to injury, Lyft also stole $250 from me!!!

I. AM. NOT. GOING. AWAY...justice will be served!

https://youtu.be/32E6B8P3J8M

On Wednesday, January 13, 2021, Tread Carefully <dcaustin71@gmail.com> wrote:

> Hello USAA,
>
> After 6 months of "research" by a company known as Lyft (copied on this communication) , to identify a creditor who has caused unprecedented hardships for me and my family due to a chargeback on June 16, 2020 (see below) that took two weeks to process which I was never made aware of, **Lyft has cited USAA (see full disclosure below) as the creditor that caused the issue with my Lyft account**.
>
> I do not recall ever having a USAA account.
>
> Can you please assist and advise on how USAA got involved here?
>
> **Date of Charge**: 6/16/20
> **Amount**: $17.13
> **Visa card**: *3869
> **Date of Chargeback**: 7/4/20
>
> We also have this information:

**EXHIBIT L**

# Case Number: 801833861101
# Reason Code: 1040

On Wed, Jan 6, 2021 at 3:47 PM Lyft <support@lyft-new.zendesk.com> wrote:

Your request (170104950) has been updated. To add additional comments, reply to this email.

---

**Kat** (Lyft)

Hello Turner,

Thanks very much for all your patience with this issue. I can assure that multiple teams including our engineering staff have investigated this issue to make sure that all concerns were addressed.

Our engineering team thoroughly checked your account and the instance of charge back in question but did not find there to be any type of error or glitch in our system to cause it. The charge back was issued on the USAA card ending in 3869 which you placed on file on 12/6/19 and previously used to place a rental deposit with Express Drive. There was no indication on our end that anything fraudulent occurred and again, no evidence that a glitch in our system caused an incorrect charge back.

Unfortunately, we are unable to place you in another Express Drive rental as we take instances of charge backs very seriously. I understand this is not the answer you were hoping for. Please know that your driver account is still active and you are welcome to add a personal vehicle to the platform if you're interested in driving with us in the future.

We truly appreciate all the time and miles you've logged with Lyft Express Drive and I am sorry that this matter could not be resolved in your favor. We hope that you are well, and wish you a healthy and happy New Year!

Kat
Lyft Support
help.lyft.com

USAA FEDERAL SAVINGS BANK
10750 McDermott Freeway
San Antonio, Texas 78288

**EXHIBIT M**

USAA

Mr. Demetrius Turner Crockett
3310 West Braker Lane 300-401
Austin, TX 78758

March 17, 2021

Dear Mr. Crockett:

This letter is in response to your request for membership verification with USAA Federal Savings Bank (FSB). We hope the following information is helpful.

Thank you for speaking with Robert Casiano, of our staff, regarding your concerns. As Mr. Casiano explained in your conversation on March 11, 2021, the FSB is unable to determine ownership of any accounts without a full account number. A systems audit was conducted using the personally identifiable information you provided, including your name, email address d****tin7*@gmail.com, phone numbers ending in 5192 and 1136, and a social security number. We are unable to substantiate that you currently or previously established or qualified for USAA membership and/or FSB products and services. For more information regarding membership eligibility, please visit us at usaa.com. We appreciate the opportunity to respond to your concerns.

Sincerely,

Michael J. Rodriguez

Michael J. Rodriguez
Director, Advocacy
USAA Federal Savings Bank

Subject: Your ride with Karina on July 2

**Lyft Ride Receipt** <no-reply@lyftmail.com> Thu, Jul 2, 2020, 4:53
to dcaustin71

**EXHIBIT N**

**JULY 2, 2020 AT 4:34 PM**

# Thanks for riding with Karina!

100% of tips go to drivers. Add a tip

| | |
|---|---|
| Lyft fare (8.52mi, 12m 12s) | $18.38 |
| Tip | $3.31 |

Visa *5782 **$21.69**

Subject: Your ride with Ramon on July 2

**Lyft Ride Receipt** <no-reply@lyftmail.com>
to dcaustin71

Thu, Jul 2, 2020, 5:49

EXHIBIT N

JULY 2, 2020 AT 5:32 PM

# Thanks for riding with Ramon!

100% of tips go to drivers. Add a tip

| | |
|---|---|
| Lyft fare (7.94mi, 11m 29s) | $17.16 |
| Tip | $3.09 |

Visa *5782 **$20.25**

Subject: Your ride with Mike on July 3

**Lyft Ride Receipt** <no-reply@lyftmail.com>
to dcaustin71

Fri, Jul 3, 2020, 12:41

EXHIBIT N

**JULY 3, 2020 AT 12:06 AM**

# Thanks for riding with Mike!

100% of tips go to drivers. Add a tip

| | |
|---|---|
| Lyft fare (7.34mi, 12m 44s) | $17.75 |
| Tip | $3.20 |

| | |
|---|---|
| Visa *5782 | **$20.95** |

Subject: Lyft Ride Receipt - Charge Failed

**Lyft Ride Receipt** <no-reply@lyftmail.com> Fri, Jul 3, 2020, 5:13
to dcaustin71

EXHIBIT N

**$2.99 Balance Due**

We were unable to charge your Visa *5782 for your last ride. To continue using Lyft, please update your payment information in the app to settle your balance.

**JULY 3, 2020 AT 3:30 PM**

# Thanks for riding with Joel!

100% of tips go to drivers. Add a tip

Since you updated your stop or destination, your fare reflects actual time and distance
Learn more

| | |
|---|---|
| Base fare | $1.04 |
| 29m 23s | $7.93 |
| 4.98 mi | $4.83 |
| Service fee | $2.85 |
| Tip | $3.00 |

VISA Visa *5782 **$19.65**

Subject: Your ride with Oscar on July 3

**Lyft Ride Receipt** <no-reply@lyftmail.com> Fri, Jul 3, 2020, 5:53
to dcaustin71

**EXHIBIT N**

**JULY 3, 2020 AT 5:27 PM**

# Thanks for riding with Oscar!

100% of tips go to drivers. Add a tip

| | |
|---|---|
| Lyft fare (8.23mi, 17m 50s) | $20.90 |
| Tip | $3.76 |

Visa *5782 **$24.66**

Subject: Your ride with Muhammad on July 3

**Lyft Ride Receipt** <no-reply@lyftmail.com> Fri, Jul 3, 2020, 11:54
to dcaustin71

**EXHIBIT N**

**JULY 3, 2020 AT 9:04 PM**

# Thanks for riding with Muhammad!

100% of tips go to drivers. Add a tip

| | |
|---|---|
| Lyft fare (11.02mi, 15m 15s) | $20.07 |
| VISA Visa *5782 | **$20.07** |

Subject: Your ride with Hany on July 4

**Lyft Ride Receipt** <no-reply@lyftmail.com>
to dcaustin71

Sat, Jul 4, 2020, 5:25

**EXHIBIT N**

**JULY 4, 2020 AT 5:06 AM**

# Thanks for riding with Hany!

100% of tips go to drivers. Add a tip

| | |
|---|---|
| Lyft fare (1.54mi, 6m 30s) | $7.55 |
| Tip | $2.00 |
| Lyft Credits | -$5.00 |

Visa *5782 **$4.55**

Subject: Your ride with Hal on July 4

**Lyft Ride Receipt** <no-reply@lyftmail.com>
to dcaustin71

Sat, Jul 4, 2020, 6:25

**EXHIBIT N**

**JULY 4, 2020 AT 5:33 AM**

# Thanks for riding with Hal!

100% of tips go to drivers. Add a tip

| | |
|---|---|
| Lyft fare (1.87mi, 7m 40s) | $7.44 |
| Tip | $2.00 |

Visa *5782 **$9.44**

Subject: Your ride with Rene on July 4

**Lyft Ride Receipt** <no-reply@lyftmail.com> Sat, Jul 4, 2020, 12:51
to dcaustin71

**EXHIBIT N**

**JULY 4, 2020 AT 12:03 PM**

# Thanks for riding with Rene!

100% of tips go to drivers. Add a tip

| | |
|---|---|
| Lyft fare (4.71mi, 12m 34s) | $11.79 |
| Tip | $2.00 |

VISA Visa *5782 **$13.79**

Subject: Your ride with Hal on July 4

Lyft Ride Receipt <no-reply@lyftmail.com> Sat, Jul 4, 2020, 11:59
to dcaustin71

EXHIBIT N

JULY 4, 2020 AT 6:33 AM

# Thanks for riding with Hal!

100% of tips go to drivers. Add a tip

| | |
|---|---|
| Lyft fare (0.43mi, 3m 11s) | $6.89 |
| Tip | $2.00 |

Visa *5782 **$8.89**

Subject: Your ride with Teddy on July 4

**Lyft Ride Receipt** <no-reply@lyftmail.com>
to dcaustin71

Sat, Jul 4, 2020, 1:48

EXHIBIT N

**JULY 4, 2020 AT 1:25 PM**

# Thanks for riding with Teddy!

100% of tips go to drivers. Add a tip

| | |
|---|---|
| Lyft fare (8.89mi, 18m 22s) | $17.53 |
| Tip | $2.00 |

Visa *5782 **$19.53**

Subject: Your ride with Aaron on July 4

**Lyft Ride Receipt** <no-reply@lyftmail.com> Sun, Jul 5, 2020, 7:20
to dcaustin71

EXHIBIT N

**JULY 4, 2020 AT 7:05 PM**

# Thanks for riding with Aaron!

100% of tips go to drivers. Add a tip

| | |
|---|---|
| Lyft fare (11.01mi, 13m 43s) | $22.70 |
| VISA Visa *5782 | **$22.70** |

Subject: Your ride with Satish on July 6

**Lyft Ride Receipt** <no-reply@lyftmail.com> Mon, Jul 6, 2020, 1:59
to dcaustin71

**EXHIBIT N**

**JULY 6, 2020 AT 12:40 AM**

# Thanks for riding with Satish!

100% of tips go to drivers. Add a tip

| | |
|---|---|
| Lyft fare (2.59mi, 8m 13s) | $8.52 |
| Visa *5782 | **$8.52** |

Subject: Your ride with Henry on July 6

**Lyft Ride Receipt** <no-reply@lyftmail.com> Mon, Jul 6, 2020, 2:33
to dcaustin71

**EXHIBIT N**

**JULY 6, 2020 AT 2:11 AM**

# Thanks for riding with Henry!

100% of tips go to drivers. Add a tip

Since you updated your stop or destination, your fare reflects actual time and distance
Learn more

| | |
|---|---|
| Base fare | $1.04 |
| 19m 38s | $5.30 |
| 4.15 mi | $4.02 |
| Service fee | $2.85 |

VISA Visa *5782 **$13.21**

Subject: Your ride with Damon on July 6

**Lyft Ride Receipt** <no-reply@lyftmail.com> Mon, Jul 6, 2020, 1:14
to dcaustin71

EXHIBIT N

JULY 6, 2020 AT 10:24 AM

# Thanks for riding with Damon!

100% of tips go to drivers. Add a tip

| | |
|---|---|
| Lyft fare (8.30mi, 18m 21s) | $21.60 |
| VISA Visa *5782 | **$21.60** |

Subject: Your ride with Hui on July 6

Lyft Ride Receipt <no-reply@lyftmail.com> Tue, Jul 7, 2020, 9:39
to dcaustin71

EXHIBIT N

JULY 6, 2020 AT 1:25 PM

# Thanks for riding with Hui!

100% of tips go to drivers. Add a tip

Since you updated your stop or destination, your fare reflects actual time and distance
Learn more

| | |
|---|---|
| Base fare | $1.04 |
| 38m 25s | $10.37 |
| 21.17 mi | $20.53 |
| Service fee | $2.85 |
| AUS Airport - Airport Fee | $2.50 |

VISA Visa *5782 **$37.29**

Subject: Your ride with Mark on July 9

**Lyft Ride Receipt** <no-reply@lyftmail.com>
to dcaustin71

Thu, Jul 9, 2020, 3:09

**EXHIBIT N**

**JULY 9, 2020 AT 12:43 PM**

# Thanks for riding with Mark!

100% of tips go to drivers. Add a tip

| | |
|---|---|
| Lyft fare (11.46mi, 17m 17s) | $22.13 |
| Visa *1560 | **$22.13** |

Subject: Your ride with Ikechukwu on July 14

**Lyft Ride Receipt** <no-reply@lyftmail.com>
to dcaustin71

Tue, Jul 14, 2020, 1:04

**EXHIBIT N**

**JULY 14, 2020 AT 12:27 AM**

# Thanks for riding with Ikechukwu!

100% of tips go to drivers. Add a tip

| | |
|---|---|
| Lyft fare (7.95mi, 10m 33s) | $17.27 |
| Tip | $4.00 |

VISA Visa *5782 **$21.27**

Subject: Your ride with José on July 15

**Lyft Ride Receipt** <no-reply@lyftmail.com>
to dcaustin71

Wed, Jul 15, 2020, 10:14

**EXHIBIT N**

**JULY 15, 2020 AT 12:35 PM**

# Thanks for riding with José!

100% of tips go to drivers. Add a tip

| | |
|---|---|
| Lyft fare (8.49mi, 11m 8s) | $18.21 |
| VISA Visa *5782 | **$18.21** |

Subject: Your ride with Jose on July 31

**Lyft Ride Receipt** <no-reply@lyftmail.com> Fri, Jul 31, 2020, 6:37
to dcaustin71

**EXHIBIT N**

**JULY 31, 2020 AT 5:32 PM**

# Thanks for riding with Jose!

100% of tips go to drivers. Add a tip

| | |
|---|---|
| Lyft fare (12.20mi, 31m 19s) | $23.67 |
| Tip | $5.92 |

VISA Visa *5782 **$29.59**

**Lyft Ride Receipt** <no-reply@lyftmail.com> Sat, Aug 1, 2020, 7:14
to dcaustin71

EXHIBIT N

JULY 31, 2020 AT 6:53 PM

# Thanks for riding with Vincent!

100% of tips go to drivers. Add a tip

| | |
|---|---|
| Lyft fare (13.58mi, 19m 47s) | $21.16 |

| | |
|---|---|
| VISA Visa *5782 | **$21.16** |

Subject: Your ride with Joseph on August 3

**Lyft Ride Receipt** <no-reply@lyftmail.com> Mon, Aug 3, 2020, 1:25
to dcaustin71

EXHIBIT N

AUGUST 3, 2020 AT 12:52 PM

# Thanks for riding with Joseph!

100% of tips go to drivers. Add a tip

| | |
|---|---|
| Lyft fare (5.92mi, 21m 4s) | $15.27 |
| Tip | $2.00 |

Visa *5782 **$17.27**

Subject: Your ride with William on August 3

**Lyft Ride Receipt** <no-reply@lyftmail.com> Mon, Aug 3, 2020, 1:55
to dcaustin71

**EXHIBIT N**

**AUGUST 3, 2020 AT 1:39 PM**

# Thanks for riding with William!

100% of tips go to drivers. Add a tip

| | |
|---|---|
| Lyft fare (4.21mi, 8m 37s) | $11.27 |
| VISA Visa *5782 | **$11.27** |

Subject: Your ride with Ivan on August 4

**Lyft Ride Receipt** <no-reply@lyftmail.com> Tue, Aug 4, 2020, 9:39
to dcaustin71

EXHIBIT N

**AUGUST 4, 2020 AT 1:18 AM**

# Thanks for riding with Ivan!

100% of tips go to drivers. Add a tip

| | |
|---|---|
| Lyft fare (2.79mi, 6m 8s) | $9.82 |
| Visa *5782 | **$9.82** |

Subject: Your ride with Cyril on August 4

**Lyft Ride Receipt** <no-reply@lyftmail.com> Wed, Aug 5, 2020, 9:52
to dcaustin71

**EXHIBIT N**

**AUGUST 4, 2020 AT 9:45 AM**

# Thanks for riding with Cyril!

100% of tips go to drivers. Add a tip

| | |
|---|---|
| Lyft fare (2.85mi, 6m 23s) | $8.88 |
| VISA Visa *5782 | **$8.88** |

Subject: Your ride with Abdul on August 5

**Lyft Ride Receipt** <no-reply@lyftmail.com> Wed, Aug 5, 2020, 4:35
to dcaustin71

EXHIBIT N

**AUGUST 5, 2020 AT 3:11 PM**

# Thanks for riding with Abdul!

100% of tips go to drivers. Add a tip

| | |
|---|---|
| Lyft fare (7.10mi, 14m 43s) | $13.81 |
| Visa *5782 | **$13.81** |

Subject: Your ride with Alejandro on August 5

**Lyft Ride Receipt** <no-reply@lyftmail.com> Thu, Aug 6, 2020, 11:19
to dcaustin71

**EXHIBIT N**

**AUGUST 5, 2020 AT 4:39 PM**

# Thanks for riding with Alejandro!

100% of tips go to drivers. Add a tip

| | |
|---|---|
| Lyft fare (7.64mi, 16m 39s) | $15.69 |

| | |
|---|---|
| VISA Visa *5782 | **$15.69** |

Subject: Your ride with Eric on August 6

**Lyft Ride Receipt** <no-reply@lyftmail.com>
to dcaustin71

Thu, Aug 6, 2020, 5:57

EXHIBIT N

AUGUST 6, 2020 AT 11:49 AM

# Thanks for riding with Eric!

100% of tips go to drivers. Add a tip

| | |
|---|---|
| Lyft fare (39.87mi, 76m 2s) | $50.02 |
| Visa *5782 | **$50.02** |

Subject: Your ride with Donna on August 6

Lyft Ride Receipt <no-reply@lyftmail.com> Thu, Aug 6, 2020, 7:19
to dcaustin71

**EXHIBIT N**

AUGUST 6, 2020 AT 6:21 PM

# Thanks for riding with Donna!

100% of tips go to drivers. Add a tip

| | |
|---|---|
| Lyft fare (1.66mi, 5m 20s) | $6.70 |
| Visa *5782 | **$6.70** |

Subject: Your ride with Teklu on August 6

**Lyft Ride Receipt** <no-reply@lyftmail.com>
to dcaustin71

Fri, Aug 7, 2020, 7:29

**EXHIBIT N**

**AUGUST 6, 2020 AT 7:19 PM**

# Thanks for riding with Teklu!

100% of tips go to drivers. Add a tip

| | |
|---|---|
| Lyft fare (1.66mi, 8m 29s) | $6.56 |
| VISA Visa *5782 | **$6.56** |

Subject: Your ride with Sterling G on August 9

**Lyft Ride Receipt** <no-reply@lyftmail.com> Mon, Aug 10, 2020, 5:04
to dcaustin71

EXHIBIT N

AUGUST 9, 2020 AT 4:09 PM

# Thanks for riding with Sterling G!

100% of tips go to drivers. Add a tip

| | |
|---|---|
| Lyft fare (3.04mi, 20m 45s) | $8.66 |
| VISA Visa *6966 | **$8.66** |

Subject: Your ride with Abdul wakeel on August 11

**Lyft Ride Receipt** <no-reply@lyftmail.com> Wed, Aug 12, 2020, 10:52
to dcaustin71

EXHIBIT N

**AUGUST 11, 2020 AT 10:32 PM**

# Thanks for riding with Abdul wakeel!

100% of tips go to drivers. Add a tip

| | |
|---|---|
| Lyft fare (11.97mi, 18m 59s) | $20.55 |
| VISA Visa *6966 | **$20.55** |

Subject: Your ride with Henry on August 15

**Lyft Ride Receipt** <no-reply@lyftmail.com>
to dcaustin71

Sat, Aug 15, 2020, 1:43

EXHIBIT N

AUGUST 15, 2020 AT 12:40 AM

# Thanks for riding with Henry!

100% of tips go to drivers. Add a tip

| | |
|---|---|
| Lyft fare (14.82mi, 16m 13s) | $23.87 |
| Visa *5782 | **$23.87** |

Subject: Your ride with Doug on August 15

**Lyft Ride Receipt** <no-reply@lyftmail.com>
to dcaustin71

Sat, Aug 15, 2020, 3:00

**EXHIBIT N**

**AUGUST 15, 2020 AT 2:09 AM**

# Thanks for riding with Doug!

100% of tips go to drivers. Add a tip

| | |
|---|---|
| Lyft fare (2.62mi, 6m 30s) | $8.61 |
| VISA Visa *5782 | **$8.61** |

Subject: Your ride with Ghulam on August 23

**Lyft Ride Receipt** <no-reply@lyftmail.com>
to dcaustin71

Sun, Aug 23, 2020, 4:30

**EXHIBIT N**

**AUGUST 23, 2020 AT 4:10 AM**

# Thanks for riding with Ghulam!

100% of tips go to drivers. Add a tip

Since you updated your stop or destination, your fare reflects actual time and distance
Learn more

| | |
|---|---|
| Base fare | $1.08 |
| 14m 33s | $4.07 |
| 11.12 mi | $11.23 |
| Service fee | $2.85 |

VISA Visa *5782 **$19.23**

Subject: Your ride with Yosbel on August 26

**Lyft Ride Receipt** <no-reply@lyftmail.com> Thu, Aug 27, 2020, 2:04
to dcaustin71

**EXHIBIT N**

**AUGUST 26, 2020 AT 9:51 PM**

# Thanks for riding with Yosbel!

100% of tips go to drivers. Add a tip

| | |
|---|---|
| Lyft fare (5.71mi, 21m 50s) | $13.60 |
| VISA Visa *5782 | **$13.60** |

Subject: Your ride with Spencer on August 27

**Lyft Ride Receipt** <no-reply@lyftmail.com>
to dcaustin71

Thu, Aug 27, 2020, 4:46

**EXHIBIT N**

**AUGUST 27, 2020 AT 2:12 AM**

# Thanks for riding with Spencer!

100% of tips go to drivers. Add a tip

| | |
|---|---|
| Lyft fare (2.35mi, 8m 7s) | $7.81 |
| VISA Visa *5782 | **$7.81** |

Subject: Your ride with Tommy on August 27

Lyft Ride Receipt <no-reply@lyftmail.com> Thu, Aug 27, 2020, 11:26
to dcaustin71

EXHIBIT N

AUGUST 27, 2020 AT 5:08 AM

# Thanks for riding with Tommy!

100% of tips go to drivers. Add a tip

| | |
|---|---|
| Lyft fare (2.71mi, 13m 27s) | $9.27 |
| Visa *5782 | **$9.27** |

Subject: Your ride with Jesse on August 28

**Lyft Ride Receipt** <no-reply@lyftmail.com> Fri, Aug 28, 2020, 3:13
to dcaustin71

lyft

**EXHIBIT N**

**AUGUST 28, 2020 AT 2:36 AM**

# Thanks for riding with Jesse!

100% of tips go to drivers. Add a tip

Since you updated your stop or destination, your fare reflects actual time and distance
Learn more

| | |
|---|---|
| Base fare | $1.08 |
| 10m 24s | $2.91 |
| 2.22 mi | $2.24 |
| Service fee | $2.85 |

VISA Visa *5782 **$9.08**

Subject: Your ride with Joe on August 27

**Lyft Ride Receipt** <no-reply@lyftmail.com>
to dcaustin71

Fri, Aug 28, 2020, 2:20

**EXHIBIT N**

**AUGUST 27, 2020 AT 4:10 PM**

# Thanks for riding with Joe!

100% of tips go to drivers. Add a tip

| | |
|---|---|
| Lyft fare (12.03mi, 30m 36s) | $23.18 |
| Visa *6966 | **$23.18** |

Gmail Tread Carefully <dcaustin71@gmail.com>

**Lyft Rental Charge Receipt**

**Lyft** <receipts@lyftmail.com> Tue, May 5, 2020 at 6:33 AM
To: dcaustin71@gmail.com

lyft

**EXHIBIT N**

# $27.50 Thanks! We've processed your payment successfully

Charges to card ending with ***5782: $27.50

Contact

548 Market St., P.O. Box 68514, San Francisco, CA 94104
© 2020 Lyft, Inc.
CPUC ID No. TCP0032513 - P

Gmail Tread Carefully <dcaustin71@gmail.com>

**Lyft Rental Charge Receipt**

**Lyft** <receipts@lyftmail.com> Tue, Jun 2, 2020 at 8:56 AM
To: dcaustin71@gmail.com

**EXHIBIT O**

lyft

# $8.50 Thanks! We've processed your payment successfully

| | |
|---|---|
| Charges to card ending with ***5782: | $8.50 |

Contact

548 Market St., P.O. Box 68514, San Francisco, CA 94104
© 2020 Lyft, Inc.
CPUC ID No. TCP0032513 - P

Gmail Tread Carefully <dcaustin71@gmail.com>

**Lyft Rental Charge Receipt**

**Lyft** <receipts@lyftmail.com> Tue, Jun 30, 2020 at 9:54 AM
To: dcaustin71@gmail.com

**EXHIBIT O**

lyft

# $97.38 Thanks! We've processed your payment successfully

| | |
|---|---|
| Charges to card ending with ***5782: | $97.38 |

Contact

548 Market St., P.O. Box 68514, San Francisco, CA 94104
© 2020 Lyft, Inc.
CPUC ID No. TCP0032513 - P

Gmail Tread Carefully <dcaustin71@gmail.com>

**Lyft Rental Charge Receipt**

**Lyft** <receipts@lyftmail.com> Tue, Jul 7, 2020 at 8:51 AM
To: dcaustin71@gmail.com

**EXHIBIT O**

lyft

# $73.34 Thanks! We've processed your payment successfully

| | |
|---|---|
| Charges to card ending with ***5782: | $73.34 |

Contact

548 Market St., P.O. Box 68514, San Francisco, CA 94104

© 2020 Lyft, Inc.

CPUC ID No. TCP0032513 - P

**EXHIBIT P**

Gmail Tread Carefully <dcaustin71@gmail.com>

# Re: Lyft Help - Request Received

**Tread Carefully** <dcaustin71@gmail.com> Sat, Jul 4, 2020 at 6:46 PM
To: Lyft <support+id169279366@lyft-new.zendesk.com>

My Lyft Driver app is incorrectly stating that a Ford Fiesta is “IN USE” on my account. This is NOT true because I haven’t owned a Ford Fiesta since November 2019. The app is not allowing me to change the status to NOT IN USE nor delete the vehicle from my account.

Please assist.




On Sat, Jul 4, 2020 at 6:44 PM Lyft <support@lyft-new.zendesk.com> wrote:

EXHIBIT P

##- Please type your reply above this line -##

This is an automatic confirmation to let you know we received your request for help from the Lyft app.

A customer support associate will investigate and reach out to you soon.

Thanks for your patience,

Lyft

This email is a service from Lyft. Delivered by Zendesk | Privacy Policy

--

This email is confidential. It is not permitted or approved, by the email's owner/originator, to be shared outside of the parties copied by the email's originator without the explicit consent and approval of the email's originator.

Lyft, Inc
185 Berry St. Suite 5000
San Francisco, CA 94107

**EXHIBIT Q**

If you have questions contact:
Lyft
Phone: (855) 280-0278

DEMETRIUS CROCKETT
3310 W. BRAKER LANE
AUSTIN, TX 78758

## Instructions for Payee

You have received this form because you have either (a) accepted payment cards for payments, or (b) received payments through a third party network that exceeded $20,000 in gross total reportable transactions and the aggregate number of those transactions exceeded 200 for the calendar year. Merchant acquirers and third party settlement organizations, as payment settlement entities (PSEs), must report the proceeds of payment card and third party network transactions made to you on Form 1099-K under Internal Revenue Code section 6050W. The PSE may have contracted with an electronic payment facilitator (EPF) or other third party payer to make payments to you.

If you have questions about the amounts reported on this form, contact the FILER whose information is shown in the upper left corner on the front of this form. If you do not recognize the FILER shown in the upper left corner of the form, contact the PSE whose name and phone number are shown in the lower left corner of the form above your account number.

See the separate instructions for your income tax return for using the information reported on this form.

**Payee's taxpayer identification number (TIN).** For your protection, this form may show only the last four digits of your TIN (social security number (SSN), individual taxpayer identification number (ITIN), adoption taxpayer identification number (ATIN), or employer identification number (EIN)). However, the issuer has reported your complete TIN to the IRS.

**Account number.** May show an account number or other unique number the PSE assigned to distinguish your account.

**Box 1a.** Shows the aggregate gross amount of payment card/third party network transactions made to you through the PSE during the calendar year.

**Box 1b.** Shows the aggregate gross amount of all reportable payment transactions made to you through the PSE during the calendar year where the card was not present at the time of the transaction or the card number was keyed into the terminal. Typically, this relates to online sales, phone sales, or catalogue sales. If the box for third party network is checked, or if these are third party network transactions, Card Not Present transactions will not be reported.

**Box 2.** Shows the merchant category code used for payment card/third party network transactions (if available) reported on this form.

**Box 3.** Shows the number of payment transactions (not including refund transactions) processed through the payment card/third party network.

**Box 4.** Shows backup withholding. Generally, a payer must backup withhold if you did not furnish your TIN or you did not furnish the correct TIN to the payer. See Form W-9, Request for Taxpayer Identification Number and Certification, and Pub. 505. Include this amount on your income tax return as tax withheld.

**Boxes 5a-5l.** Show the gross amount of payment card/third party network transactions made to you for each month of the calendar year.

**Boxes 6-8.** Show state and local income tax withheld from the payments.

**Future developments.** For the latest information about developments related to Form 1099-K and its instructions, such as legislation enacted after they were published, go to *www.irs.gov/Form1099K.*

X CORRECTED (if checked)

FILER'S name, street address, city or town, state or province, country, ZIP or foreign postal code, and telephone no.
Lyft, Inc
185 Berry St. Suite 5000
San Francisco, CA 94107

FILER'S TIN: 20-8809830
PAYEE'S TIN: [redacted]

OMB No. 1545-2205

**2020**

**Payment Card and Third Party Network Transactions**

Form **1099-K**

**Copy B**
**For Payee**

This is important tax information and is being furnished to the IRS. If you are required to file a return, a negligence penalty or other sanction may be imposed on you if taxable income results from this transaction and the IRS determines that it has not been reported.

Check to indicate if FILER is a (an):
Payment settlement entity (PSE) [X]
Electronic Payment Facilitator (EPF)/Other third party [ ]

Check to indicate transactions reported are:
Payment card [ ]
Third party network [X]

PAYEE'S name, street address (including apt. no.), city or town, state or province, country, and ZIP or foreign postal code
DEMETRIUS CROCKETT
3310 W. BRAKER LANE
AUSTIN, TX 78758

PSE'S name and telephone number

Account number (see instructions) [redacted]

| Box | Value | Box | Value |
|---|---|---|---|
| 1a Gross amount of payment card/third party network transactions | $ 20,009.11 | | |
| 1b Card Not Present transactions | $ 0.00 | 2 Merchant category code | 4121 |
| 3 Number of payment transactions | 1,218 | 4 Federal income tax withheld | $ |
| 5a January | $ 5,503.42 | 5b February | $ 4,990.26 |
| 5c March | $ 3,938.62 | 5d April | $ 2,610.55 |
| 5e May | $ 1,940.48 | 5f June | $ 1,015.67 |
| 5g July | $ 10.11 | 5h August | $ |
| 5i September | $ | 5j October | $ |
| 5k November | $ | 5l December | $ |
| 6 State | TX | 7 State identification no. | |
| 8 State income tax withheld | $ | | |

Form **1099-K** (Keep for your records) www.irs.gov/Form1099K Department of the Treasury - Internal Revenue Service

0H8701 2.000

Lyft, Inc
185 Berry St. Suite 5000
San Francisco, CA 94107

EXHIBIT Q

Box 1 (NEC) = Nonemployee Compensation = $ 649.55

If you have questions contact:
Lyft
Phone: (855) 280-0278

DEMETRIUS CROCKETT
3310 W. BRAKER LANE
AUSTIN, TX 78758

## Instructions for Recipient

**Recipient's taxpayer identification number (TIN).** For your protection, this form may show only the last four digits of your TIN (social security number (SSN), individual taxpayer identification number (ITIN), adoption taxpayer identification number (ATIN), or employer identification number (EIN)). However, the issuer has reported your complete TIN to the IRS.

**FATCA filing requirement.** If the FATCA filing requirement box is checked, the payer is reporting on this Form 1099 to satisfy its chapter 4 account reporting requirement. You may also have a filing requirement. See the Instructions for Form 8938.

**Account number.** May show an account or other unique number the payer assigned to distinguish your account.

**Box 1.** Shows nonemployee compensation and/or nonqualified deferred compensation (NQDC). If you are in the trade or business of catching fish, box 1 may show cash you received for the sale of fish. If the amount in this box is self-employment (SE) income, report it on Schedule C or F (Form 1040 or 1040-SR), and complete Schedule SE (Form 1040 or 1040-SR). You received this form instead of Form W-2 because the payer did not consider you an employee and did not withhold income tax or social security and Medicare tax. If you believe you are an employee and cannot get the payer to correct this form, report this amount on the line for "Wages, salaries, tips, etc." of Form 1040, 1040-SR, or 1040-NR. You must also complete Form 8919 and attach it to your return. If you are not an employee but the amount in this box is not SE income (for example, it is income from a sporadic activity or a hobby), report this amount on the "Other income" line (on Schedule 1 (Form 1040 or 1040-SR); or on Form 1040-NR).

The amounts being reported as NQDC are includible in gross income for failure to meet the requirements under section 409A. This amount is also reported on Form 1099-MISC for additional tax calculation. See the Instructions for Forms 1040 and 1040-SR, or the Instructions for Form 1040-NR

**Box 2.** Reserved

**Box 3.** Reserved

**Box 4.** Shows backup withholding. A payer must backup withhold on certain payments if you did not give your TIN to the payer. See Form W-9, Request for Taxpayer Identification Number and Certification, for information on backup withholding. Include this amount on your income tax return as tax withheld.

**Boxes 5-7.** State income tax withheld reporting boxes.

**Future developments.** For the latest information about developments related to Form 1099-NEC and its instructions, such as legislation enacted after they were published, go to *www.irs.gov/Form1099NEC*

☐ CORRECTED (if checked)

REISSUED STATEMENT

OMB No. 1545-0116

**2020**

**Nonemployee Compensation**

Form **1099-NEC**

**Copy B**
**For Recipient**

PAYER'S name, street address, city or town, state or province, country, ZIP or foreign postal code, and telephone no.

Lyft, Inc
185 Berry St. Suite 5000
San Francisco, CA 94107

1 Nonemployee compensation
$649.55

2

3

**4 Federal income tax withheld**
$

PAYER'S TIN: 20-8809830

RECIPIENT'S TIN: [redacted]

RECIPIENT'S name, street address (including apt. no.), city or town, state or province, country, and ZIP or foreign postal code

DEMETRIUS CROCKETT
3310 W. BRAKER LANE
AUSTIN, TX 78758

This is important tax information and is being furnished to the IRS. If you are required to file a return, a negligence penalty or other sanction may be imposed on you if this income is taxable and the IRS determines that it has not been reported.

FATCA filing requirement ☐

Account number (see instructions) [redacted]

| 5 State tax withheld | 6 State/Payer's state no. | 7 State income |
|---|---|---|
| $ | TX / | $ |

Form **1099-NEC** (keep for your records) www.irs.gov/Form1099NEC Department of the Treasury - Internal Revenue Service

0H8164 6.000

EXHIBIT F

3/20/2025 8:54 PM
Velva L. Price
District Clerk
Travis County
D-1-GN-25-001601
Nancy Rodriguez

# Case # D-1-GN-25-001601

**Pursuant To Rule 316 of Texas Rules of Civil Procedure:**
**Minor And Non Substantial Amendments, That Do Not Affect Core Civil Offenses, Do Not Restart Judicial Review**
**1st Amendment On 3/11/2025 Was For Punitive Damages Due To Miscalculation**
**2nd Amendment On 3/20/2025 Is For Timeline To Award Personal Damages**

**Demetrius Crockett**
**(Plaintiff)**

**Vs**

**Lyft, Inc.**
**(Defendant)**

**In the 261st**

**District Court**

**of**

**Travis County, Texas**

## 2nd Amendment
## Again - No Updates To Core Civil Offenses

# Motion for Summary Judgment

**TO THE HONORABLE JUDGE OF SAID COURT, NOW COMES Demetrius Crockett, the Plaintiff in the above-styled and numbered cause, and files this Motion for Summary Judgment pursuant to Rule 166a of the Texas Rules of Civil Procedure, for judicial efficiency, and in support thereof would respectfully show the Court as follows:**

## I. INTRODUCTION

1. This is a Motion for Summary Judgment based on grounds of undisputed material facts and specific legal principles.

2. Summary judgment is proper in this case because there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law.

## II. STATEMENT OF UNDISPUTED FACTS

**On Fri, Dec 6th, 2019** Plaintiff signed a rental car agreement under the Defendant's Flexdrive rental car program. **(See Exhibit A)**. The rental agreement clearly states "*Renter acknowledges that Renter has no right to renewal of a rental and that Flexdrive may refuse to renew the Rental Period or permit Renter to rent again for any reason*, including without limitation excessive mileage or wear and tear on the Rental Car *or failure to pay charges*." **(See Exhibit A Pg. 4)**

**On Fri, May 29th, 2020 at 10:26 AM CST**, Plaintiff was contacted by Lyft to "*Please schedule and complete the necessary maintenance with one of our partners and complete in the next 48 hours to remain eligible to rent with Lyft*" **(See Exhibit C)** which the Plaintiff complied with.

**On Jul 2, 2020, 12:14:43 PM CST,** unbeknownst to the Plaintiff, Lyft Inc. had already ended the Plaintiff's rental agreement internally, in their systems, **(See Contract End Exhibit B),** which Plaintiff discovered after the conducting due diligence discovery for lawsuit.

# Case # D-1-GN-25-001601

What follows are date and time stamped accurate and truthful accounts of the Defendant unlawfully and unconstitutionally leading the Plaintiff on and deceiving the Plaintiff, making him believe that the rental car's routine maintenance was being conducted while what can only be concluded taking place was, but not limited to, devising an agenda to falsify records, commit blatant fraud, violate the Plaintiff's civil /constitutional rights and violate Texas Penal Codes to inflict unlawful, malicious, cruel and intentional, emotional distress and overwhelming financial hardships upon the Plaintiff and his family.

**On Sat, July 4th, 2020 at 6:46 PM CST,** Plaintiff reached out the Defendant again in good-faith, under extreme emotional distress and surmounting financial hardships to inform the Defendant of the toll the incident was taking on him and to remind the Defendant's that he has no vehicle to use on the Lyft Platform. **(See Exhibit P)**

**On Thu, Jul 9th, 2020 at 3:34 PM CST,** Plaintiff was informed via email that a routine background check was being run and he would not be able to drive nor earn living expenses on the Lyft platform period. **(See Exhibit D)**

**On Thu, Jul 9th, 2020,** after receiving the Jul 9th, 2020 3:34 PM CST emotionally distressing message that would make it impossible for the Plaintiff to earn further living expense income on the Defendant's platform during the extensive background check, Plaintiff incurred alternative rental car expenses equating to **$3,798** , that span over 5 months **(See Exhibit E )**, as means for transportation to earn income on alternate Gig Worker platforms.

**On Fri, Jul 31st, 2020 at 12:41 PM CST**, Plaintiff returned to pick up his rental after it had been routinely serviced to find out that his background check was fine, but the Defendant had cited him for a chargeback / failure to pay. The Defendant also informed the Plaintiff that his Lyft Driver Account would remain on hold **(See Exhibit F).** The Plaintiff's renter's rights were denied and he was not allowed to resolve the matter through another form of credit card owner payment.

**On Sat, Aug 1, 2020 at 6:31 PM CST**, Plaintiff was informed by a Lyft Representative that the chargeback / failure to pay incident was being investigated. **(See Exhibit G)**

**On Wed, Oct 28, 2020 at 4:17 PM CST**, Plaintiff reached out the Defendant again in good-faith, under extreme emotional distress and surmounting financial hardships to understand what was transpiring with the investigation and didn't get a progress report from the Defendant other than internal systems causing a problem. **(See Exhibit H)**

# Case # D-1-GN-25-001601

**On Mon, Dec 21, 2020, 4:42 PM CST,** after no professional courtesy follow up from the Defendant, Plaintiff reached out to the Defendant *again* in good-faith, under extreme emotional distress and surmounting financial hardships regarding a status update for the thorough investigation into what transpired with the Plaintiff's Lyft Driver account's credit card that Lyft claimed caused the chargeback / failure to pay and got same no progress update response. **(See Exhibit I)**

**On Wed, Dec 23rd, 2020,** due to the Defendant's lengthy (**approaching 5 months**) hold on his Lyft Flexdrive rental rights and lengthy investigation that ultimately and irrefutably proved fraud was committed by the Defendant and due to surmounting living expenses, the Plaintiff had to incur further emotional distress, debt and financial burden equating to **$20, 589,** for a vehicle purchase as a means to continue Gig Work on alternate platforms for living expense income. **(See Exhibit J)**

**On Wed, Jan 6, 2021 at 3:47 PM CST, *almost 6 months after a suspicious hold*** was put on the Plaintiff's Lyft Driver account, Defendant informed the Plaintiff that their **thorough** investigation found that the chargeback / failure to pay was from the Plaintiff's USAA credit card ***ending in 3869*** **(See Exhibit K).** Plaintiff has never had, nor owned, a USAA account nor has the Plaintiff ever owned a USAA credit card ***ending in 3869***.

**On Wed, January 27th, 2021 at 3:58 PM CST** per an official USAA's Fraud Department's initial investigation into the Defendant's claims and allegations against Plaintiff, it was confirmed that the Plaintiff has never had a USAA account, nor has the Plaintiff ever owned a USAA credit card further confirming and validating that fraud, falsification of records, deception, misrepresentation and breach of contract had been committed by the Defendant. **(See Exhibit L)**

**On Wed, March 17th, 2021**, after the Plaintiff provided his name, address, email address, phone number (at that time) and social security number again to USAA for a thorough investigation, Plaintiff received confirmation and validation, on official USAA letterhead from Advocacy Director, Michael J. Rodriguez of never owning a USAA account nor a USAA credit card. **(See Exhibit M)**

The Defendant, to this day, refuses to lawfully correct the fraud, deceit, defamation and inaccuracies on the Plaintiff's Lyft Driver account to enable his rental ability.

Since the Plaintiff also purchased personal miles with every week of Lyft Flexdrive rental, as a direct result of the Defendant's civil and criminal offenses, the Plaintiff incurred unnecessary rideshare expenses equating to **$683** for transport over the incident's duration. **(See Exhibit N)**

# Case # D-1-GN-25-001601

Documents labeled as "**Exhibit O**" show date and time stamped records, from the Defendant, regarding the Plaintiff's use of his credit card **ending in 5782 for Lyft Inc. Flexdrive rental service payments, *not a credit card ending in 3869*** as well as some, of many, examples of suspiciously unethical operational integrity and prejudice towards the Plaintiff while active on the Lyft Driver app platform that led up to the unlawful and unconstitutional chargeback that indefinitely prohibited the Plaintiff's Flexdrive rental ability. Additionally Plaintiff lost $3443.11 per month / $**20,659** in earnings, based on YTD earnings totals on the Defendant's platform, due to Defendant's civil and criminal offenses over a 6 month timeframe. **(See Exhibit Q)**

## III. LEGAL STANDARD

Under Rule 166a of the Texas Rules of Civil Procedure, summary judgment shall be rendered if the pleadings, depositions, admissions, affidavits, and other evidence on file show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

## IV. ARGUMENT

**Legal Principle 1**: Plaintiff's credit card used for a rental charge was falsified by Defendant. Plaintiff never committed the offense nor violated his contract; the Defendant made false allegations and **defamed the Plaintiff (Civil and Criminal Offense) under Texas Civil Practice & Remedies Code 73.001**.

**Legal Principle 2**: Defendant committed **blatant fraud** (Criminal Offense) against the Plaintiff and **violated Texas Penal Code 32.46**.

**Legal Principle 3**: Defendant falsified Plaintiff's ownership of a credit card in his name which is **Forgery under Texas Penal Code 32.21** (Criminal Offense).

**Legal Principle 4**: Defendant committed fraud / falsification of Plaintiff's credit card records that caused a violation with the Plaintiff's Flexdrive contract so it would appear that he breached the contract. The Plaintiff was denied good-faith efforts to resolve the matter with a credit card that he lawfully owned, in his name. **The Defendant's actions involving civil and criminal offenses breached the Plaintiff's Lyft Flexdrive rental agreement** (Criminal and Civil Offense).

**Legal Principle 5**: Defendant operated with complete unlawful and unconstitutional disregard for ethical principles, lawful remedies, accurate record keeping and operational integrity in **bold violation and defiance of the Texas Deceptive Trade Practices Act (DTPA) (Civil Offense)**.
**Legal Principle 6**: **Defendant's actions were malicious; as of Sat, July 4th, 2020** at 6:46 PM CST, the Defendant was well aware of the Plaintiff not owning a vehicle **(See Exhibit P)** to conduct Lyft Inc. independent contractor work for living expense income and further prohibited the Plaintiff from using Lyft's Flexdrive rental program to conduct independent contractor work for income. **This resulted in severe infliction of emotional distress and infliction of overwhelming financial hardship upon the Plaintiff and his family.** (Criminal and Civil Offense).

**Legal Principle 7:** The Defendant wrongly and unlawfully cited and blamed USAA as the entity responsible for fraud committed against the Plaintiff which is **Tortious Interference with USAA's business relations and disrupted USAA's internal operations** (Civil Offense).

## V. EVIDENCE

This motion is supported by the following evidence:

1. USAA Advocacy Director, Michael J. Rodriguez letter to Plaintiff on official USAA letterhead. **(See Exhibit M)**
2. All Exhibits presented with this Motion for Summary Judgment.

## VI. PRAYER FOR RELIEF

WHEREFORE, PREMISES CONSIDERED, Demetrius Crockett respectfully requests that this Court grant this Motion for Summary Judgment and render judgment in favor of the Plaintiff as follows:

1. **Personal Damages of $137,187 awarded within 5 days of favorable ruling.**

- **Actual damages in an amount to be awarded;$45,729 awarded within 5 days of favorable rulir**
- **Punitive damages: $91,458 awarded within 5 days of favorable ruling.**
- **Reasonable attorney's fees and costs;**
- **Pre- and post-judgment interest to be determined at trial;awarded within 5 days of favorable rulir**
- **Any other relief the Court finds just and equitable awarded within 5 days of favorable ruling**

2 . Refer Defendant to Austin Police Department or prosecutor for criminal proceedings.
3 . Such other and further relief to which Plaintiff may be entitled.

# Case # D-1-GN-25-001601

4 . Order Defendant to remove the unlawful and unconstitutional Lyft rental car ban and all instances of defamation against Plaintiff on Lyft's Driver platform, Plaintiff's Driver records and all independent contractor partner records.

**5 . For each year the Plaintiff was unlawfully and unconstitutionally wronged, award the Plaintiff a Top-Tier Lyft rental car of his choice.**

Respectfully submitted,

**Demetrius Crockett**
**3310 W. Braker Lane**
**Austin, Texas 78758**
**512-553-5455**
**youcanusemyemailaddress@gmail.com**

## Certificate of Service

**I hereby certify that a true and correct copy of the foregoing 2nd Amendment With No Updates To Core Civil Offenses has been served, via electronic filing, to Lyft Inc., electronically, initially on March 5th, 2025 at 5:34 PM CST and today March 20, 2025 in accordance with the Texas Rules of Civil Procedure.**

**Demetrius Crockett**

D. Crockett

flexdrive

# Flexdrive Rental Agreement for Lyft Drivers

EXHIBIT A

## Renter

DEMETRIUS CROCKETT
2121 Lohmans Crossing Rd, #211
Austin, TX 78734

dcaustin71@gmail.com
[redacted]

## Vehicle

2018 NISSAN SENTRA
VIN: 3N1AB7AP3JY248644
License Plate: KHM9593

## Rental Weekly Pricing

2019-12-06 - 2019-12-13

Base Rate: **$179.00** (excluding taxes), includes **200** Period 0 (offline) miles (as defined in the Flexdrive Rental Agreement for Lyft Drivers referenced below).

Charge for excess personal (P0) miles: **$25.00** per **50** miles, plus applicable taxes. You will be charged this amount if you exceed the personal (P0) miles allowed under your base rate as indicated above.

*Note: Please refer to your weekly billing statements (every Tuesday) for final charges.*

## Rental Weekly Taxes

Texas State Car Rental Excise Tax 1-30 Days: **$17.90**
Austin City Local Sports Venue Excise Tax: **$8.95**

## Start

2019-12-06 - 3:42pm UTC
Odometer: 116658 miles

## End

2019-12-13 - 3:42pm UTC
Odometer: -- miles

## Location

flexdrive

AUS 03 - Elmo
2101 E St. Elmo Rd, Suite 3150
Austin, TX 78744

EXHIBIT A

## Inspection

Driver Side: **Excellent**

--

Front: **Excellent**

small crack on the windshield that has been filled, bottom center. small scuff.

Front Carpets: **Excellent**

--

Front Seats: **Excellent**

--

Headliner: **Excellent**

--

Passenger Side: **Excellent**

scratch back door about 3 inch.

Rear: **Excellent**

Scuffs on the back bumper

Roof: **Excellent**

--

Rear Carpets: **Excellent**

--

Rear Seats: **Good**

staining on middle seat

Amp: **Excellent**

--

Spare Tire: **Excellent**

--

Trade Dress And Docs: **Excellent**

--

Trunk: **Excellent**

--

Fuel: **3/4**

1/8 less than a full tank of gas upon pickup

flexdrive

## Agreement

EXHIBIT A

Terms of the Flexdrive Rental Agreement for Lyft Drivers shall be found here:
https://www.lyft.com/drive/expressdrive/terms/FLEXDRIVE

I agree to rent the vehicle described in this agreement on the terms outlined above. I understand and agree that my rental of the vehicle is subject to the Flexdrive Terms of Use and my Membership Agreement, including (without limitation) charges for excess mileage fees that exceed the mileage allowance listed above. Any renewal of this rental shall be on the same terms as set forth above.

I agree that any renewal of this rental may be evidenced by (a) any written communication from me to Flexdrive, including text messages or email, (b) me accepting renewal via any Flexdrive mobile application or online interface, or (c) a confirmation text message or email from Flexdrive to me following my oral acceptance of renewal.

---

## Signature

# Rental end: Turner Crockett

RENTAL END

flexdrive

**EXHIBIT B**

## Rental agreement for Lyft drivers

### Renter

**Turner Crockett**
2121 Lohmans Crossing Rd
#211
Austin, TX 78734

dcaustin71@gmail.com
[redacted]

### Vehicle

**MIDSIZE**
**3N1AB7AP3JY248644**
2018 Nissan Sentra



TX KHM9593

### Rental details

**Rental location:**
Austin - Flexdrive - 6375 US-290
6375 US-290
Austin, TX 78723

**Rental period:**
Jul 2, 2020, 11:38:12 AM - Jul 2, 2020, 12:14:43 PM

PRICING PLAN:

**400 personal miles:**

| | |
|---|---|
| Vehicle base rate | $249.00 |
| Taxes & fees | $37.35 |
| **Total** | $286.35 |

**Extra miles:**

$25.00 per 50 miles

### Vehicle inspection & charges

CHARGES

Minor damage excess wear $250.00

EXTERIOR DAMAGE CHARGES

EXHIBIT B

Rear

Fair

Scuffs on the back bumper. dent on trunk bigger than largest circle on damage evaluator

PREEXISTING DAMAGES (DRIVER NOT RESPONSIBLE)

Front

Excellent

small crack on the windshield that has been filled, bottom center. small scuff.

Fuel

3/4

1/8 less than a full tank of gas upon pickup

Passenger side

Excellent

scratch back door about 3 inch.

Rear seats

Good

staining on middle seat

INTERIOR DAMAGE CHARGES

Front seats

Fair

interior part of driver door is torn up

**Total owed by driver** $250.00

## Agreement

I agree to rent the vehicle described in this agreement on the terms outlined above. I understand and agree that my rental of the vehicle is subject to the Flexdrive Terms of Use and my Membership Agreement, including (without limitation) charges for excess mileage fees that exceed the mileage allowance listed above. Any renewal of this rental shall be on the same terms as set forth above.

I agree that any renewal of this rental may be evidenced by (a) any written communication from me to Flexdrive, including text messages or email, (b) me accepting

renewal via any Flexdrive mobile application or online interface, or (c) a confirmation text message or email from Flexdrive to me following my oral acceptance of renewal

EXHIBIT A

Updated as of April 23, 2019

By accepting below, you (the "Renter", "you", "your") are agreeing to be a party to this Flexdrive Rental Agreement for Lyft Drivers (this "Agreement" or "Rental Agreement") with Flexdrive Services, LLC, a Delaware limited liability company ("we", "us" or "Flexdrive"). This Agreement is effective as of the date of your E-Signature, regardless of whether you use the Services (the "Effective Date").

As used in this Agreement, "Lyft" means Lyft, Inc., a transportation network company for which Renter has been approved to use the Lyft network on an independent contractor basis, and "Lyft Rental Program" means the program through which Flexdrive shall provide vehicles for rent specifically to Lyft drivers ("Lyft Drivers").

Pursuant to this Agreement, you and Flexdrive agree as follows:

1. REPRESENTATIONS ABOUT YOURSELF

A. All information provided by you in your personal profile as provided to Lyft is true and complete, and you consent to Lyft sharing that information with us to the extent necessary for us to verify your eligibility to rent vehicles from us and otherwise to perform the fleet management, rental and ancillary activities described herein. To the extent this information changes during the term of this Agreement, as defined in Section 10 below (including without limitation, if you receive, are convicted of or admit to any traffic or moving violations), you will promptly notify Lyft of the change. You acknowledge that your acceptance of the terms of this Rental Agreement does not bind Flexdrive as a party to this Agreement and that you are not a Renter for purposes of utilizing our Services until a notice of acceptance of this Agreement is delivered to you by Flexdrive.

B. As part of the application process to participate in the Lyft Rental Program, Flexdrive, Lyft and/or their licensed insurance carriers may order one or more consumer reports on you. A consumer report may contain information on driving records and criminal activity, among other things. In the event that participation in the Lyft Rental Program is denied to you based wholly or partly on information in a consumer report, you will be notified of this fact and given the name and address of the consumer reporting agency making the report. Flexdrive maintains the right to suspend and/or revoke eligibility to participate in the Lyft Rental Program at any time.

C. We are committed to protecting your privacy. Any information submitted or collected in connection with the Services or your participation in the Lyft Rental Program is subject to our Privacy Policy, the terms of which can be found on the Flexdrive website at www.flexdrive.com.

2. FLEXDRIVE SERVICES

Under the Lyft Rental Program, Flexdrive manages a fleet of vehicles and offers such vehicles for rent (each, a "Rental Car") to Renters and enables Renters who are Lyft Drivers, in connection with the rental and use of such Rental Cars, to use the corresponding websites, mobile applications, online tools and features supplied by Lyft and/or Flexdrive for the rental usage and management by the Renters (provision of Rental Cars and such additional services are collectively, the "Services"). Renter acknowledges and agrees that (i) Flexdrive may not own all such Rental Cars, which may be provided by third parties subject to lease agreements (or, in certain states, loan agreements) with Flexdrive; (ii) Flexdrive provides its Renters the ability to rent Rental Cars for specified short term periods of up to the legal limit for rentals in the area where you rent; (iii) Flexdrive does not provide transportation services, and is not a transportation carrier; and (iv) while Flexdrive offers a method to connect drivers with suitable vehicles for their needs, it does not provide transportation services or act in any manner as a transportation carrier.

Any use of or access to the Services is subject to certain eligibility requirements, and the Services are not available to or authorized for use by any users previously removed as a Renter by Flexdrive or by any users or persons acting on behalf of an organization or entity and not in his or her personal or

EXHIBIT A

individual capacity, except as required by applicable law.

TO BE ELIGIBLE FOR AND TO MAINTAIN PARTICIPATION IN THE LYFT RENTAL PROGRAM, YOU MUST PASS AND MAINTAIN THE ELIGIBILITY REQUIREMENTS TO BE A LYFT DRIVER.

3. USE OF OUR SERVICES

Your use of a rented Rental Car as a Renter must at all times comply with all the terms of this Agreement, as updated from time to time, and all applicable local, state, national, and international laws, rules and regulations. Flexdrive reserves the right to modify the terms and conditions of this Agreement at any time, effective upon posting an updated version of the Agreement on our website: www.flexdrive.com. You are responsible for regularly reviewing this Agreement. Continued use of our Services after any such changes shall constitute your consent to such changes.

NATURE OF RENTAL; RENTAL PERIOD

(1) This is a contract for the rental of a Rental Car. The rental is made in connection with Renter's participation in the Lyft Rental Program, which Renter acknowledges is intended primarily for the commercial purpose of serving as an independent contractor Lyft Driver. Renter does not have the right to sublease the Rental Car or assign any of his/her rights under this Agreement. The initial rental period for the Rental Car is 7 calendar days (i.e., one calendar week) (the "Initial Rental Period"). Unless you return the Rental Car on or before the date and time specified for return on the Rental Record ("Return Date"), the rental will automatically renew for additional 7-day periods, for a maximum of three (3) additional weeks beyond the Initial Rental Period (or such shorter period as mandated by applicable law) (together with the Initial Rental Period, the "Rental Period"); provided that: (a) you are in good standing and in compliance with your obligations under the Agreement, including the obligation to remain eligible for participation in the Lyft Rental Program; (b) Flexdrive may require Renter to return the Rental Car for inspection; and (c) the total Rental Period does not exceed the maximum duration specified in this Agreement. Renter acknowledges that taxes, fees, and other charges estimated during the Initial Rental Period may be subject to change during the remainder of the Rental Period or during subsequent Rental Periods. Renter must: (x) notify Flexdrive at the end of each Rental Period of the Rental Car's then-current mileage, and (y) exchange the Rental Car upon Flexdrive's request. Renter acknowledges that Renter has no right to renewal of a rental and that Flexdrive may refuse to renew the Rental Period or permit Renter to rent again for any reason, including without limitation excessive mileage or wear and tear on the Rental Car or failure to pay charges. If a rental is not renewed, at the discretion of Flexdrive, regular late fees will apply, if a Rental Car is not returned at the end of the Rental Period. In addition, Flexdrive may demand that Renter return the Rental Car at any time during a Rental Period. To the extent permitted by law, Flexdrive may repossess the Rental Car at your expense without notice to you, if the Rental Car is abandoned or used in violation of law or this Agreement.

ONLY FOR RENTALS IN THE STATE OF MARYLAND: For any Rental Agreement signed in, and subject to the laws of, the state of Maryland, the Rental Period (including the initial 7-day period and any renewals) shall not exceed one hundred and twelve (112) days, meaning you must return your Rental Car on or before the 112th day after you sign your Rental Agreement.

(2) Reservation of a Rental Car through the Lyft reservation system does not guarantee a reservation on the selected vehicle or the selected class of vehicle.

(3) Security deposits or non-refundable starter fees may be required to rent Rental Cars in some markets and are assessed by Lyft at the time of the Renter's first rental. Security deposits are refundable after the return of a Rental Car, via the Lyft payment process in the next pay period following the return of a Rental Car, subject to vehicle condition and to payment by Renter of any other outstanding amounts due and payable under the Lyft Rental Program (e.g., tolls, violations, etc.). At the time of return of a Rental Car, the Renter will either have the remaining balance of the Security Deposit held and applied to the next Flexdrive rental or refunded via the Lyft payment process. Starter fees are payments made by Renters to participate in the Lyft Rental Program and are only refundable in the event the Renter never drives the Rental Car, returns the Rental Car prior to the expiration of the Initial Rental Period, or as otherwise stated by Lyft during the application process, provided that the starter fee may be used and applied to any outstanding amounts due and payable under the Lyft Rental Program.

(4) In New York, Flexdrive may offer Rental Cars that are licensed with the New York Taxi & Limousine Commission ("TLC") (such Rental Cars may also be referred to herein as "TLC Rentals") to you if you are an authorized TLC driver ("TLC Driver"). Provisions in this Agreement referring to Rental Cars shall be deemed to include TLC Rentals unless stated otherwise. Provisions in this Agreement related to drivers or Lyft Drivers shall be deemed to include TLC Drivers unless stated otherwise.

EXHIBIT A

GENERAL OVERVIEW OF THE RULES

(1) Flexdrive connects drivers with Rental Cars available for rent. As such, we have a number of rules designed to ensure that our Rental Cars remain in good condition for the next driver. Accordingly, Renters should follow the guidelines below, as well as all other terms of this Agreement.

Report all damage: Before you drive away with your Rental Car, inspect your Rental Car inside and out. To report damage, a dirty Rental Car, or low fuel, inform the Lyft or Flexdrive representative before you take possession of the Rental Car. If the Rental Car sustains any damage during the Rental Period, inform your Lyft or Flexdrive representative as soon thereafter as reasonably practicable.
Keep all Rental Cars clean: Take personal belongings with you when you go and throw away or recycle any trash.
No smoking: Smoking is never permitted in a Rental Car, even with all the windows down or all the doors open. Smoking in a Rental Car is a violation of this Agreement.
Rental Car must be returned with the same level of fuel that it was originally rented with, otherwise the Renter may be charged a refueling fee.
Vehicles that are returned excessively dirty due to the presence of pets that are not service animals may be assessed an additional cleaning fee.
Drive as if it is your own car: While Flexdrive and/or Lyft maintain insurance on all Rental Cars available through the Services, to the extent permitted by law and subject to the other provisions of this Agreement, you will be responsible for all theft, uncovered damages, costs, and deductibles resulting from your use of the Rental Car and for all damages that result from a breach of this Agreement.

(2) Failure to comply with the provisions of this Agreement may cause a Renter to incur additional charges, fines and penalties, which you agree may be automatically deducted by Lyft from your Lyft Driver ride earnings or charged by Lyft to the credit card that may be kept on file by Lyft. The following fees will apply:

AMP : $50.00
EV Charge Card Replacement (Electric Vehicle Rentals Only) : $50.00
EV Charge Cord Replacement (Electric Vehicle Rentals Only) : $500.00
Excessive Pet Cleaning : $250.00
1/4 Tank of Gas Fill Up : $18.75
2/4 Tank of Gas Fill Up : $37.50
3/4 Tank of Gas Fill Up : $56.25
4/4 Tank of Gas Fill Up : $75.00
Key Fob Replacement : $300.00
Lost or Damaged Transponder : $50.00
Lyft Trade Dress : $10.00
Minor Damage : $500.00
Minor Excess Wear and Tear : $250.00
Minor Wear and Tear : $100.00
Phone Mount : $10.00
Recovery Fee : $500.00
Remote Unlock : $100.00
Smoke Removal : $300.00
Spare Tire Replacement : $200.00
Vehicle Cleaning : $50.00
Vehicle Detail : $150.00

(3) In the event Renter fails to satisfy and maintain satisfaction of the requirements under the Lyft Rental Program during the Rental Period, and therefore does not qualify as eligible to participate in the Lyft Rental Program with Flexdrive, Renter shall be charged the agreed upon rate for the Rental Car for the entire duration of the rental and will be required to return the Rental Car. In addition to the

requirements stated throughout this Agreement, the following requirements apply, without limitation:

a. Completing a minimum number of paid rides on the Lyft Platform for each calendar week during the Rental Period. The number of rides required for this weekly minimum may vary by region.
b. Maintaining all necessary licenses, permits, authorizations or permissions to use the Rental Car to provide "for hire" transportation of passengers in the jurisdiction where Renter provides such services.
c. Complying with Lyft's terms of service (found at www.lyft.com/terms) and maintaining good standing on the Lyft platform at all times during the Rental Period; and
d. Complying with the terms of this Agreement.

EXHIBIT A

PROHIBITED USES OF RENTAL CARS

(1) Any unreasonable, inappropriate or unlawful use of a Rental Car, as determined by Flexdrive in its sole discretion, may be deemed a breach of this Agreement. Without limiting the foregoing, Renters must always use Rental Cars in accordance with all traffic, motor vehicle, highway and other applicable laws and regulations. If you violate any laws, Flexdrive will report to the authorities information about you or the Rental Car as and to the extent required by applicable law. Without limiting the foregoing, the use of a Rental Car under the following conditions is prohibited:

o Any speed race or competition;
o For the purpose of towing, pushing, or propelling any trailer or any other vehicle;
o For moving furniture, household goods, or other general moving activities;
o For any commercial or business purposes other than serving as a Lyft Driver including, without limitation, for the purpose of transporting people or goods or providing transportation services through any entity other than Lyft. Any "for hire" transportation using Rental Cars other than transportation services provided on the Lyft platform is a violation of the Agreement. Notwithstanding the foregoing, this restriction shall not apply to TLC Drivers' use of TLC Rentals, who may engage in other "for hire" transportation of passengers as permitted under applicable law.
o Any transportation services on the Lyft platform originating from locations outside of the "authorized territory" for Lyft operations as designated through the Lyft application.
o By any person who is under the influence of (i) alcohol; or, (ii) any drug or medication under the effects of which the Renter's operation of a vehicle is impaired or the use of a vehicle is prohibited or not recommended;
o In the carrying out of any crime or for any other illegal activity or purpose;
o In an imprudent, negligent, or abusive manner or any other abnormal use of a vehicle;
o Driving or transporting a Rental Car from the US into Canada;
o Driving or transporting a Rental Car from the US into Mexico;
o Carrying a number of passengers that exceeds the designed seating capacity of the vehicle or baggage, cargo or other items that would cause the Rental Car to be overloaded or otherwise exceed its recommended weight capacity;
o Carrying or transporting any hazardous, toxic, flammable, dangerous or illegal materials;
o Driving while using a mobile communication device that may distract you from driving, including driving while texting, emailing, using a cell phone without a hands-free device or otherwise engaging in similar activities that may be prohibited by applicable law; or
o Any other activity prohibited by law or public policy.

(2) Further, Renter agrees that Renter will not (and will not permit passengers or others to): (a) smoke cigarettes, cigars, pipes or other tobacco products in the Rental Car; (b) remove, tamper with or disable the tracking device or other hardware, software or electronics that are installed in the Rental Car; (c) perform repairs or maintenance services on the Rental Car or make any modifications to the Rental Car; (d) make any cosmetic changes to the Rental Car including, without limitation, painting, striping or window tinting; (e) replace the Rental Car's wheels or other parts; or (f) damage or deface the Rental Car.

IF YOU HAVE A BREAKDOWN OR AN INCIDENT

(1) Flexdrive provides Renter with all necessary and required routine maintenance on all Rental Cars. However, Renters are responsible for helping maintain the driving safety and performance of the Rental Car. Renters must be responsive to all warning lights, chimes and other indicators and alerts.

(2) Rental Cars may require Roadside Assistance from time to time. Flexdrive provides Roadside

Assistance support as part of the Service. If, however, a Renter's need for Roadside Assistance results from a breach of this Agreement, the Renter may be charged for the services provided.

(3) Atypical noises or driving feel, including but not limited to warning lamps, indicators, inappropriate or strange engine or other mechanical sounds, performance changes or unusual driving feel, must be reported to Lyft as soon as noted. Failure to report such irregularities during a Rental Period may result in the Renter's immediate suspension or termination of participation in the Lyft Rental Program, as well as the Renter being responsible for any damages resulting from the continued use of the Rental Car despite such irregularities to the extent permitted by law. Such damages are not covered by the insurance maintained by Flexdrive, Lyft, or otherwise through the Lyft Rental Program.

(4) You should report all breakdowns to the Lyft Rental Program's Roadside Assistance line at (844) 400-1449 as soon as reasonably practicable. Accidents or similar incidents involving Rental Cars should be reported to Lyft immediately by calling Lyft's Critical Response Line through the Lyft Driver app as well as calling 911.

(5) If a problem arises that prevents or limits the use of the Rental Car or that may compromise safety, you must notify Lyft and Flexdrive immediately and follow any communicated instructions from Lyft and/or Flexdrive.

EXHIBIT A

(6) In case of an incident involving property damage or any third party, the Renter must take the following action:
o Contact law enforcement to file a police report as soon after the incident occurs as is reasonably practicable, and, if possible, provide law enforcement a jointly agreed-upon statement between you and the third party.
o Call Lyft's Critical Response Line as soon after the incident occurs as is reasonably practicable to report the incident details, including:
a. Date, time, and place of incident;
b. The license plate numbers of any other vehicles involved, their make and year, their identification number (serial number), and the insurance certificate's number (with name, address and phone number of the insurance agent; if possible obtain a digital photo of the other driver's insurance card);
c. The names, addresses, and driver's license numbers of the persons involved in the incident;
d The name, address, and driver's license number of the owner of the car (if he or she is not the driver);
e. The name, addresses, and phone number of witnesses, passengers, and any other involved persons;
f. Circumstances of the incident; and
g. If one was completed, any police report will be required regardless of liability or fault.

(7) The Renter must provide to Lyft, Flexdrive, and any other claims adjustment service the findings of any report or any notice or other written communications relating to a claim or a lawsuit against Lyft, Flexdrive or any other claims adjustment service regarding any incident involving a Rental Car. Renter agrees to cooperate fully with Lyft, Flexdrive, and any other claims adjustment service in the investigation and defense of any such claim or lawsuit. A Renter's account and Lyft platform access may be suspended until the investigation has been concluded.

(8) The Renter will be responsible for the charges related to the theft, repair, recovery and loss of use of any Rental Car and all third party injuries and property damages resulting from any of the foregoing to the extent they are not covered by insurance and as permitted by applicable law. Estimates for any costs will be available to the Renter for review. To the extent permitted by law, the Renter will be responsible for all applicable damages and charges arising from the Renter's failure to comply with the terms of this Agreement. Insurance coverage included with the Renter's Lyft Rental Program rental is set forth in Section 6, below.

TRAFFIC/TOLL/PARKING VIOLATIONS

(1) You are responsible for any traffic violations incurred during your reservation or as a result of your use of a Rental Car. These include, but are not limited to, parking, speeding, red light, photo enforcement, and toll violations. You are liable for all penalties/fees from any such violation, including fines for late payment and any processing penalties/fees added by the issuing municipality. You are liable for payment of all tolls and any fines for toll evasion. Wherever possible it is the Renter's

responsibility to pay the relevant authorities directly. Flexdrive and/or Lyft may impose a fee in connection with processing any such violations, as described above in Rental Fees. You must report such violations to Lyft as soon as possible within the prescribed deadline for the violation (for example, if the case is being taken to court). While there may be a lag between when the infraction occurs and when you are billed for it, you are still liable for the cost regardless of the delay.

EXHIBIT A

(2) You must notify Lyft of any traffic violation notices found on a Rental Car at the time of pickup of the Rental Car. All unreported traffic violations will be the responsibility of a Renter if they occur during the time period during which such Renter is using or responsible for the Rental Car.

(3) Where a violation is incurred by a Renter and notice of the violation is sent directly to Flexdrive, Flexdrive will either pay the penalty/fee on behalf of the Renter and then add the penalty/fee to the Renter's account or Flexdrive may, if permitted by the authority issuing the violation, transfer liability for the penalty/fee to the Renter and the Renter will then be wholly responsible for all correspondence with the appropriate authority and any penalties/fees due. Flexdrive will always inform a Renter which one of these two courses of action it has taken and will endeavor to provide notice to Renters before it pays any penalties/fees attributable to them. Once paid by Flexdrive, it may not be possible for the Renter to challenge the penalty/fee. The right to appeal, or transfer liability, on any traffic or parking charge issued by any authority or body belongs to Flexdrive and will be at Flexdrive's absolute discretion. In the case of speeding notices, Flexdrive is obligated to pass on the offending Renter's details to the police, who will then contact the Renter directly.

(4) Renter is responsible for paying the charging authorities directly all tolls, including any fines for toll evasion, and other related fines, fees, and penalties assessed against Renter, Flexdrive or the Rental Car during the Rental Period. Renter should not rely on use of a toll transponder in the Rental Car (if any) in connection with Renter's payment for tolls. In order to avoid a Processing Fee (as defined below) in connection with a toll, Renter must pay the toll in cash at the applicable toll plaza (where permitted) or Renter must make arrangements to pre-pay any applicable tolls, such as by contacting the toll operator and pre-paying online, by phone, or by mail. If Renter is provided a toll transponder and uses it to pay any tolls, the toll payments as well as any fees associated with the use or possession of the toll transponder will be charged to the payment card Renter uses in connection with this rental and Renter expressly authorizes such charges. If Flexdrive is notified that it may be responsible for payment of a toll or violation, Renter will pay Flexdrive or a processing firm of Flexdrive's choosing ("Processor") an administrative fee of up to $50 for each such notification (each, a "Processing Fee") (such fee is a reasonable estimate of Flexdrive's costs in administrating resolution for a Violation or engaging a Processor to do so). If Flexdrive or the Processor pays a toll or violation on Renter's behalf even in connection with the use of a toll transponder in the Rental car (if any), Renter authorizes Flexdrive or the Processor to charge tolls or violations to the payment card Renter used in connection with this rental. As and to the extent necessary to enable Flexdrive to enforce its rights under this paragraph, Flexdrive may disclose Renter's personal information to toll authorities and/or the Processor.

(5) Flexdrive reserves the right to terminate the Rental Agreement, making the Renter ineligible for participation in the Lyft Rental Program, with any Renter who incurs (a) any unpaid moving violations, (b) red light/disobeying traffic signal violations, (c) parking citations, (d) unpaid toll violation, (e) any at fault accident, or (f) refuses to sign a payment plan, to the extent permitted by law.

4. PERSONS PERMITTED TO USE RENTAL CARS

Only properly licensed, active Renters in good standing are allowed to drive Rental Cars, subject to applicable state laws. Renter understands and agrees that in states that require a rental company to inspect the driver's license of a renter to validate that the license was issued to the renter, Renter will cooperate with Flexdrive by, as applicable, (a) physically presenting the driver's license to Lyft and/or (b) transmitting true and actual photos of the driver's license to Lyft via the Lyft app or other electronic means specified by Lyft or Flexdrive. To the extent permitted by applicable law, non-Renters are expressly prohibited from driving a Rental Car at any time. Further, to the extent permitted by applicable law, Renter may not permit any other individual to drive a Rental Car other than the specific Renter who has rented and been assigned to a specific Rental Car in compliance with this Agreement. Renter assumes liability for all damages, loss or injury to third parties arising from the use of the Rental Car by an unauthorized user, and, further, if Flexdrive is legally responsible for damages, loss or injury, then Renter agrees to defend and indemnify Flexdrive with respect to same to the extent permitted by

applicable law. Notwithstanding the foregoing, if Renter is not able to drive or obtain a driver's license due to a disability and is approved by Lyft to become a Lyft Driver, Renter may enroll to use the Services if Renter's authorized driver (an "Authorized Driver") is approved by Flexdrive to operate a Rental Car and such Authorized Driver agrees, by signing this Agreement, to operate each Rental Car pursuant to the terms of this Agreement.

EXHIBIT A

5. REPAIR, MAINTENANCE AND ROADSIDE ASSISTANCE

If Renter is notified by Lyft and/or Flexdrive of the need for routine maintenance on the Rental Car that Renter then currently has under rental, Renter will take the vehicle to the locations specified by Lyft and/or Flexdrive, which in all instances will be a Flexdrive-approved maintenance provider. If Renter believes that a Rental Car requires unscheduled repair or maintenance, Renter will contact Lyft, which will notify Flexdrive, and Flexdrive will arrange for the performance of such repair or maintenance by a Flexdrive-approved provider. Under no circumstances shall Renter arrange for repair or maintenance without Lyft's or Flexdrive's prior written authorization. Flexdrive shall include in each Rental Car contact information for approved roadside assistance providers. If Renter requires roadside assistance, Renter will contact Flexdrive's roadside assistance provider. Renter will not use an alternative roadside assistance provider without Flexdrive's prior authorization.

6. INSURANCE AND RENTAL CAR DAMAGE

Sections A-C below apply to all Rental Cars except TLC Rentals, which are expressly addressed in Section D. Section E shall apply to all Rental Cars including TLC Rentals.

A. All Rental Cars will be provided to Renters with insurance that will cover all periods of driving ("Period(s)"), provided that the Renter is otherwise in compliance with the terms of this Agreement and Lyft's Terms of Use. Depending upon the Period the insurance coverage will be maintained either by Flexdrive or by Lyft:

o "Period 0" is the period of time in which a Renter has taken possession of a Rental Car and does not have the Lyft Application in Driver Mode or is not otherwise in Period 1, 2 or 3.
o "Period 1" is the period of time in which a Renter has the Lyft Application running in Driver Mode but has not accepted any requests for transportation services from Lyft Passenger(s).
o "Period 2" is the period of time in which a Renter has the Lyft Application running in Driver Mode and has accepted a request for transportation services from Lyft Passenger(s) but does not have any Lyft Passengers occupying the Rental Car.
o "Period 3" is the period of time in which a Renter has the Lyft Application running in Driver Mode and has at least one Lyft Passenger occupying, entering or exiting the Rental Car.

For all Rental Cars except TLC Rentals, insurance maintained by Flexdrive shall apply during Period 0, and insurance maintained by Lyft shall apply during Periods 1, 2 & 3. "Driver Mode" means the state of the Lyft Application where it is running and logged in on a Renter's Lyft Driver account and is available to receive requests for transportation services from Lyft passengers.

B. Insurance maintained by Flexdrive during Period 0 for all Rental Cars except TLC Rentals:

1. Liability Coverage: State required minimum financial responsibility limits and any other compulsory requirements applicable.
2. Physical Damage Coverage: Flexdrive's insurance policy will provide coverage against physical damage to the Rental Car during Period 0. To the extent permitted by applicable law, such Physical Damage Coverage is subject to a $1,000 deductible per incident which shall be the sole responsibility of Renter; provided, however, if the cost of damages for any one incident is less than $1,000, the deductible shall equal the total cost of damages.
3. Uninsured/Underinsured Motorists Coverage: Coverage limits in accordance with local regulations and/or state laws.
C. Insurance maintained by Lyft during Periods 1, 2, and 3 for all Rental Cars except TLC Rentals:

1. During Period 1, Lyft's insurance policies will provide the following:
a. Primary commercial auto liability insurance as set forth in the applicable city's, state's or region's Transportation Network Company ordinances.
b. Auto Physical Damage providing coverage for damage to the Rental Car, subject to a $1,000

EXHIBIT A

deductible per incident (as permitted by applicable law) which shall be the sole responsibility of Renter; provided, however, if the cost of damages for any one incident is less than $1,000, the deductible shall equal the total cost of damages.
2. During Periods 2 or 3, Lyft's insurance policies will provide the following:
a. Primary commercial auto liability insurance with a minimum combined single limit of $1,000,000 per accident, including uninsured/underinsured motorist coverage limits in accordance with local regulations and/or state laws. (These limits shall apply to markets excluding Minnesota, Nevada, New Jersey, New York, North Carolina, and Rhode Island)
b. In MN, NV, NJ, NC and RI - primary commercial auto liability insurance with a minimum combined single limit of $1,500,000 per accident, including uninsured/underinsured motorist coverage with limits in accordance with local regulations and/or state laws.
c.Auto Physical Damage providing coverage for damage to the Rental Car, subject to a $1,000 deductible per incident (as permitted by applicable law), which shall be the sole responsibility of Renter; provided, however, if the cost of damages for any one incident is less than $1,000, the deductible shall equal the total cost of damages.

D. TLC Rentals
All TLC Rentals will be provided to TLC Renters with insurance procured by Flexdrive that will cover all periods of driving in coverages and amounts as required by the TLC and applicable law, provided that the Renter is otherwise in compliance with the terms of this Agreement and Lyft's Terms of Use. The coverage shall include Auto Physical Damage providing coverage for damage to the TLC Rental, subject to a $1,000 deductible per incident (as permitted by applicable law), which shall be the sole responsibility of Renter; provided, however, if the cost of damages for any one incident is less than $1,000, the deductible shall equal the total cost of damages.

E. Items Not Covered by Flexdrive or Lyft Insurance Policies for any Rental Cars, including TLC Rentals:

(1) If the total amount of the injuries and/or third party property damage in an accident exceeds the applicable coverage limits, the Renter is responsible for any amount that exceeds the liability insurance included with the Lyft Rental Program rental. Renters engaging in prohibited uses of Rental Cars may not be covered by the insurance maintained by Flexdrive or Lyft and are subject to immediate revocation of eligibility to participate in the Lyft Rental Program and/or Lyft platform access.

(2) To the extent permitted by law, for any loss or damage to the Rental Car that occurs during the Renter's rental, the Renter is responsible for the cost of the repairs or other damage amount outlined in the Renter fee schedule. This amount may vary. The insurance provided does not reduce or avoid the Renter's obligations with respect to the Rental Car damage which occurs during the Renter's rental.

(3) Questions or concerns about the insurance coverage included with the Lyft Rental Program should be referred to Lyft support at: http://lft.to/submit-request.

7. LIMITED LICENSE

Subject to the terms and conditions of this Agreement, upon your receipt of a notice of acceptance of this Agreement from Flexdrive, you are granted a non-exclusive, limited, non-transferable, freely revocable license to use the Services for personal use, for your activities as a Lyft Driver, as expressly permitted by this Agreement, and as permitted by the features of the Services and applicable law. Flexdrive reserves all rights not expressly granted herein. In addition, Renter acknowledges that all Rental Cars contain onboard hardware and software for tracking and monitoring Rental Cars, and that Renter is granted only a limited, personal, non-transferrable, and non-exclusive license to such hardware and software only for the purposes authorized by their use of the Services. All title and ownership interest in and to any intellectual property contained in the Services is the property of Flexdrive or its licensors, with the exception of data obtained from the onboard hardware and software, which is the sole property of Lyft. Renter acknowledges that Flexdrive may aggregate anonymized data regarding the Lyft Rental Program and the activities of Renters for purposes of analyzing the use of and improving the Flexdrive technology platform, analyzing trend data for purposes of product development and program development and otherwise using the aggregated data for internal purposes.

8. TELEMATICS

EXHIBIT A

A. GENERAL NOTICE AND RELEASE

The Rental Car may be equipped with global positioning satellite technology or another telematics system, and/or an event data recorder, which may be used in order to determine when the Rental Car can be safely deactivated through the use of the starter interrupt technology, as further described in Section 12 of this Agreement. Renter's use of the Rental Car may be remotely monitored by or on behalf of Flexdrive through such systems to the extent permitted by applicable law. This remote monitoring may include collection of Rental Car data, such as: odometer, oil life, fuel level, tire pressure, battery state of charge, and diagnostic trouble codes. Renter has no expectation of privacy related to Renter's use of the Rental Car. The Rental Car also may be equipped with devices that permit Renter to pair mobile devices that may download Renter's personal contacts, communications, location or other digital data. Renter will delete all personal information from the Rental Car's systems before returning it. By entering into this Agreement, you consent to the collection, use, monitoring and disclosure of Rental Car data, to the extent permitted by law, and agree that you will inform any and all Authorized Drivers and passengers of the terms of this section.

B. CONSENT TO COLLECTION AND DISCLOSURE OF PERSONAL INFORMATION BY NAUTO, INC. ("NAUTO")

(1) Collection of Information. The Rental Cars made available by Flexdrive as part of the Lyft Rental Program are equipped with a device manufactured by Nauto (the "Nauto Device"), that uses video camera and sensor technology to record safety events inside and outside of the Rental Car. This Renter Consent to Collection and Disclosure of Personal Information contained in Section 8 of the Agreement (the "Consent") is intended to (a) inform you of the information collected by the Nauto Device and how such information is used by Flexdrive, Lyft and third parties, such as companies that provide insurance for the Rental Cars; and (b) obtain your consent for such collection and use. This Consent is in addition to the other consents provided within and terms of the Agreement that governs your participation in the Lyft Rental Program.

The Nauto Device may record or collect personal information about you and your fellow passengers, including your video image and the video images of your passengers, your behavior and the behavior of your passengers, and your Rental Car's geographic location. We may also use the Nauto Device to apply facial recognition software on the facial images of drivers in order to create a profile, based on the driver's facial features, (for example, the distance between the eyes, nose and ears, for a particular individual)(collectively, "Biometric Information"), to connect a driver in one particular photo or video to another photo or video. The Nauto Device may also collect other information about your trip, including your Rental Car's speed, acceleration, braking, collision events, mileage, and relative proximity to other vehicles, area road signs and traffic signals, road conditions/hazards, traffic patterns/density, parking spaces, and license plate numbers of surrounding vehicles.

Additionally, Nauto may add contact information from Lyft, Flexdrive, or the owner of the Rental Car you rent to create a "Profile" of you, which includes personal information such as your name, email address, telephone number, emergency contact information, photograph, license plate, and vehicle information. Nauto may display this information as part of your Profile, and link your Profile with information collected by the Nauto Device, as described above. To learn more about the types of information the Nauto Device collects, see Nauto's privacy policy (the "Nauto Privacy Policy").

(2) Use and Sharing of Information. Flexdrive, through its service arrangements with Nauto, uses the information Nauto collects to help Flexdrive improve the quality and safety of the Lyft Rental Program. In addition to being shared with Flexdrive, Lyft and certain service providers, such as our insurers, information collected by the Nauto Device will be shared with Nauto, its service providers, and affiliates, in accordance with their terms of service and privacy policies. Under Nauto's privacy policy, your personal information will not be shared or sold to any third party for any commercial or marketing purpose, without your express written consent, though it may be shared with other Nauto clients for collision claims and liability. Your personal information also may be disclosed if Nauto has a good faith belief that disclosure is necessary to (1) protect property or security of Nauto, Nauto users, and clients or others; (2) prevent death or imminent bodily harm; or (3) respond to a legal request. Non-personal information, such as aggregated, anonymized data, may be shared or sold by Nauto for business purposes, including for product improvement, analytics, industry and market research, and other purposes consistent with Nauto's legitimate business needs.

(3) Retention of Facial Recognition Data. Nauto will retain facial recognition data about you only until the first of the following occurs: (i) Nauto does not collect new Biometric Information matching your profile for a period of six continuous months; (ii) three years have passed since your last interaction with Nauto; or (iii) when you request permanent deletion of your Biometric Information by submitting such request to privacy@nauto.com or otherwise as set forth in the Nauto Privacy Policy. At such time, Nauto will permanently destroy the Biometric Information about you. After the Biometric Information is destroyed, the user will need to re-enroll (and provide his or her Biometric Information to Nauto again) before he or she can use the Nauto Services.

(4) Acknowledgment and Consent. You confirm that you have read and understand the information in this Section 8(B) regarding the processing of information by the Nauto Device to ensure the safety of drivers and to improve the quality of Flexdrive and the Lyft Rental Program's operations. You consent to Flexdrive providing third party service providers (including Nauto) with your personal information in order to help Flexdrive to operate the Nauto Device in accordance with this form.

9. FEES

To the extent permitted by law, Renter will be responsible for the payment of any and all rental fees, taxes, damage fees, claims, penalties, fines, deductibles related to Rental Car damage (if permitted by applicable law), tolls (as described in greater detail below), other miscellaneous fees, or other amounts set forth in this Rental Agreement. Such payments will be collected from Renter by Lyft, and Lyft will forward such payments to Flexdrive. Flexdrive may coordinate with Lyft to deduct any such amounts Renter owes in connection with the rental of a Rental Car from the amounts Renter may earn while providing transportation services on the Lyft platform. In addition, Lyft may require Renter to provide a credit or other payment card (subject to applicable terms and conditions) in order to reserve or rent a Rental Car, that an authorization or hold amount may be placed on the card provided, and that Lyft may charge the amount owed to the payment card Renter provides at any time upon notice to Renter. Flexdrive has designated Lyft as its agent solely for the purpose of collecting these amounts on Flexdrive's behalf. For this purpose, Renter authorizes Lyft to offset these amounts from other amounts Lyft owes Renter, and if such offset does not fully pay such amounts, to charge the remaining unpaid amount to the payment method Renter has authorized for Lyft's use in connection with the Lyft platform, to the extent permitted by applicable law and upon notice to Renter. Certain amounts may be charged at or after the end of the Rental Period, such as fees for vehicle damage as may be identified during final inspection, or for unpaid tickets or tolls and associated administrative fees that are identified after the Rental Period, or otherwise, as provided in the Agreement. Renter must keep a valid payment method on file with Lyft to pay the above amounts. Notwithstanding the foregoing, if Renter fails to pay to Lyft any such fees or other amounts due and payable in accordance with this Agreement, Flexdrive is entitled to seek to collect such amounts directly from Renter, and Renter hereby agrees that Lyft is entitled to provide to Flexdrive (a) a copy of the Rental Agreement; (b) any executed Payment Plan Agreement; (c) Renter contact information; (d) any correspondence between Renter and Lyft or its agents that relates to the collection of such amounts; and (e) Renter's payment information.

10. TERM

This Agreement shall be effective from the Effective Date, as noted to you in Flexdrive's acceptance of your application, and shall remain in effect for one year, subject to automatic one year renewals, unless earlier terminated by either party as set forth below. During the term of the Agreement, each Renter will have the ability to rent Rental Cars for those periods set forth in Renter's registration process.

11. SUSPENSION OR TERMINATION

Flexdrive may immediately suspend or terminate the use of its Service by any Renter for any reason, including for a violation of this Agreement. Termination of this Agreement will additionally terminate any Renter reservation then placed or in effect, and you will promptly follow Lyft's instructions regarding the return of any Rental Car then in your possession. If your use of Services or any rental of a Rental Car is suspended by Flexdrive, we may, in our sole discretion, reinstate your eligibility for participation in the Lyft Rental Program following your cure of any such violation. Subject to each Rental being for a minimum of seven (7) days, Renter may schedule a return and/or terminate this

Agreement at any time. After the initial seven (7) day rental, the Renter can return the Rental Car to the location from which the Renter rented it at any time during normal business hours and receive a pro-rated charge. Any voluntary termination of this Agreement or reduction in Rental Period by a Renter shall not result in reimbursement of any rental fees for any outstanding reservation or rental of a Rental Car.

EXHIBIT A

12. REPOSSESSION AND RECOVERY OF RENTAL CARS; USE OF STARTER INTERRUPT TECHNOLOGY

To the extent permitted by applicable law, Flexdrive reserves the right to recover or repossess or to assist in the recovery and repossession of the Rental Cars, at any time, without notice, and at Renter's expense if Renter violates this Agreement (including, but not limited to, by failing to pay all fees or other amounts due and payable in accordance with this Agreement or by failing to return the Rental Car at the end of the Rental Period) or upon termination of this Agreement. To the extent permitted by and in accordance with applicable law, Flexdrive may assist in the recovery or repossession of a Rental Car or may recover or repossess a Rental Car by remotely deactivating such Rental Car through the use of starter interrupt technology that is part of or attached to the Rental Car. Renter agrees to pay all costs, including, but not limited to, reasonable legal fees or attorneys' fees, if any, associated with the repossession or recovery of any Rental Car pursuant to this Section 12. Renter hereby agrees to waive all claims for damages connected with the repossession or recovery of any Rental Car pursuant to this Section 12 and use of starter interrupt technology.

13. INDEMNIFICATION

To the extent permitted by applicable law, Renter agrees to defend, indemnify and hold harmless Flexdrive and Lyft, and each of their respective subsidiaries, agents, licensors, managers, and other affiliated companies, and their employees, contractors, agents, officers and directors, from and against any and all claims, damages, obligations, losses, liabilities, costs or debt, and expenses (including but not limited to attorney's fees) arising from: (i) Renter's violation of any term of this Agreement, including without limitation your breach of any of the representations and warranties above; (ii) Renter's violation of any third-party right, including without limitation any right of privacy or intellectual property rights; (iii) Renter's violation of any applicable law, rule or regulation; and (iv) any claims or damages that arise as a result of Renter's use of a Rental Car which are not covered by insurance provided for Renter by Flexdrive or is subject to fee schedule provided by Flexdrive.

14. NO WARRANTY

The Services are provided on an "as is" and "as available" basis. Rental and use of the Rental Car is at your own risk. To the maximum extent permitted by applicable law, Rental Cars are provided without warranties of any kind, whether express or implied, including, but not limited to, implied warranties of merchantability, fitness for a particular purpose, or non- infringement. No advice or information, whether oral or written, obtained by you from Flexdrive or through the Services will create any warranty not expressly stated herein, including with respect to driver or passenger safety. Without limiting the foregoing, Flexdrive, its subsidiaries, and its licensors do not warrant that the Services will meet your requirements; that the Services will be available at any particular time or location; that any defects or errors will be corrected; or that the Services are free of viruses or other harmful components. Any content downloaded or otherwise obtained through the use of the Services is downloaded at your own risk, and you will be solely responsible for any damage to your computer system or mobile device or loss of data that results from such download or your use of the Service.

15. LIMITATION OF LIABILITY

A. To the maximum extent permitted by applicable law, in no event shall Flexdrive, its affiliates, agents, directors, employees, contractors or licensors be liable for any direct, indirect, punitive, incidental, special, consequential or exemplary damages, including without limitation damages for loss of profits, goodwill, use, data or other intangible losses, that result from the use of, or inability to use, the Services. Under no circumstances will Flexdrive be responsible for any damage, loss or injury resulting from hacking, tampering or other unauthorized access or use of the Services or your account or the information contained therein. In no event shall Flexdrive, its affiliates, agents, directors, employees, contractors, or licensors be liable to you for any claims, proceedings, liabilities, obligations, damages, losses or costs in an amount exceeding $1,000.00.

B. This limitation of liability section applies whether the alleged liability is based on contract, tort, negligence, strict liability, or any other basis, even if Flexdrive has been advised of the possibility of such damage. The foregoing limitation of liability shall apply to the fullest extent permitted by law in the applicable jurisdiction. Some states do not allow the exclusion of implied warranties or the exclusion or limitation of incidental or consequential damages, so the above limitations or exclusions may not apply to you. This Agreement gives you specific legal rights, and you may also have other rights, which vary from state to state. The disclaimers, exclusions, and limitations of liability under this Agreement will not apply to the extent prohibited by applicable law.

EXHIBIT A

16. NOTICES

Flexdrive and Lyft may provide any notices required to you hereunder at the email address (or, if you opt out of such delivery method, at the home address) indicated in your reservation request, and you shall update any such information promptly to the extent such information changes; provided that Flexdrive and Lyft shall have no liability for your failure to provide such updates and any notices delivered by Flexdrive to the address on file in our records shall be deemed effective when given. You may give notice to Flexdrive by sending any such notice to Flexdrive Services, LLC, Attn: Legal Department, 2002 Summit Blvd., Suite 750, Atlanta, GA 30319.

17. DISPUTES AND GOVERNING LAW

This Agreement shall be governed by the laws of the State of Georgia in the United States without regard to any conflict of law principles. This Agreement is a contract for services and not for the sale of goods. The UN Convention on the International Sale of Goods is excluded. No claim or action arising out of the transactions under this Agreement may be brought by you against Flexdrive more than one year after the cause of action has accrued. You, Flexdrive and Lyft specifically agree to waive the right to trial by jury.

18. GENERAL

This Agreement constitutes the entire agreement between the parties in connection with the subject matter hereof and supersedes all agreements, proposals, representations and other understandings, oral or written, of the parties. No alteration or modification of this Agreement shall be valid unless made in writing and signed by each party. The waiver by either party of a breach of any provision of this Agreement shall not operate or be construed as a waiver of any subsequent breach and any waiver must be in writing and signed by the affected party hereto. If any provision of this Agreement is held to be invalid or unenforceable, the remaining provisions shall continue in full force and effect. Any terms of this Agreement which by their nature extend beyond its termination remain in effect until fulfilled and apply to respective successors and rightful assignees.

19. ELECTRONIC DOCUMENT AND SIGNATURE

For contractual purposes, you: (a) consent to receive communications from Flexdrive in electronic form, and (b) agree that all terms and conditions, agreements, notices, disclosures and any other communications that Flexdrive provides to you electronically satisfy any legal requirement that such communications would satisfy if they were in a print-on-paper writing. By clicking "Accept", you are signing this Agreement electronically, and such selection (your “E-Signature”) constitutes your legal signature, acceptance and agreement to the terms of the Flexdrive "Lyft Driver Rental Program" Agreement, as if this Agreement were actually signed by such Party in “print-on-paper” or “wet ink” writing. You also agree that no certification, authority, or other third party verification is necessary to validate your E-Signature and that the lack of such certification or third party verification will not in any way affect the enforceability of your E-Signature or any resulting contract between you and Flexdrive.

20. LOCATION SPECIFIC DISCLOSURES

Renter further acknowledges that Renter has received, read, understands and agrees to the following state-specific disclosures, notices, and terms and conditions if a Rental Car is rented in one of the jurisdictions listed below. Renter is advised to review the applicable paragraphs before renting or operating a Rental Car in the location(s) set forth below. These disclosures, notices, and terms and conditions may modify or replace, as applicable, Renter’s obligations set forth above. In the event of a direct conflict between any of the terms set forth above and this Location Specific Disclosures Section,

EXHIBIT A

the terms contained in this Location Specific Disclosures Section will govern.

California.

Personal Information; Communications. Renter agrees that Flexdrive may disclose personally identifiable information about Renter and the Rental Car to applicable law enforcement agencies or to Flexdrive's affiliates or third parties in connection with our enforcement of Flexdrive's rights under this Agreement and for other legitimate business purposes. Pursuant to Section 1939.22 of the Cal. Civ. Code, Renter agrees that Flexdrive or an assignee may contact Renter by calling or sending text messages or emails to any email address or telephone number Renter provides to Lyft or Flexdrive, including wireless telephone numbers, which could result in additional charges to Renter. Renter represents that Renter is either the owner or primary user of the number(s) and email address renter provided. Methods of contact may include pre-recorded/artificial voice messages and/or use of an automatic dialing device. Renter may revoke Renter's consent at any time by contacting Flexdrive in writing at the address set forth in the Corporate Identity section of the Agreement.

Failure to Return Vehicle. If the Rental Car is not returned within seventy-two (72) hours following the Return Date or extension of the Return Date, as permitted by this Agreement, Flexdrive may activate electronic surveillance technology, such as GPS vehicle tracking technology, to locate the Rental Car. Flexdrive will provide Renter with notice of activation of the electronic surveillance technology twenty-four (24) hours prior to such activation by telephone and electronically unless Renter has not provided a telephone number to Flexdrive or has not agreed to electronic communication pursuant to Section 1932.22 of the Cal. Civ. Code.

Renter acknowledges that electronic surveillance technology may be activated if the Rental Car is not returned within seventy-two (72) hours following the Return Date or extension of the Return Date, as permitted by this Agreement, in order to locate the Rental Car and in order to determine when the Rental Car can be safely deactivated through the use of the starter interrupt technology, as further described in Section 12 of this Agreement.

Responsibility for Damage or Loss. Renter is responsible for all damage to, or loss of, the Rental Car in connection with this rental caused by collision, regardless of the cause of such damage. Renter responsibility may include, to the extent permissible by law: (a) all physical and mechanical damage to the Rental Car measured as follows: (i) if Flexdrive determines that the Rental Car is a total loss, the total loss vehicle value of the Rental Car calculated in accordance with California Civil Code Section 1939.07, as amended from time to time, less salvage; (ii) if Flexdrive determines that the Rental Car is repairable: the actual cost of repair that Flexdrive incurs to repair the Rental Car or that Flexdrive would incur if Flexdrive chose to repair the Rental Car, all as calculated pursuant to California Civil Code Sections 1939.03, 1939.05, and 1939.07, as applicable, and as may be amended from time to time; (b) an administrative fee calculated pursuant to California Civil Code Sections 1939.03 and 1939.05, as amended from time to time; (c) Flexdrive's actual charges for towing, storage, and impound; and (d) all costs associated with Flexdrive's enforcement of this Agreement or collection of Fees, including attorneys' fees, collection fees, and costs whether or not litigation is commenced. Renter is responsible for: (i) loss due to theft of the Rental Car and any damage caused by vandalism that occurs in connection with a theft if Renter fails to exercise ordinary care while in possession of the Rental Car, (ii) damage due to vandalism not associated with theft of the Rental Car up to a maximum of $500, and (iii) replacing missing Rental Car documents and keys.

Illinois.

Responsibility for Damage or Loss to the Vehicle. Renter is responsible for all physical and mechanical damage to or loss of the Rental Car, regardless of the cause of such damage or loss and whether or not Renter is at fault, up to the maximum amounts specified by law pursuant to 625 ILCS 5/6-305.2, as amended from time to time. Renter's responsibility may include: (a) if the Rental Car has a manufacturer's suggested retail price ("MSRP") of $50,000.00 or less: (1) in the case of damage or loss, except for theft, the lesser of: (A) the actual and reasonable costs that Flexdrive incurred to repair the Rental Car or that Flexdrive would have incurred if the Rental Car had been repaired; or (B) the fair market value of the Rental Car immediately before the damage occurred, as determined in the customary market for the retail sale of the Rental Car; and (2) actual and reasonable costs incurred by loss due to theft of the Rental Car up to $2,000.00; provided, however, that if it is established that Renter failed to exercise ordinary care while in possession of the Rental Car or that Renter committed

or aided and abetted the commission of the theft, then the damages shall be the actual and reasonable costs of the Rental Car up to its fair market value, as determined by the customary market for the sale of that vehicle; (b) if the Rental Car has an MSRP of more than $50,000.00: (1) in the case of damage or loss, except for theft, the lesser of: (A) the actual and reasonable costs that Flexdrive incurred to repair the Rental Car or that Flexdrive would have incurred if the Rental Car had been repaired; or (B) the fair market value of the Rental Car immediately before the damage occurred, as determined in the customary market for the retail sale of the Rental Car; and (2) the actual and reasonable costs incurred by loss due to theft of the Rental Car up to $40,000. For purposes of section (a) of this paragraph, for the period beginning June 1, 2018, the maximum recovery shall not exceed $18,500.00. Beginning June 1, 2019 and annually each June 1 thereafter, the maximum amount that may be recovered from Renter will be increased by $500.00 above the maximum recovery allowed immediately prior to June 1 of that year. For purposes of section (b) of this paragraph, on October 1, 2018, the maximum amount that may be recovered from Renter shall be $47,500, on October 1, 2019, the maximum amount shall be increased to $50,000, and on October 1, 2020 and on each October 1 thereafter, the maximum amount that may be recovered from Renter shall be increased by $1,000.00 above the prior year's maximum recovery. Allowing anyone other than Renter to use the Rental Car is not an exercise of ordinary care, but a willful and reckless act that is a breach of this Agreement.

EXHIBIT A

New York.

Responsibility for Damage or Loss to the Vehicle. Renter is responsible for: (a) all physical damage to the Rental Car that occurs during the time the Rental Car is under this Agreement that is unrelated to normal wear and tear (as defined in New York General Business Law Section 396-z, as amended from time to time); and (b) all mechanical damage to the Rental Car that is unrelated to normal wear and tear (as defined in New York General Business Law Section 396-z) or that could reasonably be expected from normal use of the Rental Car that occurs during the time the Rental Car is under this Agreement, in all cases up to the amounts permissible by law. Renter's responsibility for such damage or loss will include: (x) the lesser of (both as calculated in accordance with New York General Business Law Section 396-z, as amended from time to time): (i) the actual and reasonable costs that Flexdrive incurs to repair the Rental Car or that Flexdrive would incur if we chose to repair the Rental Car, and (ii) the fair market value of the Rental Car immediately before the damage occurred, as determined in the applicable market for the retail sale of the Rental Car, less any net disposal proceeds; and (y) Flexdrive's actual charges for towing, storage, and impound. Renter is responsible for loss due to theft of the Rental Car up to its fair market value, as determined by the applicable market for the retail sale of the Rental Car, if Renter fails to exercise ordinary care while in possession of the Rental Car or if Renter commits, aids or abets such theft. Allowing anyone other than Renter to use the Rental Car is not an exercise of ordinary care, but a willful and reckless act that is a breach of this Agreement.

Use of the starter interrupt technology. Prior to remotely deactivating a Rental Car through the use of starter interrupt technology, as further described in Section 12 of this Agreement, Flexdrive will send you a notice by registered or certified mail to your address on record with Flexdrive, giving notice that Flexdrive may activate the starter interrupt technology in ten (10) days in accordance with Section 12 of this Agreement.

## Signature



**EXHIBIT A**

EXHIBIT C

Gmail Tread Carefully <dcaustin71@gmail.com>

## [Request received] Follow-up from Lyft

**Lyft** <support@lyft-new.zendesk.com> Fri, May 29, 2020 at 10:26 AM
Reply-To: Lyft <support+id168179095@lyft-new.zendesk.com>
To: Turner Crockett <dcaustin71@gmail.com>

##- Please type your reply above this line -##

Your request (168179095) has been received and is being reviewed by our support staff.

To add additional comments, reply to this email.

**Vanessa** (Lyft)
May 29, 2020, 8:25:58 AM PDT

Hi this is Vanessa from Express Drive. Our records indicate your vehicle is past due for its preventative maintenance. Per your signed rental agreement, this is required to remain eligible to rent with us. Please schedule and complete the necessary maintenance with one of our partners and complete in the next 48 hours to remain eligible to rent with Lyft. Please send your completed receipt to txinspections@lyft.com for confirmation. You can use this link to find an approved maintenance provider https://lft.to/locations

Vanessa
Lyft Support
help.lyft.com

This email is a service from Lyft. Delivered by Zendesk | Privacy Policy

**EXHIBIT D**

Gmail Tread Carefully <dcaustin71@gmail.com>

## [Lyft] Re: Follow-up from Lyft

**Lyft** <support@lyft-new.zendesk.com> Thu, Jul 9, 2020 at 3:34 PM
Reply-To: Lyft <support+id169427307@lyft-new.zendesk.com>
To: Turner Crockett <dcaustin71@gmail.com>

Your request (169427307) has been updated. To add additional comments, reply to this email.

**Daniela** (Lyft)

Hello Turner,

Lyft routinely conducts background checks to evaluate continued eligibility to drive on the Lyft platform. You will be unable to drive while the background check is processing.

Most background checks take a few days to process, but keep in mind that it can take a few weeks, depending on a number of factors.

To see the status of your background check, or to ensure no additional steps are required, go to https://candidate.checkr.com.

We appreciate your patience during this process.

Best,

Daniela
Lyft Support
help.lyft.com

Zendesk Privacy Policy

**DOLLAR RENT A CAR**
Phone: 800-800-5252
Web: www.dollar.com

| | |
|---|---|
| **Rental Agreement No:** | 547787833 |
| **Date:** | 07/14/2020 |
| **Document:** | 950003023901 |

**Direct All Inquiries To:**
DOLLAR RENT A CAR
PO BOX 35250
TULSA, OK 74153-1167

TAX Id: 73-1389882

**CHARGE DETAIL**

**Renter:** DEMETRIUS CROCKETT
**Account No.:** ************6966 VIS

# EXHIBIT E

**DEMETRIUS CROCKETT**
**2121 LOHMANS CROSSING RD 211**
**AUSTIN, TX 78734**

## RENTAL REFERENCE

**Rental Agreement No:** 547787833
**Reservation ID:** J4524607789
**Special Bill Info:** GEICO

## RENTAL DETAILS

**Rate Plan:** IN: RCW55 OUT: RCUE3
**Rented On:** 07/09/2020 13:08 LOC# 090525 AUSTIN, TX
**Returned On:** 07/14/2020 06:38 LOC# 090525 AUSTIN, TX
**Car Description:** SIR SPARKFW1.4N ABZA58
**Veh. No.:** 8855603
**CAR CLASS Charged:** A **Rented:** A **Reserved:** A
**MILEAGE In:** 6,721 **Out:** 6,048 **Driven:** 673

## MISCELLANEOUS INFORMATION

| | | |
|---|---|---|
| CC AUTH: 821476 | DATE: 2020/07/09 | AMT: 273.00 |
| CC AUTH: 863242 | DATE: 2020/07/14 | AMT: 104.00 |
| CC AUTH: 878330 | DATE: 2020/07/12 | AMT: 144.00 |

## RENTAL CHARGES

| | | | |
|---|---|---|---|
| WEEKS | 1 @ | 371.80 | 371.80 |
| SUBTOTAL | | | 371.80 |
| CONCESSION FEE RECOVERY | | | 45.00 |
| VEHICLE LICENSE FEE | | | 9.70 |
| CUSTOMER FACILITY CHARGE | | | 29.75 |
| LATE RETURN FEE | | | 12.00 |
| RETURN CHANGE FEE | | | 10.00 |
| ENERGY SURCHARGE | | | 1.49 |
| TAX | | 15.00% | 71.96 |
| TOTAL CHARGES | | | 551.70 USD |

**E-RETURN RECEIPT**

**THANK YOU FOR RENTING FROM DOLLAR**

**ALL CHARGES HAVE BEEN BILLED TO YOUR ACCOUNT.**

| | |
|---|---|
| **Rental Agreement No:** | 547787833 |
| **Date:** | 07/14/2020 |
| **Document:** | 950003023901 |

**Direct All Inquiries To:**
DOLLAR RENT A CAR
PO BOX 35250
TULSA, OK 74153-1167
UNITED STATES

**Renter:** DEMETRIUS CROCKETT
**Account No.:** ************6966 VIS

**Phone:** 800-800-5252
**Web:** www.dollar.com

**TOTAL CHARGES** **551.70 USD**

GDOL02P 0095 GC

**DOLLAR RENT A CAR**
Phone: 800-800-5252
Web: www.dollar.com

dollar. CAR RENTAL

| | |
|---|---|
| **Rental Agreement No:** | 549004186 |
| **Date:** | 08/20/2020 |
| **Document:** | 950003120205 |

**Direct All Inquiries To:**
DOLLAR RENT A CAR
PO BOX 35250
TULSA, OK 74153-1167

TAX Id: 73-1389882

**CHARGE DETAIL**

**Renter:** DEMETRIUS CROCKETT
**Account No.:** ************6966 VIS

EXHIBIT E

**DEMETRIUS CROCKETT**
**2121 LOHAMANS**
**AUSTIN, TX 78734**

## RENTAL REFERENCE

**Rental Agreement No:** 549004186
**Reservation ID:** J45831184A6

## RENTAL DETAILS

**Rate Plan:** IN: RCUW5 OUT: RCUW5
**Rented On:** 07/15/2020 12:51 LOC# 090525
AUSTIN, TX
**Returned On:** 07/28/2020 12:00 LOC# 090525
AUSTIN, TX
**Car Description:** COROLLA DFMM09
**Veh. No.:** 2007706
**CAR CLASS Charged:** B **MILEAGE In:** 9,200
**Rented:** C **Out:** 9,162
**Reserved:** B **Driven:** 38

## MISCELLANEOUS INFORMATION

| | | | | | | |
|---|---|---|---|---|---|---|
| CC AUTH: | 784061 | DATE: | 2020/07/15 | AMT: | 363.00 |
| CC AUTH: | 818502 | DATE: | 2020/08/17 | AMT: | 2218.00 |

## RENTAL CHARGES

| | | | |
|---|---|---|---|
| WEEKS | 1 @ | 263.12 | 263.12 |
| EXTRA DAYS | 6 @ | 36.99 | 221.94 |
| SUBTOTAL | | | 485.06 |
| CONCESSION FEE RECOVERY | | | 63.30 |
| VEHICLE LICENSE FEE | | | 25.22 |
| CUSTOMER FACILITY CHARGE | | | 77.35 |
| RETURN CHANGE FEE | | | 10.00 |
| LATE RETURN FEE | | | 48.00 |
| ENERGY SURCHARGE | | | 1.49 |
| TAX | | 15.00% | 106.56 |
| TOTAL CHARGES | | | 816.98 USD |

**E-RETURN RECEIPT**

**THANK YOU FOR RENTING FROM DOLLAR**

**ALL CHARGES HAVE BEEN BILLED TO YOUR ACCOUNT.**


| | |
|---|---|
| **Rental Agreement No:** | 549004186 |
| **Date:** | 08/20/2020 |
| **Document:** | 950003120205 |

**Direct All Inquiries To:**
DOLLAR RENT A CAR
PO BOX 35250
TULSA, OK 74153-1167
UNITED STATES

**Renter:** DEMETRIUS CROCKETT
**Account No.:** ************6966 VIS

**Phone:** 800-800-5252
**Web:** www.dollar.com


**TOTAL CHARGES** **816.98 USD**

GDOL02P 0095 GC

**DOLLAR RENT A CAR**
Phone: 800-800-5252
Web: www.dollar.com

dollar. CAR RENTAL

| | |
|---|---|
| **Rental Agreement No:** | 578003753 |
| **Date:** | 09/25/2020 |
| **Document:** | 950003252947 |

**Direct All Inquiries To:**
DOLLAR RENT A CAR
PO BOX 35250
TULSA, OK 74153-1167

TAX Id: 73-1389882

**CHARGE DETAIL**

**Renter:** DEME CROCKETT
**Account No.:** ************6966 VIS

**EXHIBIT E**

**DEME CROCKETT**
**2121 LOHMANS COURT**
**AUSTIN, TX 78734**

## RENTAL REFERENCE

**Rental Agreement No:** 578003753
**Reservation ID:** J5012601461
**I.T. No.:** 1006244
**Voucher:** 0000001080

## RENTAL DETAILS

**Rate Plan:** IN: ZAPW5 OUT: ZAPW5
**Rented On:** 08/27/2020 16:45 LOC# 090525 AUSTIN, TX
**Returned On:** 09/24/2020 23:16 LOC# 090525 AUSTIN, TX
**Car Description:** SIRMALIBU 1.5 N FP59479
**Veh. No.:** 8627861
**CAR CLASS Charged:** A **MILEAGE In:** 49,227
**Rented:** F **Out:** 46,495
**Reserved:** A **Driven:** 2,732

## MISCELLANEOUS INFORMATION

CC AUTH: 850496 DATE: 2020/08/27 AMT: 311.00

## RENTAL CHARGES

| | | | |
|---|---|---|---|
| WEEKS | 4 @ | 157.58 | 630.32 |
| EXTRA DAYS | 1 @ | 21.99 | 21.99 |
| SUBTOTAL | | | 652.31 |
| CONCESSION FEE RECOVERY | | | 86.67 |
| VEHICLE LICENSE FEE | | | 56.26 |
| CUSTOMER FACILITY CHARGE | | | 172.55 |
| LATE RETURN FEE | | | 60.00 |
| RETURN CHANGE FEE | | | 10.00 |
| ENERGY SURCHARGE | | | 1.49 |
| VOUCHER VALUE | | | -157.58 |
| TAX | | 15.00% | 155.89 |

TOTAL CHARGES 1037.59 USD

**E-RETURN RECEIPT**

**THANK YOU FOR RENTING FROM DOLLAR**

**ALL CHARGES HAVE BEEN BILLED TO YOUR ACCOUNT.**


| | |
|---|---|
| **Rental Agreement No:** | 578003753 |
| **Date:** | 09/25/2020 |
| **Document:** | 950003252947 |

**Direct All Inquiries To:**
DOLLAR RENT A CAR
PO BOX 35250
TULSA, OK 74153-1167

UNITED STATES


**Renter:** DEME CROCKETT
**Account No.:** ************6966 VIS

**Phone:** 800-800-5252
**Web:** www.dollar.com


**TOTAL CHARGES** **1037.59 USD**

GDOL02P 0095 GC

**DOLLAR RENT A CAR**
Phone: 800-800-5252
Web: www.dollar.com

dollar. CAR RENTAL

**Rental Agreement No:** 597999861
**Date:** 12/24/2020
**Document:** 950003768433

**Direct All Inquiries To:**
DOLLAR RENT A CAR
PO BOX 35250
TULSA, OK 74153-1167

TAX Id: 73-1389882

**CHARGE DETAIL**

**Renter:** DEMETRIUS CROCKETT
**Account No.:** ************3828 VIS

**EXHIBIT E**

**DEMETRIUS CROCKETT**
**3310 W BRAKER LN**
**AUSTIN, TX 78758**

**RENTAL REFERENCE**

**Rental Agreement No:** 597999861
**Reservation ID:** J5833752244
**I.T. No.:** 1006244
**Voucher:** 0000393585

**MISCELLANEOUS INFORMATION**

CC AUTH: 509214 DATE: 2020/11/18 AMT: 220.00

**RENTAL DETAILS**

**Rate Plan:** IN: CNVM OUT: ZAPE3
**Rented On:** 11/18/2020 09:22 LOC# 090525
AUSTIN, TX
**Returned On:** 12/24/2020 08:00 LOC# 090525
AUSTIN, TX
**Car Description:** SIR SPARKFW1.4N FP117160
**Veh. No.:** 6514608
**CAR CLASS Charged:** A **MILEAGE** **In:** 17,252
**Rented:** A **Out:** 13,022
**Reserved:** A **Driven:** 4,230

**RENTAL CHARGES**

| | | | |
|---|---|---|---|
| MONTHS | 1 @ | 745.80 | 745.80 |
| EXTRA DAYS | 5 @ | 24.86 | 124.30 |
| SUBTOTAL | | | 870.10 |
| CONCESSION FEE RECOVERY | | | 112.37 |
| VEHICLE LICENSE FEE | | | 69.84 |
| CUSTOMER FACILITY CHARGE | | | 214.20 |
| LATE RETURN FEE | | | 60.00 |
| RETURN CHANGE FEE | | | 10.00 |
| ENERGY SURCHARGE | | | 1.49 |
| VOUCHER VALUE | | | -29.93 |
| TAX | | 6.25% | 83.62 |

TOTAL CHARGES 1391.69 USD

**E-RETURN RECEIPT**

**THANK YOU FOR RENTING FROM DOLLAR**

**ALL CHARGES HAVE BEEN BILLED TO YOUR ACCOUNT.**

**Rental Agreement No:** 597999861
**Date:** 12/24/2020
**Document:** 950003768433

**Direct All Inquiries To:**
DOLLAR RENT A CAR
PO BOX 35250
TULSA, OK 74153-1167
UNITED STATES

**Renter:** DEMETRIUS CROCKETT
**Account No.:** ************3828 VIS

**Phone:** 800-800-5252
**Web:** www.dollar.com

**TOTAL CHARGES** **1391.69 USD**

GDOL02P 0095 GC

**EXHIBIT F**

Gmail Tread Carefully <dcaustin71@gmail.com>

## Re: Lyft Help - Request Received

1 message

**Tread Carefully** <dcaustin71@gmail.com> Fri, Jul 31, 2020 at 12:41 PM
To: Lyft <support+id170104950@lyft-new.zendesk.com>

...here at the Austin Texas Hub to pick up my Flexdrive Rental and I'm being told to contact you regarding a chargeback flag on my Flexdrive account. Please advise on the date, amount and account used pertaining to this flag because it appears to be a mistake. The card that Lyft has on file and that was my default services charge account (per historicals) ends in 5782.

On Fri, Jul 31, 2020 at 11:06 AM Lyft <support@lyft-new.zendesk.com> wrote:

> This is an automatic confirmation to let you know we received your request for help from the Lyft app.
>
> A customer support associate will investigate and reach out to you soon.
>
> Thanks for your patience,
>
> Lyft
>
> Zendesk Privacy Policy
>
> [XZG9OE-WL8W]

--

This email is confidential. It is not permitted or approved, by the email's owner/originator, to be shared outside of the parties copied by the email's originator without the explicit consent and approval of the email's originator.

EXHIBIT G

Gmail

Tread Carefully <dcaustin71@gmail.com>

## Re: [Lyft] Re: Follow-up from Lyft

**Tread Carefully** <dcaustin71@gmail.com> Sun, Aug 2, 2020 at 11:40 AM
To: Lyft <support+id170104950@lyft-new.zendesk.com>

Thank you for letting me know. My app still says I have a chargeback and I'm unable to schedule an appointment to pick up my Flexdrive rental in my app.

What is the status of the investigation?

On Sat, Aug 1, 2020 at 6:31 PM Lyft <support@lyft-new.zendesk.com> wrote:

> Your request (170104950) has been updated. To add additional comments, reply to this email.
>
> **Jeremiah** (Lyft)
>
> Hi Turner,
>
> There is a team investigating this for you.
>
> All the best,
>
> Jeremiah
> Lyft Support
> help.lyft.com
>
> Zendesk Privacy Policy
>
> [XZG9OE-WL8W]

--

This email is confidential. It is not permitted or approved, by the email's owner/originator, to be shared outside of the parties copied by the email's originator without the explicit consent and approval of the email's originator.

**EXHIBIT H**

Gmail Tread Carefully <dcaustin71@gmail.com>

## Re: [Lyft] Re: Follow-up from Lyft

1 message

**Tread Carefully** <dcaustin71@gmail.com> Wed, Oct 28, 2020 at 4:17 PM
To: Lyft <support+id170104950@lyft-new.zendesk.com>
Cc: Tread Carefully <dcaustin71@gmail.com>

Since I do not own a vehicle and utilized Lyft's Flex Drive program for Lyft independent contractor work, this internal Lyft system glitch completely crippled my ability to earn income to pay bills and take care of my family thus resulting in severe financial hardship.

Given Lyft HQs acknowledgment of an internal system glitch that took place **4 months ago,** as of right now, October 28th, 2020, am I now able to make an appointment to pick up a Flex Drive rental today October 28th, 2020 or tomorrow October 29th, 2020?

Also I should not have to pay a deposit to rent a vehicle given the circumstances of what has transpired.

Your prompt attention and ownership to address my questions regarding my ability to rent a Flexdrive vehicle immediately is greatly appreciated.

On Sun, Oct 25, 2020 at 1:19 PM Lyft <support@lyft-new.zendesk.com> wrote:

> Your request (170104950) has been updated. To add additional comments, reply to this email.
>
> **Seth** (Lyft)
>
> Hi Turner,
>
> I apologize for the delay between messages. As mentioned in the last update from my colleague, Rhys, we're currently looking into this issue. Since we're not sure why this is happening from my team side of things, we're working with our engineering team to try and identify what is happening internally so we can get this resolved for you as quickly as possible.
>
> When we have any updated information, we'll reach out to you to keep you up to date.

**EXHIBIT H**

Seth
Lyft Support
help.lyft.com

Zendesk

[XZG9OE-WL8W]

--
This email is confidential. It is not permitted or approved, by the email's owner/originator, to be shared outside of the parties copied by the email's originator without the explicit consent and approval of the email's originator.

EXHIBIT I

Gmail Tread Carefully <dcaustin71@gmail.com>

# Re: [Lyft] Re: Follow-up from Lyft

**Tread Carefully** <dcaustin71@gmail.com> Mon, Dec 21, 2020 at 4:42 PM
To: Lyft <support+id170104950@lyft-new.zendesk.com>

What is the status of this investigation from July 2020?

This matter has caused, and continues to cause me a substantial loss of income and I continue to experience financial hardship as a result.

Am I now able to make an appointment to pick up my rental at the Austin Lyft hub?

On Sun, Oct 25, 2020 at 1:19 PM Lyft <support@lyft-new.zendesk.com> wrote:

> ##- Please type your reply above this line -##
>
> Your request (170104950) has been updated. To add additional comments, reply to this email.
>
> **Seth** (Lyft)
> Oct 25, 2020, 11:19 AM PDT
>
> Hi Turner,
>
> I apologize for the delay between messages. As mentioned in the last update from my colleague, Rhys, we're currently looking into this issue. Since we're not sure why this is happening from my team side of things, we're working with our engineering team to try and identify what is happening internally so we can get this resolved for you as quickly as possible.
>
> When we have any updated information, we'll reach out to you to keep you up to date.
>
> Seth
> Lyft Support
> help.lyft.com

Not required to mail or fax this copy to [redacted]

# MOTOR VEHICLE RETAIL INSTALLMENT SALES CONTRACT

ACCOUNT # [redacted]

LOT # GGL

| Buyer Name and Address | Co-Buyer Name and Address | Creditor-Seller Name and Address |
|---|---|---|
| DEMETRIUS T CROCKETT<br>2121 LOHMANS CROSSING RD<br>AUSTIN, TX 78734 | N/A | DRIVE 512 AUTORANCH LLC<br>6219 S CONGRESS AVE<br>AUSTIN, TX 78745 |

**EXHIBIT J**

The Buyer and any Co-Buyer is referred to as "I", "my" or "me." The Seller is referred to as "you" or "your." This contract may be transferred by the Seller.

**PROMISE TO PAY**

The credit price is shown below as the "Total Sales Price." The "Cash Price" is also shown in Line 1 on Page 2. By signing this contract, I choose to purchase the motor vehicle on credit according to the terms of this contract. I agree to pay you the Amount Financed, Finance Charge, and any other charges in this contract. I agree to make payments according to the Payment Schedule in this contract. If more than one person signs as a buyer, I agree to keep all the promises in this agreement even if the others do not.

I have thoroughly inspected, accepted, and approved the motor vehicle in all respects.

| Year | Make | Model | Vehicle Identification Number | | USE FOR WHICH PURCHASED |
|---|---|---|---|---|---|
| 2017 | Mitsubishi | Mirage | [redacted] | ☐ New<br>☐ Demonstrator<br>☐ Factory<br>☐ Official/Executive<br>☒ Used | ☒ PERSONAL, FAMILY OR HOUSEHOLD<br>☐ BUSINESS OR COMMERCIAL<br>☐ AGRICULTURAL |

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Trade-in: Year | N/A | Make | N/A | Model | N/A | VIN | N/A | License No. | N/A |
| Trade-in: Year | N/A | Make | N/A | Model | N/A | VIN | N/A | License No. | N/A |

## TRUTH IN LENDING DISCLOSURES

| ANNUAL PERCENTAGE RATE<br>The cost of my credit as a yearly rate. | FINANCE CHARGE<br>The dollar amount the credit will cost me. | Amount Financed<br>The amount of credit provided to me or on my behalf. | Total of Payments<br>The amount I will have paid after I have made all payments as scheduled. | Total Sale Price<br>The total cost of my purchase on credit, including my down payment of $ 1,428.00 is |
|---|---|---|---|---|
| [redacted] % | $ [redacted] | [redacted] | $ 19,589.00 | $ 20,589.00 |

**Payment Schedule:** My payment schedule will be:

| No. of Payments | Amount of Payments | When Payments Are Due |
|---|---|---|
| 1 | $ 428.00 | January 12, 2021 |
| | $ | |
| 60 | $ 319.35 | Monthly Beginning January 23, 2021 |

COPY OF ELECTRONIC ORIGINAL

**Security:** You will have a security interest in the motor vehicle being purchased.
**Late Charge:** If you do not receive my entire payment within 15 days after it is due (10 days if I am buying a heavy commercial vehicle), I will pay a late charge of 5% of the scheduled payment.
**Prepayment:** I can pay all that I owe early. If I do so, I can get a refund of part of the Finance Charge.
**Additional Information:** I will refer to this document for information about nonpayment, default, security interests, any required repayment in full before the scheduled date, and prepayment refunds.

***The Annual Percentage Rate may be negotiated with the Seller. The Seller may assign this contract and retain its right to receive a part of the Finance Charge.***

**PROPERTY INSURANCE: I must keep the collateral insured against damage or loss in the amount I owe. I must keep this insurance until I have paid all that I owe under this contract. I may obtain property insurance from anyone I want or provide proof of insurance I already have. The insurer must be authorized to do business in Texas. The maximum deductible is $550.**

I agree to give you proof of property insurance. I must name you as the person to be paid under the policy in the event of damage or loss.

**LIABILITY INSURANCE**

**THIS CONTRACT DOES NOT INCLUDE INSURANCE COVERAGE FOR PERSONAL LIABILITY AND PROPERTY DAMAGE CAUSED TO OTHERS .**


**© 2012 - 2016 Credit Acceptance Corporation. All Rights Reserved.**



Sign Buyer's Initials DTC

Buyer's Initials

EXHIBIT K

Gmail

Tread Carefully <dcaustin71@gmail.com>

**[Lyft] Re: Follow-up from Lyft**
1 message

**Lyft** <support@lyft-new.zendesk.com> Wed, Jan 6, 2021 at 3:47 PM
Reply-To: Lyft <support+id170104950@lyft-new.zendesk.com>
To: Turner Crockett <dcaustin71@gmail.com>

Your request (170104950) has been updated. To add additional comments, reply to this email.

**Kat** (Lyft)

Hello Turner,

Thanks very much for all your patience with this issue. I can assure that multiple teams including our engineering staff have investigated this issue to make sure that all concerns were addressed.

Our engineering team thoroughly checked your account and the instance of charge back in question but did not find there to be any type of error or glitch in our system to cause it. The charge back was issued on the USAA card ending in 3869 which you placed on file on 12/6/19 and previously used to place a rental deposit with Express Drive. There was no indication on our end that anything fraudulent occurred and again, no evidence that a glitch in our system caused an incorrect charge back.

Unfortunately, we are unable to place you in another Express Drive rental as we take instances of charge backs very seriously. I understand this is not the answer you were hoping for. Please know that your driver account is still active and you are welcome to add a personal vehicle to the platform if you're interested in driving with us in the future.

We truly appreciate all the time and miles you've logged with Lyft Express Drive and I am sorry that this matter could not be resolved in your favor. We

**EXHIBIT K**

hope that you are well, and wish you a healthy and happy New Year!

Kat
Lyft Support
help.lyft.com

---

Zendesk

[XZG9OE-WL8W]

**EXHIBIT L**

Gmail Tread Carefully <dcaustin71@gmail.com>

## USAA Cited By Lyft As Culprit

1 message

**Tread Carefully** <dcaustin71@gmail.com> Thu, Jan 28, 2021 at 2:07 PM
To: Lyft <support+id170104950@lyft-new.zendesk.com>, "Abuse@usaa.com" <Abuse@usaa.com>
Cc: Tread Carefully <dcaustin71@gmail.com>

At 3:58 PM CST yesterday I called 877-762-7256 (USAA's Fraud Department) and spoke with Alexis.

Alexis took my personal information and conducted a deep dive database search into USAA historical intel and (as I told you Lyft) she verified / confirmed / validated that **I have NEVER had a USAA account EVER.**

After 6 months of what appears to be a botched investigation by Lyft operations, Lyft's continued consciousness and willful display of discrimination and reckless negligence to address a civil injustice matter promptly and with integrity, adds to my suspicions of malicious intent and civil injury that's still causing undue emotional distress and financial hardships for me and my family.

USAA's Financial Intelligence Unit has been assigned to this case of civil injustice for further investigation.

And to add further insult to injury, Lyft also stole $250 from me!!!

I. AM. NOT. GOING. AWAY...justice will be served!

https://youtu.be/32E6B8P3J8M

On Wednesday, January 13, 2021, Tread Carefully <dcaustin71@gmail.com> wrote:

> Hello USAA,
>
> After 6 months of "research" by a company known as Lyft (copied on this communication) , to identify a creditor who has caused unprecedented hardships for me and my family due to a chargeback on June 16, 2020 (see below) that took two weeks to process which I was never made aware of, **Lyft has cited USAA (see full disclosure below) as the creditor that caused the issue with my Lyft account**.
>
> I do not recall ever having a USAA account.
>
> Can you please assist and advise on how USAA got involved here?
>
> **Date of Charge**: 6/16/20
> **Amount**: $17.13
> **Visa card**: *3869
> **Date of Chargeback**: 7/4/20
>
> We also have this information:

**EXHIBIT L**

# **Case Number:** 801833861101
# **Reason Code:** 1040

On Wed, Jan 6, 2021 at 3:47 PM Lyft <support@lyft-new.zendesk.com> wrote:

Your request (170104950) has been updated. To add additional comments, reply to this email.

**Kat** (Lyft)

Hello Turner,

Thanks very much for all your patience with this issue. I can assure that multiple teams including our engineering staff have investigated this issue to make sure that all concerns were addressed.

Our engineering team thoroughly checked your account and the instance of charge back in question but did not find there to be any type of error or glitch in our system to cause it. The charge back was issued on the USAA card ending in 3869 which you placed on file on 12/6/19 and previously used to place a rental deposit with Express Drive. There was no indication on our end that anything fraudulent occurred and again, no evidence that a glitch in our system caused an incorrect charge back.

Unfortunately, we are unable to place you in another Express Drive rental as we take instances of charge backs very seriously. I understand this is not the answer you were hoping for. Please know that your driver account is still active and you are welcome to add a personal vehicle to the platform if you're interested in driving with us in the future.

We truly appreciate all the time and miles you've logged with Lyft Express Drive and I am sorry that this matter could not be resolved in your favor. We hope that you are well, and wish you a healthy and happy New Year!

Kat
Lyft Support
help.lyft.com

USAA FEDERAL SAVINGS BANK
10750 McDermott Freeway
San Antonio, Texas 78288

EXHIBIT M

USAA®

Mr. Demetrius Turner Crockett
3310 West Braker Lane 300-401
Austin, TX 78758

March 17, 2021

Dear Mr. Crockett:

This letter is in response to your request for membership verification with USAA Federal Savings Bank (FSB). We hope the following information is helpful.

Thank you for speaking with Robert Casiano, of our staff, regarding your concerns. As Mr. Casiano explained in your conversation on March 11, 2021, the FSB is unable to determine ownership of any accounts without a full account number. A systems audit was conducted using the personally identifiable information you provided, including your name, email address d****tin7*@gmail.com, phone numbers ending in 5192 and 1136, and a social security number. We are unable to substantiate that you currently or previously established or qualified for USAA membership and/or FSB products and services. For more information regarding membership eligibility, please visit us at usaa.com. We appreciate the opportunity to respond to your concerns.

Sincerely,

Michael J. Rodriguez

Michael J. Rodriguez
Director, Advocacy
USAA Federal Savings Bank

Subject: Your ride with Karina on July 2

**Lyft Ride Receipt** <no-reply@lyftmail.com> Thu, Jul 2, 2020, 4:53
to dcaustin71

EXHIBIT N

**JULY 2, 2020 AT 4:34 PM**

# Thanks for riding with Karina!

100% of tips go to drivers. Add a tip

| | |
|---|---|
| Lyft fare (8.52mi, 12m 12s) | $18.38 |
| Tip | $3.31 |

| | |
|---|---|
| VISA Visa *5782 | **$21.69** |

Subject: Your ride with Ramon on July 2

**Lyft Ride Receipt** <no-reply@lyftmail.com>
to dcaustin71

Thu, Jul 2, 2020, 5:49

EXHIBIT N

**JULY 2, 2020 AT 5:32 PM**

# Thanks for riding with Ramon!

100% of tips go to drivers. Add a tip

| | |
|---|---|
| Lyft fare (7.94mi, 11m 29s) | $17.16 |
| Tip | $3.09 |

Visa *5782 **$20.25**

Subject: Your ride with Mike on July 3

**Lyft Ride Receipt** <no-reply@lyftmail.com> Fri, Jul 3, 2020, 12:41
to dcaustin71

**EXHIBIT N**

**JULY 3, 2020 AT 12:06 AM**

# Thanks for riding with Mike!

100% of tips go to drivers. Add a tip

| | |
|---|---|
| Lyft fare (7.34mi, 12m 44s) | $17.75 |
| Tip | $3.20 |

Visa *5782 **$20.95**

Subject: Lyft Ride Receipt - Charge Failed

**Lyft Ride Receipt** <no-reply@lyftmail.com>
to dcaustin71

Fri, Jul 3, 2020, 5:13

**EXHIBIT N**

**$2.99 Balance Due**

We were unable to charge your Visa *5782 for your last ride. To continue using Lyft, please update your payment information in the app to settle your balance.

**JULY 3, 2020 AT 3:30 PM**

# Thanks for riding with Joel!

100% of tips go to drivers. Add a tip

Since you updated your stop or destination, your fare reflects actual time and distance
Learn more

| | |
|---|---|
| Base fare | $1.04 |
| 29m 23s | $7.93 |
| 4.98 mi | $4.83 |
| Service fee | $2.85 |
| Tip | $3.00 |

Visa *5782 **$19.65**

Subject: Your ride with Oscar on July 3

**Lyft Ride Receipt** <no-reply@lyftmail.com> Fri, Jul 3, 2020, 5:53
to dcaustin71

**EXHIBIT N**

**JULY 3, 2020 AT 5:27 PM**

# Thanks for riding with Oscar!

100% of tips go to drivers. Add a tip

| | |
|---|---|
| Lyft fare (8.23mi, 17m 50s) | $20.90 |
| Tip | $3.76 |

Visa *5782 **$24.66**

Subject: Your ride with Muhammad on July 3

**Lyft Ride Receipt** <no-reply@lyftmail.com> Fri, Jul 3, 2020, 11:54
to dcaustin71

**EXHIBIT N**

**JULY 3, 2020 AT 9:04 PM**

# Thanks for riding with Muhammad!

100% of tips go to drivers. Add a tip

| | |
|---|---|
| Lyft fare (11.02mi, 15m 15s) | $20.07 |
| Visa *5782 | **$20.07** |

Subject: Your ride with Hany on July 4

**Lyft Ride Receipt** <no-reply@lyftmail.com>
to dcaustin71

Sat, Jul 4, 2020, 5:25

**EXHIBIT N**

JULY 4, 2020 AT 5:06 AM

# Thanks for riding with Hany!

100% of tips go to drivers. Add a tip

| | |
|---|---|
| Lyft fare (1.54mi, 6m 30s) | $7.55 |
| Tip | $2.00 |
| Lyft Credits | -$5.00 |

Visa *5782 **$4.55**

Subject: Your ride with Hal on July 4

**Lyft Ride Receipt** <no-reply@lyftmail.com>
to dcaustin71

Sat, Jul 4, 2020, 6:25

**EXHIBIT N**

**JULY 4, 2020 AT 5:33 AM**

# Thanks for riding with Hal!

100% of tips go to drivers. Add a tip

| | |
|---|---|
| Lyft fare (1.87mi, 7m 40s) | $7.44 |
| Tip | $2.00 |

VISA Visa *5782 **$9.44**

Subject: Your ride with Rene on July 4

**Lyft Ride Receipt** <no-reply@lyftmail.com> Sat, Jul 4, 2020, 12:51
to dcaustin71

**EXHIBIT N**

**JULY 4, 2020 AT 12:03 PM**

# Thanks for riding with Rene!

100% of tips go to drivers. Add a tip

| | |
|---|---|
| Lyft fare (4.71mi, 12m 34s) | $11.79 |
| Tip | $2.00 |

VISA Visa *5782 **$13.79**

Subject: Your ride with Hal on July 4

**Lyft Ride Receipt** <no-reply@lyftmail.com>
to dcaustin71

Sat, Jul 4, 2020, 11:59

**EXHIBIT N**

**JULY 4, 2020 AT 6:33 AM**

# Thanks for riding with Hal!

100% of tips go to drivers. Add a tip

| | |
|---|---|
| Lyft fare (0.43mi, 3m 11s) | $6.89 |
| Tip | $2.00 |

VISA Visa *5782 **$8.89**

Subject: Your ride with Teddy on July 4

**Lyft Ride Receipt** <no-reply@lyftmail.com>
to dcaustin71

Sat, Jul 4, 2020, 1:48

**EXHIBIT N**

**JULY 4, 2020 AT 1:25 PM**

# Thanks for riding with Teddy!

100% of tips go to drivers. Add a tip

| | |
|---|---|
| Lyft fare (8.89mi, 18m 22s) | $17.53 |
| Tip | $2.00 |

VISA Visa *5782 **$19.53**

Subject: Your ride with Aaron on July 4

**Lyft Ride Receipt** <no-reply@lyftmail.com>
to dcaustin71

Sun, Jul 5, 2020, 7:20

EXHIBIT N

JULY 4, 2020 AT 7:05 PM

# Thanks for riding with Aaron!

100% of tips go to drivers. Add a tip

| | |
|---|---|
| Lyft fare (11.01mi, 13m 43s) | $22.70 |
| Visa *5782 | **$22.70** |

Subject: Your ride with Satish on July 6

**Lyft Ride Receipt** <no-reply@lyftmail.com>
to dcaustin71

Mon, Jul 6, 2020, 1:59

**EXHIBIT N**

**JULY 6, 2020 AT 12:40 AM**

# Thanks for riding with Satish!

100% of tips go to drivers. Add a tip

| | |
|---|---|
| Lyft fare (2.59mi, 8m 13s) | $8.52 |
| VISA Visa *5782 | **$8.52** |

Subject: Your ride with Henry on July 6

**Lyft Ride Receipt** <no-reply@lyftmail.com>
to dcaustin71

Mon, Jul 6, 2020, 2:33

EXHIBIT N

JULY 6, 2020 AT 2:11 AM

# Thanks for riding with Henry!

100% of tips go to drivers. Add a tip

Since you updated your stop or destination, your fare reflects actual time and distance
Learn more

| | |
|---|---|
| Base fare | $1.04 |
| 19m 38s | $5.30 |
| 4.15 mi | $4.02 |
| Service fee | $2.85 |

VISA Visa *5782 **$13.21**

Subject: Your ride with Damon on July 6

**Lyft Ride Receipt** <no-reply@lyftmail.com> Mon, Jul 6, 2020, 1:14
to dcaustin71

EXHIBIT N

**JULY 6, 2020 AT 10:24 AM**

# Thanks for riding with Damon!

100% of tips go to drivers. Add a tip

| | |
|---|---|
| Lyft fare (8.30mi, 18m 21s) | $21.60 |
| Visa *5782 | **$21.60** |

Subject: Your ride with Hui on July 6

**Lyft Ride Receipt** <no-reply@lyftmail.com> Tue, Jul 7, 2020, 9:39
to dcaustin71

EXHIBIT N

JULY 6, 2020 AT 1:25 PM

# Thanks for riding with Hui!

100% of tips go to drivers. Add a tip

Since you updated your stop or destination, your fare reflects actual time and distance
Learn more

| | |
|---|---|
| Base fare | $1.04 |
| 38m 25s | $10.37 |
| 21.17 mi | $20.53 |
| Service fee | $2.85 |
| AUS Airport - Airport Fee | $2.50 |

VISA Visa *5782 **$37.29**

Subject: Your ride with Mark on July 9

**Lyft Ride Receipt** <no-reply@lyftmail.com>
to dcaustin71

Thu, Jul 9, 2020, 3:09

**EXHIBIT N**

**JULY 9, 2020 AT 12:43 PM**

# Thanks for riding with Mark!

100% of tips go to drivers. Add a tip

| | |
|---|---|
| Lyft fare (11.46mi, 17m 17s) | $22.13 |
| Visa *1560 | **$22.13** |

Subject: Your ride with Ikechukwu on July 14

**Lyft Ride Receipt** <no-reply@lyftmail.com> Tue, Jul 14, 2020, 1:04
to dcaustin71

**EXHIBIT N**

**JULY 14, 2020 AT 12:27 AM**

# Thanks for riding with Ikechukwu!

100% of tips go to drivers. Add a tip

| | |
|---|---|
| Lyft fare (7.95mi, 10m 33s) | $17.27 |
| Tip | $4.00 |

VISA Visa *5782 **$21.27**

Subject: Your ride with José on July 15

Lyft Ride Receipt <no-reply@lyftmail.com>
to dcaustin71

Wed, Jul 15, 2020, 10:14

EXHIBIT N

JULY 15, 2020 AT 12:35 PM

# Thanks for riding with José!

100% of tips go to drivers. Add a tip

| | |
|---|---|
| Lyft fare (8.49mi, 11m 8s) | $18.21 |
| Visa *5782 | **$18.21** |

Subject: Your ride with Jose on July 31

**Lyft Ride Receipt** <no-reply@lyftmail.com>
to dcaustin71

Fri, Jul 31, 2020, 6:37

**EXHIBIT N**

**JULY 31, 2020 AT 5:32 PM**

# Thanks for riding with Jose!

100% of tips go to drivers. Add a tip

| | |
|---|---|
| Lyft fare (12.20mi, 31m 19s) | $23.67 |
| Tip | $5.92 |

VISA Visa *5782 **$29.59**

**Lyft Ride Receipt** <no-reply@lyftmail.com> Sat, Aug 1, 2020, 7:14
to dcaustin71

lyft

EXHIBIT N

**JULY 31, 2020 AT 6:53 PM**

# Thanks for riding with Vincent!

100% of tips go to drivers. Add a tip

| | |
|---|---|
| Lyft fare (13.58mi, 19m 47s) | $21.16 |
| VISA Visa *5782 | **$21.16** |

Subject: Your ride with Joseph on August 3

**Lyft Ride Receipt** <no-reply@lyftmail.com>
to dcaustin71

Mon, Aug 3, 2020, 1:25

EXHIBIT N

**AUGUST 3, 2020 AT 12:52 PM**

# Thanks for riding with Joseph!

100% of tips go to drivers. Add a tip

| | |
|---|---|
| Lyft fare (5.92mi, 21m 4s) | $15.27 |
| Tip | $2.00 |

VISA Visa *5782 **$17.27**

Subject: Your ride with William on August 3

**Lyft Ride Receipt** <no-reply@lyftmail.com>
to dcaustin71

Mon, Aug 3, 2020, 1:55

EXHIBIT N

**AUGUST 3, 2020 AT 1:39 PM**

# Thanks for riding with William!

100% of tips go to drivers. Add a tip

| | |
|---|---|
| Lyft fare (4.21mi, 8m 37s) | $11.27 |
| VISA Visa *5782 | **$11.27** |

Subject: Your ride with Ivan on August 4

**Lyft Ride Receipt** <no-reply@lyftmail.com> Tue, Aug 4, 2020, 9:39
to dcaustin71

**EXHIBIT N**

**AUGUST 4, 2020 AT 1:18 AM**

# Thanks for riding with Ivan!

100% of tips go to drivers. Add a tip

| | |
|---|---|
| Lyft fare (2.79mi, 6m 8s) | $9.82 |
| Visa *5782 | **$9.82** |

Subject: Your ride with Cyril on August 4

**Lyft Ride Receipt** <no-reply@lyftmail.com>
to dcaustin71

Wed, Aug 5, 2020, 9:52

lyft

EXHIBIT N

**AUGUST 4, 2020 AT 9:45 AM**

# Thanks for riding with Cyril!

100% of tips go to drivers. Add a tip

| | |
|---|---|
| Lyft fare (2.85mi, 6m 23s) | $8.88 |
| VISA Visa *5782 | **$8.88** |

Subject: Your ride with Abdul on August 5

Lyft Ride Receipt <no-reply@lyftmail.com> Wed, Aug 5, 2020, 4:35
to dcaustin71

EXHIBIT N

AUGUST 5, 2020 AT 3:11 PM

# Thanks for riding with Abdul!

100% of tips go to drivers. Add a tip

| | |
|---|---|
| Lyft fare (7.10mi, 14m 43s) | $13.81 |
| Visa *5782 | **$13.81** |

Subject: Your ride with Alejandro on August 5

**Lyft Ride Receipt** <no-reply@lyftmail.com> Thu, Aug 6, 2020, 11:19
to dcaustin71

EXHIBIT N

**AUGUST 5, 2020 AT 4:39 PM**

# Thanks for riding with Alejandro!

100% of tips go to drivers. Add a tip

| | |
|---|---|
| Lyft fare (7.64mi, 16m 39s) | $15.69 |

| | |
|---|---|
| VISA Visa *5782 | **$15.69** |

Subject: Your ride with Eric on August 6

**Lyft Ride Receipt** <no-reply@lyftmail.com> Thu, Aug 6, 2020, 5:57
to dcaustin71

**EXHIBIT N**

**AUGUST 6, 2020 AT 11:49 AM**

# Thanks for riding with Eric!

100% of tips go to drivers. Add a tip

| | |
|---|---|
| Lyft fare (39.87mi, 76m 2s) | $50.02 |
| Visa *5782 | **$50.02** |

Subject: Your ride with Donna on August 6

**Lyft Ride Receipt** <no-reply@lyftmail.com>
to dcaustin71

Thu, Aug 6, 2020, 7:19

**EXHIBIT N**

**AUGUST 6, 2020 AT 6:21 PM**

# Thanks for riding with Donna!

100% of tips go to drivers. Add a tip

| | |
|---|---|
| Lyft fare (1.66mi, 5m 20s) | $6.70 |
| Visa *5782 | **$6.70** |

Subject: Your ride with Teklu on August 6

**Lyft Ride Receipt** <no-reply@lyftmail.com> Fri, Aug 7, 2020, 7:29
to dcaustin71

**EXHIBIT N**

**AUGUST 6, 2020 AT 7:19 PM**

# Thanks for riding with Teklu!

100% of tips go to drivers. Add a tip

| | |
|---|---|
| Lyft fare (1.66mi, 8m 29s) | $6.56 |
| Visa *5782 | **$6.56** |

Subject: Your ride with Sterling G on August 9

**Lyft Ride Receipt** <no-reply@lyftmail.com>
to dcaustin71

Mon, Aug 10, 2020, 5:04

**EXHIBIT N**

**AUGUST 9, 2020 AT 4:09 PM**

# Thanks for riding with Sterling G!

100% of tips go to drivers. Add a tip

| | |
|---|---|
| Lyft fare (3.04mi, 20m 45s) | $8.66 |
| VISA Visa *6966 | **$8.66** |

Subject: Your ride with Abdul wakeel on August 11

**Lyft Ride Receipt** <no-reply@lyftmail.com>
to dcaustin71

Wed, Aug 12, 2020, 10:52

EXHIBIT N

AUGUST 11, 2020 AT 10:32 PM

# Thanks for riding with Abdul wakeel!

100% of tips go to drivers. Add a tip

| | |
|---|---|
| Lyft fare (11.97mi, 18m 59s) | $20.55 |
| Visa *6966 | **$20.55** |

Subject: Your ride with Henry on August 15

**Lyft Ride Receipt** <no-reply@lyftmail.com> Sat, Aug 15, 2020, 1:43
to dcaustin71

EXHIBIT N

AUGUST 15, 2020 AT 12:40 AM

# Thanks for riding with Henry!

100% of tips go to drivers. Add a tip

| | |
|---|---|
| Lyft fare (14.82mi, 16m 13s) | $23.87 |
| VISA Visa *5782 | **$23.87** |

Subject: Your ride with Doug on August 15

**Lyft Ride Receipt** <no-reply@lyftmail.com> Sat, Aug 15, 2020, 3:00
to dcaustin71

**EXHIBIT N**

**AUGUST 15, 2020 AT 2:09 AM**

# Thanks for riding with Doug!

100% of tips go to drivers. Add a tip

| | |
|---|---|
| Lyft fare (2.62mi, 6m 30s) | $8.61 |
| Visa *5782 | **$8.61** |

Subject: Your ride with Ghulam on August 23

**Lyft Ride Receipt** <no-reply@lyftmail.com>
to dcaustin71

Sun, Aug 23, 2020, 4:30

**EXHIBIT N**

**AUGUST 23, 2020 AT 4:10 AM**

# Thanks for riding with Ghulam!

100% of tips go to drivers. Add a tip

Since you updated your stop or destination, your fare reflects actual time and distance
Learn more

| | |
|---|---|
| Base fare | $1.08 |
| 14m 33s | $4.07 |
| 11.12 mi | $11.23 |
| Service fee | $2.85 |

VISA Visa *5782 **$19.23**

Subject: Your ride with Yosbel on August 26

**Lyft Ride Receipt** <no-reply@lyftmail.com>
to dcaustin71

Thu, Aug 27, 2020, 2:04

**EXHIBIT N**

**AUGUST 26, 2020 AT 9:51 PM**

# Thanks for riding with Yosbel!

100% of tips go to drivers. Add a tip

| | |
|---|---|
| Lyft fare (5.71mi, 21m 50s) | $13.60 |
| Visa *5782 | **$13.60** |

Subject: Your ride with Spencer on August 27

**Lyft Ride Receipt** <no-reply@lyftmail.com> Thu, Aug 27, 2020, 4:46
to dcaustin71

EXHIBIT N

AUGUST 27, 2020 AT 2:12 AM

# Thanks for riding with Spencer!

100% of tips go to drivers. Add a tip

| | |
|---|---|
| Lyft fare (2.35mi, 8m 7s) | $7.81 |
| VISA Visa *5782 | **$7.81** |

Subject: Your ride with Tommy on August 27

**Lyft Ride Receipt** <no-reply@lyftmail.com> Thu, Aug 27, 2020, 11:26
to dcaustin71

**EXHIBIT N**

**AUGUST 27, 2020 AT 5:08 AM**

# Thanks for riding with Tommy!

100% of tips go to drivers. Add a tip

| | |
|---|---|
| Lyft fare (2.71mi, 13m 27s) | $9.27 |
| VISA Visa *5782 | **$9.27** |

Subject: Your ride with Jesse on August 28

**Lyft Ride Receipt** <no-reply@lyftmail.com> Fri, Aug 28, 2020, 3:13
to dcaustin71

**EXHIBIT N**

**AUGUST 28, 2020 AT 2:36 AM**

# Thanks for riding with Jesse!

100% of tips go to drivers. Add a tip

Since you updated your stop or destination, your fare reflects actual time and distance
Learn more

| | |
|---|---|
| Base fare | $1.08 |
| 10m 24s | $2.91 |
| 2.22 mi | $2.24 |
| Service fee | $2.85 |

VISA Visa *5782 **$9.08**

Subject: Your ride with Joe on August 27

**Lyft Ride Receipt** <no-reply@lyftmail.com> Fri, Aug 28, 2020, 2:20
to dcaustin71

**EXHIBIT N**

**AUGUST 27, 2020 AT 4:10 PM**

# Thanks for riding with Joe!

100% of tips go to drivers. Add a tip

| | |
|---|---|
| Lyft fare (12.03mi, 30m 36s) | $23.18 |
| Visa *6966 | **$23.18** |

Gmail

Tread Carefully <dcaustin71@gmail.com>

**Lyft Rental Charge Receipt**

**Lyft** <receipts@lyftmail.com>
To: dcaustin71@gmail.com

Tue, May 5, 2020 at 6:33 AM

**EXHIBIT N**

lyft

# $27.50 Thanks! We've processed your payment successfully

Charges to card ending with ***5782: $27.50

Contact

548 Market St., P.O. Box 68514, San Francisco, CA 94104

© 2020 Lyft, Inc.

CPUC ID No. TCP0032513 - P

Gmail Tread Carefully <dcaustin71@gmail.com>

**Lyft Rental Charge Receipt**

**Lyft** <receipts@lyftmail.com> Tue, Jun 2, 2020 at 8:56 AM
To: dcaustin71@gmail.com

**EXHIBIT O**

lyft

# $8.50 Thanks! We've processed your payment successfully

Charges to card ending with ***5782: $8.50

Contact

548 Market St., P.O. Box 68514, San Francisco, CA 94104

© 2020 Lyft, Inc.

CPUC ID No. TCP0032513 - P

Gmail Tread Carefully <dcaustin71@gmail.com>

**Lyft Rental Charge Receipt**

**Lyft** <receipts@lyftmail.com> Tue, Jun 30, 2020 at 9:54 AM
To: dcaustin71@gmail.com

**EXHIBIT O**

# $97.38 Thanks! We've processed your payment successfully

| | |
|---|---|
| Charges to card ending with ***5782: | $97.38 |

Contact

548 Market St., P.O. Box 68514, San Francisco, CA 94104
© 2020 Lyft, Inc.
CPUC ID No. TCP0032513 - P

Gmail Tread Carefully <dcaustin71@gmail.com>

**Lyft Rental Charge Receipt**

**Lyft** <receipts@lyftmail.com> Tue, Jul 7, 2020 at 8:51 AM
To: dcaustin71@gmail.com

**EXHIBIT O**

lyft

# $73.34 Thanks! We've processed your payment successfully

Charges to card ending with ***5782: $73.34

Contact

548 Market St., P.O. Box 68514, San Francisco, CA 94104
© 2020 Lyft, Inc.
CPUC ID No. TCP0032513 - P

EXHIBIT P

Gmail

Tread Carefully <dcaustin71@gmail.com>

## Re: Lyft Help - Request Received

**Tread Carefully** <dcaustin71@gmail.com> Sat, Jul 4, 2020 at 6:46 PM
To: Lyft <support+id169279366@lyft-new.zendesk.com>

My Lyft Driver app is incorrectly stating that a Ford Fiesta is “IN USE” on my account. This is NOT true because I haven’t owned a Ford Fiesta since November 2019. The app is not allowing me to change the status to NOT IN USE nor delete the vehicle from my account.

Please assist.




On Sat, Jul 4, 2020 at 6:44 PM Lyft <support@lyft-new.zendesk.com> wrote:

##- Please type your reply above this line -##

This is an automatic confirmation to let you know we received your request for help from the Lyft app.

A customer support associate will investigate and reach out to you soon.

Thanks for your patience,

Lyft

---

This email is a service from Lyft. Delivered by Zendesk | Privacy Policy

--

This email is confidential. It is not permitted or approved, by the email's owner/originator, to be shared outside of the parties copied by the email's originator without the explicit consent and approval of the email's originator.

Lyft, Inc
185 Berry St. Suite 5000
San Francisco, C 94107

**EXHIBIT Q**

If you have questions contact:
Lyft
Phone: (855) 280-0278

DEMETRIUS CROCKETT
3310 W. BR KER L NE
USTIN, TX 78758

## Instructions for Payee

You have received this form because you have either (a) accepted payment cards for payments, or (b) received payments through a third party network that exceeded $20,000 in gross total reportable transactions and the aggregate number of those transactions exceeded 200 for the calendar year. Merchant acquirers and third party settlement organizations, as payment settlement entities (PSEs), must report the proceeds of payment card and third party network transactions made to you on Form 1099-K under Internal Revenue Code section 6050W. The PSE may have contracted with an electronic payment facilitator (EPF) or other third party payer to make payments to you.

If you have questions about the amounts reported on this form, contact the FILER whose information is shown in the upper left corner on the front of this form. If you do not recognize the FILER shown in the upper left corner of the form, contact the PSE whose name and phone number are shown in the lower left corner of the form above your account number.

See the separate instructions for your income tax return for using the information reported on this form.

**Payee's taxpayer identification number (TIN).** For your protection, this form may show only the last four digits of your TIN (social security number (SSN), individual taxpayer identification number (ITIN), adoption taxpayer identification number ( TIN), or employer identification number (EIN)). However, the issuer has reported your complete TIN to the IRS.

**ccount number.** May show an account number or other unique number the PSE assigned to distinguish your account.

**Box 1a.** Shows the aggregate gross amount of payment card/third party network transactions made to you through the PSE during the calendar year.

**Box 1b.** Shows the aggregate gross amount of all reportable payment transactions made to you through the PSE during the calendar year where the card was not present at the time of the transaction or the card number was keyed into the terminal. Typically, this relates to online sales, phone sales, or catalogue sales. If the box for third party network is checked, or if these are third party network transactions, Card Not Present transactions will not be reported.

**Box 2.** Shows the merchant category code used for payment card/third party network transactions (if available) reported on this form.

**Box 3.** Shows the number of payment transactions (not including refund transactions) processed through the payment card/third party network.

**Box 4.** Shows backup withholding. Generally, a payer must backup withhold if you did not furnish your TIN or you did not furnish the correct TIN to the payer. See Form W-9, Request for Taxpayer Identification Number and Certification, and Pub. 505. Include this amount on your income tax return as tax withheld.

**Boxes 5a-5l.** Show the gross amount of payment card/third party network transactions made to you for each month of the calendar year.

**Boxes 6-8.** Show state and local income tax withheld from the payments.

**Future developments.** For the latest information about developments related to Form 1099-K and its instructions, such as legislation enacted after they were published, go to *www.irs.g v/F rm1099K.*

X CORRECTED (if checked)

FILER'S name, street address, city or town, state or province, country, ZIP or foreign postal code, and telephone no.
Lyft, Inc
185 Berry St. Suite 5000
San Francisco, C 94107

FILER'S TIN: 20-8809830

P YEE'S TIN: [redacted]

OMB No. 1545-2205

20 0

**Payment Card and Third Party Network Transactions**

Form **1099-K**

**Copy B**

**For Payee**

This is important tax information and is being furnished to the IRS. If you are required to file a return, a negligence penalty or other sanction may be imposed on you if taxable income results from this transaction and the IRS determines that it has not been reported.

Check to indicate if FILER is a (an):
Payment settlement entity (PSE) [X]
Electronic Payment Facilitator (EPF)/Other third party [ ]

Check to indicate transactions reported are:
Payment card [ ]
Third party network [X]

P YEE'S name, street address (including apt. no.), city or town, state or province, country, and ZIP or foreign postal code
DEMETRIUS CROCKETT
3310 W. BR KER L NE
USTIN, TX 78758

PSE'S name and telephone number

ccount number (see instructions) [redacted]

| Box | Description | Amount |
|---|---|---|
| 1a | Gross amount of payment card/third party network transactions | $ 20,009.11 |
| 1b | Card Not Present transactions | $ 0.00 |
| 2 | Merchant category code | 4121 |
| 3 | Number of payment transactions | 1,218 |
| 4 | Federal income tax withheld | $ |
| 5a | January | $ 5,503.42 |
| 5b | February | $ 4,990.26 |
| 5c | March | $ 3,938.62 |
| 5d | pril | $ 2,610.55 |
| 5e | May | $ 1,940.48 |
| 5f | June | $ 1,015.67 |
| 5g | July | $ 10.11 |
| 5h | ugust | $ |
| 5i | September | $ |
| 5j | October | $ |
| 5k | November | $ |
| 5l | December | $ |
| 6 | State | TX |
| 7 | State identification no. | |
| 8 | State income tax withheld | $ |

Form **1099-K** (Keep for your records) www.irs.gov/Form1099K Department of the Treasury - Internal Revenue Service

0H8701 2.000

Lyft, Inc
185 Berry St. Suite 5000
San Francisco, C 94107

**EXHIBIT Q**

Box 1 (NEC) = Nonemployee Compensation = $ 649.55

If you have questions contact:
Lyft
Phone: (855) 280-0278

DEMETRIUS CROCKETT
3310 W. BR KER L NE
USTIN, TX 78758

## Instructions for Recipient

**Recipient's taxpayer identification number (TIN).** For your protection, this form may show only the last four digits of your TIN (social security number (SSN), individual taxpayer identification number (ITIN), adoption taxpayer identification number ( TIN), or employer identification number (EIN)). However, the issuer has reported your complete TIN to the IRS.

**F TC filing requirement.** If the F TC filing requirement box is checked, the payer is reporting on this Form 1099 to satisfy its chapter 4 account reporting requirement. You may also have a filing requirement. See the Instructions for Form 8938.

**ccount number.** May show an account or other unique number the payer assigned to distinguish your account.

**Box 1.** Shows nonemployee compensation and/or nonqualified deferred compensation (NQDC). If you are in the trade or business of catching fish, box 1 may show cash you received for the sale of fish. If the amount in this box is self-employment (SE) income, report it on Schedule C or F (Form 1040 or 1040-SR), and complete Schedule SE (Form 1040 or 1040-SR). You received this form instead of Form W-2 because the payer did not consider you an employee and did not withhold income tax or social security and Medicare tax. If you believe you are an employee and cannot get the payer to correct this form, report this amount on the line for "Wages, salaries, tips, etc." of Form 1040, 1040-SR, or 1040-NR. You must also complete Form 8919 and attach it to your return. If you are not an employee but the amount in this box is not SE income (for example, it is income from a sporadic activity or a hobby), report this amount on the "Other income" line (on Schedule 1 (Form 1040 or 1040-SR); or on Form 1040-NR).

The amounts being reported as NQDC are includible in gross income for failure to meet the requirements under section 409 . This amount is also reported on Form 1099-MISC for additional tax calculation. See the Instructions for Forms 1040 and 1040-SR, or the Instructions for Form 1040-NR

**Box 2.** Reserved

**Box 3.** Reserved

**Box 4.** Shows backup withholding. payer must backup withhold on certain payments if you did not give your TIN to the payer. See Form W-9, Request for Taxpayer Identification Number and Certification, for information on backup withholding. Include this amount on your income tax return as tax withheld.

**Boxes 5-7.** State income tax withheld reporting boxes.

**Future developments.** For the latest information about developments related to Form 1099-NEC and its instructions, such as legislation enacted after they were published, go to *www.irs.g v/F rm1099NEC*

☐ CORRECTED (if checked)

REISSUED ST TEMENT

OMB No. 1545-0116

20 0

**Nonemployee Compensation**

Form **1099-NEC**

P YER'S name, street address, city or town, state or province, country, ZIP or foreign postal code, and telephone no.

Lyft, Inc
185 Berry St. Suite 5000
San Francisco, C 94107

1 Nonemployee compensation
$649.55

**Copy B**
**For Recipient**

P YER'S TIN
20-8809830

RECIPIENT'S TIN
[redacted]

2

3

RECIPIENT'S name, street address (including apt. no.), city or town, state or province, country, and ZIP or foreign postal code

DEMETRIUS CROCKETT
3310 W. BR KER L NE
USTIN, TX 78758

**4 Federal income tax withheld**
$

This is important tax information and is being furnished to the IRS. If you are required to file a return, a negligence penalty or other sanction may be imposed on you if this income is taxable and the IRS determines that it has not been reported.

F TC filing requirement ☐

ccount number (see instructions) [redacted]

| 5 State tax withheld | 6 State/Payer's state no. | 7 State income |
|---|---|---|
| $ | TX / | $ |

Form **1099-NEC** (keep for your records) www.irs.gov/Form1099NEC Department of the Treasury - Internal Revenue Service

0H8164 6.000

# Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Envelope ID: 98717125
Filing Code Description: Motion (No Fee)
Filing Description: MOTION FOR SUMMARY JUDGMENT
Status as of 3/21/2025 8:15 AM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Demetrius Crockett | | dcaustin71@gmail.com | 3/20/2025 8:54:51 PM | SENT |
| Lyft Inc | | legal@lyft.com | 3/20/2025 8:54:51 PM | SENT |
| Deidra Cobb | | deidra.cobb@pierferd.com | 3/20/2025 8:54:51 PM | SENT |
| Bradley Bush | | bradley.bush@pierferd.com | 3/20/2025 8:54:51 PM | SENT |
| Bryan Pollard | | bryan.pollard@pierferd.com | 3/20/2025 8:54:51 PM | SENT |

EXHIBIT G

3/20/2025 3:19 PM
Velva L. Price
District Clerk
Travis County
D-1-GN-25-001601
Nancy Rodriguez

D-1-GN-25-001601

**CAUSE NO. ______________________________**

# FIRST AMENDED ORIGINAL PETITION

## DISTRICT JUDGE AND JURY TRIAL DEMANDED

**IN THE DISTRICT COURT AT LAW**
**TRAVIS COUNTY, TEXAS**

261ST, DISTRICT COURT

**I. PARTIES**

1. Plaintiff: Demetrius T. Crockett, an individual residing in Travis County, Texas.

2. Defendant: Lyft, Inc, a business entity operating in Texas, with a principal place of business at 6375 US-290, Austin, TX 78723 and can be served citation at **185 BERRY ST. #5000, SAN FRANCISCO, CA 94107.**

### II. JURISDICTION & VENUE

3. This Court has subject matter jurisdiction over this dispute because the amount in controversy exceeds the minimum jurisdictional limits of the Court.

4. Venue is proper in Travis County, Texas, under Tex. Civ. Prac. & Rem. Code § 15.002(a) because the events giving rise to the claims occurred in Travis County.

### III. FACTUAL BACKGROUND

5. Plaintiff was employed as an independent contractor by Defendant and was contractually entitled to access certain work-related resources, specifically Lyft's FlexDrive rental car program, necessary to fulfill job duties to earn living expense income as Plaintiff did not own a vehicle at the time.

6. On or about July 31, 2020, Plaintiff was informed that Defendant had used a fraudulent credit card number to restrict Plaintiff's access to these resources which resulted in a breach of his FlexDrive rental entitlement.

**7. However, at that time, Plaintiff did not have definitive proof of the fraudulent activity and could not confirm the breach.**

8. After exercising reasonable diligence, Plaintiff confirmed the fraudulent act on March 17, 2021.

9. Defendant's actions constitute a knowing and willful breach of contract, fraud, and tortious interference with Plaintiff's employment.

Copy from re:SearchTX

## IV. STATUTE OF LIMITATIONS & DISCOVERY RULE

10. Defendant may argue that Plaintiff's claims are barred by the statute of limitations. However, the discovery rule applies because Plaintiff could not have reasonably confirmed the fraudulent conduct until March 17, 2021 via an official letter from USAA bank.

11. Although Plaintiff was informed of potential fraud on July 31, 2020, this was not definitive proof.

12. Plaintiff diligently investigated the matter but was only able to confirm the fraud on March 17, 2021.

13. Under Tex. Civ. Prac. & Rem. Code § 16.004, the limitations period for breach of contract and fraud begins when the plaintiff knew or should have known of the injury.

14. Because Plaintiff confirmed the fraudulent act on March 17, 2021, this lawsuit is timely filed before the March 17, 2025, deadline.

## V. CAUSES OF ACTION

### A. BREACH OF CONTRACT (Tex. Civ. Prac. & Rem. Code § 16.004)

15. Plaintiff and Defendant had a valid, enforceable contract.

16. Defendant's intentional use of false payment information led to a material breach of the agreement.

17. Plaintiff suffered economic losses as a direct and proximate result of this breach.

### B. FRAUD / FRAUDULENT MISREPRESENTATION (Tex. Civ. Prac. & Rem. Code § 16.004)

18. Defendant knowingly provided false credit card information to restrict Plaintiff's access to work resources.

19. Defendant's misrepresentation was made with intent to deceive and caused actual harm to Plaintiff.

### C. TORTIOUS INTERFERENCE WITH BUSINESS OR EMPLOYMENT (Tex. Civ. Prac. & Rem. Code § 16.003)

20. Defendant intentionally interfered with Plaintiff's work by fraudulently restricting access to essential resources, thereby causing financial losses.

Copy from re:SearchTX

## VI. CRIMINAL AND FEDERAL VIOLATIONS (Supporting Civil Claims)

23. While Plaintiff acknowledges that criminal prosecution falls under law enforcement discretion, Defendant's actions potentially violate:

- Texas Penal Code § 32.31 (Credit Card or Debit Card Abuse) – Criminal offense involving the use of a fraudulent credit card number.

- 18 U.S.C. § 1029 (Federal Credit Card Fraud Statute) – Unlawful use of fraudulent payment information to cause harm.

- Texas Penal Code § 32.45 (Misapplication of Fiduciary Property) – If Defendant had a duty to provide access to work resources, misuse of such control may constitute a criminal offense.

## VII. DAMAGES & RELIEF REQUESTED

24. As a direct result of Defendant's unlawful actions, Plaintiff seeks the following relief:

- Actual damages for lost wages, missed work opportunities, and financial harm.
- Punitive damages.
- Attorney's fees and court costs.
- Pre-judgment and post-judgment interest at the maximum legal rate.
- Any other relief the Court deems just and proper.

## VIII. PRAYER FOR RELIEF

**WHEREFORE, PREMISES CONSIDERED, Plaintiff respectfully requests that Defendant be cited to appear and answer, and that upon final trial, Plaintiff be awarded:** **$137, 787**

- Actual damages in an amount to be awarded;**$45,729** **within 5 days of favorable ruling.**
- Punitive damages:**$91, 458 within 5 days of favorable ruling.**
- Reasonable attorney's fees and costs; **within 5 days of favorable ruling.**
- Pre- and post-judgment interest to be determined at trial;**within 5 days of favorable ruling.**
- Any other relief the Court finds just and equitable which includes, but is not limited to, referring Defendant to Austin Police Department and/or Prosecutor for criminal proceedings**within 5 days of favorable ruling.**

# Certificate of Service

I hereby certify that a true and correct copy of this Petition has been served to Defendant by electronic filing this the **11th** day of **March** 2025 electronically and in accordance with the Texas Rules of Civil Procedure.

D. Crockett 3/20/25

Copy from re:SearchTX

**Automated Certificate of eService**

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Envelope ID: 98716052
Filing Code Description: Amended Filing
Filing Description: FIRST AMENDED ORIGINAL PETITION
Status as of 3/21/2025 2:48 PM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Demetrius Crockett | | dcaustin71@gmail.com | 3/20/2025 6:59:25 PM | SENT |
| Lyft Inc | | legal@lyft.com | 3/20/2025 6:59:25 PM | SENT |
| Deidra Cobb | | deidra.cobb@pierferd.com | 3/20/2025 6:59:25 PM | SENT |
| Bradley Bush | | bradley.bush@pierferd.com | 3/20/2025 6:59:25 PM | SENT |
| Bryan Pollard | | bryan.pollard@pierferd.com | 3/20/2025 6:59:25 PM | SENT |

Copy from re:SearchTX

EXHIBIT H

04/08/2025 02:32:42 PM
Velva L. Price
District Clerk
Travis County
D-1-GN-25-001601

Cause No.: D1GN25001601

| | | |
|---|---|---|
| | {} | In the 261st District Court |
| Plaintiff: | {} | TRAVIS County |
| DEMETRIUS T CROCKETT | {} | |

Defendant:

LYFT INC

Officer's Return

Came to hand March 06,2025 at 10:33 A.M. and executed in SAN FRANSICO County, CALIFORNIA, on March 17,2025 at 5:00 P.M. by delivering to LYFT INC AND SIGNED BY J.N. at 185 BERRY STREET #5000 SAN FRANSICO CA 94107, by certified mail, number 9589 0710 5270 1748 8036 39 return receipt requested, a true copy of the Citation together with a copy of the PLAINTIFF'S ORIGINAL PETITION.

E-MAILED 4/2/25

Carlos B. Lopez,
Travis County Constable Precinct 5
Travis County, Texas

by: ______________________ Deputy
Josh Alba

Copy from re:SearchTX

M

CITATION
THE STATE OF TEXAS
**CAUSE NO. D-1-GN-25-001601**

DEMETRIUS T. CROCKETT
, PLAINTIFF(S)
vs.
LYFT, INC.
, DEFENDANT(S)

TO: **LYFT, INC.**
**185 BERRY STREET #5000**
**SAN FRANCISCO CA 94107**
**OR WHEREVER FOUND**

Defendant, in the above styled and numbered cause:
**YOU HAVE BEEN SUED. You may employ an attorney. If you or your attorney do not file a written answer with the clerk who issued this citation by 10:00 A.M. on the Monday next following the expiration of twenty days after you were served this citation and petition, a default judgment may be taken against you. In addition to filing a written answer with the clerk, you may be required to make initial disclosures to the other parties of this suit. These disclosures generally must be made no later than 30 days after you file your answer with the clerk. Find out more at TexasLawHelp.org."**

Attached is a copy of the **PLAINTIFF'S ORIGINAL PETITION** in the above styled and numbered cause, which was filed on **MARCH 04, 2025** in the **261ST DISTRICT COURT** of Travis County, Austin, Texas.

ISSUED AND GIVEN UNDER MY HAND AND SEAL of said Court at office, **MARCH 06, 2025**

REQUESTED BY:
**DEMETRIUS T. CROCKETT**
**3310 W. BRAKER LANE**
**AUSTIN, TX 78758**
youcanusemyemailaddress@gmail.com
512-553-5455 P
NO fax

Velva L Price
Travis County District Clerk
Civil Family Court Facility (CFCF)
1700 Guadalupe Street P.O. Box 679003 (78767)
Austin TX 78701
**Ruben Tamez, Deputy**

RETURN

Came to hand on the _____ day of ________________, ________ at ________ o'clock ____M., and executed at ________________________ within the County of ____________________ on the _____ day of ________________, ________, at ________ o'clock ____M., by delivering to the within named ________________________, each in person, a true copy of this citation together with the **PLAINTIFF'S ORIGINAL PETITION** accompanying pleading, having first attached such copy of such citation to such copy of pleading and endorsed on such copy of citation the date of delivery.

Service Fee: $ ________

Carlos B. Lopez
Constable Pct. 5, Travis County, Texas
Sheriff / Constable / Authorized Person

Sworn to and subscribed before me this the _____ day of ________________, ________.

By: ________________________

________________________
Printed Name of Server

________________________ County, Texas

________________________
Notary Public, THE STATE OF TEXAS
**D-1-GN-25-001601**

~~PCT 5~~ - **CERTIFIED MAIL SERVICE**

paupers

2025 MAR -6 AM 10: 33
RECEIVED

COMPLETED

Copy from re:SearchTX

9589 0710 5270 1748 8036 39

U.S. Postal Service™
CERTIFIED MAIL® RECEIPT
*Domestic Mail Only*

For delivery information, visit our website at www.usps.com®

OFFICIAL USE

Certified Mail Fee
$

Extra Services & Fees *(check box, add fee as appropriate)*
- ☐ Return Receipt (hardcopy) $
- ☐ Return Receipt (electronic) $
- ☐ Certified Mail Restricted Delivery $
- ☐ Adult Signature Required $
- ☐ Adult Signature Restricted Delivery $

Postage
$

Postmark Here

MAR 10 2025

D1GN25001801-1
LYFT INC
185 BERRY STREET #5000
SAN FRANSICO CA 94107

PS Form 3800, January 2023 PSN 7530-02-000-9047 See Reverse for Instructions

SENDER: *COMPLETE THIS SECTION*

- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

D1GN25001801-1
LYFT INC
185 BERRY STREET #5000
SAN FRANSICO CA 94107

9590 9402 8482 3186 6132 97

2. Article Number *(Transfer from service label)*

9589 0710 5270 1748 8036 39

*COMPLETE THIS SECTION ON DELIVERY*

A. Signature
X [signature] ☐ Agent ☐ Addressee

B. Received by *(Printed Name)* J.R.

C. Date of Delivery 3-17-25

D. Is delivery address different from item 1? ☐ Yes
If YES, enter delivery address below: ☒ No

3. Service Type
- ☐ Adult Signature
- ☐ Adult Signature Restricted Delivery
- ☒ Certified Mail®
- ☐ Certified Mail Restricted Delivery
- ☐ Collect on Delivery
- ☐ Collect on Delivery Restricted Delivery
- ☐ Insured Mail
- ☐ Insured Mail Restricted Delivery (over $500)
- ☐ Priority Mail Express®
- ☐ Registered Mail™
- ☐ Registered Mail Restricted Delivery
- ☐ Signature Confirmation™
- ☐ Signature Confirmation Restricted Delivery

PS Form 3811, July 2020 PSN 7530-02-000-9053 Domestic Return Receipt

Copy from re:SearchTX

EXHIBIT I

4/3/2025 3:56 PM
Velva L. Price
District Clerk
Travis County
D-1-GN-25-001601
Eva Fairchild

****THIS IS NOT A SUBSTITUTE FOR THE ADVICE OF AN ATTORNEY****

Cause No. **D-1-GN-25-001601**

| | | |
|---|---|---|
| **Demetrius Crockett** | § | In the *(check one)*: |
| | § | ☑ **261st** District Court |
| **vs.** | § | |
| | § | ☐ County Court at Law No. _____ |
| **Lyft, Inc** | § | |
| | § | Travis County, Texas |
| | § | |

# Notice of Hearing

**Hearing For Plaintiff's Motion For Summary Judgment And Personal Damages To Be Awarded**

You are hereby notified that the above styled and numbered cause of action is set for a hearing on the **16th** day of **APRIL**, 2025, at 9:00 (a.m.) / p.m.

The hearing will be held in the **Travis County, District Court**
*(Court)*

located at **1700 Guadalupe, Austin, TX 78701**
*(Court's Location)*

Signed this 3RD day of APRIL, 20 25.

## Certificate of Conference ~~(check one)~~ → All took place via email.

☐ I certify that I telephoned the other party's attorney or the other party (if the other party does not have an attorney), three times, but my phone calls were never returned. Therefore, we were not able to reach an agreement.

☐ I certify that I telephoned the other party's attorney or the other party (if the other party does not have an attorney) and we were not able to reach an agreement.

▶ D. Crockett
*Signature*

4/3/25
*Date*

## Certificate of Service

I certify that I delivered a copy of this document to each party in this case, or if a party is represented by a lawyer to the party's lawyer, by: *(Check one or more)*

☐ Hand delivery to the other party ______________________________

☐ Hand delivery to the other party's lawyer ______________________________

☒ Email to this email address **bryan.pollard@pierferd.com, deidra.cobb@pierferd.com, bradley.bush@pierferd.com**

☐ Regular mail to this address: ______________________________

______________________________

☐ Certified mail to this address: ______________________________

______________________________

☐ Commercial delivery service (for example FedEx) to this address: ______________

______________________________

☐ Fax to fax #: ______________________________

P. Crockett 4/3/25

*Signature* *Date*

## Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Envelope ID: 99259634
Filing Code Description: Notice
Filing Description: NOTICE OF HEARING
Status as of 4/4/2025 1:33 PM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Demetrius Crockett | | dcaustin71@gmail.com | 4/3/2025 3:56:51 PM | SENT |
| Lyft Inc | | legal@lyft.com | 4/3/2025 3:56:51 PM | SENT |
| Deidra Cobb | | deidra.cobb@pierferd.com | 4/3/2025 3:56:51 PM | SENT |
| Bradley Bush | | bradley.bush@pierferd.com | 4/3/2025 3:56:51 PM | SENT |
| Bryan Pollard | | bryan.pollard@pierferd.com | 4/3/2025 3:56:51 PM | SENT |

EXHIBIT J

4/7/2025 4:02 PM
Velva L. Price
District Clerk
Travis County
D-1-GN-25-001601
Susan Schmidt

CAUSE NO. D-1-GN-25-001601

| | | |
|---|---|---|
| DEMETRIUS CROCKETT, *Plaintiff,* | § | IN THE DISTRICT COURT |
| | § | |
| | § | |
| vs. | § | 261ST DISTRICT COURT |
| | § | |
| LYFT, INC., *Defendant.* | § | |
| | § | TRAVIS COUNTY, TEXAS |

---

**DEFENDANT LYFT, INC.'S ORIGINAL ANSWER**

---

Defendant Lyft, Inc. ("Lyft") files its Original Answer.

**GENERAL DENIAL**

1. Lyft generally denies all the material allegations contained in Plaintiff's active petition ("Plaintiff's Petition") including any supplements or amendments thereto, and demands strict proof thereof as permitted by Rule 92 of the Texas Rules of Civil Procedure.

**OTHER DEFENSES AND ASSERTIONS**

2. Lyft invokes and reserves the right to assert any and all rights and defenses as provided in Lyft's Terms of Service, to which Plaintiff consented in order to use the Lyft platform. Such rights include but are not limited to the right to compel arbitration of Plaintiff's claims against Lyft in accordance with the Federal Arbitration Act.

3. Lyft is not liable to Plaintiff for breach of contract, fraud, "fraudulent misrepresentation," credit card or debit card abuse (Texas Penal Code § 32.21), misapplication of fiduciary property (Texas Penal Code § 32.45), or 18 U.S.C § 1029 because these claims (and to the extent the latter three allegations are even recognized as

civil claims under Texas law) are barred by the four-year statute of limitations in Texas Civil Practice & Remedies Code section 16.004.

4. Lyft is not liable to Plaintiff for "tortious interference with business or employment" because this claim is barred by the two-year statute of limitations in Texas Civil Practice & Remedies Code section 16.003.

5. Lyft presently has insufficient knowledge or information upon which to form a belief as to whether it may have additional, yet unknown, affirmative defenses. Accordingly, Lyft reserves the right herein to assert additional affirmative defenses in the event discovery indicates same would be appropriate.

## REQUEST FOR RELIEF

While specifically preserving its right to arbitration, Lyft requests that judgment be entered in its favor denying Plaintiff any relief, and awarding Lyft such other and further relief, general or special, at law or in equity, to which it may be justly entitled.

Respectfully submitted,

Bryan D. Pollard
State Bar No. 00795592
bryan.pollard@pierferd.com
Telephone: (214) 984-7153
Facsimile: (214) 279-7192
Bradley B. Bush
State Bar No. 24057787
bradley.bush@pierferd.com
Telephone: (512) 766-6226
PIERSON FERDINAND, LLP
5995 Summerside Dr., Unit #794257
Dallas, Texas 75379

ATTORNEYS FOR DEFENDANT LYFT, INC.

**CERTIFICATE OF SERVICE**

I hereby certify that, on April 7, 2025, a true and correct copy of this document was served in accordance with the Texas Rules of Civil Procedure.

Bryan D. Pollard

# Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Envelope ID: 99372456
Filing Code Description: Answer/Response
Filing Description: DEFENDANT LYFT, INC.'S ORIGINAL ANSWER
Status as of 4/8/2025 10:50 AM CST

Associated Case Party: DEMETRIUST.CROCKETT

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Demetrius Crockett | | dcaustin71@gmail.com | 4/7/2025 4:02:52 PM | SENT |

Associated Case Party: LYFT, INC.

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Lyft Inc | | legal@lyft.com | 4/7/2025 4:02:52 PM | SENT |

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Deidra Cobb | | deidra.cobb@pierferd.com | 4/7/2025 4:02:52 PM | SENT |
| Bradley Bush | | bradley.bush@pierferd.com | 4/7/2025 4:02:52 PM | SENT |
| Bryan Pollard | | bryan.pollard@pierferd.com | 4/7/2025 4:02:52 PM | SENT |

EXHIBIT K

# Cause No. D-1-GN-25-001601

| | |
|---|---|
| **Demetrius Crockett (Plaintiff)** | **In the 261st** |
| **vs** | **District Court** |
| | **of** |
| **Lyft, Inc. (Defendant)** | **Travis County, Texas** |

## PLAINTIFF'S RESPONSE TO DEFENDANT LYFT, INC.'S ORIGINAL ANSWER AND DEFENSES

**TO THE HONORABLE COURT:**

**Plaintiff, Demetrius Crockett, by and through undersigned counsel, hereby responds to Defendant Lyft, Inc.'s ("Lyft") Original Answer and asserts the following:**

## I. GENERAL DENIAL

1. **Plaintiff's Denial of General Denial**

   Plaintiff acknowledges that Rule 92 of the Texas Rules of Civil Procedure permits a general denial of the allegations in Plaintiff's Petition; however, **Plaintiff asserts that the facts alleged in the Petition are truthful and supported by sufficient evidence.**

   **As such, Plaintiff demands strict proof of Defendant Lyft's general denial in the Summary Judgment hearing on April 16th, 2025 at 9AM CST.**

   Plaintiff is confident that the material facts of the case, including those surrounding the fraudulent credit card use, breach of contract, and the harm caused to Plaintiff, will be substantiated upon further review and discovery.

## II. OTHER DEFENSES AND ASSERTIONS

2. **Lyft's Invocation of Rights in Terms of Service and Arbitration**

   **Plaintiff respectfully disagrees with Lyft's invocation of its Terms of Service as a defense.**

   While Lyft claims that Plaintiff consented to arbitration under the Federal Arbitration Act, **Plaintiff asserts that such an agreement is unenforceable in this case for several reasons, including that the contract provisions in question are unenforceable due to unconscionability or the presence of fraudulent activities related to Defendant's own conduct.**

# Cause No. D-1-GN-25-001601

Under Texas law, the enforceability of arbitration clauses is subject to both statutory and common law scrutiny, and such clauses may be found invalid if the underlying contract is tainted by fraud.

See **In re Rubiola**, 334 S.W.3d 220 (Tex. 2011).

**Plaintiff argues that since Defendant's actions (fraudulent use of credit card information) constitute fraudulent conduct, the arbitration agreement cannot be enforced.**

3. **Statute of Limitations Defense – Breach of Contract, Fraud, and Related Claims**

Defendant asserts that Plaintiff's claims are barred by the four-year statute of limitations for breach of contract and fraud, citing **Tex. Civ. Prac. & Rem. Code § 16.004**. However, Plaintiff argues that the discovery rule applies to the claims in this case, as **Plaintiff did not have definitive proof of the fraudulent activities until March 17, 2021.**

**In Texas, the discovery rule may toll the statute of limitations when a plaintiff is unable to discover the facts giving rise to the claim despite exercising reasonable diligence.**

**Hidalgo v. Surety Savings & Loan Ass'n**, 462 S.W.2d 540, 548 (Tex. 1971)
**Vickery v. Fritts**, 238 S.W.3d 764 (Tex. App.—Dallas 2007).

Plaintiff could not have reasonably discovered the fraudulent act until the letter from USAA bank in March 2021, and as such, **the statute of limitations does not bar the claims.**

Plaintiff's breach of contract and fraud claims are timely filed under **Tex. Civ. Prac. & Rem. Code § 16.004**, **and the fraud claims are not barred by the statute of limitations.**

4. **Tortious Interference with Business or Employment**

Defendant argues that Plaintiff's claim for tortious interference with business of rideshare services is barred by the two-year statute of limitations under **Tex. Civ. Prac. & Rem. Code § 16.003**. **However, Plaintiff contends that the fraudulent actions taken by Defendant did not cause Plaintiff to experience interference until March 2021, when Plaintiff confirmed the fraud.**

The continuing tort doctrine may apply to claims of tortious interference, allowing for the extension of the statute of limitations where there is a continuing violation.

See **Custom Hardware Engineering & Consulting, Inc. v. Dowell**, 407 S.W.3d 764 (Tex. App.—Dallas 2013).

**The Plaintiff's claim for tortious interference should not be dismissed on the basis of limitations.**

# Cause No. D-1-GN-25-001601

5. **Insufficient Knowledge to Assert Additional Affirmative Defenses**

   Plaintiff acknowledges Defendant's assertion that it reserves the right to assert additional defenses upon further discovery. However, **Plaintiff objects to this reservation of rights given the irrefutable and indisputable evidence submitted with the Motion for Summary Judgment filing and requests that Defendant promptly disclose any potential irrefutable defenses during the Summary Judgment hearing on April 16th, 2025 at 9AM CST.**

## III. REQUEST FOR RELIEF

**Plaintiff respectfully requests that the Court:**

1. **Deny Defendant Lyft's Motion to Dismiss or Strike Plaintiff's Claims** based on statute of limitations and arbitration.

2. **Order Defendant Lyft to provide full responses to discovery** and produce documents relevant to Plaintiff's claims, including any communications, contracts, and fraudulent records in Summary Judgement hearing on April 16th, 2025 at 9AM CST.

3. **Award Plaintiff any damages** deemed appropriate, including actual damages for economic loss, punitive damages, treble damages under the Texas Theft Liability Act (Defendant was given 60 Day DTPA notice), attorney's fees, and all other relief as requested in the Petition.

4. **Grant any other relief** the Court deems just and proper.

**Respectfully submitted,**

**Demetrius Crockett**
**3310 W. Braker Ln**
**Austin, Texas 78758**
**512.553.5455**
**youcanusemyemailaddress@gmail.com**

# Cause No. D-1-GN-25-001601

## Certificate of Service

**I hereby certify that a true and correct copy of the foregoing RESPONSE TO DEFENDANT LYFT, INC.'S ORIGINAL ANSWER AND DEFENSES has been served, via electronic filing, to Lyft Inc. on this the 8th day of April 2025, electronically and in accordance with the Texas Rules of Civil Procedure.**

**Demetrius Crockett**

D. Crockett 4/8/25

# Cause No. D-1-GN-25-001601

| | |
|---|---|
| **Demetrius Crockett (Plaintiff)** | **In the 261st** |
| **vs** | **District Court** |
| | **of** |
| **Lyft, Inc. (Defendant)** | **Travis County, Texas** |

## ORDER ON PLAINTIFF'S DENIAL OF GENERAL DENIAL AND OTHER DEFENSES

**On this day, the Court considered the Plaintiff's Denial of General Denial and Response to Other Defenses filed in response to Defendant Lyft, Inc.'s Original Answer.**

**The Court finds as follows:**

**I. General Denial**

1. The Plaintiff acknowledges Rule 92 of the Texas Rules of Civil Procedure permits a general denial of allegations in the Petition. The Plaintiff asserts that the facts alleged in the Petition are truthful and supported by sufficient evidence.

2. The Court orders Defendant Lyft, Inc. to present strict proof of their general denial during the Summary Judgment hearing scheduled for April 16, 2025, at 9:00 AM CST. The Plaintiff is confident that the material facts surrounding the fraudulent credit card use, breach of contract, and harm to the Plaintiff will be substantiated upon further review and discovery.

**II. Lyft's Invocation of Rights in Terms of Service and Arbitration**

3. The Court acknowledges the Plaintiff's disagreement with Defendant Lyft's invocation of its Terms of Service and their claim that Plaintiff consented to arbitration under the Federal Arbitration Act.

4. The Court notes Plaintiff's assertion that the arbitration agreement is unenforceable due to fraudulent activity on the part of Defendant. Plaintiff contends that under Texas law, fraudulent conduct by a party may render an arbitration clause unenforceable, citing ***In re Rubiola*****, 334 S.W.3d 220 (Tex. 2011).**

5. The Court will consider these arguments at the upcoming Summary Judgment hearing and directs Defendant Lyft to provide detailed evidence of the enforceability of the arbitration clause at that time.

# Cause No. D-1-GN-25-001601

**III. Statute of Limitations Defense – Breach of Contract, Fraud, and Related Claims**

6. The Court acknowledges Defendant's assertion that Plaintiff's claims are barred by the four-year statute of limitations under Tex. Civ. Prac. & Rem. Code § 16.004, but recognizes Plaintiff's argument that the discovery rule applies to these claims.

7. The Court finds that Plaintiff's claims for breach of contract and fraud may be timely filed under the discovery rule, which tolls the statute of limitations until the fraud is discovered, citing ***Hidalgo v. Surety Savings & Loan Ass'n*, 462 S.W.2d 540, 548 (Tex. 1971) and *Vickery v. Fritts*, 238 S.W.3d 764 (Tex. App.—Dallas 2007).**

8. The Court directs that the issue of timeliness of Plaintiff's claims be addressed further during the Summary Judgment hearing on April 16, 2025.

**IV. Tortious Interference with Business or Employment**

9. Defendant claims that Plaintiff's tortious interference claim is barred by the two-year statute of limitations under Tex. Civ. Prac. & Rem. Code § 16.003. Plaintiff asserts that the claim is not barred due to the continuing tort doctrine, which extends the statute of limitations if there is a continuing violation.

10. The Court finds that the continuing tort doctrine may apply to Plaintiff's claim for tortious interference, as the alleged fraudulent conduct by Defendant resulted in ongoing harm to the Plaintiff.

11. The Court will consider the applicability of the continuing tort doctrine during the Summary Judgment hearing and allows the issue to be fully addressed at that time.

**V. Insufficient Knowledge to Assert Additional Affirmative Defenses**

12. The Court acknowledges Defendant's statement that they may assert additional defenses upon further discovery. However, the Plaintiff objects to this reservation of rights, noting that irrefutable evidence has been submitted with the Motion for Summary Judgment.

13. The Court orders Defendant to promptly disclose any potential additional defenses during the Summary Judgment hearing on April 16, 2025, at 9:00 AM CST. Failure to disclose any new defenses will be taken into account by the Court at that time.

# Cause No. D-1-GN-25-001601

**VI. Conclusion**

14. The Court will proceed with the Summary Judgment hearing scheduled for April 16, 2025, at 9:00 AM CST. During this hearing, the Court will consider all arguments related to the general denial, the applicability of the statute of limitations, tortious interference, enforceability of arbitration, and any other claims or defenses raised by the parties.

15. All parties are directed to present any further evidence or arguments they wish to make at that time.

**IT IS SO ORDERED.**

SIGNED this _____ day of _________________, 2025.

_________________________________________________

Judge of the 261st District Court
Travis County, Texas

**Respectfully submitted,**

**Demetrius Crockett**
**3310 W. Braker Ln**
**Austin, Texas 78758**
**512.553.5455**
**youcanusemyemailaddress@gmail.com**

## Certificate of Service

**I hereby certify that a true and correct copy of the foregoing RESPONSE TO DEFENDANT LYFT, INC.'S ORIGINAL ANSWER AND DEFENSES has been served, via electronic filing, to Lyft Inc. on this the 8th day of April 2025, electronically and in accordance with the Texas Rules of Civil Procedure.**

**Demetrius Crockett**

D. Crockett 4/8/25

# EXHIBIT L

**261st District Court**

# Case Summary

**Case No. D-1-GN-25-001601**

| | | | |
|---|---|---|---|
| **DEMETRIUS CROCKETT vs. LYFT, INC.** | § | Location: | **261st District Court** |
| | § | Judicial Officer: | **261ST, DISTRICT COURT** |
| | § | Filed on: | **03/04/2025** |

## Case Information

| | |
|---|---|
| Case Type: | Debt/Contract - Debt/Contract |
| Case Status: | **03/04/2025 Open** |

## Assignment Information

**Current Case Assignment**

| | |
|---|---|
| Case Number | D-1-GN-25-001601 |
| Court | 261st District Court |
| Date Assigned | 03/04/2025 |
| Judicial Officer | 261ST, DISTRICT COURT |

## Party Information

| | | |
|---|---|---|
| **Plaintiff** | **CROCKETT, DEMETRIUS T.** | **Pro Se** |
| **Defendant** | **LYFT, INC.** | **POLLARD, BRYAN** ***Retained*** |

## Case Events

03/04/2025 EXPEDITED ORIG PET RULE 169 (OCA)
*PLAINTIFF'S ORIGINAL PETITION*
Party: Plaintiff CROCKETT, DEMETRIUS T.

03/04/2025
STATEMENT OF INABILITY TO AFFORD COSTS
*STATEMENT OF INABILITY TO AFFORD PAYMENT OF COURT COSTS OR AN APPEAL BOND IN JUSTICE COURT*
Party: Plaintiff CROCKETT, DEMETRIUS T.

03/05/2025
OTHER/NOTICE
*60 Day Notice Of Intent To Add DTPA Offenses Pursuant To The Texas Deceptive Trade Practices Act As An Amended Claim In Plaintiff s Petition Pending Case Status At The 60 Day Mark*

03/05/2025 MOTION
*MOTION FOR SUMMARY JUDGMENT*
Party: Defendant LYFT, INC.

03/11/2025 MOTION
*MOTION FOR SUMMARY JUDGMENT*
Party: Plaintiff CROCKETT, DEMETRIUS T.

03/20/2025 MOTION
*MOTION FOR SUMMARY JUDGMENT*
Party: Plaintiff CROCKETT, DEMETRIUS T.

03/20/2025 PLEADING
*FIRST AMENDED ORIGINAL PETITION*
Party: Plaintiff CROCKETT, DEMETRIUS T.

04/03/2025 EXECUTED SERVICE
*EXECUTED RETURN SERVICE OF CITATION - LYFT, INC.*

04/03/2025 OTHER/NOTICE
*NOTICE OF HEARING*

04/07/2025 ORIGINAL ANSWER/WAIVER
*DEFENDANT LYFT, INC. S ORIGINAL ANSWER*
Party: Defendant LYFT, INC.

04/09/2025
RESPONSE
*PLAINTIFF S RESPONSE TO DEFENDANT LYFT, INC. S ORIGINAL ANSWER AND DEFENSES*
Party: Plaintiff CROCKETT, DEMETRIUS T.

## Service Events

03/06/2025 **Citation**
LYFT, INC.
Served: 03/17/2025